UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HARRY NIEBERG, an individual, and
HARRY NIEBERG FUNERAL HOME INC., a                Case No.
New York corporation,

                Plaintiffs,                  08 CV 00392 (MGC)

         v.                                         COMPLAINT

NIEBERG MIDWOOD CHAPEL INC., a New York
Corporation; MIDWOOD MEMORIAL CHAPEL INC.,
a New York corporation,

                Defendants.
-----------------------------------------------------------------X

      Plaintiffs, HARRY NIEBERG, ("Harry"), and HARRY NIEBERG FUNERAL HOME INC., ("Nieberg Funeral") for their claims against NIEBERG MIDWOOD CHAPEL INC., ("Midwood Chapel"); and MIDWOOD MEMORIAL CHAPEL INC., ("Midwood Memorial") (collectively the "Defendants") on information and belief, allege as follows:

### NATURE OF ACTION

      1.    This is an action for service mark infringement pursuant to the Lanham Act; service mark infringement pursuant to New York common law; unfair competition pursuant to New York common law; tortious interference with contract pursuant to New York law against Midwood Chapel and Midwood Memorial; tortious interference with prospective economic advantage pursuant to New York law against Midwood Chapel and Midwood Memorial; and declaratory relief pursuant to 28 U.S.C. §2201 et seq. and 15 U.S.C. §1051 et seq. This action arises out of Midwood Chapel's and Midwood Memorial's actions to wrongfully interfere with Harry's and Nieberg Funeral's engaging in the funeral services business under the HARRY NIEBERG FUNERAL HOME mark and out of Midwood Chapel's fraudulent attempt to wrongfully register HARRY NIEBERG as a service mark with the United States Patent and Trademark Office. As a result of these unlawful actions, as further alleged herein, Plaintiffs seek injunctive relief, the recovery of actual damages,

4839-9792-5634.1

punitive damages, exemplary damages, costs and attorneys' fees and such other relief as the Court may deem appropriate.

## THE PARTIES

2. HARRY NIEBERG is an individual whose present residential address is 2370 East 66th Street, Brooklyn, New York.

3. HARRY NIEBERG FUNERAL HOME INC. is a New York corporation.

4. NIEBERG MIDWOOD CHAPEL INC. is a New York corporation with its principal place of business at 1625 Coney Island Avenue, Brooklyn, New York.

5. MIDWOOD MEMORIAL CHAPEL INC. is a New York corporation with its principal place of business at 1625 Coney Island Avenue, Brooklyn, New York.

## JURISDICTION

6. This Court has original jurisdiction over the First Claim for Infringement under the Lanham Act and the Fifth Claim for Declaratory Relief pursuant to 28 U.S.C. §§ 2201 et seq. and 15 U.S.C. §1051 et seq.

7. This Court has jurisdiction over the Second, Third and Fourth Claims for Relief on the basis of supplemental jurisdiction pursuant to 28 U.S.C. §1367, as the Second, Third and Fourth Claims for Relief arise under New York law and are so related to the First and Fifth Claims for Relief, over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 2201 et seq. and 15 U.S.C. §1051 et seq., that they form part of the same case and controversy under Article III of the United States Constitution.

8. Personal jurisdiction over Midwood Chapel is proper as it has had substantial, continuous and systematic contacts with the State of New York, has purposefully directed its activities to residents of the State of New York, and/or has purposefully availed itself of the privilege of conducting activities within the State of New York, which activities have resulted in injuries to Harry and Nieberg Funeral as alleged herein.

9. Midwood Chapel is a New York corporation doing business in the State of New York and has an office in Brooklyn, New York.

10. Personal jurisdiction over Midwood Memorial is proper as it has had substantial, continuous and systematic contacts with the State of New York, has purposefully directed its activities to residents of the State of New York, and/or has purposefully availed itself of the privilege of conducting activities within the State of New York, which activities have resulted in injuries to Harry and Nieberg Funeral as alleged herein.

11. Midwood Memorial is a New York corporation doing business in the State of New York and has an office in Brooklyn, New York.

