UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRY NIEBERG, an individual, and HARRY NIEBERG FUNERAL HOME INC., a New York corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NIEBERG MIDWOOD CHAPEL INC., a New York Corporation; MIDWOOD MEMORIAL CHAPEL INC., a New York corporation,<br><br>Defendants. | Case No. : 08 CV 00392<br><br><br>**PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' THIRD AND FOURTH CAUSES OF ACTION**<br><br><br>**(ELECTRONICALLY FILED)** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs, HARRY NIEBERG ("Harry"), and HARRY NIEBERG FUNERAL HOME INC. ("Nieberg Funeral"), by and through their attorneys of the law firm of Lewis Brisbois Bisgaard & Smith LLP, hereby submits this Motion to Dismiss. This Motion to Dismiss is supported by the attached Memorandum of Points and Authorities and attached exhibits, the pleadings and all papers and materials filed in this matter, and any oral argument that may be presented at the hearing on this matter and any other matter of which the Court may take notice.

DATED this 24th day of March, 2008.

LEWIS BRISBOIS BISGAARD & SMITH LLP

/s/ **Joseph F. Uvino**
Joseph F. Uvino, Esq. (JU-9152)
199 Water Street, 25th Floor
New York, New York 10038
(212) 232-13001
*Attorneys for Plaintiffs Harry Nieberg and Harry Nieberg Funeral Home Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  <u>INTRODUCTION</u>

Defendants' third and fourth causes of action, as set forth in Defendants' Counterclaim against Plaintiffs, must be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) because neither of these causes of action are causes of action upon which relief can be granted.  FRCP 12(b)(6) authorizes dismissal for failure to state a claim upon which relief can be granted, when the plaintiff has not pled enough facts to state a factually plausible claim for relief.  With respect to Defendants' third and fourth causes of action, this certainly is the case.

Defendants can present no set of facts that would state a claim for relief with respect to Defendants' third cause of action for implied breach of covenant against competition and/or use of the names "Harry Nieberg" or "Nieberg" because an express contract exists that makes it clear that there is no agreement to a restrictive covenant against competition.  Harry and his two brothers Stanley and Peter entered into a Stipulation of Settlement and Order (the "Stipulation"), resolving a dissolution dispute without requiring the dissolution of Defendants Midwood Chapel and Midwood Memorial.[1]  This Stipulation makes clear that the signing parties expressly intended not to be bound by a restrictive covenant against competition.  The Stipulation further contains an integration clause stating that the Stipulation represents the full agreement between the parties with respect to the dissolution dispute.   Therefore, Defendants can present no set of facts to indicate that relief may be granted pursuant to Defendants' cause of action for breach of an implied covenant against competition and, as such, this cause of action must be dismissed.

Similarly, Defendants' fourth cause of action entitled "Action for Damages" must be dismissed because it too fails to state a claim for which relief may be granted.  Plaintiffs have

---

[1] Plaintiffs are not introducing extrinsic evidence to the pleadings for purposes of this Motion to Dismiss because Defendants reference, and thereby incorporate, the Stipulation in Defendants' Counterclaim and because the Stipulation is integral to Defendants' claim in that it represents that bargained-for resolution from which Defendants claim the implied covenant against competition is derived.

found no authority supporting the premise that an "Action for Damages" is actionable as a separate and distinct cause of action. Furthermore, even if an "Action for Damages" is a valid cause of action, because Defendants have claimed damages associated with Defendants' other asserted causes of action, the fourth cause of action is duplicative. Therefore, dismissal pursuant to FRCP 12(b)(6) is appropriate.

## II. <u>PERTINENT FACTS AS ALLEGED IN DEFENDANTS' COUNTERCLAIM</u>

At least as late as March 1997, Harry and his brothers Peter J. Nieberg ("Peter") and Stanley J. Nieberg ("Stanley") each became one-third shareholders of Midwood Chapel and Midwood Memorial. *See* Defendants' Answer and Counterclaims Against Plaintiffs And Additional Counterclaim Defendant (Document No. 6) ("Defendants' Counterclaim") at Paragraph 36. Harry filed for dissolution of Midwood Chapel and Midwood Memorial. Defendants' Counterclaim at Paragraph 46.

Harry and Defendants entered into a Stipulation of Settlement and Order (the "Stipulation"), resolving the dissolution dispute without requiring the dissolution of Midwood Chapel and Midwood Memorial. *See* Defendants' Counterclaim at Paragraph 55 referencing the "bargained for resolution"; *see also* Stipulation without exhibits attached hereto as Exhibit 1. Defendants contend that Harry impliedly covenanted not to compete with defendants in the area of funeral services and impliedly covenanted not to use the names NIEBERG or HARRY NIEBERG or any other name confusingly similar to that of defendants' names. *See* Defendants' Counterclaim at Paragraph 56. Defendants fail however, to raise any facts evidencing any such implied restrictive covenant. Furthermore, Harry was unwilling to give up the use of his name in the funeral business, or otherwise, without proper compensation for such a restrictive covenant. *See* e-mail correspondence from Scott Mandelup to Ronald J. Offenkrantz dated April 6, 2006 attached as Exhibit 2.

The Stipulation referenced by Defendants in Defendants' Counterclaim does not contain any restrictive covenant against competition as executed by the parties and entered by the Court. *See* Stipulation. Furthermore, the Stipulation does not contain any provision which in any

manner prohibits Harry from soliciting, engaging, contacting, and/or communicating in any

manner with clients or customers of Defendants whether those clients or customers pre-existed

the Stipulation or not. *See* Stipulation. The Stipulation does, however, contain an integration

clause at Paragraph 24 that states:

> This Stipulation and the Exhibits hereto contain the entire
> agreement between the parties hereto with respect to the matters
> contained in this Stipulation. This Stipulation supercedes [*sic*] all
> prior written and oral agreements and any prior representation,
> statement, condition or warranty. No variation, modification or
> change herein or any waiver of any provision hereof shall be
> binding unless set forth in a document duly executed by or on
> behalf of each of the parties hereto.

In the instant matter, Defendants have filed counterclaims against Plaintiffs in

conjunction with Plaintiffs' use of HARRY NIEBERG (the "Mark") and HARRY NIEBERG

FUNERAL HOME INC. (the "Trade Name"), asserting five different causes of action. Plaintiffs

file the instant Motion to Dismiss seeking dismissal of Defendants' third cause of action, for

breach of implied covenant against competition and/or use of the names "Harry Nieberg" or

"Nieberg," and fourth cause of action, an "Action for Damages," pursuant to FRCP 12(b)(6).

## III. ARGUMENT

### A.    Standard for Motion to Dismiss.

To dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim upon which relief can be granted, a court must: accept plaintiff's allegations at face

value; construe the allegations in the complaint in plaintiff's favor; and must dismiss the

complaint only if the plaintiff has not plead enough facts to state a claim for relief that is

plausible on its face. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929

(2007); *Rapf v. Suffolk County of New York*, 755 F.2d 282, 290 (2d Cir. 1985) (citations

omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do. Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Antongorgi v. Bovena*, 2007 U.S. Dist. LEXIS 53571 (S.D.N.Y. 2007) *citing* Bell Atlantic Corp., 127 S. Ct. at 1964-65 (citations omitted). This requires a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Antongorgi v. Bovena*, 2007 U.S. Dist. LEXIS 53571 (S.D.N.Y. 2007), *citing Iqbal v. Hasty*, 490 F.3d 143, 2007 U.S. App. LEXIS 13911, 2007 WL 1717803, at 11 (2d Cir. June 14, 2007) (emphasis in original).

In the instant case, as described below, Defendants have failed to plead enough plausible facts to maintain Defendants' third cause of action for breach of implied covenant against competition and/or use of the names "Harry Nieberg" or "Nieberg" and Defendants' fourth cause of action, the "Action for Damages" for unfair competition. Therefore, Defendants' third and fourth causes of action must be dismissed pursuant to Rule 12(b)(6).