## VENUE

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1-3), as a substantial part of the events giving rise to the claims at issue in this action occurred in this judicial district.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(c), as Defendants are subject to personal jurisdiction in this judicial district and thus, Defendants have significant contacts with this judicial district.

## STATEMENT OF FACTS

14. At least as late as March 1997, Harry and his brothers Peter J. Nieberg ("Peter") and Stanley J. Nieberg ("Stanley") each became one-third shareholders of Midwood Chapel and Midwood Memorial.

15. In or about August of 2004, Harry filed for dissolution of Midwood Chapel and Midwood Memorial.

16. On or about August 16, 2006, a Stipulation of Settlement and Order (the "Stipulation"), resolving the dissolution dispute without requiring the dissolution of Midwood Chapel and Midwood Memorial, was signed by the Court and subsequently filed on August 28, 2006.

17. Before the execution of the Stipulation, the parties thereto negotiated regarding the possible inclusion of certain provisions in the Stipulation, one such provision being a non-

4839-9792-5634.1

competition clause containing the language "Effective on Closing, Harry agrees not to solicit customers or employees or the Corporations, or to engage in, or allow his name to be used, in connection with any funeral home or mortuary business in Kings County, New York for the one year period from May 1, 2006 through and including April 30 2007" (the "Non-competion Clause").

18.     The Stipulation as executed and entered by the Court neither contains the Non-competition Clause, nor any other form of non-competition clause.

19.     The Stipulation as executed and entered by the Court neither contains the non-solicitation language in the Non-competition clause, nor does it contain any provision which in any manner prohibits Harry from soliciting, engaging, contacting, and/or communicating in any manner with clients or customers of Defendants whether or not those clients or customers pre-existed the Stipulation.

20.     In or about September of 2006, Harry entered into an oral contract ("Oral Contract") with Sherman Funeral Home, Inc. ("Sherman Funeral"), located at 1283 Coney Island Avenue, Brooklyn, New York.

21.     Pursuant to the Oral Contract, Harry, or any Harry controlled entity formed or to be formed by Harry, was to receive a percentage of profits on any funeral service conducted at the Sherman Funeral facilities which funeral service was attributable to Harry's business endeavors and/or goodwill.

22.     Effective at the time of the formation of the Oral Contract, Harry licensed HARRY NIEBERG (the "Mark") to Sherman Funeral.

23.     Consistent with the Oral Contract, on or about July 26, 2007, Harry registered Nieberg Funeral as an entity with the New York State Department of State and thereafter commenced the funeral services licensing process.

24.     Effective July 26, 2007, Harry assigned his personal rights to the Mark to Nieberg Funeral.

25.     No later than August of 2007, Sherman Funeral commenced use by displaying the Mark on the outside of the Sherman Funeral facilities to attract funeral services customers.

4839-9792-5634.1

26. Commencing in or about September, 2007, Sherman Funeral conducted funeral services which were attributable to Harry's business endeavors and/or good will (the "Harry Attributable Funerals").

27. Harry engaged in efforts to oversee the general quality of the Harry Attributable Funerals conducted by Sherman Funeral.

28. On or about October 2, 2007, Harry and Nieberg Funeral received correspondence, which was copied to Sherman Funeral, from Defendants' counsel requiring that Harry, Nieberg Funeral and Sherman Funeral cease "trading under the name of "Harry Nieberg Funeral Home" and to instruct all publications…that the Harry Nieberg Funeral Home is no longer to be advertised in those publications."

29. On or about October 16, 2007, Defendants' counsel sent correspondence (the "October 16th Letter") to Sherman Funeral in which Defendants demanded that Sherman Funeral "refrain from using the name Harry Nieberg Funeral Home in connection with any funeral services performed by you or your establishment."

30. The October 16th Letter further threatened to institute suit for injunctive relief and other relief if Sherman Funeral failed to confirm that the name Harry Nieberg and/or Harry Nieberg Funeral Home would not be used in connection with the Sherman Funeral or services provided at the Sherman Funeral facilities.

31. Subsequent to receiving the October 16th Letter, Sherman Funeral removed the placard bearing the Mark and declined to allow Harry and/or Nieberg Funeral to conduct any funeral services at Sherman Funeral, resulting in Harry and/or Nieberg Funeral losing potential funeral service clients and any and all associated profits.