**B.      Dismissal of Defendants' Third Cause of Action for Breach of Implied Covenant Against Competition Is Appropriate Because Defendants Fail to State a Claim Upon Which Relief May Be Granted.**

Defendants' own allegations in Defendants' Counterclaim vitiate Defendants' claim for breach of implied covenant against competition because Defendants plead that an express contract regarding the same subject matter exists. The Stipulation actually contains no restrictive covenant. As such, Defendants' third cause of action for breach of implied covenant against competition and/or use of the name "Harry Nieberg" or "Nieberg," must be dismissed because Defendants have failed to plead plausible facts to maintain the action.

This Court must examine the Stipulation, as referenced by Defendants in Defendants' Counterclaim, in ruling on this motion to dismiss. For the purposes of deciding a FRCP 12(b)(6) motion to dismiss, the complaint/counterclaim "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (internal citations and quotations omitted). Furthermore, where a claimant has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint/counterclaim, the necessity of translating a FRCP 12(b)(6) motion into one under FRCP 56 is largely dissipated. *Id.*; *Chambers* at 153 (internal citations and quotations omitted).

> Defendants claim that Harry "sold all of his shares in defendants, caused the early termination of the HARRY NIEBERG & SONS INC. Pension Plan of which he was a Trustee, and received all sums due him under said Plan *as part of a bargained for [sic] resolution of the dispute* with PETER and STANLEY and the dissolution proceedings by HARRY NIEBERG."

*See* Defendants' Counterclaim at Paragraph 55 (emphasis supplied). The "bargained-for resolution" in this case was the Stipulation. Accordingly, this Court must consider the Stipulation, even though not attached to Defendants' Counterclaim, as the Stipulation is: (1) referenced and thereby incorporated in Defendants' Counterclaim; and (2) clearly integral to Defendants' Counterclaim because it constitutes the only bargained-for exchange as referenced by Defendants. Furthermore, Defendants have claimed that an implied covenant not to compete existed between the parties; therefore, communication between the parties regarding any such agreement, of which communication Defendants would have full knowledge, should also be considered by this Court in ruling on this Motion to Dismiss.

As an express contract, the Stipulation is controlling over any alleged implied covenant against competition. Where an express contract exists that covers the same subject matter of an alleged implied-in-fact contract, the implied-in-fact contract is precluded as a matter of law. *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 71 (S.D.N.Y. 1988); *Julien J. Studley, Inc. v. New York York News, Inc.*, 70 N.Y.2d 628, 518 N.Y.S.2d 779, 780, 512 N.E.2d 300 (1987) (finding that a contract cannot be implied in fact where there is an express agreement dealing with the same subject matter); *Miller v. Schloss*, 218 N.Y. 400, 406-09, 113 N.E. 337 (1916); *Hohenberg Co. v. Iwai New York, Inc.*, 6 A.D.2d 575, 180 N.Y.S.2d 410 (1st Dep't

1958). The logic is obvious: "If the parties have an express contract that deals with a subject, it makes little sense to conclude that they in fact agreed to additional terms but simply decided to leave them out of the express contract." *Radio Today* at 71. Indeed, the integration clause in the Stipulation in this case bears out that logic.

The Stipulation contains no restrictive covenant against competition. Furthermore, the Stipulation contains a integration clause at Paragraph 24 that states:

> This Stipulation and the Exhibits hereto contain the entire agreement between the parties hereto with respect to the matters contained in this Stipulation. This Stipulation supercedes [sic] all prior written and oral agreements and any prior representation, statement, condition or warranty. No variation, modification or change herein or any waiver of any provision hereof shall be binding unless set forth in a document duly executed by or on behalf of each of the parties hereto.

This integration clause makes it clear that the Stipulation, as signed constituted the full agreement between the parties. Again, the Stipulation contains no restrictive covenant against competition, nor has any modification or change been executed by each of the parties that evidences any such restrictive covenant. Allowing Defendants to now argue that an implied contract existed that is contrary to the bargained-for express contract is not only contrary to the express integration clause of the Stipulation but also contrary to the above-cited case authority. As such, Defendants should be precluded from arguing that an implied covenant against competition existed.

Furthermore, the only context in which parol evidence should be examined is to interpret the Stipulation if the Stipulation was ambiguous, *not to prove that an implied contract existed.* "If a contract is unambiguous on its face, the parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable." *Waldman v. Riedinger*, 423 F.3d 145, 149 (2d Cir. 2005); *County of Suffolk v. Alcorn*, 266 F.3d 131, 138 (2d Cir. 2001) (applying New York law). While Plaintiff is in no way prepared to stipulate as to the ambiguity of the Stipulation, Defendants have opened the door to

the premise that the Stipulation is ambiguous by claiming an implied agreement against competition.

Defendants have, in essence, claimed the Stipulation is ambiguous, therefore, extrinsic evidence may be examined by the Court; however, it may only be examined to interpret the provisions of the Stipulation, *not to prove that an implied contract existed*. Even if this Court were to examine extrinsic evidence to interpret the Stipulation, it is still clear that Harry did not agree to a non-competition clause, nor did Harry agree that he would not use his name in conjunction with the offering of funeral services. Specifically, in correspondence from A. Scott Mandelup, Esq. to Ronald J. Offenkrantz, Esq., Mr. Mandelup stated on behalf of Harry that, "[a]bsent the duration of an agreed upon and compensated restrictive covenant, Harry has no intention of giving up the right to use his name in the funeral home business, or otherwise." *See* e-mail correspondence from Scott Mandelup to Ronald J. Offenkrantz dated April 6, 2006 attached as Exhibit 2 . Although the parties discussed a restrictive covenant, the parties did not agree on such, and so no restrictive covenant was incorporated into the governing Stipulation. Defendants, therefore, have failed to allege, and cannot present, a plausible set of facts that would allow Defendants to maintain Defendants' third cause of action for breach of implied covenant against competition and/or use of the name "Harry Nieberg" or "Nieberg," and as a result, Defendants' third cause of action must be dismissed.

### C.    Dismissal of Defendants' Fourth Cause of Action for Damages Is Appropriate Because A Distinct and Separate Action for Damages Does Not Exist and Because the Claim is Duplicative.

Defendants' fourth cause of action entitled "Action For Damages" must be dismissed because an "Action for Damages" is not sustainable as a separate cause of action. Instead, an "action for damages" must be grounded in an actionable theory of liability. There is no authority indicating that a cause of action for "damages" may be pled as a separate and distinct cause of action with no link to a theory of liability. It is axiomatic that damages claimed must be associated with liability on an actionable claim. As such, Defendants' "Action for Damages",

pled as a separate cause of action with no underlying theory of liability, must be dismissed

pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.

Furthermore, a Motion to Dismiss pursuant to FRCP 12(b)(6) is appropriate to weed out

duplicative claims. *See Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 565

(S.D.N.Y. 2004); *see also Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*, 2004 U.S.

Dist. LEXIS 17406 (S.D.N.Y. 2004)(claim of fraud based solely on the breach of an alleged

promise to perform future acts is redundant and not allowable). In this case, Defendants have

claimed that Defendants have suffered damages in connection with each of the other claims

asserted by Defendants in their Counterclaim. As such, a separate cause of action for damages,

if actionable at all, is redundant and must therefore be dismissed.

## IV. CONCLUSION

As set forth above, Defendants' third and fourth causes of action as asserted in

Defendants' Counterclaim against Plaintiffs fail to state a claim upon which relief can be

granted. As such, Plaintiffs request that this Court grant this Motion to Dismiss Defendants'

Third and Fourth Causes of Action.