32. On October 13, 2007, Midwood Chapel filed a service mark application with the United States Patent and Trademark Office claiming the service mark HARRY NIEBERG & SONS (the "USPTO Application").

33. The USPTO Application is a use based application, wherein Midwood Chapel claims to be using the mark as of October 13, 2007.

34. In the USPTO Application, Midwood Chapel claims a date of first use of HARRY NIEBERG & SONS of January 1, 1965.

35. Defendants' claimed date of first use of HARRY NIEBERG & SONS of January 1, 1965 is unfounded as Defendants have not used HARRY NIEBERG & SONS as a service mark dating back to January 1, 1965.

36. Prior to October 13, 2007, neither Midwood Chapel nor Midwood Memorial has ever claimed HARRY NIEBERG as a service mark.

## FIRST CLAIM FOR RELIEF

### SERVICE MARK INFRINGEMENT UNDER 15 U.S.C. §1125(a)

### (AGAINST ALL DEFENDANTS)

37. Plaintiffs reallege and incorporate by reference every allegation set forth in Paragraphs 1 through 36 as if fully set forth herein.

38. Plaintiffs first used the Mark in commerce in connection with the offering of funeral services on or about July 26, 2007.

39. Prior to July 26, 2007, Defendants never used the Mark as a service mark, despite Defendants' claimed first use date of January 1, 1965 in the USTPO Application.

40. In Defendants' USPTO Application, Defendants claim use of the Mark as of October 13, 2007.

41. Defendants' claimed use of the Mark as is indicated in the USPTO Application, is an unauthorized use of the Mark with respect to the offering of funeral services in connection with Midwood Chapel and Midwood Memorial.

42. Defendants' use and threatened continued use of marks which are identical or nearly identical to the Mark and confusing and misleading misrepresentations concerning the Mark to third parties constitute service mark infringement, false designation of origin and a false description and representation of Defendants' business and services, which have damaged and will continue to

damage the reputation and goodwill of the Harry Nieberg and Nieberg Funeral names and hinder the ability of Nieberg Funeral to maintain customers.

43. Defendants' use and threatened continued use of marks which are identical or nearly identical to the Mark and misrepresentations concerning the Mark to third parties have and will continue to cause confusion in the funeral industry and confusion on the part of funeral services consumers in Plaintiff's geographical area.

44. Defendants' activities are in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

45. As a direct and proximate result of Defendants' false and misleading representations, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

46. The acts of the Defendants as alleged herein and the ongoing direct results of those acts have damaged Plaintiffs in an amount to be proven at trial.

47. Unless Defendants are preliminarily and permanently enjoined by this Court from continued infringement of the Mark, Plaintiffs will continue to suffer irreparable harm through the Defendants' use of the Mark.

## SECOND CLAIM FOR RELIEF

### SERVICE MARK INFRINGEMENT UNDER COMMON LAW

### (AGAINST ALL DEFENDANTS)

48. Plaintiffs reallege and incorporate by reference every allegation set forth in Paragraphs 1 through 47 as if fully set forth herein.

49. Plaintiffs first used the Mark in commerce in connection with the offering of funeral services on or about July 26, 2007.

50. The Mark as used by Plaintiffs has acquired secondary meaning.

51. Prior to July 26, 2007, Defendants never used the Mark as a service mark, despite Defendants' claimed first use date of January 1, 1965 in the USTPO Application.

52. In Defendants' USPTO Application, Defendants claim use of the Mark as of October 13, 2007.

53. Defendants' claimed use of the Mark, as is indicated in the USPTO Application, is an unauthorized use of the Mark with respect to the offering of funeral services in connection with Midwood Chapel and Midwood Memorial.

54. Defendants' use and threatened continued use of marks which are identical or nearly identical to the Mark and confusing and misleading misrepresentations concerning the Mark to third parties constitutes service mark infringement and a false description and representation of Defendants' business and services, which have damaged and will continue to damage the reputation and goodwill of the Harry Nieberg and Nieberg Funeral names and hinder the ability of Plaintiffs to maintain customers.