Dated: March 24, 2008.
City, State: New York, New York

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By    /s/**Joseph F. Uvino**
Joseph F. Uvino, Esq. (JU-9152)
199 Water Street, 25th Floor
New York, New York 10038
(212) 232-13001
*Attorneys for Plaintiffs Harry Nieberg and*
*Harry Nieberg Funeral Home Inc.*

TO:

Ronald J. Offenkrantz, Esq.
LICHTER GLIEDMAN OFFENKRANTZ PC
551 Fifth Avenue
New York, NY 10176
(212) 867-7750
Attorneys for Defendants and Counterclaim Plaintiffs

Michael H. Smith, Esq.
ROSENBERG FELDMAN SMITH, LLP
551 Fifth Avenue
New York, NY 10176
(212) 682-3454
Attorneys for Defendants and Counterclaim Plaintiffs (Trial Counsel)

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to Fed.R.Civ.P. 5(b), I certify that I am an employee of LEWIS BRISBOIS

BISGAARD & SMITH LLP and that on this 24th day of March, 2008, I did cause a true copy of

the **PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' THIRD AND FOURTH**

**CAUSES OF ACTION** to be served via CM/ECF on:

        Ronald J. Offenkrantz, Esq.
        LICHTER GLIEDMAN OFFENKRANTZ PC
        551 Fifth Avenue
        New York, NY 10176
        (212) 867-7750
        Attorneys for Defendants and Counterclaim Plaintiffs

        Michael H. Smith, Esq.
        ROSENBERG FELDMAN SMITH, LLP
        551 Fifth Avenue
        New York, NY 10176
        (212) 682-3454
        Attorneys for Defendants and Counterclaim Plaintiffs (Trial Counsel)

        By   /s/ Raisha Gibson
              An Employee of
              LEWIS BRISBOIS BISGAARD & SMITH LLP

# EXHIBIT "1"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------X

Application of HARRY NIEBERG,

                                Petitioner,

For the Judicial Dissolution of Nieberg Midwood
Chapel Inc. and Midwood Memorial Chapel, Inc.,

                                Respondents.

------------------------------------------------------------------X

Index No.: 04-25241

IAS Part 32

**STIPULATION OF SETTLEMENT AND ORDER,** made as of August 4,

2006, between Petitioner, Harry Nieberg (**"Harry"**) and Respondents, Nieberg Midwood Chapel

Inc. (**"Nieberg"**) and Midwood Memorial Chapel, Inc. (**"Midwood"**), and Midwood Memorials,

Inc. (**"Memorials"**), Stanley Nieberg (**"Stanley"**), Peter Nieberg (**"Peter"**); (collectively,

Nieberg, Midwood, Memorials, Stanley, and Peter being **"Purchasers"**) and Pryor & Mandelup,

L.L.P. (**"P&M"**) as escrow agent (the **"Escrow Agent"**).

       **WHEREAS,** Nieberg is a corporation duly organized and existing under the laws

of the State of New York, with its principal place of business at 1625 Coney Island Avenue,

Brooklyn, New York, 11230, designated on the Kings County Tax Map as Section 20, Block

6731, Lot 56 (the **"Premises"**) and

       **WHEREAS,** Nieberg operates a funeral home at the Premises; and

       **WHEREAS,** Nieberg is the owner of the fee interest in the real property located

at 1122 Chestnut Avenue, Brooklyn, New York 11230, which is used as a parking lot by Nieberg

and Midwood (collectively, the **"Corporations"**), and which is designated on the Kings County

Tax Map as Section 20, Block 6740, Lot 11 (the **"Parking Lot"**); and

       **WHEREAS,** Midwood is a corporation duly organized and existing under the

laws of the State of New York, with its principal place of business at the Premises; and

1

**WHEREAS**, Midwood is the owner of the fee interest in the Premises; and

**WHEREAS**, the Corporations own grave sites at Beth-El Cemetery, located in Paramus, New Jersey ("**Beth-El Cemetery**"); and

**WHEREAS**, Harry, Stanley, and Peter each are one-third shareholders of each of the Corporations;

**WHEREAS**, Memorials is a corporation duly organized and existing under the laws of the State of New York, engaged in the sale of headstones and monuments for grave sites; and

**WHEREAS**, Midwood is the sole shareholder of Memorials and Stanley and Peter are its officers and directors; and

**WHEREAS**, on August 11, 2004, Harry filed a petition in the above-captioned proceeding seeking the judicial dissolution of the Corporations (the "**Petition**"), pursuant to New York Business Corporation Law ("**BCL**") § 1104-a (a)(1) and (2); and

**WHEREAS**, Peter, Stanley, Nieberg and Midwood duly elected to purchase the Harry Shares of each of the Corporations pursuant to BCL § 1118(a) and (b), and

**WHEREAS**, on or about February 9, 2006, Harry filed and served an Amended Petition for judicial dissolution of the Corporations, dated February 3, 2006 (the "**Amended Petition**") adding a cause of action for a constructive trust over the Premises and the Parking Lot; and

**WHEREAS**, a Stipulation and Order dated November 3, 2004 was heretofore entered into by Purchasers and Harry, and so ordered by the court (the "**Court**") in the above-action (the "**Standstill Agreement**"); and

**WHEREAS**, Harry caused to be filed, on or about February 9, 2006, in the Office of the Clerk of Kings County a Notice of Pendency (the **"Notice of Pendency"**) against the Premises and the Parking Lot; and

**WHEREAS**, Nieberg maintains a tax qualified defined benefit pension plan entitled "The Harry Nieberg & Sons, Inc. Defined Benefit Pension Plan" (the **"Pension Plan"**); and

**WHEREAS**, the Pension Plan is the holder and/or beneficial owner of Account No. 840-05654 at Merrill Lynch (**"Merrill"**) under the name "Peter Nieberg, TTEE Nieberg Midwood Chapel U/A 12/31/74" (the **"Merrill Account"**) and Account No. 34-5051268-0 at Emigrant Savings Bank (**"Emigrant"**) under the name "Nieberg Midwood Chapel Inc. Pension Plan" (the **"Emigrant Account"**) ; and

**WHEREAS**, the beneficiaries of the Pension Plan consist of: (i) Harry, Stanley, and Peter (the **"Key Employees"**) and B. Sabo, A. Hartman, I. Teplitsky, P. Kotropolous and M. Havlena (the **"Non-Key Employees"**); and

**WHEREAS**, as of May 31, 2006 there was a balance of $11,079.59 in the Emigrant Account and as of June 30, 2006 there was a balance of $425,198.37 in the Merrill Account (the Merrill Account and the Emigrant Account, together with any other accounts held in the name of the Pension Plan hereafter are referred to collectively as the **"Pension Accounts"**); and

**WHEREAS**, the Corporations, Stanley, and Peter each hereby represent and warrant that there are not now and, to their respective knowledge, have not been any other accounts in which Pension Plan funds have been deposited except Wachovia Account No. OKK966955-18, the proceeds of which were transferred to the Merrill Account; and

**WHEREAS**, the Corporations, Stanley, and Peter hereby represent and warrant that there is presently an outstanding loan made from the Pension Plan to Peter, having a principal balance in the amount of $18,543 as of May 16, 2006 (the **"Peter Pension Loan"**) and that any other loans, payments, withdrawals or distributions to the Key Employees from the Pension Plan Accounts have been repaid in full; and

**WHEREAS**, the third-party administrator of the Pension Plan, PPC (the **"Third-Party Administrator"**) has advised the parties that the sum of $153,596.93 is expected to be needed to make full distributions to the Non-Key Employees upon termination of the Pension Plan, and  to make minimum required contributions to the Pension Plan, the sum of $90,000.00 must be contributed by the Corporations for 2005 and 2006, and after the payment in full of distributions to the Non-Key Employees, the balance remaining in the Pension Plan accounts may be distributed *pro-rata* to the Key Employees in relation to their vested interests in the Pension Plan which are as follows: (i) Harry - 49 %; (ii) Stanley - 36 %; and (iii) Peter - 15 %; and

**WHEREAS**, the Pension Plan owns policies of cash surrender value life insurance on each Key Employee (the **"Key Employee Life Insurance"**), including the following policies insuring Harry's life: Policy No. 44-928-760 with a cash surrender value of $101,673.71, Policy No. 45-274-942 with a cash surrender value of $30,706.00, and Policy No. 46-203-848 with a cash surrender value of $3,072.30, and the Corporations, Stanley and Peter represent there are no outstanding premiums or other charges due on the Key Employee Life Insurance; and

**WHEREAS**, the parties have agreed to settle the above-captioned proceeding and all disputes between them on the following terms and conditions;

I:\CLIENT FILES\Nicberg\StlmtStip 08-07-06.wpd

4

**NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES, COVENANTS, AND AGREEMENTS CONTAINED HEREIN, IT IS HEREBY STIPULATED AND AGREED, AS FOLLOWS:**

1.      **Whereas Clauses.**  The foregoing paragraphs hereby are incorporated herein as part of this Stipulation.