55. Defendants' use and threatened continued use of marks which are identical or nearly identical to the Mark and misrepresentations concerning the Mark to third parties have and will continue to cause confusion in the funeral industry and confusion on the part of funeral services consumers in Plaintiff's geographical area.

56. Defendants' activities are in violation of New York common law.

57. As a direct and proximate result of Defendants' illegal activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

58. The acts of the Defendants as alleged herein and the ongoing direct results of those acts have damaged Plaintiffs in an amount to be proven at trial.

59. Unless Defendants are preliminarily and permanently enjoined by this Court from continued infringement of the Mark, Plaintiffs will continue to suffer irreparable harm through the Defendants' use and threatened continued use of the Mark.

## THIRD CLAIM FOR RELIEF

### UNFAIR COMPETITION UNDER COMMON LAW

### (AGAINST ALL DEFENDANTS)

60. Plaintiffs reallege and incorporate by reference every allegation set forth in Paragraphs 1 through 59 as if fully set forth herein.

61. Plaintiffs first used the Mark in commerce in connection with the offering of funeral services on or about July 26, 2007.

62. Prior to July 26, 2007, Defendants never used the Mark as a service mark, despite Defendants' claimed first use date of January 1, 1965 in the USTPO Application.

63. In Defendants' USPTO Application, Defendants claim use of the Mark as of October 13, 2007.

64. Defendants' claimed use of the Mark, as is indicated in the USPTO Application, is an unauthorized use of the Mark with respect to the offering of funeral services in connection with Midwood Chapel and Midwood Memorial.

65. Defendants' use and threatened continued use of marks which are identical or nearly identical to the Mark and confusing and misleading misrepresentations concerning the Mark to third parties constitutes service mark infringement and a false description and representation of Defendants' business and services, which have damaged and will continue to damage the reputation and goodwill of the Harry Nieberg and Nieberg Funeral name and hinder the ability of Plaintiffs to maintain customers.

66. Defendants' use and threatened continued use of marks which are identical or nearly identical to the Mark and misrepresentations concerning the Mark to third parties have and will continue to cause confusion in the funeral industry and confusion on the part of funeral services consumers in Plaintiff's geographical area.

67. Defendants' activities are in violation of New York common law.

68.	As a direct and proximate result of Defendants' illegal activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

69.	The acts of the Defendants as alleged herein and the ongoing direct results of those acts have damaged Plaintiffs in an amount to be proven at trial.

70.	Unless Defendants are preliminarily and permanently enjoined by this Court from continued infringement of the Mark, Plaintiffs will continue to suffer irreparable harm through the Defendants' use and threatened continued use of the Mark.

## FOURTH CLAIM FOR RELIEF

### TORTIOUS INTERFERENCE WITH CONTRACT

### (AGAINST ALL DEFENDANTS)

71.	Plaintiffs reallege and incorporate by reference every allegation set forth in Paragraphs 1 through 70 as if fully set forth herein.

72.	Plaintiffs have a valid and enforceable oral contract with Sherman Funeral regarding conducting funeral services at the Sherman Funeral facilities.

73.	By virtue of Defendants correspondence to Harry and Nieberg Funeral of October 2, 2007, which was copied to Sherman Funeral, and the October 16th Letter, Defendants had knowledge of the contractual relationship between Plaintiffs and Sherman Funeral.

74.	By virtue of Defendants correspondence to Harry and Nieberg Funeral of October 2, 2007, which was copied to Sherman Funeral, and the October 16th Letter, Defendants have intentionally and improperly attempted to interfere with the contractual relationship between Plaintiffs and Sherman Funeral.

75.	Defendants wrongfully sent unfounded, false and/or misleading correspondence to Sherman Funeral demanding that Sherman Funeral cease advertising and performing funeral services in connection with Nieberg Funeral and/or the Mark.

76. Defendants' conduct prevented Plaintiffs from performing pursuant to the Oral Contract and has frustrated Plaintiffs' ability to receive the benefits therefrom.

77. Plaintiffs suffered harm and damages resulting from Defendants' intentional and wrongful interference with Plaintiffs' contractual relationship with Sherman Funeral.