2.      **Effective Date.**  This Stipulation shall become effective (the **"Effective Date"**) upon the Court "so ordering" this Stipulation.

3.      **Calculation of Purchase Price.**  On the Closing Date (as defined below), Purchasers agree to purchase all shares of stock in Nieberg and Midwood owned by Harry (collectively, the **"Harry Shares"**) for an aggregate purchase price of: (a) $2,500,000 less the balance then remaining in the escrow held by P&M pursuant to the Standstill Agreement (the **"P&M Standstill Escrow"**) into which Harry deposited $30,000 pursuant to court order, in which there remains, as of the date hereof, $297.37 (**"Cash Purchase Price"**) plus (b) causing the Corporations to deliver to Harry the deed (annexed as Exhibit A hereto) transferring to Harry title to the Harry Graves (as defined in Paragraph 4(B) herein).  Through and including the full performance of all obligations provided for in Paragraph 4 herein (the **"Closing"**) Harry shall be entitled to continue receiving salary, benefits, and expenses from the Corporations, and expense reimbursement payments from the P&M Standstill Escrow, pursuant to the terms of the Standstill Agreement.  Purchasers shall have the right to designate which of them is the purchaser of the Harry Shares, which shares may be purchased by different Purchasers.

4.      **Closing of Transactions.**  The Closing of all transactions hereunder (except as to the Pension Plan) shall occur no more than thirty (30) days after the Effective Date the (**"Closing Date"**) at the offices of counsel to Purchasers' lender (**"Lender"**) or as designated by Lender,  at 10:00 A.M. on such date.  If the Closing does not occur on or before the Closing Date, this

5

Stipulation (except for Paragraph 11) shall be null and void, unless the Closing Date is extended by mutual written agreement of the parties executed by their respective counsel on their behalfs on or before the Closing Date.    At Closing the following shall occur:

        A.    **Cash Purchase Price**.  The Purchasers shall pay the Cash Purchase Price by wire transfer to P&M, as attorney for Harry, or by delivery to P&M prior to Closing or by delivery to Harry at the Closing of an official bank check, payable to "Harry Nieberg" in the amount of the Cash Purchase Price, without set-off, counterclaim or withholding of any kind whatsoever.

        B.    **Delivery of Grave Sites**.  The Corporations shall cause to be delivered to Harry a cemetery deed (in the form annexed hereto as Exhibit A) duly executed by both Peter and Stanley, as officers of the Corporations, transferring to Harry all right, title, and interest in and to the eight (8) grave sites at Beth-El Cemetery listed on Exhibit B hereto which graves shall be for the personal use of Harry and his Family (collectively, the **"Harry Graves"**) and the Corporations shall deliver to Harry a check payable to Beth-El Cemetery in the amount of $800.00.  Purchasers make no representation as to whether the cemetery will recognize and/or record such deed.  Harry and Purchasers agree to execute such additional documents as may be necessary in connection with delivery of title to the Harry Graves to Harry.  The Corporations, Stanley, and Peter hereby represent and warrant that, at the time of Closing, the Harry Graves shall not be subject to any lien, claim, encumbrance or interest whatsoever and all required payments to the requisite maintenance and preservation fund(s) for all of the Harry Graves due through Closing shall have been paid in full when delivered to Harry.  The Corporations, Stanley, and Peter jointly agree to refrain from taking any action to limit or restrict Harry's right to use the

Harry Graves for himself or his family or to allow any lien or transfer of the Harry Graves except such liens as are caused by Harry failing to comply with any payment or other obligation regarding the Harry Graves arising after Closing. Harry agrees to pay any expenses and fees relating to the Harry Graves and to perform all obligations regarding them from and after Closing.

C. **Transfer of the Harry Shares**. Harry shall execute and deliver to the Corporations lost certificate affidavits for the Harry Shares together with stock powers therefor (all in the forms annexed hereto as Exhibit C). Harry represents that there are not now, and will not be, as of the Closing, any liens, claims or encumbrances against the Harry Shares. The Purchasers shall be responsible, jointly and severally, for all transfer taxes and other expenses (excluding income taxes) arising from the transfer of the Harry Shares.

D. **LGO Escrow**. The escrow of $350,000 with LGO ("LGO Escrow") shall be released to or as directed by the Corporations.

E. **Company Automobile**. Harry shall deliver to the Corporations the vehicle leased by the Corporations for Harry's use, in current condition.

F. **2005 Forms K-1 and W-2**. Midwood shall duly issue and deliver to Harry Form K-1 and Nieberg shall deliver a Form W-2 for the tax year 2005.

G. **Stipulation Vacating Notice of Pendency**. Harry shall deliver a duly executed Cancellation of Notice of Pendency in the form required by the Corporations' title insurer.

H. **Discontinuance of Action**. Harry shall deliver to LGO a duly executed Stipulation- of Discontinuance of this action, with prejudice, in the form annexed hereto as Exhibit D for immediate filing by LGO with the Court.

I. **P&M Standstill Escrow**. The P&M Standstill Escrow shall be released by P&M to Harry.

7

J.    **Paige/Gertrude Releases.**    The Corporations, Stanley and Peter shall cause Jaime Paige LLC (**"Paige"**) and Gertrude Nieberg (**"Gertrude"**) to deliver general releases to Harry substantially the same as the releases set forth in Paragraph 4(M) below together with a representation letter from Paige as to due organization, good standing and authority and from Paige and Gertrude as to enforceability and representation by counsel.

K.    **Pension Judgment Escrow.**    The Purchasers shall deliver to Escrow Agent, to be held in escrow (the **"Pension Judgment Escrow"**), duly executed Affidavits of Confession of Judgment, in the forms annexed hereto as Exhibit E, consenting to entry of judgment in favor of Harry and against Purchasers, jointly and severally, in the amount of $291,160.78, the approximate amount of the anticipated distribution to Harry from the Pension Plan and Pension Accounts (the **"Pension Judgment"**).

L.    **Release to Purchasers and Others**    In consideration of the covenants contained in this Stipulation, and upon the full performance of the foregoing obligations of the Purchasers at the Closing, Harry (**"Releasor"**) shall be deemed to have released the Purchasers, Paige, and Gertrude, and their respective shareholders, members, and directors (**"Releasees"**), Releasee's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the Releasees, the Releasor, Releasor's successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Stipulation, except for

the obligations created, continued or affirmed under this Stipulation and the exhibits annexed hereto.

**M.**    **Release to Harry.**   In consideration of the covenants contained in this Stipulation, and in consideration of the sum of ten (10) dollars ($10.00), and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, Purchasers each shall be deemed to have released Harry (**"Releasee"**), Releasee's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the Releasee, the Purchasers, Purchasers' successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Stipulation, except for the obligations created, continued or affirmed by this Stipulation.