78. Defendants are without privilege to justify Defendants' interference with Plaintiffs' contractual relationship with Sherman Funeral.

79. As a direct and proximate result of this interference by Defendants, Plaintiffs have suffered substantial injury to Plaintiffs' business operations, goodwill, revenue and profits.

80. As a direct and proximate result of Defendants' acts, Plaintiffs have been and will continue to be damaged in an amount not yet fully ascertained, but which will be subject to proof at trial.

81. The acts of Defendants as alleged herein and the ongoing direct results of those acts have caused and will continue to cause great and irreparable injury to Plaintiffs in an amount that cannot be ascertained, leaving Plaintiffs with no adequate remedy at law.

82. Unless Defendants are preliminarily and permanently enjoined by this Court, Plaintiffs will continue to suffer irreparable harm.

83. By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendants to prevent Defendants from interfering further with Plaintiffs' contractual relationship with Sherman Funeral.

84. Defendants intentional interference with Plaintiffs' contractual relationship with Sherman Funeral alleged herein was willful, malicious and oppressive, and done with an intent to injure Plaintiffs and with full knowledge of the adverse effects such acts would have on Plaintiffs, or with a conscious disregard of Plaintiffs' rights and willful and deliberate disregard for the substantial economic consequences to Plaintiffs, such as to constitute oppression, fraud, or malice, thus entitling Plaintiffs to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants, and to deter such conduct in the future, the exact amount subject to proof at trial.

## FIFTH CLAIM FOR RELIEF

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (AGAINST ALL DEFENDANTS)

85. Plaintiffs reallege and incorporate by reference every allegation set forth in Paragraphs 1 through 84 as if fully set forth herein.

86. During all times relevant herein, Plaintiffs held prospective contractual relationships with funeral services customers based on Harry's reputation in the funeral industry and contacts in the community.

87. During all times relevant herein, Defendants knew and/or were aware that Plaintiffs held prospective contractual relationships funeral services clients based on Harry's reputation in the funeral industry and contacts in the community.

88. Defendants wrongfully sent correspondence dated October 2, 2007 to Plaintiffs and Sherman Funeral and correspondence dated October 16, 2007 to Sherman Funeral knowingly making unfounded, false and/or misleading claims to the Mark and threatening unwarranted litigation if Plaintiffs or Sherman Funeral continued to conduct funeral services in connection with Nieberg Funeral and/or the Mark.

89. Defendants intended to harm Plaintiffs by wrongfully preventing Plaintiffs from contracting with funeral service customers.

90. As a direct and proximate result of this interference by Defendants, Sherman Funeral has refused to conduct funeral services attributable to Plaintiffs at Sherman Funeral's facilities and Plaintiffs are, therefore, not able to enter into contracts with funeral services customers.

91. Defendants are without privilege to justify Defendants' wrongful interference with Plaintiffs' prospective economic advantage with respect to funeral services customers.

92. As a direct and proximate result of this interference by Defendants, Plaintiffs have suffered substantial injury to Plaintiffs' business operations, goodwill, revenue and profits.

93. As a direct and proximate result of Defendants' acts, Plaintiffs have been and will continue to be damaged in an amount not yet fully ascertained, but which will be subject to proof at trial.

94. The acts of Defendants as alleged herein and the ongoing direct results of those acts have caused and will continue to cause great and irreparable injury to Plaintiffs in an amount that cannot be ascertained, leaving Plaintiffs with no adequate remedy at law.

95. Unless Defendants are preliminarily and permanently enjoined by this Court, Plaintiffs will continue to suffer irreparable harm.

96. By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendants to prevent Defendants from interfering further with Plaintiffs' business relationships with Plaintiffs' funeral services customers.

97. Defendants intentional interference with Plaintiffs' prospective economic relationship with funeral services clients alleged herein was willful, malicious and oppressive, and done with an intent to injure Plaintiffs and with full knowledge of the adverse effects such acts would have on Plaintiffs, or with a conscious disregard of Plaintiffs' rights and willful and deliberate disregard for the substantial economic consequences to Plaintiffs, such as to constitute oppression, fraud, or malice, thus entitling Plaintiffs to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants, and to deter such conduct in the future, the exact amount subject to proof at trial.