**N.**    **Standstill Agreement Payments to Harry.**   The Corporations shall pay to Harry the balance of all salary, benefits, and expenses due, as of the Closing, to Harry under the Standstill Agreement.

**O.**    **Consulting Fee.**   The Corporations shall pay to Harry a consulting fee in the amount of $110,000 in consideration of services rendered by Harry to the Corporations prior to the Closing Date.

---

Notwithstanding anything to the contrary contained anywhere herein, the performance of any obligations of Harry under this Paragraph 4 and the effectiveness of the release provided for in sub-paragraph L of this Paragraph 4 shall be expressly conditioned on the full performance at the

9

Closing of all of Purchasers' obligations under this Paragraph 4 and upon all the warranties and representations made by Purchasers herein in this Paragraph 4 being truthful and accurate at the time of Closing. Notwithstanding anything to the contrary contained anywhere herein, the performance of any obligations of Purchasers under this Paragraph 4 and the effectiveness of the release provided for in sub-paragraph M of this Paragraph 4 shall be expressly conditioned on the full performance at the Closing of all of Harry's obligations under this Paragraph 4.

5.    **Pension Plan.**

A.    Upon the Effective Date of this Stipulation, the Corporations, Stanley and Peter shall direct the Third-Party Administrator, in writing, with a copy to Harry, to take all action necessary to terminate the Pension Plan at the earliest possible date. Within ten (10) days after the later of (x) the Effective Date, or (y) the date the amount thereof has been determined by the Third-Party Administrator (but no later than the Closing Date), Nieberg shall make the minimum contributions to the Pension Plan required by the Plan and all applicable laws, rules, and regulations for the years 2005 and 2006 (the **"Required Contributions"**) and shall give notice to Harry that the Required Contributions have been made. Prior to termination of the Pension Plan, Purchasers shall cause Nieberg to obtain from each Non-Key Employee for whom the Pension Plan owns a policy of life insurance either: (i) a duly executed surrender of such policies, the cash surrender value of which shall be deposited into the Pension Accounts, or (ii) payment in full of the amount of such cash surrender value which shall be deposited into the Pension Accounts, and within ten (10) days after any such deposit, Purchasers shall give notice to Harry that such deposit has been made with the date, the amount of the deposit, the account into which the deposit was made, and the employee for whom the deposit was made. The cash

I:\CLIENT FILES\Nieberg\StIntStip 08-07-06.wpd

surrender value of all Non-Key Employee policies will be included in the calculation of the value of the assets of the Pension Plan for all purposes hereunder. The Trustees under the Pension Plan will collect and deposit in the Pension Plan Accounts any outstanding loan balances on any policy of Non-Key Employee Life Insurance prior to the termination of the Pension Plan and within ten (10) days after each such deposit, the Trustees under the Pension Plan shall give notice to Harry that such deposit has been made with the date, the amount of the deposit, the account into which the deposit was made, and the employee for whom the deposit was made. Upon termination of the Pension Plan: (i) each of the Non-Key Employees shall receive the full amount of their plan distributions as calculated by the Third-Party Administrator; (ii) the reasonable costs of termination of the Pension Plan (excluding any legal fees) shall be paid from the Pension Accounts; (iii) the balance of funds in the Pension Plan and the Pension Accounts shall be distributed *pro rata* to the Key Employees in relation to their vested interests in the Pension Plan, as set forth above. The Trustees under the Pension Plan shall give seven (7) days prior written notice to Harry of any payments to be made from the Pension Plan for the reasonable costs of termination, and of all distributions to be made from the Pension Accounts. No payments or distributions other than those set forth in such notice shall be made from the Pension Plan or the Pension Accounts without the prior express written consent of Harry, Stanley and Peter.

B.      Within ten (10) days after the Effective Date, the Trustees under the Pension Plan, will provide Harry with a written certification that there are no outstanding loans and no other payments have been made to Peter and/or Stanley other than the Peter Pension Loan which will be paid back at Closing.

C.      Until the Pension Plan has been terminated as provided in this Stipulation, Nieberg shall make available to Harry for inspection and copying at the Premises, all records of

11

the Pension Plan, including all banking records at reasonable times, upon twenty-four (24) hours prior written notice.

D.     Each Key Employee shall contemporaneously herewith give written notice to Nieberg, Harry, and the Third-Party Administrator that he has elected to purchase the policy or policies of Key Employee Life Insurance on such Key Employee's life from the Pension Plan for the cash surrender value of said policy or policies, except that Harry will give written notice to Nieberg, Stanley, and Peter that he elects not to purchase Policy No. 46-203-848 having a cash surrender value of $3,072.30. The cash surrender value of all Key Employee policies will be included in the calculation of the value of the assets of the Pension Plan for all purposes hereunder. Any outstanding loan balances on any policy of Key Employee Life Insurance shall be paid in full on or before the Closing and within ten (10) days after each such payment, the Trustees under the Pension Plan shall give notice to Harry that such payment has been made with the date, the amount of the payment, the account into which the payment was deposited, the name of the Key Employee, and policy of life insurance for which the payment was made. Each Key Employee hereby authorizes the Trustees under the Pension Plan, to surrender and receive the cash surrender value for deposit in the Pension Accounts of any Policy of Key Employee Life Insurance for which the cash surrender value is not paid in full to the Trustees under the Pension Plan, within ten (10) days before final distribution of the Pension Plan and Pension Accounts. Within ten (10) days after each such deposit, the Trustees under the Pension Plan shall give notice to Harry that such deposit has been made with the date, amount of the deposit, account into which it was deposited, and the name of the Key Employee and life insurance policy for which the deposit was made.

I:\CLIENT FILES\Nieberg\StlmtStip 08-07-06.wpd

E.    Prior to termination of the Pension Plan and final distribution of the Pension Plan and Pension Accounts, the Trustees under the Pension Plan, shall pay from the Pension Account any premiums on any policy of Non-Key Employee Life Insurance and any policy of Key Employee Life Insurance which accrue from Closing until termination of the Pension Plan and final distribution of the Pension Plan and Pension Accounts.

F.    Effective immediately, Harry resigns as a trustee of the Pension Plan.

G.    Effective immediately, the Trustees under the Pension Plan, shall take all action necessary to liquidate and convert all assets of the Pension Plan into cash or money market accounts and to obtain, as soon as practicable, an Internal Revenue Service audit and Pension Benefit Guarantee Corporation clearance.  Within five (5) business days after said liquidation and conversion is complete, the Trustees under the Pension Plan, shall verify and confirm by written notice to Harry that all assets of the Pension Plan and Pension Accounts have been liquidated and converted into cash or money market accounts, together with: (i) the name and address of the institutions at which the accounts are maintained; (ii) the amount deposited into each such account; (iii) the title of each account; and (iv) the name to which each such account is titled.