## SIXTH CLAIM FOR RELIEF

### DECLARATORY RELIEF

### (AGAINST MIDWOOD CHAPEL)

98. Plaintiffs reallege and incorporate by reference every allegation set forth in Paragraphs 1 through 97 as if fully set forth herein.

99. There exists between Plaintiffs and Midwood Chapel a justiciable controversy regarding the ownership rights to the Mark; thus, Plaintiffs hereby request that this Court exercise its

jurisdiction under 28 U.S.C. §§ 2201 *et seq.* and 15 U.S.C. §1051 *et seq.* to adjudicate and declare Midwood Chapel's and Plaintiffs' respective rights.

100. Midwood Chapel's unfounded claim of ownership and attempt to federally register the service mark HARRY NIEBERG & SONS in the USPTO Application wrongfully interferes with Nieberg Funeral's right to lawfully use the Mark, based on Plaintiffs' prior use.

101. This Court is vested with jurisdiction under 28 U.S.C. §§ 2201 *et seq.* and 15 U.S.C. §1051 *et seq.* to determine the respective rights of Midwood Chapel and Plaintiffs to the Mark.

102. Plaintiffs and Midwood Chapel are parties with adverse interests.

103. The issues in this action are ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment as follows as to Plaintiffs' Claims for Relief:

1. That Defendants shall be preliminarily and thereafter permanently enjoined and restrained from claiming any ownership rights to the Mark;

2. That Defendants shall be preliminarily and thereafter permanently enjoined and restrained from seeking registration of the service mark HARRY NIEBERG & SONS;

3. That based on Harry Nieberg's prior use, Plaintiffs be allowed ownership of and use of the Mark;

4. That Defendants' use of HARRY NIEBERG & SONS constitutes service mark infringement and false designation of origin;

5. That Defendants, Defendants' servants, employees, attorneys, agents, representatives, and distributors, and all other persons acting in concert or participation with Defendants shall be preliminarily and thereafter permanently enjoined and restrained from:

4839-9792-5634.1

      i.    Misrepresenting in any way the source of origin or the nature or quality of Defendants' services; and

      ii.    Advertising and/or otherwise marketing or disposing of Defendants' services under the name HARRY NIEBERG and/or any similar variation thereof;

6.    That Defendants shall be required to destroy and dispose of all of Defendants' materials bearing the Mark and/or any similar variation thereof, including without limitation, advertising materials, promotional materials, drawings, brochures, catalogs, stationery, business forms, business cards, labels, signs and stickers;

7.    That Defendants shall be required to file with this Court and serve upon Plaintiffs, within 30 days of being served with this Court's injunction issued in this action, a written report signed by Defendants under oath, setting forth in detail the manner in which Defendants complied with the Court's injunction;

8.    That Defendants shall be preliminarily and thereafter permanently enjoined from further conduct that infringes the Mark;

9.    That Defendants be enjoined from further interference with Plaintiffs' existing business relationships;

10.    That Defendants be enjoined from further interference with Plaintiffs' prospective business relationships;

11.    That Plaintiffs recover the damages sustained as a result of the Defendants' actions as alleged herein pursuant to New York law;

12.    That Plaintiffs be awarded punitive and exemplary damages under applicable law for the Defendants' unlawful willful and intentional acts as alleged herein;

13.    That Plaintiffs recover the costs of this action;

14.    That Plaintiffs recover Plaintiffs' attorneys' fees; and

15.    That Plaintiffs be granted such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial pursuant to Fed.R.Civ.P. 38.

Dated this 16TH day of January, 2008.

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
Joseph F. Uvino, Esq.
199 Water Street, 25th Floor
New York, New York 10038
(212) 232-13001
*Attorneys for Plaintiffs Harry Nieberg and*
*Harry Nieberg Funeral Home Inc.*

TO:

Nieberg Midwood Chapel, Inc.
1625 Coney Island Avenue
Brooklyn, New York 11230

Midwood Memorial Chapel Inc.
1625 Coney Island Avenue
Brooklyn, New York 11230