6.    **Indemnity**.  Effective on Closing, the Purchasers each hereby agree, jointly and severally, to indemnify, hold harmless, and defend Harry and/or any member of Harry's immediate family (collectively, the **"Harry Defendants"** and individually, a **"Harry Defendant"**) against any and all costs, expenses, claims, liabilities, actions, proceedings, judgments, awards, liabilities, penalties, and all reasonable legal fees, arising from or in connection with: (i) the Pension Plan; (ii) any shortfall in contributions by Nieberg to the Pension Plan; (iii) management of the Pension Plan; (iv) termination of the Pension Plan; (v) any distributions, payments or withdrawals made from the Pension Accounts; (vi) any administrative

13

fees claimed by the Third-Party Administrator or any predecessor or successor thereto; (vii) the operation or activities of the Purchasers on and after July 15, 2004; and/or (viii) any claim by a debtor-in-possession, trustee, creditor's committee and/or creditor of any of the Purchasers, or any other person or entity claiming against, through or instead of any of the Purchasers, to avoid the transfer to or recover from any Harry Defendant, on any legal and/or equitable theory, the value of any portion of the Cash Purchase Price, the Harry Graves, or any other monies, benefits or consideration received by any Harry Defendant from the Purchasers, the Pension Plan, and/or the Pension Accounts, except, as to all of the above, for any claim arising out of the willful misconduct or affirmative gross negligence of Harry (collectively, the "**Indemnified Claims**" and individually, an "**Indemnified Claim**").  The Harry Defendants other than Harry are intended third party beneficiaries of this Paragraph 6 (and Harry is a direct beneficiary) and shall have independent rights to enforce this Paragraph 6 against Purchasers.  In the event that an Indemnified Claim is asserted against any Harry Defendant, such Harry Defendant shall have the right to retain counsel of his/her choice, at such reasonable cost, to defend against such Indemnified Claim and such reasonable cost of such defense shall be paid by Purchasers, timely and directly to such counsel.  Harry agrees to indemnify each of the above parties against any liability or obligation arising out of such affirmative gross negligence or willful misconduct. Harry agrees not to commence or cause or instigate any third-party to commence any federal bankruptcy case or state law insolvency proceeding against Purchasers, the Pension Plan and/or any other person or entity who pays any portion of the Cash Purchase Price, unless Purchasers default in the performance of their obligations under this Stipulation.

7.     **Release of Pension Judgment Escrow**.   After the tenth (10th) day after Escrow

Agent's receipt of notice from Harry to Escrow Agent, Purchasers, and the Third Party
Administrator that Harry has not received final distribution of his share of the Pension Plan and
Pension Accounts, and that a term or condition of Paragraph 5 herein has not been fully satisfied
by reason of any specified: (i) failure by Purchasers, the Trustees under the Pension Plan, and/or
the Third Party Administrator to perform some act reasonably required by them or otherwise as a
pre-condition to the prompt termination of the Pension Plan and/or the prompt final distribution
of the Pension Plan and/or the Pension Accounts and/or the prompt satisfaction of the terms and
conditions of Paragraph 5 herein and/or (ii) affirmative act delaying, interfering with, impeding,
and/or preventing the prompt termination of the Pension Plan and/or the prompt final distribution
of the Pension Plan and/or the Pension Accounts and/or the prompt satisfaction of the terms and
conditions of Paragraph 5 herein, which Purchasers, the Trustees under the Pension Plan, and/or
the Third Party Administrator have failed to cure within ten (10) days after Purchasers' receipt of
the foregoing notice, Escrow Agent shall forthwith release from escrow to Harry and Harry may
enter and enforce the Pension Judgment. After the tenth (10th) day after Escrow Agent's receipt
of notice from Purchasers to Escrow Agent and Harry that the Pension Plan has been terminated
and Harry has received payment of his final distribution from the Pension Plan and Pension
Accounts, by wire transfer or bank check or that such payment has been deposited into and
cleared Harry's account and that all the terms and conditions of Paragraph 5 herein have been
fully satisfied, Escrow Agent shall release from escrow and deliver the Pension Judgment to
LGO, if not previously released to Harry as provided herein. If the Pension Judgment is released
and paid by Purchasers, Harry hereby assigns to Purchasers all of Harry's rights to receive
payment from the Pension Plan up to such amount so paid, less Harry's costs of enforcing the
Pension Judgment, including his actual legal fees and disbursements.

8.    **2006 Form K-1 and W-2.** On or before April 1, 2007, Midwood shall issue and
deliver to Harry a Form K-1 and Nieberg shall issue and  deliver to Harry a Form W-2 for the tax
year 2006.

9.    [INTENTIONALLY LEFT BLANK]

10.    **Escrow.**

A.    P&M with respect to the escrow of the Pension Judgment (the **"Pension Judgment Escrow"**) pursuant to Paragraph 4 herein hereby accepts its appointment and designation as Escrow Agent under this Stipulation to act in accordance with and pursuant to the terms and conditions set forth in this Stipulation with regard to the Escrow.

B.    The Purchasers each acknowledge that P&M is one of the attorneys for Harry, and waives any objection to P&M representing Harry in any action, claim or dispute regarding or arising from this Stipulation or any transaction provided for in this Stipulation, or which is the subject matter hereof.

C.    Escrow Agent may resign and be discharged from its duties hereunder with respect to the Escrow, at any time by giving notice of such resignation to the parties hereto, specifying a date upon which such resignation shall take effect. Upon such notice, a successor Escrow Agent shall be appointed by Harry (with the written consent of Stanley and Peter, not to be unreasonably withheld or delayed), provided said successor Escrow Agent is an attorney duly admitted to practice in the State of New York and in good standing, such successor to become Escrow Agent hereunder on the resignation date specified in such notice, whereupon all obligations imposed and rights conferred by this Stipulation shall be binding upon and inure to the benefit of said successor Escrow Agent. The parties hereto may agree at any time to substitute a new Escrow Agent for either or both of the Escrow by giving written notice thereof to the Escrow Agent then acting as such.

D.    Nothing contained in this Stipulation shall obligate Escrow Agent to make any payment or deliver any documents under this Stipulation, unless the funds for same and/or documents shall first have been received by Escrow Agent.

E.      In the event that any dispute shall arise with respect to release of any monies, documents or judgments from the Escrow, Escrow Agent may dispose of any monies, judgments or documents which is the subject of the dispute, by delivering same to the Court, or Escrow Agent may otherwise dispose of the monies, judgments or documents in any manner as directed by order of the Court, and Escrow Agent shall, thereupon, be discharged from all obligations under this Stipulation with respect to such monies, judgments or documents.

F.      Escrow Agent shall be discharged from all obligations under this Stipulation with respect to any monies, judgments or documents held in the Escrow upon the disposition of the monies, judgments or documents in accordance with this Stipulation or an order of the Court discharging Escrow Agent or directing disposition of such monies, judgments or documents.

G.      Escrow Agent shall perform only such duties as are specifically set forth in this Stipulation, and may conclusively rely and shall be protected in acting or refraining from acting on any written notice, instrument or signature believed by it to be genuine and to have been signed or presented by the proper party or parties duly authorized to do so.  Escrow Agent, in its capacity as such, shall have no responsibility for the contents of any notice or other writing contemplated in this Stipulation or the contents thereof, and may rely without any liability upon the contents thereof.

H.      It being understood that Escrow Agent is acting as such as an accommodation to the parties hereto and is  receiving no compensation therefor, Escrow Agent shall not be responsible or liable to anyone whomsoever for any action taken or omitted by it in good faith and reasonably believed by it to be authorized hereby or within the rights or powers conferred upon it hereunder, nor shall it be liable for any action taken or omitted by it in good faith and in accordance with the advice of counsel (which counsel may be of the Escrow Agent's own choosing, including itself as a law firm), and shall not be liable for any mistake of fact or

17

error of judgment or for any acts or omissions of any kind unless caused by willful misconduct or gross negligence.

I.    In the event that Escrow Agent shall be uncertain as to its duties or rights hereunder, or shall receive instructions, claims or demands from any of the parties hereto or from any third-party with respect to the property held hereunder which, in its opinion, are in conflict with any provision of this Stipulation, it shall be entitled to refrain from taking any action other than to keep safely said property until it shall be directed otherwise by all of the parties hereto, and any third-persons, if any, or by a final order or judgment of the Court.

J.    Escrow Agent shall not be bound by any modification, cancellation or rescission of this Stipulation, unless in writing and signed by the parties hereto. In no event shall any modification of this Stipulation, which shall affect the rights or duties of Escrow Agent, be binding on Escrow Agent unless it shall have given its prior written consent, not to be unreasonably withheld.

K.    In any action arising out of this Stipulation or in any way related to any monies, judgment or document held by Escrow Agent, or the obligations of any party under this Stipulation, P&M may represent Harry.

L.    The parties hereto each agree, jointly and severally, to indemnify and hold harmless Escrow Agent from and against any and all claims, losses and liabilities (including, without limitation, reasonable attorneys' fees and expenses) growing out of or resulting from this Stipulation (including, without limitation, enforcement of this Stipulation), except claims, losses or liabilities resulting from the Escrow Agent's gross negligence or willful misconduct.

M.    In the event that this Stipulation becomes null and void as provided in Paragraph 4 herein: (i) within twenty (20) business days thereafter, Escrow Agent shall deliver to LGO any monies, judgment and any documents then held in the Escrow; (ii) LGO shall continue

to hold in escrow the proceeds of the LGO escrow under the Standstill Stipulation; and (iii) P&M

shall continue to hold in escrow the proceeds, if any, of the P&M escrow under the Standstill

Stipulation, and LGO and P&M shall dispose of such proceeds only pursuant to the terms of the

Standstill Stipulation, until further order of the Court.

11.    **Retention of Jurisdiction.**    This Court shall retain jurisdiction over this action

until the filing of the Stipulation of Discontinuance.  Notwithstanding the foregoing, in the event

that any party defaults in the performance of a post-Closing obligation under this Stipulation, the

party to whom the obligation is owed may, by motion on notice to the other parties hereto, under

the above index number, restore this case to the calendar of the Court in order to seek

enforcement of such obligation by the Court and this Court hereby retains supplemental

jurisdiction to entertain such motions and to take all appropriate action to enforce the terms of this

Stipulation and the exhibits hereto.

12.    **Venue/Service of Process.**

A.    Any suit, action or proceedings regarding this Stipulation, or any default

hereunder, interpretation or enforcement of this Stipulation shall be commenced only in the

Supreme Court of the State of New York, County of Kings.  All parties hereto each irrevocably

waive, to the fullest extent permitted by law, any objection which they may now or hereafter have

to the laying of the venue of any such suit, action or proceeding brought in such Court, and any

claim that any such suit, action or proceeding has been brought in an inconvenient forum.

B.    Any such suit, action or proceeding may be commenced by service of

process delivered by certified mail, return receipt requested upon the Corporations, Memorials,

Paige, Stanley, Peter, and Gertrude at the address of the Premises set forth above, with a copy by

first class mail and facsimile transmission to:

> Ronald J. Offenkrantz, Esq.
> Lichter Gliedman Offenkrantz PC
> 551 Fifth Avenue
> New York, NY 10176
> Fax: (212) 658-9424

19

and may be served upon Harry at:

> Harry Nieberg
> 2370 East 66th Street
> Brooklyn, New York 11234

with copies by first class mail and facsimile transmission to:

> A. Scott Mandelup, Esq.
> Pryor & Mandelup, L.L.P.
> 675 Old Country Road
> Westbury, NY 11590
> Fax: (516) 333-7333
>
> and
>
> Steven S. Korman, P.C.
> 50 Charles Lindbergh Blvd.
> Suite 400
> Mitchel Field, NY 11553
> Fax: (516) 294-4436

13.        <u>Waiver of Jury Trial</u>.  **EACH PARTY HERETO HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND UPON ADVICE OF THE UNDERSIGNED COUNSEL, WAIVES ITS RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY SUIT, ACTION OR PROCEEDING BASED ON THIS STIPULATION OR ANY OTHER AGREEMENT OR DOCUMENT CONTEMPLATED TO BE EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY OF THE PARTIES OR THEIR ATTORNEYS OR AGENTS. THIS PROVISION IS A MATERIAL INDUCEMENT FOR HARRY TO ENTER INTO THIS STIPULATION.**

14.        <u>Survival of Representations</u>.  All representations and warranties set forth in this Stipulation shall survive any release provided for in this Stipulation.

15.    **COBRA.** Harry's employment by the Corporations shall be terminated upon the Closing. The Corporations shall timely notify Harry and make available to him all COBRA rights to which he is entitled under all applicable laws, rules, and regulations.

16.    **Attorney's Fees.** Except as provided in Paragraph 6 herein, each party hereto shall be responsible for its own attorneys fees incurred in connection with this action and this Stipulation. Notwithstanding the foregoing, Purchasers shall be liable for, hold harmless and indemnify Harry against, all costs and expenses, including reasonable legal fees, arising from or in connection with any breach of this Stipulation by Purchasers, any breach of any warranty or representation by Purchasers and/or arising from or in connection with the enforcement of any obligation of Purchasers under this Stipulation, including without limitation, entry and enforcement of the Pension Judgment. Notwithstanding the foregoing, Harry shall be liable for, hold harmless and indemnify Purchasers against, all costs and expenses, including reasonable legal fees, arising from or in connection with any breach of this Stipulation by Harry, any breach of any warranty or representation by Harry and/or arising from or in connection with the enforcement of any obligation of Harry under this Stipulation.

17.    **Corporate Resolutions.** Each of the Corporations and Memorials hereby represent that it has been authorized by duly enacted resolution of its board of directors adopted at a duly noticed meeting of the board of directors to enter into and perform the terms of this Stipulation, and its undersigned officer has been duly authorized to execute and deliver this Stipulation. Paige hereby represents that it has been authorized by a duly enacted resolution of its members adopted at a duly noticed meeting of the members to enter into and perform the terms of this Stipulation, and its undersigned managing member has been duly authorized to execute and deliver this Stipulation.

18.    **Notice.** Notice of any event hereunder shall be given as follows:

(i)     If to any of the Corporations, Stanley, Peter, to said party:

c/o Nieberg Midwood Chapel Inc.
1625 Coney Island Avenue
Brooklyn, NY 11230
Fax No. (718) 377-7380

With a copy to:

Ronald J. Offenkrantz, Esq.
Lichter Gliedman Offenkrantz PC
551 Fifth Avenue
New York, NY 10176
Fax No. (212) 658-9424

(ii)   If to Harry, to:

Harry Nieberg
2370 East 66th Street
Brooklyn, NY 11234
Fax No. (718) 968-1406

With copies to:

A. Scott Mandelup, Esq.
Pryor & Mandelup, L.L.P.
675 Old Country Road
Westbury, NY 11590
Fax No. (516) 333-7333

and

Steven S. Korman, P.C.
50 Charles Lindbergh Boulevard
Suite 400
Mitchel Field, NY 11553

**19.   No Admission.** Nothing contained in this Stipulation shall be deemed an admission of any liability by any party hereto and in the event that this Stipulation does not become effective, nothing contained in this Stipulation shall be used by any party for any purpose in any litigation or judicial proceeding.

**20.   Counsel.** Each party hereto represents and acknowledges that it has been duly represented by counsel with respect to the negotiation and execution of this Stipulation and all exhibits hereto, and said counsel has fully explained the terms and legal consequences of this

Stipulation and all exhibits hereto to said party, and each party has executed this Stipulation and all exhibits hereto knowingly and of his/her free will with full understanding of the terms hereof. The Corporations, Memorials, Stanley and Peter, each hereby acknowledge that they have consulted with and been advised with respect to this Stipulation by LGO, and Harry hereby acknowledges that he has consulted with and been advised with respect to this Stipulation by P&M and Steven S. Korman, P.C.

21.    **Further Actions.**  Each party hereto agrees to execute and deliver hereafter such further documents and to do such further acts and things as may be required or appropriate to carry out the intent and purpose of this Stipulation and which are not inconsistent with the terms hereof.

22.    **Counterparts / Facsimiles.**  This Stipulation may be executed in counterparts and facsimile machine signatures shall be given the same effect as original signatures.

23.    **Headings.**  The headings in this Stipulation are for convenience of the parties and shall not be construed as a substantive part of this Stipulation nor shall same be admissible in any proceeding as evidence of the intent of the parties or the proper interpretation of this Stipulation.

24.    **Entire Agreement / Changes.**  This Stipulation and the exhibits hereto contain the entire agreement between the parties hereto with respect to the matters contained in this Stipulation.  This Stipulation supercedes all prior written and oral agreements and any prior representation, statement, condition or warranty.  No variation, modification, or change herein or any waiver of any provision hereof shall be binding unless set forth in a document duly executed by or on behalf of each of the parties hereto.

25.    **Invalidity.**  In the event one or more of the provisions contained in this Stipulation shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity illegality or unenforceability shall not affect any other provision of this Stipulation

26.    **Governing Law.**  This Stipulation shall be governed by and construed in

accordance with the substantive laws of the state of New York (other than its rules as to conflicts of law to the extent that such rules will result in the applications of the laws of some other jurisdiction).

27.    **Remedies Cumulative**.  No remedy set forth herein, including without limitation, the provisions of Paragraphs 6, 7 and 16 herein, shall be exclusive of any other remedy and each and every remedy shall be cumulative and in addition to any other remedy set forth herein or available at law.

**IN WITNESS WHEREOF,** the undersigned have executed this stipulation as of the date set forth above.

_____
HARRY NIEBERG

PRYOR & MANDELUP, L.L.P.
Attorneys for Harry Nieberg
By: _____
    A. Scott Mandelup


_____
PETER NIEBERG, individually and
  as a Trustee under the Pension Plan


_____
STANLEY NIEBERG, individually and
  as a Trustee under the Pension Plan

26

accordance with the substantive laws of the state of New York (other than its rules as to conflicts of law to the extent that such rules will result in the applications of the laws of some other jurisdiction).

27.    **Remedies Cumulative**.  No remedy set forth herein, including without limitation, the provisions of Paragraphs 6, 7 and 16 herein, shall be exclusive of any other remedy and each and every remedy shall be cumulative and in addition to any other remedy set forth herein or available at law.

**IN WITNESS WHEREOF**, the undersigned have executed this stipulation as of the date set forth above.

_____
HARRY NIEBERG

PRYOR & MANDELUP, L.L.P.
Attorneys for Harry Nieberg

By:_____
A. Scott Mandelup

_____
PETER NIEBERG, individually and
as a Trustee under the Pension Plan

_____
STANLEY NIEBERG, individually

26

NIEBERG MIDWOOD CHAPEL INC.

By: _____
      Name:  Stanley Nieberg
      Title:  President

MIDWOOD MEMORIAL CHAPEL, INC.

By: _____
      Name: Stanley Nieberg
      Title: President

MIDWOOD MEMORIALS, INC.

By: _____
      Name: Stanley Nieberg
      Title: President

LICHTER GLIEDMAN OFFENKRANTZ PC
Attorneys for Neiberg Midwood Chapel Inc.,
Midwood Memorial Chapel, Inc., Midwood
Memorials, Inc., and Stanley Nieberg and Peter
Nieberg, individually and as the Trustees under the
Pension Plan

By: _____
      Ronald J. Offenkrantz

So Ordered, this
____ day of _____, 2006

PRYOR & MANDELUP L.L.P.
As Escrow Agent

_____
              J.S.C.

By: _____
      A. Scott Mandelup

27

NIEBERG MIDWOOD CHAPEL INC.


By:_____
　　Name:  Stanley Nieberg
　　Title:  President


MIDWOOD MEMORIAL CHAPEL, INC.


By:_____
　　　Name: Stanley Nieberg
　　　Title: President

MIDWOOD MEMORIALS, INC.



By:_____
　　　Name: Stanley Nieberg
　　　Title: President



LICHTER GLIEDMAN OFFENKRANTZ PC
Attorneys for Neiberg Midwood Chapel Inc.,
Midwood Memorial Chapel, Inc., Midwood
Memorials, Inc., and Stanley Nieberg and Peter
Nieberg, individually and as the Trustees under the
Pension Plan

By: _____
　　　Ronald J. Offenkrantz


So Ordered, this　　　　　　　　　　PRYOR & MANDELUP L.L.P.
___ day of _____, 2006　　　　　As Escrow Agent


_____　　By:_____
　　　　　　　　J.S.C.　　　　　　A.  Scott Mandelup

27

NIEBERG MIDWOOD CHAPEL INC.

By: _____
    Name: Stanley Nieberg
    Title: President


MIDWOOD MEMORIAL CHAPEL, INC.

By: _____
    Name: Stanley Nieberg
    Title: President


MIDWOOD MEMORIALS, INC.

By: _____
    Name: Stanley Nieberg
    Title: President


LICHTER GLIEDMAN OFFENKRANTZ PC
Attorneys for Neiberg Midwood Chapel Inc.,
Midwood Memorial Chapel, Inc., Midwood
Memorials, Inc., and Stanley Nieberg and Peter
Nieberg, individually and as the Trustees under the
Pension Plan

By: _____
    Ronald J. Offenkrantz


PRYOR & MANDELUP L.L.P.
As Escrow Agent

By: _____
    A. Scott Mandelup

So Ordered, this
16th day of August 2006

_____
        yvonne lewis
JUSTICE, SUPREME COURT
                    J.S.C.

27

FILED

AUG 2 8 2006

KINGS COUNTY CLERK'S OFFICE

# EXHIBIT "2"

551 Fifth Avenue
24th Floor
New York, NY 10176
Tel: (212) 867-7750
Fax: (212) 658-9424
E-mail: rjo@lgofirm.com

-----Original Message-----
**From:** Scott Mandelup [mailto:sm@pryormandelup.com]
**Sent:** Thursday, April 06, 2006 5:44 PM
**To:** Ronald J. Offenkrantz
**Cc:** 'Harry Nieberg'; 'Steven S. Korman, Esq.'; 'Randolph E. White, Esq.'
**Subject:** Nieberg

Dear Ron: Your suggestion is unacceptable. Without compensation, there will be
absolutely no non-compete agreement from Harry. His previous generous offer of six
months free is now off the table. You intentionally waited until we had agreed on the
amount of the settlement to spring your request for a restrictive covenant. Nothing in the
BCL entitles your clients to such relief in this action. Your remark that an accountant
would take into consideration the possible negative impact on the value of the
corporations from Harry's refusal to give a non-compete is misguided. The BCL is quite
clear that valuation for purposes of our action is as of the valuation date; *i.e.* August 10,
2004. It is our understanding of the law, that if the business closed the next day, it would
have no impact whatsoever on the amount of the judgment against your clients. (If you
have research to the contrary, please give me the citations.) Your clients elected their
statutory right to compel Harry to surrender his shares for the fair value of his interest in
the corporations as of the buy out date. This is not a voluntary sale where they might
expect to receive a non-compete and the purchase price would vary depending on
whether they received such an agreement and on its duration and geographic scope. If
your clients want a restrictive covenant, they will have to pay for it. Otherwise, we will let
the court set the value of Harry's interest and your clients will still not receive a restrictive
covenant. In the event your clients are willing to pay for a non-compete, it will not be in
perpetuity, but for a reasonable period of time, such as three years, and will be carefully
tailored geographically. Absent the duration of an agreed upon and compensated
restrictive covenant, Harry has no intention of giving up the right to use his name in the
funeral home business, or otherwise. Also, your indemnity request is unclear -- what
does it mean for Harry to indemnify against "his own acts as distinct from acts performed
for the benefit of the corporations". An example of what type of conduct by Harry, not on
behalf of the corporations, which could give rise to liability on the part of your clients,
would be helpful. Harry will not agree to any indemnity he does not understand. Finally,
you are, of course, entitled to your opinion as to the amount of the award the court is
likely to enter, but Harry is willing to take his chances if we cannot agree on settlement
terms. If your clients' position with regard to the restrictive covenant changes, please call
me. Otherwise, I will see you on the 18th. If I do not speak to you, have a good holiday.


**Very truly yours,**



A. Scott Mandelup



**PRYOR & MANDELUP, L.L.P.**

Tuesday, March 04, 2008 America Online: Mymafi