UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

HARRY NIEBERG, an individual, and HARRY NIEBERG FUNERAL HOME INC., a New York corporation,

Plaintiffs,

v.

NIEBERG MIDWOOD CHAPEL INC., a New York Corporation; MIDWOOD MEMORIAL CHAPEL INC., a New York corporation,

Defendants.

Case No. : 08 CV 00392

**MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**(ELECTRONICALLY FILED)**

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs, HARRY NIEBERG ("Harry"), and HARRY NIEBERG FUNERAL HOME INC. ("Nieberg Funeral"), by and through their attorneys of the law firm of Lewis Brisbois Bisgaard & Smith LLP, hereby submit this Motion for Preliminary Injunction.

This Motion for Preliminary Injunction is based on Plaintiffs' claims for service mark infringement pursuant to the Lanham Act against Defendants NIEBERG MIDWOOD CHAPEL INC. ("Midwood Chapel") and MIDWOOD MEMORIAL CHAPEL INC. ("Midwood Memorial") (collectively the "Defendants"); service mark infringement pursuant to New York common law against Midwood Chapel and Midwood Memorial; unfair competition pursuant to New York common law against Midwood Chapel and Midwood Memorial; tortious interference with contract under New York law against Midwood Chapel and Midwood Memorial; tortious interference with prospective economic advantage under New York law against Midwood Chapel and Midwood Memorial; and declaratory relief pursuant to 28 U.S.C. §2201 *et seq*. and 15 U.S.C §1051 *et seq*. against Midwood Chapel, as supported by the attached Memorandum of Points and Authorities

and attached exhibits, the pleadings and all papers and materials filed in this matter, and any oral argument that may be presented at the hearing on this matter and any other matter of which the Court may take notice.

DATED this 24th day of March, 2008.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

/s/ **Joseph F. Uvino**
Joseph F. Uvino, Esq. (JU-9152)
199 Water Street, 25th Floor
New York, New York 10038
(212) 232-13001
*Attorneys for Plaintiffs Harry Nieberg and Harry Nieberg Funeral Home Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Despite Defendants' previous aggressive (albeit mistaken) litigation tactics, it is Defendants who are the wrongdoers. Moreover, that wrongdoing has created presumptively irreparable harm that mandates, in all instances, immediate injunctive relief. A preliminary injunction should be granted enjoining Defendants from using Plaintiffs' service mark, HARRY NIEBERG (the "Mark"), because Defendants' use of the Mark infringes Plaintiffs' rights in the Mark and causes substantial and irreparable injury to Plaintiffs' business, reputation and goodwill. Plaintiffs have been forced to file this action and motion for preliminary injunction against Defendants Midwood Chapel and Midwood Memorial for service mark infringement and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and New York common law arising out of Defendants' subsequent use of the Mark and a variation of Plaintiffs' trade name HARRY NIEBERG FUNERAL HOME INC. (the "Trade Name") in association with Defendants' provision of funeral services. In essence, Defendant has infringed upon the

goodwill belonging to Plaintiffs by knowingly appropriating a mark and a trade name virtually identical to the Mark and Trade Name for identical and competitive services, respectively.

The aforementioned acts of Defendants have caused substantial and irreparable injury to Nieberg Funeral's business, reputation and goodwill, warranting injunctive relief. Furthermore, Defendants' arrogant tortious interference with Plaintiffs' business contracts and prospects also mandates forced cessation. Unless enjoined by this Court, Defendant will continue to infringe upon Nieberg Funeral's rights in the Mark and the Trade Name, resulting in irreparable injury to Nieberg Funeral and the ongoing threat that the public will be deceived, mistaken, or confused by Defendants' acts. The specific relief sought by Nieberg Funeral is set out in the accompanying Proposed Order seeking a preliminary injunction.

## II. FACTS

### A.    Plaintiffs' Ownership of the Mark and Trade Name.

In or about September of 2006, Harry entered into a contract (the"Sherman Contract") with Sherman Funeral Home, Inc. ("Sherman Funeral"), located at 1283 Coney Island Avenue, Brooklyn, New York.   See Affidavit of Harry Nieberg (the "Harry Affidavit") attached as Exhibit 1 at ¶ 7. Pursuant to the Sherman Contract, Harry, or any Harry-controlled entity, was to receive a percentage of profits on any funeral service conducted at the Sherman Funeral facilities which funeral service was attributable to Harry's business endeavors and/or goodwill.   Harry Affidavit at ¶ 8.

Consistent with the Sherman Contract, on or about July 26, 2007, Harry registered Nieberg Funeral as an entity with the New York State Department of State and thereafter commenced the funeral services licensing process.  Harry Affidavit at ¶ 9; *See also* New York State Department of State registration for Harry Nieberg Funeral Home Inc. attached as Exhibit 3. On or after July 26, 2007 Harry assigned Harry's personal rights to the service mark HARRY NIEBERG (the "Mark") to Nieberg Funeral, and Nieberg Funeral subsequently licensed the Mark non-exclusively to Sherman Funeral (the "License").  Harry Affidavit at ¶ 10.

After Sherman Funeral obtained the License, Sherman Funeral displayed the Mark on a placard hung at Sherman Funeral's facilities. Harry Affidavit at ¶ 11; *see also* photograph of Sherman Funeral facility depicting the placard hung at the Sherman Funeral facilities, attached as Exhibit 4. As such, Nieberg Funeral used the Mark through Sherman Funeral's use of the Mark. Harry Affidavit at ¶ 12. Furthermore, in anticipation of licensure, Nieberg Funeral began advertising through telephone directory listings. *See* copy of Yellowpages.com advertisements attached as Exhibit 5.

During August and September 2007, Sherman Funeral conducted funeral services which were attributable to Harry's business endeavors and/or goodwill. Harry Affidavit at ¶ 13. Pursuant to the License, Harry oversaw and maintained the quality of the funeral services conducted at Sherman Funeral's facilities which services were attributable to Harry's business endeavors and/or goodwill. Harry Affidavit at ¶ 14.

Plaintiffs' above-referenced use of the Mark occurred after Plaintiffs and Defendants settled a dissolution proceeding. At least as late as March 1997, Harry and his brothers Peter J. Nieberg ("Peter") and Stanley J. Nieberg ("Stanley") each became one-third shareholders of Midwood Chapel and Midwood Memorial. Harry Affidavit at ¶ 2. In or about August 2004, Harry filed for dissolution of Midwood Chapel and Midwood Memorial. Harry Affidavit at ¶ 3.

A Stipulation of Settlement and Order (the "Stipulation"), resolving the dissolution dispute without requiring the dissolution of Midwood Chapel and Midwood Memorial, was signed by the parties and by the Court on or about August 16, 2006 and was subsequently filed on August 28, 2006. *See* Stipulation without exhibits, attached hereto as Exhibit 2. Before the execution of the Stipulation, the parties thereto engaged in vigorous negotiations regarding the possible inclusion of certain provisions in the Stipulation, one such provision being a non-competition clause providing that "[e]ffective on Closing, Harry agrees not to solicit customers or employees or the Corporations, or to engage in, or allow his name to be used, in connection with any funeral home or mortuary business in Kings County, New York for the one-year period from May 1, 2006 through and including April 30 2007" (the "Non-Competition Clause").

Harry Affidavit at ¶ 5. Harry contended that he was unwilling to give up use of his name in the funeral business, or otherwise, without proper compensation for such a restrictive covenant. *See* e-mail correspondence from Scott Mandelup to Ronald J. Offenkrantz dated April 6, 2006 attached as Exhibit 6.

After negotiation, it was agreed that the Non-Competition clause would not be included in the Stipulation. Harry Affidavit at ¶ 5. This agreement is reflected in the Stipulation, as executed by the parties and entered by the Court, which does not contain the Non-Competition Clause, nor any other form of non-competition clause. *See* Stipulation. Furthermore, the Stipulation as executed by the parties and entered by the Court contains neither the non-solicitation language in the Non-competition clause, nor any provision which in any manner prohibits Harry from soliciting, engaging, contacting, and/or communicating in any manner with clients or customers of Defendants whether those clients or customers pre-existed the Stipulation or not. *See* Stipulation.

The Stipulation does, however, contain a integration clause at Paragraph 24 that states:

> This Stipulation and the Exhibits hereto contain the entire agreement between the parties hereto with respect to the matters contained in this Stipulation. This Stipulation supercedes [sic] all prior written and oral agreements and any prior representation, statement, condition or warranty. No variation, modification or change herein or any waiver of any provision hereof shall be binding unless set forth in a document duly executed by or on behalf of each of the parties hereto.

**B. Defendants' Wrongful Interference with Plaintiffs' Business.**

On or about October 2, 2007, Harry and Nieberg Funeral received a cease-and-desist letter (the "October 2 Letter"), which was copied to Sherman Funeral, from Defendants' counsel requiring that Harry, Nieberg Funeral and Sherman Funeral cease "trading under the name of 'Harry Nieberg Funeral Home' and to instruct all publications…that the Harry Nieberg Funeral home is no longer to be advertised in those publications." *See* correspondence from Ronald J. Offenkrantz, Esq., dated October 2, 2007 attached at Exhibit 7. At the time the October 2 Letter was sent, Defendants had not yet attempted to federally register "HARRY NIEBERG" as a

service mark. *See* United States Patent and Trademark Office ("USPTO") printout indicating the pertinent application attached as Exhibit 8. Thereafter, Defendants' counsel sent a second letter, on or about October 16, 2007, (the "October 16 Letter") to Sherman Funeral in which Defendants demanded that Sherman Funeral "refrain from using the name Harry Nieberg Funeral Home in connection with any funeral services performed by you or your establishment." *See* correspondence from Ronald J. Offenkrantz, Esq. dated October 16, 2007 attached as Exhibit 9. The October 16 Letter further threatened to institute suit for injunctive relief and other relief if Sherman Funeral failed to confirm that the name Harry Nieberg Funeral Home would not be used in connection with funeral homes or services provided at the Sherman Funeral facilities. *Id.*

Feeling threatened as a result of receiving the October 2 Letter and the October 16 Letter, Sherman Funeral removed the placard bearing the Mark and declined to allow Harry and/or Nieberg Funeral to conduct any funeral services at Sherman Funeral. Harry Affidavit at ¶17. as a result, Nieberg Funeral lost the ability to attract potential funeral service clients and, therefore, lost all potential profits associated with Sherman Funeral conducting funeral services attributable to Harry's business endeavors and/or goodwill. Harry Affidavit at ¶ 18.

**C. Defendants' Wrongful Use of the Mark Giving Rise to Confusion.**

On October 13, 2007, Midwood Chapel filed a service mark application with the USPTO claiming the service mark HARRY NIEBERG & SONS ("Defendants' USPTO Application"). *See* Exhibit 8. Defendants' USPTO Application claimed that the HARRY NIEBERG & SONS mark was being used in commerce and that the first date of use was January 1, 1965. *See id.* However, prior to October 13, 2007, Midwood Chapel and/or Midwood Memorial never claimed HARRY NIEBERG as a service mark. Harry Affidavit at ¶ 19; *see also* USPTO printout, indicating no attempts to register any HARRY NIEBERG variation prior to October 13, 2007, attached as Exhibit 10. Furthermore, it is apparent that prior to July 26, 2007, neither Midwood Chapel nor Midwood Memorial ever used the Mark, or any derivative thereof, as a service mark. Harry Affidavit at ¶ 20.

Support that Defendants have not used the Mark as a service mark is demonstrated in Defendants' Yellow Pages display advertisement, which is a one-third-page ad for "Midwood Memorial Chapel Inc." *See* Defendants' advertisement attached as Exhibit 11. The sole mention therein of "Harry Nieberg" is at the bottom of a panel setting forth the services offered and stating "Nieberg Midwood Chapel Inc. Affil. HARRY NIEBERG & SONS". *See id.* Further, Defendants maintain a website at www.midwoodchapel.com (the "Website"). *See* printed version of the "Home" section of the Website attached as Exhibit 12. Nowhere on the Website do Defendants use the Mark, or any variation thereof, as a service mark. *See id.* The reference to "Harry Nieberg" that can be found on the Website is in the "About Us" section that provides the history of the Nieberg family providing funeral services. *See* printed version of "About Us" section of the Website attached as Exhibit 13.

Thus, prior to Defendants' claimed use of the Mark in Defendants' USPTO Application, Defendants clearly marketed to consumers most prominently under the "Midwood" service mark. It is further evident from Defendants' advertising and website that Defendants may not in fact be using the Mark as a service mark at all, despite Defendants' claim of use in the Defendants' USPTO Application and Defendants' act of sending the two cease-and-desist letters.

**D.    Procedural History.**

On or about October 30, 2007, Midwood Memorial and Midwood Chapel filed a complaint against Harry and Nieberg Funeral in the New York State Supreme Court, Kings County, Index No. 40169/07 (the "State Complaint"). *See* the State Complaint (without exhibits attached) as Exhibit 14. The State Complaint raised only state-law causes of action. *Id.* Harry and Nieberg Funeral filed an answer to the State Complaint and also filed the instant federal action. The New York State Action (the "State Action") was stayed per stipulation of the parties during the pendency of the instant action. *See* Stipulation Staying Proceedings attached as Exhibit 15.

## III. ARGUMENT

### A. Standard for a Preliminary Injunction.

There should be no doubt as to the standard Plaintiffs must meet before this Court may issue a preliminary injunction, as the Second Circuit has held that "[a] party seeking injunctive relief ordinarily must show: "(a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Tom Doherty Assoc., Inc. v. Saban Entm't,* 60 F.3d 27, 33 (2d Cir.1995); *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Rosenfeld v. W.B. Saunders, Div. of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236, 250 (S.D.N.Y. 1990)(standard applied in tortuous interference context). As outlined below, Plaintiffs will be irreparably harmed should the requested injunctive relief not be granted and Plaintiffs will demonstrate herein a likelihood of success on Plaintiffs' claims including that Defendants' use of the Mark violates unfair competition and trademark[1] infringement law. As such, Plaintiffs should be granted preliminary injunctive relief.

### B. Irreparable Injury Presumed In Mark Infringement Cases.

Plaintiffs have been irreparably harmed because irreparable injury is presumed in unfair competition and trademark infringement cases. "Irreparable injury may be presumed based upon a plaintiff's showing of likelihood of success on a trademark infringement claim." *MetLife, Inc. v. Metropolitan Nat. Bank*, 388 F.Supp.2d 223, 229 (S.D.N.Y. 2005); *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 174 (2d Cir. 2000). Hence, because of the presumption of irreparable injury mentioned above, Plaintiffs are "entitled to an injunction if [they]can establish a likelihood of confusion." *Novartis Animal Health US, Inc.* v. *Abbeyvet Export Ltd.,* 409 F.Supp.2d 264, 266 (S.D.N.Y., 2005). Plaintiffs will demonstrate herein the combination of success on the merits and the continuance of irreparable injury and, therefore, Plaintiffs are

---

[1] "Trademark" is used herein in the generic sense, to include service marks as well.

entitled to a preliminary injunction enjoining Defendants from making further use of the Mark in association with Defendants' funeral home services.

One can easily understand why the presumption of irreparable harm is warranted. If Defendants are allowed to continue Defendants' usage of the Mark, in association with Defendants' funeral home services, instances of consumer confusion will cause Plaintiffs to lose access to Plaintiffs' consumer base and diminish Plaintiffs' revenues derived from the creation of new accounts. The frustration created among the general public by the frequent inability to easily communicate with Plaintiffs will injure the goodwill associated with Plaintiffs' market and injure the reputation of Plaintiffs' services in the minds of the consuming public.

One of the essential purposes of trademark protection is to protect the consuming public from being misled as to the source of goods or services purchased. "The use of trademarks is designed to alert the consuming public as to the origin and source of the products. It allows the public to depend on the consistency of the quality of products." *Volkswagenwerk A.G. v. Wheeler*, 814 F.2d 812, 820 (1st Cir. 1987). Thus, in any unfair competition case, "the public interest in preventing confusion around the marketplace is paramount." *Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1564 (11th Cir. 1991). Therefore, as the Unites States District Court for the District of Maine stated in *Kardex Systems, Inc. v. Sistemco N.V.*, 583 F.Supp. 803, 810 (D. Me. 1984):

> The public interest will not be adversely affected by the granting of an injunction. Rather, the public interest will be served by granting of an injunction because public mistake, confusion, and deception will be avoided . . .

In light of the public's interest in avoiding confusion, as well of Plaintiffs' investment and interest in Plaintiffs' business and the Mark, which are equally threatened by Defendants' acts, preliminary injunctive relief is appropriate in this case.

**C. Irreparable Harm To Plaintiffs Exists With Respect to All of, Plaintiffs Claims Regardless of Whether Such Injury Is Presumed.**

Defendants' infringing use of the Mark and tortious interference with Plaintiffs' business operations has caused and will continue to cause Plaintiffs irreparable harm with regards to Plaintiffs' business, reputation and goodwill, irrespective of whether such harm is presumed. The propriety of granting an application for injunctive relief based upon tortious interference with business is determined under the same standard as set forth above. *Rosenfeld*, 728 F. Supp. at 250 (*Jackson Diary* standard for preliminary injunction applied where claim for tortious interference with prospective economic advantage was asserted). The authority as to the required imminence of irreparable harm that must be demonstrated to warrant a preliminary injunction is not uniform; past cases suggest a spectrum ranging from possible[2] to probable, which is defined as "not remote or speculative but . . .actual and imminent." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) *citing New York v. Nuclear Regulatory Com'n*, 550 F.2d 745, 755 (2d Cir. 1977). Regardless, "it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a preliminary injunction will not issue." *Jackson Dairy*, 596 F.2d at 72; *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2d Cir. 1966); *Foundry Services, Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir. 1948). In the instant case, if Defendants are not enjoined from using the Mark, Plaintiffs will suffer imminent harm to Plaintiffs' business, reputation and goodwill, harm which cannot be fully compensated monetarily.

Defendants' infringing use of the Mark and tortious interference with Plaintiffs' business operations has caused and will continue to cause Plaintiffs irreparable harm with regards to Plaintiffs' business, reputation and goodwill. Defendants claim use of the Mark, even though such use is infringing, and despite having no ownership rights in the Mark, Defendants sent the

---

[2] *See Caulfield v. Board of Educ.*, 583 F.2d 605, 610 (2d Cir. 1978); *Selchow & Righter Co. v. McGraw-Hill Book Co.*, 580 F.2d 25, 27 (2d Cir. 1978); *Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 250 (2d Cir. 1973); *Societe Comptoir v. Alexander's Dep't Stores, Inc.*, 299 F.2d 33, 35 (2d Cir. 1962).

October 2 Letter and the October 16 Letter, essentially cease-and-desist letters, to Harry and Sherman Funeral. The October 16 Letter specifically threatened to institute suit for injunctive relief and other relief against Sherman Funeral if Sherman Funeral failed to confirm that the name "Harry Nieberg Funeral Home" would not be used in connection with funeral homes or services provided at the Sherman Funeral facilities. *Id.* Obviously feeling threatened as a result of receiving these letters, Sherman Funeral ceased displaying the Mark and declined to allow Harry and/or Nieberg Funeral to conduct any funeral services at Sherman Funeral, in abrotation of the agreement between Harry and Sherman Funeral.

As a result, due to Defendants' infringing and tortious behavior, Nieberg Funeral lost, and will continue to lose, the ability to attract and perform services for potential funeral service clients. Therefore, Plaintiffs have suffered and will continue to suffer a loss in reputation and goodwill with the consuming public. Plaintiffs additionally lost any and all potential profits associated with Sherman Funeral conducting funeral services attributable to Harry's business endeavors and/or goodwill. These injuries will only be compounded if Defendants are not enjoined from using the Mark. As such, Plaintiffs have suffered, and will continue to suffer irreparable damages associated with Defendants' infringing use of the Mark and tortious interference in Plaintiffs' business operations.

**D.    Plaintiffs' Likelihood of Success on the Merits is Substantial Under Plaintiffs' Lanham Act Claim.**

Plaintiffs have a substantial likelihood of success on the merits of their claims based on trademark infringement and unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).

Section 43(a) of the Lanham Act provides that:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a

civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a). There is no requirement that a trademark be registered for an action to be maintained under § 43(a) of the Lanham Act, 15 U.S.C. §1125, which is a broad statute encompassing a wide range of unfair trade practices and unfair competition. *See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 61 (2d Cir. 2000).

The well-established test for trademark infringement under § 43(a) is whether the public is likely to be deceived, mistaken or confused about the source of the products or services. *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996); *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993); 15 U.S.C. § 1125(a)(1)(A). The Lanham Act bars a later user from employing a confusingly similar mark, likely to deceive purchasers as to the origin of the later user's product, and one that would exploit the reputation of the first user. *See Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1135 (2d Cir. 1982). In other words, Plaintiffs must establish that Defendants are using a mark confusingly similar to Plaintiffs' own, which Plaintiffs began using at an earlier date.

**1. Nieberg Funeral Owns the Mark.**

Nieberg Funeral owns the Mark. "It is a fundamental principal of trademark law that the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace. The user who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploring the mark commercially." *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 217 (S.D.N.Y. 2007); *Hawaii-Pacific Apparel Group, Inc. v. Cleveland Browns Football Co. LLC*, 418 F. Supp. 2d 501, 505-06 (S.D.N.Y. 2006)(citations and quotations omitted). "The prior user of an unregistered mark is therefore entitled to common law protection for its continued use of the mark in the areas of use that predate registration." *Patsy's Italian Rest.*, at 217; *Architemps, Inc. v. Architemps, Ltd.*, 704 F. Supp. 39, 40 (S.D.N.Y. 1988)(*citing Ace*

*Hardware Co., Inc. v. Ace Hardware Corp.*, 532 F. Supp. 770, 773 (S.D.N.Y. 1982)). Nieberg Funeral was the prior user of the Mark and is therefore entitled to protection.

As indicated above, in or about September 2006, Harry entered into the Sherman Contract wherein Harry, or any Harry-controlled entity, was to receive a percentage of profits on any funeral service conducted at the Sherman Funeral facilities which funeral service was attributable to Harry's business endeavors and/or goodwill. Harry Affidavit at ¶ 8. Consistent with the Sherman Contract, on or about July 26, 2007, Harry registered Nieberg Funeral as an entity with the New York State Department of State and thereafter commenced New York's funeral services licensing process. Harry Affidavit at ¶ 9; *see also* New York State Department of State registration for Harry Nieberg Funeral Home Inc. attached as Exhibit 3. On or after July 26, 2007, Harry assigned his personal rights to the service mark HARRY NIEBERG (the "Mark") to Nieberg Funeral, and Nieberg Funeral subsequently licensed the Mark non-exclusively to Sherman Funeral (the "License"). Harry Affidavit at ¶ 10.

After Sherman Funeral obtained the License, Sherman Funeral displayed the Mark on a placard hung at Sherman Funeral's facilities. Harry Affidavit at ¶ 11; *See* Exhibit 4. During August and September 2007, Sherman Funeral conducted funeral services attributable to Harry's business endeavors and/or goodwill. Harry Affidavit at ¶ 13. As such, Nieberg Funeral used the Mark as a service mark through Sherman Funeral's use of the Mark. Harry Affidavit at ¶ 12.

Thereafter, on October 13, 2007, Midwood Chapel filed Defendants' USPTO Application claiming the Mark as part of Midwood Chapel's claimed ***service mark*** HARRY NIEBERG & SONS. *See* Exhibit 8. Defendants' USPTO Application claimed that the HARRY NIEBERG & SONS mark was being used in commerce as a service mark and that the first date of use was January 1, 1965. *See id.* However, prior to October 13, 2007, Midwood Chapel and/or Midwood Memorial have never claimed HARRY NIEBERG as a service mark. Harry Affidavit at ¶ 19; *see also* USPTO printout indicating no attempts to register any HARRY NIEBERG variation prior to October 13, 2007, attached as Exhibit 10. Furthermore, as described below, it

is apparent that prior to July 26, 2007, neither Midwood Chapel nor Midwood Memorial ever used the Mark, or any derivative thereof, ***as a service mark***. Harry Affidavit at ¶ 20.

Defendants' own filings suggest that Defendants have not used the Mark as a service mark. On October 30, 2007, Defendants filed Defendants' State Complaint. *See* Exhibit 14. Perhaps realizing their error in filing Defendants' USPTO Application claiming the Mark as a service mark, Defendants only asserted claims regarding ***trade name*** infringement and unfair competition. Furthermore, Defendants' Counterclaim in the instant matter only asserts a trade name infringement claim. Therefore, Defendants' claim in Defendants' USPTO Application that Defendants have used the Mark as a service mark since 1965 is unwarranted.

Support that Defendants have not used the Mark as a service mark is demonstrated in Defendants' advertising, which makes clear that ***MIDWOOD is Defendants' trade name*** and service mark. *See* Defendants' Yellow Pages advertisement and photograph of Defendants' storefront signage attached as Exhibit 11. Defendants' Yellow Pages display ad for the Defendants' business is a one-third-page ad for "MIDWOOD Memorial Chapel INC.," with the "MIDWOOD" and "INC." appearing in bold Helvetica and the "Memorial Chapel" appearing in what appears to be a hand-lettered contemporary script not dissimilar to the Coronet typeface, with a flourish of three horizontal lines (the "Yellow Pages Logo"), all flanked by two Stars of David, all set in white reversed against a black background. *Id.* At the bottom of a prominent panel setting forth, in boldface all-caps, with bullet points, a list of services provided by the business, is the sole mention of "Nieberg Midwood Chapel Inc. Affil. HARRY NIEBERG & SONS". *Id.* Beneath this panel is a banner, white reversed against black, stating in large Cyrillic all-caps *Mi govorim pa russki,* "We speak Russian." *Id.*

It is clear from this ad that Defendants' business markets itself to the public principally under the trade name MIDWOOD. This premise is supported by signage at Defendants place of business, wherein the MIDWOOD name appears in perhaps the most visible location on the

1625 Coney Island Avenue building—the corner clock—and is the only name identifying the Business to be transliterated into Russian on building and parking lot signage.[3] *See id.*

Further, Defendants maintain a website at www.midwoodchapel.com (the "Website"). *See* printed version of the "Home" section of the Website attached as Exhibit 12. Nowhere on the Website do Defendants use the Mark, or any variation thereof, as a service mark. *See id.* The reference to "Harry Nieberg" that can be found on the Website is in the "About Us" section that provides the history of the Nieberg family providing funeral services. *See* printed version of "About Us" section of the Website, attached as Exhibit 13.

Thus, prior to Defendants' claimed use of the Mark in the USPTO Application, clearly Defendants marketed to consumers most prominently under the MIDWOOD trade name and service mark. It is further evident from Defendants' advertising and Website that Defendants are not using the Mark as a service mark at all, but are using MIDWOOD.

**2. The Competing Marks are Confusingly Similar.**

Defendants' and Plaintiffs' competing uses of the Mark are confusingly similar. The Second Circuit considers evidence of consumer confusion in light of eight factors, the "*Polaroid* factors," in evaluating a trademark infringement claim. *MetLife, Inc.*, 388 F.Supp.2d at 229; *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36 (1961). "These factors are: (1) strength of the plaintiff's mark, (2) similarity of plaintiff's and defendant's marks, (3) competitive proximity of the products, (4) likelihood that a plaintiff will "bridge the gap" and offer a product of the type that the defendants offer, (5) actual confusion, (6) good faith on the defendant's part, (7) quality of defendant's product, and (8) sophistication of the buyers." *Id.* "The *Polaroid* factors must be considered in the context of how each factor supports or undermines the ultimate issue of whether a consumer will be

---

[3] МИДВУД is the Cyrillic transliteration of, literally, "Meedvood." НАЙБЭРГ, literally "Nayberg," is a rough Cyrillic transliteration of Nieberg, no depiction of or approximating which appears on any signage.

confused by the disputed marks." *MetLife, Inc.*, 388 F.Supp.2d at 229; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986). These factors demonstrate that a likelihood of confusion exists, thus also establishing the likelihood of success on the merits of Plaintiffs' claims. As such, Plaintiffs are entitled to preliminary injunctive relief.

**a. Plaintiffs Own the Mark and the Mark's Strength Weighs in Favor of a Likelihood of Confusion.**

Plaintiffs own the rights in and to the Mark as a service mark, as Plaintiffs used the Mark prior to Defendants' use. The fact that both parties are asserting infringement claims lends support to the premise that the Mark's strength is sufficient to weigh in favor of a likelihood of confusion.

Further, the Mark is strong, as it is distinctive in the pertinent market by indicating to the public the origin of the services provided. "The strength of a mark refers to its distinctiveness, that is to say, the mark's ability to identify goods sold under it as coming from one particular source." *MetLife, Inc.*, 388 F.Supp.2d at 229 (citing *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998)). "Ultimately, the strength of the mark turns on its origin-indicating quality, in the eyes of the purchasing public, so that in a given case whether the mark has acquired secondary meaning is a matter which may be relevant and probative and hence useful in determining the likelihood of confusion." *MetLife, Inc.*, 388 F.Supp.2d at 229 (citing *Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 581 (2d Cir. 1991)) (internal quotation marks omitted).

As the Ninth Circuit held in *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000):

> The more likely a mark is remembered and associated in the public mind with the mark's owner, the greater the protection the mark is accorded by trademark laws. (Citations omitted). This "strength" of the trademark is evaluated in terms of its conceptual strength and commercial strength. (Citations omitted).

As recognized by the Ninth Circuit, even a presumptively weak mark may be transformed into a strong mark by extensive usage, advertising, and recognition. *Brookfield Communs. v. W. Coast*

*Entm't Corp.* , 174 F.3d 1036, 1057 (9th Cir. 1999). Further, this factor is not considered to be as much importance in the context where the services are identical:

> In situations in which the appearance of the conflicting marks and services provided are almost identical, the strength of the mark is of diminished importance in the likelihood of confusion analysis.

*GoTo.com*, 202 F.3d at 1208; *Brookfield*, 174 F.3d at 1059.

Plaintiffs have a strong service mark. As Defendants state in their Counterclaim, the Mark has been used in commerce as part of the trade name HARRY NIEBERG & SONS as early as 1939. *See* Answer and Counter-claim Against Plaintiffs and Additional Counter-claim Defendant, attached as Exhibit 16, at paragraph 41. Nieberg Funeral now owns this Mark. As set forth in Exhibit 1, Nieberg Funeral has used the Mark as a service mark with respect to the offering of funeral home services since at least as early as July 2007. Harry Affidavit at ¶ 20. Further, the Mark does not directly describe the services offered by Nieberg Funeral, but suggests that Harry will be the funeral professsional providing the services as expected by consumers. Because of the extended use of the Mark in the funeral services industry, consumers have come to recognize the Mark in conjunction with providing funeral services. Thus, the strength of the Mark indicates that there is a high likelihood of confusion.

**b. The Likelihood of Confusion is Substantial Because Plaintiffs' and Defendants' Marks are Identical, Used in the Same Competitive Proximity and Used in Conjunction With the Same Services.**

The two competing marks in this case are identical, used in the same competitive proximity and used in conjunction with the same services, thus indicating that confusion is highly likely.

There can be no argument that the two competing marks as used by Plaintiffs and Defendants in this case are identical. Plaintiffs and Defendants both claim use of the mark HARRY NIEBERG. Thus, this factor weighs heavily in favor of a likelihood of confusion.

Further, Plaintiffs' and Defendants' competitive proximity is the same, both geographically and with respect to the market. Plaintiffs and Defendants share the same

geographic proximity. Plaintiffs and Defendants both operate funeral home services in Brooklyn, New York. In fact, Defendants' place of operation, located at 1625 Coney Island Avenue, Brooklyn, New York is only a few blocks from where Plaintiffs' funeral services are provided at 1283 Coney Island Avenue, Brooklyn, New York. Harry Affidavit at ¶ 21. *See also* Internet printout from mapquest.com indicating directions and distance between the two locations, attached as Exhibit 17. Plaintiffs and Defendants also share the same market proximity. Plaintiffs and Defendants both market funeral services primarily to the Jewish community in Brooklyn. Harry Affidavit at ¶ 22. As such, Plaintiffs and Defendants share the same market proximity and geographic proximity, thus indicating a likelihood of confusion.

Both parties are now engaged as well in providing funeral services, further reinforcing that the likelihood of confusion is great. The court is required to consider the likelihood that the parties will engage in the same business at some point in the future. *Nikon Inc.*, 987 F.2d at 95; *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 78 (2d Cir. 1988). If there already is an overlap in the market, the likelihood of confusion is greater. *Id.* In this case, Plaintiffs and Defendants offer and sell the same funeral services. Therefore, in light of the identical services offered by Plaintiffs and Defendants, and Defendants' use of the virtually identical mark, this factor weighs heavily in favor of the likelihood of confusion.

**c. Defendants' Intent to Deceive the Public Indicates Likelihood of Confusion.**

Defendants intentionally began use of the Mark and claimed ownership of the Mark after Defendants were aware that Plaintiffs were already using the Mark. Intentional bad-faith copying of a trademark establishes a presumption that the copier succeeded in causing confusion. *MetLife, Inc.*, 388 F.Supp.2d at 234; *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993). "Where such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, [the Second Circuit has] upheld findings of bad faith." *MetLife, Inc.*, 388 F.Supp.2d at 234 (citing *Paddington* at 587).

This factor favors Plaintiffs when the alleged infringer adopted their mark with actual or constructive knowledge that the infringing mark is another's trademark. *Official Airline Guides v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993)("When an alleged infringer knowingly adopts a mark similar to another, courts will presume an intent to deceive the public"); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157-58 (9th Cir.), *cert. denied,* 374 U.S. 830 (1963) (known use of a trademark identical to that of the trademark owner is strong evidence of intentional infringement and likelihood of confusion). Nevertheless, even if Defendant claims that there was no intent to confuse consumers, such intent is not required for a finding of trademark infringement. *GoTo.com*, 202 F.3d at 1208; *Brookfield*, 174 F.3d at 1059 ("Importantly, an intent to confuse customers is not required for a finding of trademark infringement."); *Dreamwerks Prod. Group v. SKG Studio,* 142 F.3d 1127, 1132 (9th Cir. 1998)("Absence of malice is no defense to trademark infringement.").

On or about July 26, 2007, Harry registered Nieberg Funeral as an entity with the New York State Department of State and thereafter commenced the funeral services licensing process. Harry Affidavit at ¶ 9; *see also* New York State Department of State registration for Harry Nieberg Funeral Home Inc. attached as Exhibit 3. On or after July 26, 2007, Harry assigned Harry's personal rights to the Mark to Nieberg Funeral, and Nieberg Funeral subsequently licensed the Mark non-exclusively to Sherman Funeral. Harry Affidavit at ¶ 10.

After Sherman Funeral obtained the license to the Mark, Sherman Funeral displayed the Mark on a placard hung at Sherman Funeral's facilities. Harry Affidavit at ¶ 11; *see also* photograph of Sherman Funeral facility depicting the placard hung at the Sherman Funeral facilities, attached as Exhibit 4. As such, Nieberg Funeral used the Mark through Sherman Funeral's use of the Mark. Harry Affidavit at ¶ 12. During August and September 2007, Sherman Funeral conducted funeral services which were attributable to Harry's business endeavors and/or goodwill. Harry Affidavit at ¶ 13. Pursuant to the License Harry oversaw and maintained the quality of the funeral services conducted at Sherman Funeral's facilities which

services were attributable to Harry's business endeavors and/or goodwill. Harry Affidavit at ¶ 14.

After commencing use of the Mark, Plaintiffs received both the October 2 Letter and the October 16 Letter demanding that Plaintiffs cease and desist use of the Mark. *See* Exhibits 6 and 7. Furthermore, it was not until October 13, 2007, that Midwood Chapel filed Defendants' USPTO Application claiming the Mark. *See* Exhibit 8. Despite Defendants' USPTO Application claiming the first date of use of the Mark to be January 1, 1965 (*See id.*), prior to October 13, 2007, neither Midwood Chapel nor Midwood Memorial ever claimed HARRY NIEBERG as a service mark. Harry Affidavit at ¶ 19; *see also* Exhibit 10. Furthermore, it is clear as described in detail above that prior to July 26, 2007, neither Midwood Chapel nor Midwood Memorial ever used the Mark, or any derivative thereof, ***as a service mark***. Harry Affidavit at ¶ 20. Defendants' service mark and trade name is MIDWOOD.

Furthermore, as indicated herein, Defendants knew full well that the Stipulation did not prohibit Harry from offering services in the funeral industry or from using Harry's name in conjunction therewith. Yet, Defendants asserted that Plaintiff were in breach of a restrictive covenant against competition. It is therefore clear that Defendants' actions were made in bad faith and meant to deceive the public. As such, Defendants' use of the Mark, as claimed in Defendants' USPTO Application, despite Defendants having notice of Plaintiffs' prior use, causes this factor to weigh in favor of a finding of a likelihood of confusion.

**d. Evidence of Actual Confusion, Degree of Care Likely to be Exercised by Purchasers and Quality of Product are Not Illuminative, But Other Factors Indicate Likelihood of Confusion.**

For purposes of the present balancing of the *Polaroid* factors to establish likelihood of confusion, the factors of evidence of actual confusion, degree of care likely to be exercised by purchasers, and quality of product are not illuminative. The remaining factors, however, reinforce the likelihood of confusion is substantial.

Actual confusion need not be shown to prevail under the Lanham Act; a plaintiff need only establish that there is a likelihood of confusion as to a mark's source. *MetLife, Inc.*, 388 F.Supp.2d at 232; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir.1986). While at this time no actual confusion has been demonstrated, an examination of the applicable remaining *Polaroid* factors makes clear that the likelihood of confusion is great.

Similarly, the quality of Defendants' product is not an issue in the present case. "Generally, quality is weighed as a factor when there is an allegation that a low quality product is taking unfair advantage of the public good will earned by a well-established high quality product." *MetLife, Inc.*, 388 F.Supp.2d at 235 (*citing Gruner + Jahr USA Publishing, Div. Of Gruner + Jahr Printing & Publishing Co. v. Meredith Corp.*, 991 F.2d 1072, 1079 (2nd Cir. 1993)). Here the quality of product has not been raised as a specific issue; however, to the extent that Defendants claim their services are comparable to Plaintiffs' services, the likelihood of confusion is heightened. *See Morningside Group Ltd. v. Morningside Capital Group, LLC,* 182 F.3d 133, 142 (2d Cir. 1999) (noting that comparable quality of service may heighten the likelihood of consumer confusion).

The degree of care and sophistication of the intended consumer is a factor to be considered in evaluating the likelihood of consumer confusion. *Nikon Inc.,* 987 F.2d at 95. In this case, however, Plaintiffs and Defendants both contend infringement. In essence, both parties are asserting that the public is being confused, and, as such, the sophistication of the consumer is not critical.

Plaintiffs have demonstrated that the applicable *Polaroid* factors weigh in Plaintiffs' favor by establishing: Plaintiffs' ownership of and the strength of the Mark; the identical nature of Plaintiffs' and Defendants' marks; the close competitive proximity of the products; that both Plaintiffs and Defendants offer funeral services; the likelihood of confusion despite not having clear evidence of actual confusion; Defendants' intent to use the Mark subsequent to notice of Plaintiffs' use; and that, despite the sophistication of the consumer, the time constraints of purchasing funeral services leads to a decreased degree of care by consumers. As such, a

preliminary injunction enjoining Defendants' use of the Mark is warranted as Defendants' impermissible competing use of the Mark will likely lead to consumer confusion.

**E. Plaintiffs' Likelihood of Success on the Merits is Substantial Under Plaintiffs' Common Law Service Mark Infringement Claim.**

Plaintiffs have a substantial likelihood of success on the merits of their claims for service mark infringement under New York common law.

> Common law liability for unfair competition (which includes trademark infringement) is governed by local law. Federal law, however, serves as persuasive authority because, for many years, it governed these areas almost exclusively and spawned a large body of federal decisions. As with federal law, the common law of trademarks is a portion of the broader law of unfair competition.

*Pennsylvania State Univ. v. University Orthopedics, Ltd.*, 706 A.2d 863, 870 (Pa.Super. 1998) (*citing Goebel Brewing Co. v. Esslingers, Inc.*, 373 Pa. 334, 95 A.2d 523, 525-26 (1953)). "We note that, unlike federal trademark infringement that provides national protection, the legal rights protected by common law infringement and unfair competition actions are limited to the territory in which the use is established." *Powder River Oil Co. v. Powder River Petroleum Corp.*, 830 P.2d 403, 407-08 (Wyo. 1992).

The Second Circuit has held that "[t]o prevail on a statutory or common law claim of trademark infringement, a party must establish that the symbols for which it seeks trademark protection are valid, legally protectable marks and that another's subsequent use of a similar mark is likely to create confusion as to the origin of the product." *Tri-Star Pictures v. Leisure Time Prods., B.V.*, 17 F.3d 38, 43 (2d Cir. 1994)(applying New York common law). As indicated *supra*, Plaintiffs have established that the Mark is protectable, that Defendants' use of the Mark postdates Plaintiffs' prior use of the Mark, and that Defendants' impermissible use of

the mark creates a strong likelihood of confusion. Therefore, preliminary injunctive relief is appropriate, as Plaintiffs are likely to prevail on Plaintiffs' common law infringement claim.

### F. Plaintiffs' Likelihood of Success on the Merits is Substantial Under Plaintiffs' Common Law Unfair Competition Claim.

Plaintiffs have a substantial likelihood of success on the merits of their claims based on unfair competition under New York law. "In order to sustain a common-law cause of action to recover damages for unfair competition through the use of a trade name, the plaintiff must establish that the defendant's acts 'constituted an unfair appropriation or exploitation of any special quality attached to plaintiff's name.'" *Telford Home Assistance v. TPC Home Care Servs.*, 211 A.D.2d 674, 675 (N.Y. App. Div. 1995)(*citing Buffalo Packaging Corp. v Buff-Pac, Inc.*, 155 A.D.2d 877, 878 (N.Y. App. Div. 1995)). Plaintiffs have demonstrated the foregoing in this case.

As indicated *supra*, Plaintiffs began use of the Trade Name and Mark in July 2007. Plaintiffs registered the Trade Name on July 26, 2007 with the New York Department of State in connection with provision of funeral services. On or after July 26, 2007, Harry then assigned Harry's personal rights to the Mark to Nieberg Funeral, and Nieberg Funeral subsequently licensed the Mark non-exclusively to Sherman Funeral. Sherman Funeral then displayed the Mark at Sherman Funeral's facilities to attract consumers. During August and September 2007, Sherman Funeral conducted funeral services which were attributable to Harry's business endeavors and/or goodwill.

Defendants began use of, and are presently using, a trade name that exactly incorporates the Mark in connection with the offering of identical funeral services on or around October 2007.

Defendants' October 2 Letter and October 16 Letter evidence Defendants' claim to and use of the Mark. However, Defendants' claim in Defendants' USPTO Application that

Defendants first used the Mark in 1965 is unsubstantiated. Prior to October 13, 2007, neither Midwood Chapel nor Midwood Memorial ever claimed (either federally or in-state) HARRY NIEBERG as a service mark. Furthermore, it is apparent that prior to July 26, 2007, neither Midwood Chapel nor Midwood Memorial ever used the Mark, or any derivative thereof, as a service mark.

Therefore, Defendants' use of the Mark as an element of the HARRY NIEBERG & SONS mark is a misappropriation of and exploitation of Plaintiffs' Mark which is likely to cause confusion or mistake or result in deception, as to the source of origin of services provided by Defendants, and preliminary injunctive relief is appropriate.

**G. Plaintiffs' Likelihood of Success on the Merits is Substantial Under Plaintiffs' Tortious Interference With Contract Claim.**

Plaintiffs have a substantial likelihood of success on the merits of their claims based on tortious interference with contract claims. In New York, the elements of a tortious interference with contract claim are: (1) existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of a breach of the contract without economic justification; and (4) resulting damages. *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424 (1996). Furthermore, case law supports a grant of injunctive relief to enjoin tortious interference conduct without the need for a movant to establish actual damages. *See Telerate Systems, Inc. v. Caro*, 689 F.Supp. 221 (S.D.N.Y. 1999); *American Para Professional Systems, Inc. v. Labone, Inc.*, 175 F. Supp. 2d 450 (E.D.N.Y.2001). In the present case, the elements of this cause of action are satisfied and, therefore, injunctive relief is appropriate.

The first element of this cause of action is met as a contract existed between Plaintiffs and a third party, Sherman Funeral. This contract is evidenced by Sherman Funeral's licensing of the Mark and Trade Name and display of the Mark and Trade Name at the Sherman Funeral facilities.

The second elements is established through Defendants' acts. Defendants' knowledge of the contract is evidenced by Defendants' acts of sending the October 2 Letter and the October 16 Letter

to Harry and to Sherman Funeral. If Defendant did not strongly believe a contractual relationship existed between Harry and Sherman Funeral, Defendants would not have sent the letters to Sherman Funeral. Therefore, Defendants were aware of some contractual relationship between Plaintiffs and Sherman Funeral.

The third element of this cause of action is fulfilled as a result of Defendants' October 2 Letter and October 16 Letter. In the October 16 Letter, Defendants specifically threatened to institute suit for injunctive relief and other relief against Sherman Funeral if Sherman Funeral failed to confirm that the name "Harry Nieberg Funeral Home" would not be used in connection with funeral homes or services provided at the Sherman Funeral facilities. *Id.* Feeling threatened as a result of receiving these letter, Sherman Funeral ceased displaying the Mark and declined to allow Harry and/or Nieberg Funeral to conduct any funeral services at Sherman Funeral, in contravention of the agreement between Harry and Sherman Funeral.

As a result of these interfering actions by Defendants, Plaintiffs suffered damages. Nieberg Funeral lost the ability to attract potential funeral service clients and, therefore, lost all potential profits associated with Sherman Funeral conducting funeral services attributable to Harry's business endeavors and/or goodwill. Therefore, as all the elements to establish a tortious interference with contract claim have been demonstrated, Plaintiffs are entitled to preliminary injunctive relief with respect to this claim.

Defendants have contended in Defendants' counterclaim that Harry's sale of his one-third interest in the Defendant corporations to Peter and Stanley gave rise to an implied covenant of non-competition. However, the Stipulation contains no restrictive covenant against competition. Furthermore, the Stipulation contains a integration clause at Paragraph 24 that states:

> This Stipulation and the Exhibits hereto contain the entire agreement between the parties hereto with respect to the matters contained in this Stipulation. This Stipulation supercedes [*sic*] all prior written and oral agreements and any prior representation, statement, condition or warranty. No variation, modification or change herein or any waiver of any provision hereof shall be binding unless set forth in a document duly executed by or on behalf of each of the parties hereto.

This integration clause makes it clear that the Stipulation, as signed, constituted the full agreement between the parties. Again, the Stipulation contains no restrictive covenant against competition, nor has any modification or change been executed by each of the parties that evidences any such restrictive covenant. Allowing Defendants to now argue that an implied contract existed that is contrary to the bargained-for express contract contradicts not only express integration clause of the Stipulation but the above-cited case authority. As such, Defendants should be precluded from arguing that an implied covenant against competition existed.

Furthermore, the only context in which parol evidence should be examined is to interpret the Stipulation if the Stipulation was ambiguous, ***not to prove that an implied contract existed***. "If a contract is unambiguous on its face, the parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable." *Waldman v. Riedinger*, 423 F.3d 145, 149 (2d Cir. 2005); *County of Suffolk v. Alcorn*, 266 F.3d 131, 138 (2d Cir. 2001) (applying New York law). While Plaintiff is in no way prepared to stipulate as to the ambiguity of the Stipulation, Defendants have opened the door to the premise that the Stipulation is ambiguous by claiming an implied agreement against competition.

Given that Defendants have in essence claimed the Stipulation is ambiguous, extrinsic evidence may be examined; however, such intrinsic evidence may only be examined to interpret the provisions of the Stipulation, *not to prove that an implied contract existed*. Even if extrinsic evidence was examined to interpret the Stipulation, it is still clear that Harry did not agree to a non-competition clause, nor did Harry agree that he would not use his name in conjunction with the offering of funeral services. Specifically, in correspondence from A. Scott Mandelup, Esq. to Ronald J. Offenkrantz, Esq., Mr. Mandelup stated on Harry's behalf that "[a]bsent the duration of an agreed upon and compensated restrictive covenant, Harry has no intention of giving up the right to use his name in the funeral home business, or otherwise." *See* e-mail correspondence from Scott Mandelup to Ronald J. Offenkrantz dated April 6, 2006 attached as Exhibit 2.

Although the parties discussed a restrictive covenant, no such covenant was agreed upon and incorporated into the governing Stipulation. Thus it is clear that Defendants' acts to stop Plaintiffs from operating Plaintiffs' business and to stop Sherman Funeral from working in conjunction with Plaintiffs contravene the express provisions of the Stipulation.

### H. Plaintiffs' Likelihood of Success on the Merits is Substantial Under Plaintiffs' Tortious Interference with Prospective Economic Advantage Claim.

If this Court finds that no contract existed between Plaintiffs and Sherman Funeral to be breached by Sherman as a result of the acts of Defendants, Plaintiffs have a substantial likelihood of success on the merits of their claim for tortious interference with prospective economic advantage. In New York, a cause of action for tortious interference with prospective economic advantage "requires the plaintiff to show: (1) the existence of a business relationship between the plaintiff and a third party; (2) the defendants' interference with that business relationship; (3) that the defendants acted with the sole purpose of harming the plaintiff ***or*** used dishonest, unfair, improper or illegal means that amounted to a crime or an independent tort; and (4) that such acts resulted in the injury to the plaintiff's relationship with the third party." *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 424 (1996)(emphasis supplied); *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 189, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004); *see NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,* 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996); *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980). "[T]he defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Fonar Corp. v. Magnetic Resonance Plus*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997). Furthermore, "if the defendant's interest is intended, at least in part, to advance its own competing interests, the claim [for tortious interference with prospective economic advantage] will fail unless the means employed include criminal or fraudulent conduct." *Id., citing PPX Enterprises v. Audio Fidelity Enterprises*, 818 F.2d 266, 269 (2d Cir. 1987). Each of these elements are satisfied in the instant case.

The first element of this cause of action is met by the existence of a business relationship at a minimum between Plaintiffs and a third party, Sherman Funeral. This contract is evidenced by Sherman Funeral's license of the Mark and Trade Name and display of the Mark and Trade Name at the Sherman Funeral facilities.

As established above, Defendants interfered with the business relationship between Plaintiffs and Sherman Funeral. Plaintiffs' contract with Sherman Funeral was direct, as the elements of the tort require. Defendants sent the October 2 Letter and the October 16 Letter to Harry and Sherman Funeral. The October 16 Letter specifically threatened to institute suit for injunctive relief and other relief against Sherman Funeral if Sherman Funeral failed to confirm that the name "Harry Nieberg Funeral Home" would not be used in connection with funeral homes or services provided at the Sherman Funeral facilities. *Id.* Feeling threatened as a result of receiving these letters, Sherman Funeral ceased displaying the Mark and declined to allow Harry and/or Nieberg Funeral to conduct any funeral services at Sherman Funeral, in contravention of the agreement between Harry and Sherman Funeral. Thus, Defendants did interfere with the business relationship between Sherman Funeral and Plaintiffs.

The third element of this cause of action is fulfilled through the fraudulent nature of Defendants' October 2 Letter and October 16 Letter. Defendants threatened to institute suit against Sherman Funeral if Sherman Funeral failed to stop using the Mark in connection with funeral homes or services provided at the Sherman Funeral facilities. However, Defendants claims of ownership and rights in and to the Mark in the October 2 Letter and October 16 Letter are fraudulent. Neither Midwood Chapel or Midwood Memorial have ever used the Mark as a service Mark or registered the Mark. Further, Midwood Chapel did not submit an application for federal registration of the Mark until October 13, 2007 after the October 2 Letter was sent and well after the Plaintiffs were using the Mark. As such, Defendants' fraudulent claim of ownership of the Mark, which caused Sherman Funeral to cease relations with Plaintiffs, amounts to a wrongful interference.

As a result of Defendants' wrongful interference, Plaintiffs suffered damages. Nieberg

Funeral lost the ability to attract potential funeral service clients and, therefore, lost all potential profits associated with Sherman Funeral conducting funeral services attributable to Harry's business endeavors and/or goodwill. Therefore, as all the elements to establish a tortious interference with prospective economic advantage claim have been demonstrated, Plaintiffs are entitled to preliminary injunctive relief with respect to this claim.

### I. Plaintiffs' Likelihood of Success on the Merits is Substantial Under Plaintiffs' Declaratory Relief Claim

Plaintiffs have a substantial likelihood of success on the merits of their declaratory relief claim. As outlined above, Section 43(a) of the Lanham Act provides that:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a). As such, the Lanham Act bars a later user from employing a confusingly similar mark, likely to deceive purchasers as to the origin of the later user's product, and/or to exploit the reputation of the first user. *See Spring Mills* 689 F.2d at 1135. Furthermore, there is no requirement that a trademark be registered for an action to be maintained under Section 43(a) of the Lanham Act, 15 U.S.C. §1125, which is a broad statute encompassing a wide range of unfair trade practices and unfair competition. *See EMI Catalogue,* 228 F.3d at 61. In other words, Plaintiffs must establish that Defendants are using a mark confusingly similar to Plaintiffs' own, which Plaintiffs began using at an earlier date.

As described in detail *supra*, Plaintiffs can establish that Defendants are using a mark identical to the Mark used by Plaintiffs, which mark Plaintiffs began using at an earlier date. As such, pursuant to 15 U.S.C. §1125(a), Defendants' should be enjoined from using the Mark, or any similar representation thereof, and a preliminary injunction is appropriate.

**J.    Plaintiffs Have Raised Sufficiently Serious Questions Going to the Merits to Make Those Questions Fair Ground for Litigation, and The Balance of Hardships Tips Decidedly In Plaintiffs' Favor**

Even if Plaintiffs have not established a likelihood of success on the merits, Plaintiffs have unquestionably raised sufficiently serious questions going to the merits to make those questions grounds for litigation, and the balance of hardships tips decidedly in Plaintiffs' favor. As the preceding argument indicates, Plaintiffs have raised serious questions on the merits with respect to each of Plaintiffs' causes of action. Furthermore, the balance of hardships decidedly tips in Plaintiffs' favor. Therefore, preliminary injunctive relief is appropriate.

As indicated *supra*, Defendants have not used the Mark as a service mark. Instead MIDWOOD is the service mark (and trade name) that has been used by Defendants. This is demonstrated in Defendants' Yellow Pages display advertisement, which is a one-third-page ad for "Midwood Memorial Chapel INC." *See* Exhibit 11. There the sole mention of "Harry Nieberg" is printed at the bottom of a panel describing services offered and stating "Nieberg Midwood Chapel Inc. Affil. HARRY NIEBERG & SONS". *See id.* Further, nowhere on Defendants' Website do Defendants use the Mark, or any variation thereof, as a service mark. *See* Exhibit 12. The only reference to "Harry Nieberg" that can be found on the Website is in a section of the Website dealing with the history of the Nieberg family. *See* Exhibit 13. Instead the mark and Trade name used by Defendants is MIDWOOD. Thus, enjoining Defendants from using the Mark would cause little hardship to Defendants.

Conversely, Plaintiffs will suffer great hardship if Defendants are not enjoined from using the Mark. As indicated above, Harry has a right to use his given name as the Mark. No one by the name of Harry Nieberg is even affiliated with Defendants. Requiring Harry to give up use of his name in the marketplace or to compete with another entity using his name in the marketplace that is providing the same services, would create great hardship to Harry. Harry would have to battle against lost and potentially lost profits as well as against damage to his reputation, business and goodwill. Thus, the balance of hardships tips decidedly in favor of Plaintiffs and injunctive relief must be granted.

## IV. CONCLUSION

Plaintiffs are entitled to a preliminary injunction (*see* proposed order attached hereto as Exhibit 18) as Plaintiffs have demonstrated a combination of probable success on the merits and the possibility of irreparable injury stemming from the likelihood of confusion as set forth above. For the foregoing reasons, Plaintiffs request that this Court grant this Motion For Preliminary Injunction.

Dated:  March 24, 2008.
City, State:  New York, New York

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By    /s/ **Joseph F. Uvino**
Joseph F. Uvino, Esq. (JU-9152)
199 Water Street, 25th Floor
New York, New York 10038
(212) 232-13001
*Attorneys for Plaintiffs Harry Nieberg and
Harry Nieberg Funeral Home Inc.*

TO:

Ronald J. Offenkrantz, Esq.
LICHTER GLIEDMAN OFFENKRANTZ PC
551 Fifth Avenue
New York, NY 10176
(212) 867-7750
Attorneys for Defendants and Counterclaim Plaintiffs

Michael H. Smith, Esq.
ROSENBERG FELDMAN SMITH, LLP
551 Fifth Avenue
New York, NY 10176
(212) 682-3454
Attorneys for Defendants and Counterclaim Plaintiffs (Trial Counsel)

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P. 5(b), I certify that I am an employee of LEWIS BRISBOIS BISGAARD & SMITH LLP and that on this 24th day of March, 2008, I did cause a true copy of the **MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** to be served via CM/ECF on:

Ronald J. Offenkrantz, Esq.
LICHTER GLIEDMAN OFFENKRANTZ PC
551 Fifth Avenue
New York, NY 10176
(212) 867-7750
Attorneys for Defendants and Counterclaim Plaintiffs

Michael H. Smith, Esq.
ROSENBERG FELDMAN SMITH, LLP
551 Fifth Avenue
New York, NY 10176
(212) 682-3454
Attorneys for Defendants and Counterclaim Plaintiffs (Trial Counsel)

By /s/ Raisha Gibson
An Employee of
LEWIS BRISBOIS BISGAARD & SMITH LLP

# EXHIBIT "1"

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRY NIEBERG, an individual, and HARRY NIEBERG FUNERAL HOME INC., a New York corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NIEBERG MIDWOOD CHAPEL INC., a New York Corporation; MIDWOOD MEMORIAL CHAPEL INC., a New York corporation,<br><br>Defendants. | Case No. : 08 CV 00392<br><br>**AFFIDAVIT OF HARRY NIEBERG** |

**AFFIDAVIT OF HARRY NIEBERG**

**STATE OF NEW YORK** )
) **ss:**
**COUNTY OF KINGS** )

I, Harry Nieberg being first duly sworn, deposes and says:

1. I am an individual Plaintiff and managing member of Plaintiff, Harry Nieberg Funeral Home Inc. ("Nieberg Funeral") in a lawsuit currently pending in the United States District Court for the Southern District of New York, Case No. 08 CV 00392. I am over eighteen years of age and I am competent to testify regarding the events described herein and do so based on personal knowledge.

2. As late as March 1997, I and my brothers, Peter J. Nieberg ("Peter") and Stanley J. Nieberg ("Stanley") each became one-third shareholders of Nieberg Midwood Chapel Inc. ("Midwood Chapel") and Midwood Memorial Chapel Inc. ("Midwood Memorial").

3. On or about August 2004, I filed for dissolution of Midwood Chapel and Midwood Memorial (the "Dissolution Proceedings").

4. A Stipulation of Settlement and Order ("the Stipulation") resolving the dissolution dispute without requiring the dissolution of Midwood Chapel and Midwood Memorial was signed by me, the other parties to the dissolution proceedings and by the Court on or about

August 16, 2006.

5.      The parties to the Dissolution Proceedings heavily negotiated regarding the possible inclusion of certain provisions in the Stipulation, one such provision being a non-competition clause containing the language "Effective on Closing, Harry agrees not to solicit customers or employees of the Corporations, or to engage in, or allow his name to be used, in connection with any funeral home or mortuary business in Kings County, New York for the one year period from May 1, 2006 through and including April 30, 2007 (the Non-competition Clause"). The parties, however, agreed that the Non-competition Clause would not be included in the Stipulation, nor would any other restrictive covenant against competition or solicitation.

6.      The Stipulation executed by all parties to the Dissolution Proceedings contains no restrictive covenant against competition or competition.

7.      On or about September of 2006, I entered into a contract ("Sherman Contract") with the Sherman Funeral Home, Inc. ("Sherman Funeral"), located at 1283 Coney Island Avenue, Brooklyn, New York 11230.

8.      Pursuant to the Sherman Contract, I or any entity I controlled, was to receive a percentage of profits on any funeral service conducted at the Sherman Funeral facilities which funeral service was attributable to my business endeavors and/or goodwill.

9.      On or about July 26, 2007, I registered Nieberg Funeral as an entity with the New York Department of State and thereafter commenced the funeral services licensing process.

10.     On or after July 26, 2007 I assigned my personal rights to the service mark HARRY NIEBERG (the "Mark") to Nieberg Funeral and Nieberg Funeral subsequently licensed the Mark non-exclusively to Sherman Funeral (the "License").

11.     After Sherman Funeral obtained the license to the Mark, Sherman Funeral displayed the Mark at Sherman Funeral's facilities.

12.     I have, and Nieberg Funeral has, used the Mark with respect to the offering of funeral home services since at least as early as July, 2007 through Sherman Funeral's use of the Mark.

13.   During the months of August and September, 2007 Sherman Funeral conducted services which were attributable to my business endeavors and/or good will.

14.   Pursuant to the License, I oversaw and maintained the quality of the funeral services conducted at Sherman Funeral's facilities which services were attributable to my business endeavors and/or good will.

15.   On or about October 2, 2007, I and Nieberg Funeral received a cease and desist letter, (the "October 2nd Letter), which was copied to Sherman Funeral, from Defendants' counsel demanding that I, Nieberg Funeral and Sherman Funeral cease "trading under the name of "Harry Nieberg Funeral Home" and to instruct all publications that the Harry Nieberg Funeral Home is no longer to be advertised in those publications.

16.   On or about October 16, 2007, Defendants' counsel sent a second letter (the "October 16th Letter") to me and to Sherman Funeral, in which Defendants demanded that Sherman Funeral "refrain from using the name Harry Nieberg funeral Home in connection with any funeral services performed by you or your establishment."

17.   After receiving the October 2nd Letter and the October 16th Letter, Sherman Funeral removed the placard bearing the Mark and declined to allow me and/or Nieberg Funeral to conduct any funeral services at Sherman Funeral.

18.   Resultantly, I and Nieberg Funeral lost the ability to attract potential funeral service clients and, therefore, lost any and all potential profits associated with Sherman Funeral conducting funeral services attributable to my business endeavors and/or goodwill.

19.   On information and belief, Defendants' filed a United States Patent and Trade Mark Application ("USPTO Application") claiming the first date of the use of the Mark to be January 1, 1965; however, prior to October 13, 2007, Midwood Chapel and/or Midwood Memorial never claimed HARRY NIEBERG as a service mark.

20.   On in formation and belief, prior to July 26, 2007, neither Midwood Chapel and/or Midwood Memorial ever used the Mark, or any derivative thereof, as a service mark.

21.   Defendants' place of operation, located at 1625 Coney Island Avenue, Brooklyn,

New York is within only a few blocks of where my funeral services are provided at 1283 Coney Island Avenue, Brooklyn, New York.

22. I, through Nieberg Funeral, and Defendants both market funeral services primarily to the Jewish community in Brooklyn, New York.

Dated: March 24, 2008.
City, State: New York, New York

HARRY NIEBERG, individually and as Owner of HARRY NIEBERG FUNERAL HOME INC.

Sworn to before me this
24 day of March, 2008.

\- Notary Public -

EDWARD G. DUNN, JR.
Notary Public, State of New York
No. 01DU1045950
Qualified in Kings County
Commission Expires 6/30/11

# EXHIBIT "2"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

--------------------------------------------------------------X

Application of HARRY NIEBERG,

Petitioner,

For the Judicial Dissolution of Nieberg Midwood Chapel Inc. and Midwood Memorial Chapel, Inc.,

Respondents.

--------------------------------------------------------------X

Index No.: 04-25241

IAS Part 32

**STIPULATION OF SETTLEMENT AND ORDER**, made as of August 4, 2006, between Petitioner, Harry Nieberg (**"Harry"**) and Respondents, Nieberg Midwood Chapel Inc. (**"Nieberg"**) and Midwood Memorial Chapel, Inc. (**"Midwood"**), and Midwood Memorials, Inc. (**"Memorials"**), Stanley Nieberg (**"Stanley"**), Peter Nieberg (**"Peter"**); (collectively, Nieberg, Midwood, Memorials, Stanley, and Peter being "**Purchasers**") and Pryor & Mandelup, L.L.P. (**"P&M"**) as escrow agent (the "**Escrow Agent**").

**WHEREAS**, Nieberg is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 1625 Coney Island Avenue, Brooklyn, New York, 11230, designated on the Kings County Tax Map as Section 20, Block 6731, Lot 56 (the **"Premises"**) and

**WHEREAS**, Nieberg operates a funeral home at the Premises; and

**WHEREAS**, Nieberg is the owner of the fee interest in the real property located at 1122 Chestnut Avenue, Brooklyn, New York 11230, which is used as a parking lot by Nieberg and Midwood (collectively, the **"Corporations"**), and which is designated on the Kings County Tax Map as Section 20, Block 6740, Lot 11 (the **"Parking Lot"**); and

**WHEREAS**, Midwood is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at the Premises; and

**WHEREAS,** Midwood is the owner of the fee interest in the Premises; and

**WHEREAS,** the Corporations own grave sites at Beth-El Cemetery, located in Paramus, New Jersey (**"Beth-El Cemetery"**); and

**WHEREAS,** Harry, Stanley, and Peter each are one-third shareholders of each of the Corporations;

**WHEREAS,** Memorials is a corporation duly organized and existing under the laws of the State of New York, engaged in the sale of headstones and monuments for grave sites; and

**WHEREAS,** Midwood is the sole shareholder of Memorials and Stanley and Peter are its officers and directors; and

**WHEREAS,** on August 11, 2004, Harry filed a petition in the above-captioned proceeding seeking the judicial dissolution of the Corporations (the **"Petition"**), pursuant to New York Business Corporation Law (**"BCL"**) § 1104-a (a)(1) and (2); and

**WHEREAS,** Peter, Stanley, Nieberg and Midwood duly elected to purchase the Harry Shares of each of the Corporations pursuant to BCL § 1118(a) and (b), and

**WHEREAS,** on or about February 9, 2006, Harry filed and served an Amended Petition for judicial dissolution of the Corporations, dated February 3, 2006 (the **"Amended Petition"**) adding a cause of action for a constructive trust over the Premises and the Parking Lot; and

**WHEREAS,** a Stipulation and Order dated November 3, 2004 was heretofore entered into by Purchasers and Harry, and so ordered by the court (the **"Court"**) in the above-action (the **"Standstill Agreement"**); and

**WHEREAS**, Harry caused to be filed, on or about February 9, 2006, in the Office of the Clerk of Kings County a Notice of Pendency (the **"Notice of Pendency"**) against the Premises and the Parking Lot; and

**WHEREAS**, Nieberg maintains a tax qualified defined benefit pension plan entitled "The Harry Nieberg & Sons, Inc. Defined Benefit Pension Plan" (the **"Pension Plan"**); and

**WHEREAS**, the Pension Plan is the holder and/or beneficial owner of Account No. 840-05654 at Merrill Lynch (**"Merrill"**) under the name "Peter Nieberg, TTEE Nieberg Midwood Chapel U/A 12/31/74" (the "**Merrill Account**") and Account No. 34-5051268-0 at Emigrant Savings Bank (**"Emigrant"**) under the name "Nieberg Midwood Chapel Inc. Pension Plan" (the "**Emigrant Account**") ; and

**WHEREAS**, the beneficiaries of the Pension Plan consist of: (i) Harry, Stanley, and Peter (the **"Key Employees"**) and B. Sabo, A. Hartman, I. Teplitsky, P. Kotropolous and M. Havlena (the **"Non-Key Employees"**); and

**WHEREAS**, as of May 31, 2006 there was a balance of $11,079.59 in the Emigrant Account and as of June 30, 2006 there was a balance of $425,198.37 in the Merrill Account (the Merrill Account and the Emigrant Account, together with any other accounts held in the name of the Pension Plan hereafter are referred to collectively as the **"Pension Accounts"**); and

**WHEREAS**, the Corporations, Stanley, and Peter each hereby represent and warrant that there are not now and, to their respective knowledge, have not been any other accounts in which Pension Plan funds have been deposited except Wachovia Account No. OKK966955-18, the proceeds of which were transferred to the Merrill Account; and

**WHEREAS**, the Corporations, Stanley, and Peter hereby represent and warrant that there is presently an outstanding loan made from the Pension Plan to Peter, having a principal balance in the amount of $18,543 as of May 16, 2006 (the **"Peter Pension Loan"**) and that any other loans, payments, withdrawals or distributions to the Key Employees from the Pension Plan Accounts have been repaid in full; and

**WHEREAS**, the third-party administrator of the Pension Plan, PPC (the **"Third-Party Administrator"**) has advised the parties that the sum of $153,596.93 is expected to be needed to make full distributions to the Non-Key Employees upon termination of the Pension Plan, and to make minimum required contributions to the Pension Plan, the sum of $90,000.00 must be contributed by the Corporations for 2005 and 2006, and after the payment in full of distributions to the Non-Key Employees, the balance remaining in the Pension Plan accounts may be distributed *pro-rata* to the Key Employees in relation to their vested interests in the Pension Plan which are as follows: (i) Harry - 49 %; (ii) Stanley - 36 %; and (iii) Peter - 15 %; and

**WHEREAS**, the Pension Plan owns policies of cash surrender value life insurance on each Key Employee (the **"Key Employee Life Insurance"**), including the following policies insuring Harry's life: Policy No. 44-928-760 with a cash surrender value of $101,673.71, Policy No. 45-274-942 with a cash surrender value of $30,706.00, and Policy No. 46-203-848 with a cash surrender value of $3,072.30, and the Corporations, Stanley and Peter represent there are no outstanding premiums or other charges due on the Key Employee Life Insurance; and

**WHEREAS**, the parties have agreed to settle the above-captioned proceeding and all disputes between them on the following terms and conditions;

I:\CLIENT FILES\Nieberg\StlmtStip 08-07-06.wpd

**NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES, COVENANTS, AND AGREEMENTS CONTAINED HEREIN, IT IS HEREBY STIPULATED AND AGREED, AS FOLLOWS:**

1. **Whereas Clauses.** The foregoing paragraphs hereby are incorporated herein as part of this Stipulation.

2. **Effective Date.** This Stipulation shall become effective (the "**Effective Date**") upon the Court "so ordering" this Stipulation.

3. **Calculation of Purchase Price.** On the Closing Date (as defined below), Purchasers agree to purchase all shares of stock in Nieberg and Midwood owned by Harry (collectively, the "**Harry Shares**") for an aggregate purchase price of: (a) $2,500,000 less the balance then remaining in the escrow held by P&M pursuant to the Standstill Agreement (the "**P&M Standstill Escrow**") into which Harry deposited $30,000 pursuant to court order, in which there remains, as of the date hereof, $297.37 ("**Cash Purchase Price**") plus (b) causing the Corporations to deliver to Harry the deed (annexed as Exhibit A hereto) transferring to Harry title to the Harry Graves (as defined in Paragraph 4(B) herein). Through and including the full performance of all obligations provided for in Paragraph 4 herein (the "**Closing**") Harry shall be entitled to continue receiving salary, benefits, and expenses from the Corporations, and expense reimbursement payments from the P&M Standstill Escrow, pursuant to the terms of the Standstill Agreement. Purchasers shall have the right to designate which of them is the purchaser of the Harry Shares, which shares may be purchased by different Purchasers.

4. **Closing of Transactions.** The Closing of all transactions hereunder (except as to the Pension Plan) shall occur no more than thirty (30) days after the Effective Date the ("**Closing Date**") at the offices of counsel to Purchasers' lender ("**Lender**") or as designated by Lender, at 10:00 A.M. on such date. If the Closing does not occur on or before the Closing Date, this

Stipulation (except for Paragraph 11) shall be null and void, unless the Closing Date is extended by mutual written agreement of the parties executed by their respective counsel on their behalfs on or before the Closing Date. At Closing the following shall occur:

A. **Cash Purchase Price**. The Purchasers shall pay the Cash Purchase Price by wire transfer to P&M, as attorney for Harry, or by delivery to P&M prior to Closing or by delivery to Harry at the Closing of an official bank check, payable to "Harry Nieberg" in the amount of the Cash Purchase Price, without set-off, counterclaim or withholding of any kind whatsoever.

B. **Delivery of Grave Sites**. The Corporations shall cause to be delivered to Harry a cemetery deed (in the form annexed hereto as Exhibit A) duly executed by both Peter and Stanley, as officers of the Corporations, transferring to Harry all right, title, and interest in and to the eight (8) grave sites at Beth-El Cemetery listed on Exhibit B hereto which graves shall be for the personal use of Harry and his Family (collectively, the "**Harry Graves**") and the Corporations shall deliver to Harry a check payable to Beth-El Cemetery in the amount of $800.00. Purchasers make no representation as to whether the cemetery will recognize and/or record such deed. Harry and Purchasers agree to execute such additional documents as may be necessary in connection with delivery of title to the Harry Graves to Harry. The Corporations, Stanley, and Peter hereby represent and warrant that, at the time of Closing, the Harry Graves shall not be subject to any lien, claim, encumbrance or interest whatsoever and all required payments to the requisite maintenance and preservation fund(s) for all of the Harry Graves due through Closing shall have been paid in full when delivered to Harry. The Corporations, Stanley, and Peter jointly agree to refrain from taking any action to limit or restrict Harry's right to use the

Harry Graves for himself or his family or to allow any lien or transfer of the Harry Graves except such liens as are caused by Harry failing to comply with any payment or other obligation regarding the Harry Graves arising after Closing. Harry agrees to pay any expenses and fees relating to the Harry Graves and to perform all obligations regarding them from and after Closing.

C. **Transfer of the Harry Shares**. Harry shall execute and deliver to the Corporations lost certificate affidavits for the Harry Shares together with stock powers therefor (all in the forms annexed hereto as Exhibit C). Harry represents that there are not now, and will not be, as of the Closing, any liens, claims or encumbrances against the Harry Shares. The Purchasers shall be responsible, jointly and severally, for all transfer taxes and other expenses (excluding income taxes) arising from the transfer of the Harry Shares.

D. **LGO Escrow**. The escrow of $350,000 with LGO (**"LGO Escrow"**) shall be released to or as directed by the Corporations.

E. **Company Automobile**. Harry shall deliver to the Corporations the vehicle leased by the Corporations for Harry's use, in current condition.

F. **2005 Forms K-1 and W-2**. Midwood shall duly issue and deliver to Harry Form K-1 and Nieberg shall deliver a Form W-2 for the tax year 2005.

G. **Stipulation Vacating Notice of Pendency**. Harry shall deliver a duly executed Cancellation of Notice of Pendency in the form required by the Corporations' title insurer.

H. **Discontinuance of Action**. Harry shall deliver to LGO a duly executed Stipulation- of Discontinuance of this action, with prejudice, in the form annexed hereto as Exhibit D for immediate filing by LGO with the Court.

I. **P&M Standstill Escrow**. The P&M Standstill Escrow shall be released by P&M to Harry.

  J. **Paige/Gertrude Releases**. The Corporations, Stanley and Peter shall cause Jaime Paige LLC (**"Paige"**) and Gertrude Nieberg (**"Gertrude"**) to deliver general releases to Harry substantially the same as the releases set forth in Paragraph 4(M) below together with a representation letter from Paige as to due organization, good standing and authority and from Paige and Gertrude as to enforceability and representation by counsel.

K. **Pension Judgment Escrow**. The Purchasers shall deliver to Escrow Agent, to be held in escrow (the **"Pension Judgment Escrow"**), duly executed Affidavits of Confession of Judgment, in the forms annexed hereto as Exhibit E, consenting to entry of judgment in favor of Harry and against Purchasers, jointly and severally, in the amount of $291,160.78, the approximate amount of the anticipated distribution to Harry from the Pension Plan and Pension Accounts (the **"Pension Judgment"**).

L. **Release to Purchasers and Others** In consideration of the covenants contained in this Stipulation, and upon the full performance of the foregoing obligations of the Purchasers at the Closing, Harry (**"Releasor"**) shall be deemed to have released the Purchasers, Paige, and Gertrude, and their respective shareholders, members, and directors (**"Releasees"**), Releasee's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the Releasees, the Releasor, Releasor's successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Stipulation, except for

the obligations created, continued or affirmed under this Stipulation and the exhibits annexed hereto.

M. **Release to Harry.** In consideration of the covenants contained in this Stipulation, and in consideration of the sum of ten (10) dollars ($10.00), and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, Purchasers each shall be deemed to have released Harry (“**Releasee**”), Releasee’s heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the Releasee, the Purchasers, Purchasers' successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Stipulation, except for the obligations created, continued or affirmed by this Stipulation.

N. **Standstill Agreement Payments to Harry.** The Corporations shall pay to Harry the balance of all salary, benefits, and expenses due, as of the Closing, to Harry under the Standstill Agreement.

O. **Consulting Fee.** The Corporations shall pay to Harry a consulting fee in the amount of $110,000 in consideration of services rendered by Harry to the Corporations prior to the Closing Date.

---

Notwithstanding anything to the contrary contained anywhere herein, the performance of any obligations of Harry under this Paragraph 4 and the effectiveness of the release provided for in sub-paragraph L of this Paragraph 4 shall be expressly conditioned on the full performance at the

Closing of all of Purchasers' obligations under this Paragraph 4 and upon all the warranties and representations made by Purchasers herein in this Paragraph 4 being truthful and accurate at the time of Closing.    Notwithstanding anything to the contrary contained anywhere herein, the performance of any obligations of Purchasers under this Paragraph 4 and the effectiveness of the release provided for in sub-paragraph M of this Paragraph 4 shall be expressly conditioned on the full performance at the Closing of all of Harry's obligations under this Paragraph 4.

5.    **Pension Plan.**

A.    Upon the Effective Date of this Stipulation, the Corporations, Stanley and Peter shall direct the Third-Party Administrator, in writing, with a copy to Harry, to take all action necessary to terminate the Pension Plan at the earliest possible date.    Within ten (10) days after the later of (x) the Effective Date, or (y) the date the amount thereof has been determined by the Third-Party Administrator (but no later than the Closing Date),  Nieberg shall make the minimum contributions to the Pension Plan required by the Plan and all applicable laws, rules, and regulations for the years 2005 and 2006 (the **"Required Contributions"**) and shall give notice to Harry that the Required Contributions have been made.  Prior to termination of the Pension Plan, Purchasers shall cause Nieberg to obtain from each Non-Key Employee for whom the Pension Plan owns a policy of life insurance either: (i) a duly executed surrender of such policies, the cash surrender value of which shall be deposited into the Pension Accounts, or (ii) payment in full of the amount of such cash surrender value which shall be deposited into the Pension Accounts, and within ten (10) days after any such deposit, Purchasers shall give notice to Harry that such deposit has been made with the date, the amount of the deposit, the account into which the deposit was made, and the employee for whom the deposit was made.  The cash

surrender value of all Non-Key Employee policies will be included in the calculation of the value of the assets of the Pension Plan for all purposes hereunder. The Trustees under the Pension Plan will collect and deposit in the Pension Plan Accounts any outstanding loan balances on any policy of Non-Key Employee Life Insurance prior to the termination of the Pension Plan and within ten (10) days after each such deposit, the Trustees under the Pension Plan shall give notice to Harry that such deposit has been made with the date, the amount of the deposit, the account into which the deposit was made, and the employee for whom the deposit was made. Upon termination of the Pension Plan: (i) each of the Non-Key Employees shall receive the full amount of their plan distributions as calculated by the Third-Party Administrator; (ii) the reasonable costs of termination of the Pension Plan (excluding any legal fees) shall be paid from the Pension Accounts; (iii) the balance of funds in the Pension Plan and the Pension Accounts shall be distributed *pro rata* to the Key Employees in relation to their vested interests in the Pension Plan, as set forth above. The Trustees under the Pension Plan shall give seven (7) days prior written notice to Harry of any payments to be made from the Pension Plan for the reasonable costs of termination, and of all distributions to be made from the Pension Accounts. No payments or distributions other than those set forth in such notice shall be made from the Pension Plan or the Pension Accounts without the prior express written consent of Harry, Stanley and Peter.

B. Within ten (10) days after the Effective Date, the Trustees under the Pension Plan, will provide Harry with a written certification that there are no outstanding loans and no other payments have been made to Peter and/or Stanley other than the Peter Pension Loan which will be paid back at Closing.

C. Until the Pension Plan has been terminated as provided in this Stipulation, Nieberg shall make available to Harry for inspection and copying at the Premises, all records of

the Pension Plan, including all banking records at reasonable times, upon twenty-four (24) hours prior written notice.

**D.** Each Key Employee shall contemporaneously herewith give written notice to Nieberg, Harry, and the Third-Party Administrator that he has elected to purchase the policy or policies of Key Employee Life Insurance on such Key Employee's life from the Pension Plan for the cash surrender value of said policy or policies, except that Harry will give written notice to Nieberg, Stanley, and Peter that he elects not to purchase Policy No. 46-203-848 having a cash surrender value of $3,072.30. The cash surrender value of all Key Employee policies will be included in the calculation of the value of the assets of the Pension Plan for all purposes hereunder. Any outstanding loan balances on any policy of Key Employee Life Insurance shall be paid in full on or before the Closing and within ten (10) days after each such payment, the Trustees under the Pension Plan shall give notice to Harry that such payment has been made with the date, the amount of the payment, the account into which the payment was deposited, the name of the Key Employee, and policy of life insurance for which the payment was made. Each Key Employee hereby authorizes the Trustees under the Pension Plan, to surrender and receive the cash surrender value for deposit in the Pension Accounts of any Policy of Key Employee Life Insurance for which the cash surrender value is not paid in full to the Trustees under the Pension Plan, within ten (10) days before final distribution of the Pension Plan and Pension Accounts. Within ten (10) days after each such deposit, the Trustees under the Pension Plan shall give notice to Harry that such deposit has been made with the date, amount of the deposit, account into which it was deposited, and the name of the Key Employee and life insurance policy for which the deposit was made.

E. Prior to termination of the Pension Plan and final distribution of the Pension Plan and Pension Accounts, the Trustees under the Pension Plan, shall pay from the Pension Account any premiums on any policy of Non-Key Employee Life Insurance and any policy of Key Employee Life Insurance which accrue from Closing until termination of the Pension Plan and final distribution of the Pension Plan and Pension Accounts.

F. Effective immediately, Harry resigns as a trustee of the Pension Plan.

G. Effective immediately, the Trustees under the Pension Plan, shall take all action necessary to liquidate and convert all assets of the Pension Plan into cash or money market accounts and to obtain, as soon as practicable, an Internal Revenue Service audit and Pension Benefit Guarantee Corporation clearance. Within five (5) business days after said liquidation and conversion is complete, the Trustees under the Pension Plan, shall verify and confirm by written notice to Harry that all assets of the Pension Plan and Pension Accounts have been liquidated and converted into cash or money market accounts, together with: (i) the name and address of the institutions at which the accounts are maintained; (ii) the amount deposited into each such account; (iii) the title of each account; and (iv) the name to which each such account is titled.

6. **Indemnity**. Effective on Closing, the Purchasers each hereby agree, jointly and severally, to indemnify, hold harmless, and defend Harry and/or any member of Harry's immediate family (collectively, the **"Harry Defendants"** and individually, a **"Harry Defendant"**) against any and all costs, expenses, claims, liabilities, actions, proceedings, judgments, awards, liabilities, penalties, and all reasonable legal fees, arising from or in connection with: (i) the Pension Plan; (ii) any shortfall in contributions by Nieberg to the Pension Plan; (iii) management of the Pension Plan; (iv) termination of the Pension Plan; (v) any distributions, payments or withdrawals made from the Pension Accounts; (vi) any administrative

fees claimed by the Third-Party Administrator or any predecessor or successor thereto; (vii) the operation or activities of the Purchasers on and after July 15, 2004; and/or (viii) any claim by a debtor-in-possession, trustee, creditor's committee and/or creditor of any of the Purchasers, or any other person or entity claiming against, through or instead of any of the Purchasers, to avoid the transfer to or recover from any Harry Defendant, on any legal and/or equitable theory, the value of any portion of the Cash Purchase Price, the Harry Graves, or any other monies, benefits or consideration received by any Harry Defendant from the Purchasers, the Pension Plan, and/or the Pension Accounts, except, as to all of the above, for any claim arising out of the willful misconduct or affirmative gross negligence of Harry (collectively, the "**Indemnified Claims**" and individually, an "**Indemnified Claim**"). The Harry Defendants other than Harry are intended third party beneficiaries of this Paragraph 6 (and Harry is a direct beneficiary) and shall have independent rights to enforce this Paragraph 6 against Purchasers. In the event that an Indemnified Claim is asserted against any Harry Defendant, such Harry Defendant shall have the right to retain counsel of his/her choice, at such reasonable cost, to defend against such Indemnified Claim and such reasonable cost of such defense shall be paid by Purchasers, timely and directly to such counsel. Harry agrees to indemnify each of the above parties against any liability or obligation arising out of such affirmative gross negligence or willful misconduct. Harry agrees not to commence or cause or instigate any third-party to commence any federal bankruptcy case or state law insolvency proceeding against Purchasers, the Pension Plan and/or any other person or entity who pays any portion of the Cash Purchase Price, unless Purchasers default in the performance of their obligations under this Stipulation.

7. <u>**Release of Pension Judgment Escrow**</u>. After the tenth (10th) day after Escrow

Agent's receipt of notice from Harry to Escrow Agent, Purchasers, and the Third Party Administrator that Harry has not received final distribution of his share of the Pension Plan and Pension Accounts, and that a term or condition of Paragraph 5 herein has not been fully satisfied by reason of any specified: (i) failure by Purchasers, the Trustees under the Pension Plan, and/or the Third Party Administrator to perform some act reasonably required by them or otherwise as a pre-condition to the prompt termination of the Pension Plan and/or the prompt final distribution of the Pension Plan and/or the Pension Accounts and/or the prompt satisfaction of the terms and conditions of Paragraph 5 herein and/or (ii) affirmative act delaying, interfering with, impeding, and/or preventing the prompt termination of the Pension Plan and/or the prompt final distribution of the Pension Plan and/or the Pension Accounts and/or the prompt satisfaction of the terms and conditions of Paragraph 5 herein, which Purchasers, the Trustees under the Pension Plan, and/or the Third Party Administrator have failed to cure within ten (10) days after Purchasers' receipt of the foregoing notice, Escrow Agent shall forthwith release from escrow to Harry and Harry may enter and enforce the Pension Judgment. After the tenth (10th) day after Escrow Agent's receipt of notice from Purchasers to Escrow Agent and Harry that the Pension Plan has been terminated and Harry has received payment of his final distribution from the Pension Plan and Pension Accounts, by wire transfer or bank check or that such payment has been deposited into and cleared Harry's account and that all the terms and conditions of Paragraph 5 herein have been fully satisfied, Escrow Agent shall release from escrow and deliver the Pension Judgment to LGO, if not previously released to Harry as provided herein. If the Pension Judgment is released and paid by Purchasers, Harry hereby assigns to Purchasers all of Harry's rights to receive payment from the Pension Plan up to such amount so paid, less Harry's costs of enforcing the Pension Judgment, including his actual legal fees and disbursements.

8. **2006 Form K-1 and W-2.** On or before April 1, 2007, Midwood shall issue and deliver to Harry a Form K-1 and Nieberg shall issue and deliver to Harry a Form W-2 for the tax year 2006.

**9. [INTENTIONALLY LEFT BLANK]**

**10. Escrow.**

A. P&M with respect to the escrow of the Pension Judgment (the "**Pension Judgment Escrow**") pursuant to Paragraph 4 herein hereby accepts its appointment and designation as Escrow Agent under this Stipulation to act in accordance with and pursuant to the terms and conditions set forth in this Stipulation with regard to the Escrow.

B. The Purchasers each acknowledge that P&M is one of the attorneys for Harry, and waives any objection to P&M representing Harry in any action, claim or dispute regarding or arising from this Stipulation or any transaction provided for in this Stipulation, or which is the subject matter hereof.

C. Escrow Agent may resign and be discharged from its duties hereunder with respect to the Escrow, at any time by giving notice of such resignation to the parties hereto, specifying a date upon which such resignation shall take effect. Upon such notice, a successor Escrow Agent shall be appointed by Harry (with the written consent of Stanley and Peter, not to be unreasonably withheld or delayed), provided said successor Escrow Agent is an attorney duly admitted to practice in the State of New York and in good standing, such successor to become Escrow Agent hereunder on the resignation date specified in such notice, whereupon all obligations imposed and rights conferred by this Stipulation shall be binding upon and inure to the benefit of said successor Escrow Agent. The parties hereto may agree at any time to substitute a new Escrow Agent for either or both of the Escrow by giving written notice thereof to the Escrow Agent then acting as such.

D. Nothing contained in this Stipulation shall obligate Escrow Agent to make any payment or deliver any documents under this Stipulation, unless the funds for same and/or documents shall first have been received by Escrow Agent.

E. In the event that any dispute shall arise with respect to release of any monies, documents or judgments from the Escrow, Escrow Agent may dispose of any monies, judgments or documents which is the subject of the dispute, by delivering same to the Court, or Escrow Agent may otherwise dispose of the monies, judgments or documents in any manner as directed by order of the Court, and Escrow Agent shall, thereupon, be discharged from all obligations under this Stipulation with respect to such monies, judgments or documents.

F. Escrow Agent shall be discharged from all obligations under this Stipulation with respect to any monies, judgments or documents held in the Escrow upon the disposition of the monies, judgments or documents in accordance with this Stipulation or an order of the Court discharging Escrow Agent or directing disposition of such monies, judgments or documents.

G. Escrow Agent shall perform only such duties as are specifically set forth in this Stipulation, and may conclusively rely and shall be protected in acting or refraining from acting on any written notice, instrument or signature believed by it to be genuine and to have been signed or presented by the proper party or parties duly authorized to do so. Escrow Agent, in its capacity as such, shall have no responsibility for the contents of any notice or other writing contemplated in this Stipulation or the contents thereof, and may rely without any liability upon the contents thereof.

H. It being understood that Escrow Agent is acting as such as an accommodation to the parties hereto and is receiving no compensation therefor, Escrow Agent shall not be responsible or liable to anyone whomsoever for any action taken or omitted by it in good faith and reasonably believed by it to be authorized hereby or within the rights or powers conferred upon it hereunder, nor shall it be liable for any action taken or omitted by it in good faith and in accordance with the advice of counsel (which counsel may be of the Escrow Agent's own choosing, including itself as a law firm), and shall not be liable for any mistake of fact or

error of judgment or for any acts or omissions of any kind unless caused by willful misconduct or gross negligence.

I.    In the event that Escrow Agent shall be uncertain as to its duties or rights hereunder, or shall receive instructions, claims or demands from any of the parties hereto or from any third-party with respect to the property held hereunder which, in its opinion, are in conflict with any provision of this Stipulation, it shall be entitled to refrain from taking any action other than to keep safely said property until it shall be directed otherwise by all of the parties hereto, and any third-persons, if any, or by a final order or judgment of the Court.

J.    Escrow Agent shall not be bound by any modification, cancellation or rescission of this Stipulation, unless in writing and signed by the parties hereto. In no event shall any modification of this Stipulation, which shall affect the rights or duties of Escrow Agent, be binding on Escrow Agent unless it shall have given its prior written consent, not to be unreasonably withheld.

K.    In any action arising out of this Stipulation or in any way related to any monies, judgment or document held by Escrow Agent, or the obligations of any party under this Stipulation, P&M may represent Harry.

L.    The parties hereto each agree, jointly and severally, to indemnify and hold harmless Escrow Agent from and against any and all claims, losses and liabilities (including, without limitation, reasonable attorneys' fees and expenses) growing out of or resulting from this Stipulation (including, without limitation, enforcement of this Stipulation), except claims, losses or liabilities resulting from the Escrow Agent's gross negligence or willful misconduct.

M.    In the event that this Stipulation becomes null and void as provided in Paragraph 4 herein: (i) within twenty (20) business days thereafter, Escrow Agent shall deliver to LGO any monies, judgment and any documents then held in the Escrow; (ii) LGO shall continue

to hold in escrow the proceeds of the LGO escrow under the Standstill Stipulation; and (iii) P&M shall continue to hold in escrow the proceeds, if any, of the P&M escrow under the Standstill Stipulation, and LGO and P&M shall dispose of such proceeds only pursuant to the terms of the Standstill Stipulation, until further order of the Court.

11. **<u>Retention of Jurisdiction</u>.** This Court shall retain jurisdiction over this action until the filing of the Stipulation of Discontinuance. Notwithstanding the foregoing, in the event that any party defaults in the performance of a post-Closing obligation under this Stipulation, the party to whom the obligation is owed may, by motion on notice to the other parties hereto, under the above index number, restore this case to the calendar of the Court in order to seek enforcement of such obligation by the Court and this Court hereby retains supplemental jurisdiction to entertain such motions and to take all appropriate action to enforce the terms of this Stipulation and the exhibits hereto.

12. **<u>Venue/Service of Process</u>.**

A. Any suit, action or proceedings regarding this Stipulation, or any default hereunder, interpretation or enforcement of this Stipulation shall be commenced only in the Supreme Court of the State of New York, County of Kings. All parties hereto each irrevocably waive, to the fullest extent permitted by law, any objection which they may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in such Court, and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.

B. Any such suit, action or proceeding may be commenced by service of process delivered by certified mail, return receipt requested upon the Corporations, Memorials, Paige, Stanley, Peter, and Gertrude at the address of the Premises set forth above, with a copy by first class mail and facsimile transmission to:

Ronald J. Offenkrantz, Esq.
Lichter Gliedman Offenkrantz PC
551 Fifth Avenue
New York, NY 10176
Fax: (212) 658-9424

and may be served upon Harry at:

Harry Nieberg
2370 East 66th Street
Brooklyn, New York 11234

with copies by first class mail and facsimile transmission to:

A. Scott Mandelup, Esq.
Pryor & Mandelup, L.L.P.
675 Old Country Road
Westbury, NY 11590
Fax: (516) 333-7333

and

Steven S. Korman, P.C.
50 Charles Lindbergh Blvd.
Suite 400
Mitchel Field, NY 11553
Fax: (516) 294-4436

13. Waiver of Jury Trial. EACH PARTY HERETO HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND UPON ADVICE OF THE UNDERSIGNED COUNSEL, WAIVES ITS RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY SUIT, ACTION OR PROCEEDING BASED ON THIS STIPULATION OR ANY OTHER AGREEMENT OR DOCUMENT CONTEMPLATED TO BE EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY OF THE PARTIES OR THEIR ATTORNEYS OR AGENTS. THIS PROVISION IS A MATERIAL INDUCEMENT FOR HARRY TO ENTER INTO THIS STIPULATION.

14. **Survival of Representations**. All representations and warranties set forth in this Stipulation shall survive any release provided for in this Stipulation.

15. COBRA. Harry's employment by the Corporations shall be terminated upon the Closing. The Corporations shall timely notify Harry and make available to him all COBRA rights to which he is entitled under all applicable laws, rules, and regulations.

16. Attorney's Fees. Except as provided in Paragraph 6 herein, each party hereto shall be responsible for its own attorneys fees incurred in connection with this action and this Stipulation. Notwithstanding the foregoing, Purchasers shall be liable for, hold harmless and indemnify Harry against, all costs and expenses, including reasonable legal fees, arising from or in connection with any breach of this Stipulation by Purchasers, any breach of any warranty or representation by Purchasers and/or arising from or in connection with the enforcement of any obligation of Purchasers under this Stipulation, including without limitation, entry and enforcement of the Pension Judgment. Notwithstanding the foregoing, Harry shall be liable for, hold harmless and indemnify Purchasers against, all costs and expenses, including reasonable legal fees, arising from or in connection with any breach of this Stipulation by Harry, any breach of any warranty or representation by Harry and/or arising from or in connection with the enforcement of any obligation of Harry under this Stipulation.

17. Corporate Resolutions. Each of the Corporations and Memorials hereby represent that it has been authorized by duly enacted resolution of its board of directors adopted at a duly noticed meeting of the board of directors to enter into and perform the terms of this Stipulation, and its undersigned officer has been duly authorized to execute and deliver this Stipulation. Paige hereby represents that it has been authorized by a duly enacted resolution of its members adopted at a duly noticed meeting of the members to enter into and perform the terms of this Stipulation, and its undersigned managing member has been duly authorized to execute and deliver this Stipulation.

18. Notice. Notice of any event hereunder shall be given as follows:

(i) If to any of the Corporations, Stanley, Peter, to said party:

c/o Nieberg Midwood Chapel Inc.
1625 Coney Island Avenue
Brooklyn, NY 11230
Fax No. (718) 377-7380

With a copy to:

Ronald J. Offenkrantz, Esq.
Lichter Gliedman Offenkrantz PC
551 Fifth Avenue
New York, NY 10176
Fax No. (212) 658-9424

(ii) If to Harry, to:

Harry Nieberg
2370 East 66th Street
Brooklyn, NY 11234
Fax No. (718) 968-1406

With copies to:

A. Scott Mandelup, Esq.
Pryor & Mandelup, L.L.P.
675 Old Country Road
Westbury, NY 11590
Fax No. (516) 333-7333

and

Steven S. Korman, P.C.
50 Charles Lindbergh Boulevard
Suite 400
Mitchel Field, NY 11553

19. **No Admission.** Nothing contained in this Stipulation shall be deemed an admission of any liability by any party hereto and in the event that this Stipulation does not become effective, nothing contained in this Stipulation shall be used by any party for any purpose in any litigation or judicial proceeding.

20. **Counsel.** Each party hereto represents and acknowledges that it has been duly represented by counsel with respect to the negotiation and execution of this Stipulation and all exhibits hereto, and said counsel has fully explained the terms and legal consequences of this

Stipulation and all exhibits hereto to said party, and each party has executed this Stipulation and all exhibits hereto knowingly and of his/her free will with full understanding of the terms hereof. The Corporations, Memorials, Stanley and Peter, each hereby acknowledge that they have consulted with and been advised with respect to this Stipulation by LGO, and Harry hereby acknowledges that he has consulted with and been advised with respect to this Stipulation by P&M and Steven S. Korman, P.C.

21. **Further Actions**. Each party hereto agrees to execute and deliver hereafter such further documents and to do such further acts and things as may be required or appropriate to carry out the intent and purpose of this Stipulation and which are not inconsistent with the terms hereof.

22. **Counterparts / Facsimiles**. This Stipulation may be executed in counterparts and facsimile machine signatures shall be given the same effect as original signatures.

23. **Headings**. The headings in this Stipulation are for convenience of the parties and shall not be construed as a substantive part of this Stipulation nor shall same be admissible in any proceeding as evidence of the intent of the parties or the proper interpretation of this Stipulation.

24. **Entire Agreement / Changes**. This Stipulation and the exhibits hereto contain the entire agreement between the parties hereto with respect to the matters contained in this Stipulation. This Stipulation supercedes all prior written and oral agreements and any prior representation, statement, condition or warranty. No variation, modification, or change herein or any waiver of any provision hereof shall be binding unless set forth in a document duly executed by or on behalf of each of the parties hereto.

25. **Invalidity**. In the event one or more of the provisions contained in this Stipulation shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity illegality or unenforceability shall not affect any other provision of this Stipulation

26. **Governing Law**. This Stipulation shall be governed by and construed in

accordance with the substantive laws of the state of New York (other than its rules as to conflicts of law to the extent that such rules will result in the applications of the laws of some other jurisdiction).

**27.** **Remedies Cumulative**. No remedy set forth herein, including without limitation, the provisions of Paragraphs 6, 7 and 16 herein, shall be exclusive of any other remedy and each and every remedy shall be cumulative and in addition to any other remedy set forth herein or available at law.

**IN WITNESS WHEREOF**, the undersigned have executed this stipulation as of the date set forth above.

HARRY NIEBERG

PRYOR & MANDELUP, L.L.P.
Attorneys for Harry Nieberg

By: A. Scott Mandelup

PETER NIEBERG, individually and
as a Trustee under the Pension Plan

STANLEY NIEBERG, individually and
as a Trustee under the Pension Plan

accordance with the substantive laws of the state of New York (other than its rules as to conflicts of law to the extent that such rules will result in the applications of the laws of some other jurisdiction).

27. <u>Remedies Cumulative</u>. No remedy set forth herein, including without limitation, the provisions of Paragraphs 6, 7 and 16 herein, shall be exclusive of any other remedy and each and every remedy shall be cumulative and in addition to any other remedy set forth herein or available at law.

**IN WITNESS WHEREOF,** the undersigned have executed this stipulation as of the date set forth above.

______________________________
HARRY NIEBERG

PRYOR & MANDELUP, L.L.P.
Attorneys for Harry Nieberg

By:____________________________
A. Scott Mandelup

______________________________
PETER NIEBERG, individually and as a Trustee under the Pension Plan

______________________________
STANLEY NIEBERG, individually

NIEBERG MIDWOOD CHAPEL INC.

By: ______________________
Name: Stanley Nieberg
Title: President

MIDWOOD MEMORIAL CHAPEL, INC.

By: ______________________
Name: Stanley Nieberg
Title: President

MIDWOOD MEMORIALS, INC.

By: ______________________
Name: Stanley Nieberg
Title: President

LICHTER GLIEDMAN OFFENKRANTZ PC
Attorneys for Neiberg Midwood Chapel Inc., Midwood Memorial Chapel, Inc., Midwood Memorials, Inc., and Stanley Nieberg and Peter Nieberg, individually and as the Trustees under the Pension Plan

By: ______________________
Ronald J. Offenkrantz

So Ordered, this
____ day of ________, 2006

______________________
J.S.C.

PRYOR & MANDELUP L.L.P.
As Escrow Agent

By: ______________________
A. Scott Mandelup

NIEBERG MIDWOOD CHAPEL INC.

By:________________________________
Name: Stanley Nieberg
Title: President

MIDWOOD MEMORIAL CHAPEL, INC.

By:________________________________
Name: Stanley Nieberg
Title: President

MIDWOOD MEMORIALS, INC.

By:________________________________
Name: Stanley Nieberg
Title: President

LICHTER GLIEDMAN OFFENKRANTZ PC
Attorneys for Neiberg Midwood Chapel Inc., Midwood Memorial Chapel, Inc., Midwood Memorials, Inc., and Stanley Nieberg and Peter Nieberg, individually and as the Trustees under the Pension Plan

By: ________________________________
Ronald J. Offenkrantz

So Ordered, this
____ day of _________, 2006

______________________________
J.S.C.

PRYOR & MANDELUP L.L.P.
As Escrow Agent

By:________________________________
A. Scott Mandelup

NIEBERG MIDWOOD CHAPEL INC.

By: [signature]
Name: Stanley Nieberg
Title: President

MIDWOOD MEMORIAL CHAPEL, INC.

By: [signature]
Name: Stanley Nieberg
Title: President

MIDWOOD MEMORIALS, INC.

By: [signature]
Name: Stanley Nieberg
Title: President

LICHTER GLIEDMAN OFFENKRANTZ PC
Attorneys for Neiberg Midwood Chapel Inc., Midwood Memorial Chapel, Inc., Midwood Memorials, Inc., and Stanley Nieberg and Peter Nieberg, individually and as the Trustees under the Pension Plan

By: [signature]
Ronald J. Offenkrantz

So Ordered, this
16th day of August, 2006

yvonne lewis
JUSTICE, SUPREME COURT

J.S.C.

PRYOR & MANDELUP L.L.P.
As Escrow Agent

By: (3) see page 25
A. Scott Mandelup

KINGS COUNTY CLERK
2006 AUG 29 AM 9:36

FILED
AUG 28 2006
KINGS COUNTY CLERK'S OFFICE

# EXHIBIT "3"

# NYS Department of State

## Division of Corporations

### Entity Information

---

Selected Entity Name: HARRY NIEBERG FUNERAL HOME INC.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | HARRY NIEBERG FUNERAL HOME INC. |
| **Initial DOS Filing Date:** | JULY 26, 2007 |
| **County:** | KINGS |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

HARRY NIEBERG FUNERAL HOME INC.
2370 EAST 66TH STREET
BROOKLYN, NEW YORK, 11234

**Registered Agent**

NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results New Search

Division of Corporations, State Records and UCC Home Page NYS Department of State Home Page

# EXHIBIT "4"

SHERMAN FUNERAL HOME, INC.
HARRY NIEBERG
FUNERAL HOME INC
SHERMAN MONUMENTS LLC

# EXHIBIT "5"

# YELLOWPAGES.COM

Home > Brooklyn > Name Search - Harry Nieberg Funeral Home Inc.

We found **2 businesses** for "Harry Nieberg Funeral Home Inc." in the **Brooklyn, NY** area.

You can select **Save This Search** on the right to store this search in MY YELLOWPAGES.COM

## Harry Nieberg Funeral Home Inc.

1283 Coney Island Ave
Brooklyn, NY 11230 Map

**(718) 377-2700**

Review This Business!
**Rate it** | **Read Reviews**

More Info

Send to Mobile | Map It | E-mail It | Get Directions | Search Nearby | Save This Listing | Save a Note

---

## Nieberg Harry Funeral Home Inc

1283 Coney Island Ave
Brooklyn, NY 11230 Map

**(718) 377-1950**

Review This Business!
**Rate it** | **Read Reviews**

Send to Mobile | Map It | E-mail It | Get Directions | Search Nearby | Save This Listing | Save a Note

**RELATED BUSINESSES**

**Guido Funeral Home**

440 Clinton St
Brooklyn, NY 11231
**(718) 852-2324**
More Info | Web Site

**Armstrong Funeral Home, Inc.**

822 St. John Place
Brooklyn, NY 11216
**(718) 705-4204**
More Info | Web Site

**Michael V. Cosgrove & Son Inc. Funeral Chapels**

# EXHIBIT "6"

551 Fifth Avenue
24th Floor
New York, NY 10176
Tel: (212) 867-7750
Fax: (212) 658-9424
E-mail: rjo@lgofirm.com

-----Original Message-----
**From:** Scott Mandelup [mailto:sm@pryormandelup.com]
**Sent:** Thursday, April 06, 2006 5:44 PM
**To:** Ronald J. Offenkrantz
**Cc:** 'Harry Nieberg'; 'Steven S. Korman, Esq.'; 'Randolph E. White, Esq.'
**Subject:** Nieberg

Dear Ron: Your suggestion is unacceptable. Without compensation, there will be absolutely no non-compete agreement from Harry. His previous generous offer of six months free is now off the table. You intentionally waited until we had agreed on the amount of the settlement to spring your request for a restrictive covenant. Nothing in the BCL entitles your clients to such relief in this action. Your remark that an accountant would take into consideration the possible negative impact on the value of the corporations from Harry's refusal to give a non-compete is misguided. The BCL is quite clear that valuation for purposes of our action is as of the valuation date; *i.e.* August 10, 2004. It is our understanding of the law, that if the business closed the next day, it would have no impact whatsoever on the amount of the judgment against your clients. (If you have research to the contrary, please give me the citations.) Your clients elected their statutory right to compel Harry to surrender his shares for the fair value of his interest in the corporations as of the buy out date. This is not a voluntary sale where they might expect to receive a non-compete and the purchase price would vary depending on whether they received such an agreement and on its duration and geographic scope. If your clients want a restrictive covenant, they will have to pay for it. Otherwise, we will let the court set the value of Harry's interest and your clients will still not receive a restrictive covenant. In the event your clients are willing to pay for a non-compete, it will not be in perpetuity, but for a reasonable period of time, such as three years, and will be carefully tailored geographically. Absent the duration of an agreed upon and compensated restrictive covenant, Harry has no intention of giving up the right to use his name in the funeral home business, or otherwise. Also, your indemnity request is unclear – what does it mean for Harry to indemnify against "his own acts as distinct from acts performed for the benefit of the corporations". An example of what type of conduct by Harry, not on behalf of the corporations, which could give rise to liability on the part of your clients, would be helpful. Harry will not agree to any indemnity he does not understand. Finally, you are, of course, entitled to your opinion as to the amount of the award the court is likely to enter, but Harry is willing to take his chances if we cannot agree on settlement terms. If your clients' position with regard to the restrictive covenant changes, please call me. Otherwise, I will see you on the 18th. If I do not speak to you, have a good holiday.

**Very truly yours,**

A. Scott Mandelup

**PRYOR & MANDELUP, L.L.P.**

# EXHIBIT "7"

LICHTER GLIEDMAN OFFENKRANTZ PC

COUNSELLORS AT LAW

551 FIFTH AVENUE

NEW YORK, N.Y. 10176

TELEPHONE: (212) 867-7750
FACSIMILE: (212) 658-9424

rjo@lgofirm.com

October 2, 2007

**FEDERAL EXPRESS**

Mr. Harry Nieberg
Harry Nieberg Funeral Home
c/o Sherman Funeral Home Inc.
1283 Coney Island Avenue
Brooklyn, NY 11230

Dear Mr. Nieberg:

You are aware that we are the attorneys for Nieberg Midwood Chapel Inc. and Midwood Memorial Chapel Inc. which for many years, advertised its services under the trade name Harry Nieberg & Sons.

We have been alerted by our clients to the fact that you are now conducting business under the name of Harry Nieberg Funeral Home and have advertised in the Yellow Pages and elsewhere using that trade name.

By so doing, you are infringing upon our clients' trade names and causing confusion in the community in which our clients do business. We have been instructed to institute proceedings against you and any person or entity associated with your infringing use.

Accordingly, you are asked to cease and desist from trading under the name of "Harry Nieberg Funeral Home" and to instruct all publications, including the Yellow Pages, that the Harry Nieberg Funeral Home is no longer to be advertised in those publications.

Hopefully, the matter can be resolved with your immediate confirmation of your intention to cease and desist. If you are unwilling to do so for any reason, please put this letter in the hands of your attorneys. A copy of this letter is being sent to Sherman's with the request that they have their attorneys contact the undersigned.

Very truly yours,

Ronald J. Offenkrantz

RJO/ri
cc: Sherman Funeral Home Inc.

19389

# EXHIBIT "8"

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Wed Mar 19 04:11:06 EDT 2008*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

TARR Status | ASSIGN Status | TDR | TTAB Status ***( Use the "Back" button of the Internet Browser to return to TESS)***

# Harry Nieberg & Sons

| | |
|---|---|
| **Word Mark** | HARRY **NIEBERG** & SONS |
| **Goods and Services** | IC 045. US 100 101. G & S: (Based on Use in Commerce) Funeral arrangement services; Funeral homes; Funeral service undertaking. FIRST USE: 19650101. FIRST USE IN COMMERCE: 19650101 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 77303484 |
| **Filing Date** | October 13, 2007 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) Nieberg Midwood Chapel, Inc. CORPORATION NEW YORK 1625 Coney Island Ave. Brooklyn NEW YORK 11230 |
| **Attorney of Record** | Gregory Nieberg |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

Trademark Electronic Search System (TESS) Page 2 of 2
Case 1:08-cv-00392-MGC Document 12-2 Filed 03/24/2008 Page 48 of 53

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

http://tess2.uspto.gov/bin/showfield?f=doc&state=qhtkrn.2.1 3/19/2008

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2008-03-19 19:07:47 ET

**Serial Number:** 77303484 Assignment Information Trademark Document Retrieval

**Registration Number:** (NOT AVAILABLE)

**Mark**

Harry Nieberg & Sons

**(words only):** HARRY NIEBERG & SONS

**Standard Character claim:** Yes

**Current Status:** A non-final action has been mailed. This is a letter from the examining attorney requesting additional information and/or making an initial refusal. However, no final determination as to the registrability of the mark has been made.

**Date of Status:** 2008-01-28

**Filing Date:** 2007-10-13

**Filed as TEAS Plus Application:** Yes

**Currently TEAS Plus Application:** Yes

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 113

**Attorney Assigned:**
FISHER LA TONIA M

**Current Location:** M4X -TMO Law Office 113 - Examining Attorney Assigned

**Date In Location:** 2008-01-28

---

**LAST APPLICANT(S)/OWNER(S) OF RECORD**

1. Nieberg Midwood Chapel, Inc.

**Address:**
Nieberg Midwood Chapel, Inc.
1625 Coney Island Ave.
Brooklyn, NY 11230
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** New York
**Phone Number:** 718-377-2700

## GOODS AND/OR SERVICES

**International Class:** 045
**Class Status:** Active
Funeral arrangement services; Funeral homes; Funeral service undertaking
**Basis:** 1(a)
**First Use Date:** 1965-01-01
**First Use in Commerce Date:** 1965-01-01

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-01-28 - Notification Of Non-Final Action E-Mailed

2008-01-28 - Non-final action e-mailed

2008-01-28 - Non-Final Action Written

2008-01-23 - Assigned To Examiner

2007-10-19 - Notice Of Pseudo Mark Mailed

2007-10-18 - New Application Entered In Tram

## ATTORNEY/CORRESPONDENT INFORMATION

---

**Attorney of Record**
Gregory Nieberg

**Correspondent**
GREGORY NIEBERG
2313 E 69TH ST
BROOKLYN, NY 11234-6501
Phone Number: 609-933-1911

---

# EXHIBIT "9"

LICHTER GLIEDMAN OFFENKRANTZ PC
COUNSELLORS AT LAW
551 FIFTH AVENUE
NEW YORK, N.Y. 10176
TELEPHONE: (212) 867-7750
FACSIMILE: (212) 658-9424

rjo@lgofirm.com

October 16, 2007

**FEDERAL EXPRESS**

Sherman Funeral Home Inc.
1283 Coney Island Avenue
Brooklyn, NY 11230

**Re: Harry Nieberg Funeral Home**

Gentlemen:

Reference is made to the recent cease and desist letter sent on behalf of our clients, Nieberg Midwood Chapel Inc. and Midwood Memorial Chapel Inc. which for many years, advertised its services under the trade name Harry Nieberg & Sons, demanding that you refrain from using the name Harry Nieberg Funeral Home in connection with any funeral services performed by you or at your establishment.

We have been instructed by our clients to institute suit for injunctive and other relief in the event a satisfactory response confirming that the name Harry Nieberg will not be used by you in connection with funeral homes or services.

Unless you have already done so, please place this matter with your counsel upon receipt.

Very truly yours,

RJO/ri

Ronald J. Offenkrantz

19505

# EXHIBIT "10"



# No TESS records were found to match the criteria of your query.

# Click on the ⇦ BACK button in your browser to return to the previous TESS screen

Please logout when you are done to release system resources allocated for you.

**Filing Date [FD]**

This field contains the date when a complete application was received by the US Patent and Trademark Office, following receipt of all filing material requirements. Contingent upon registration, it constitutes date of constructive use (legal equivalent of actual use).

Dates are stored in the format **YYYYMMDD** for the four-digit year YYYY, the two digit month MM and the two digit day DD. The $ (unlimited) and ? (single character) truncation operators are appropriate for use in date searches.

For example, the following search will retrieve all marks with a filing date of June15, 1999.

**19990615[FD]**

Either of the following searches will retrieve all marks with a filing date any time in June, 1999.

**199906$[FD]**

**199906??[FD]**

Alternatively, the ` operator can be used for numeric range searches on date fields. The following search will retrieve all marks with a filing date in January 1999 or later.

**`FD > "19990000"**

The following search will retrieve all marks with a filing date from January 1980 through December 1989.

**`FD > 19800000 < 19900000**

---

**Full Mark [FM]**

For this index, each Word Mark is a single index entry with any blank space converted to a hyphen. A search for the mark GOOD AS GOLD might be submitted as **GOOD-AS-GOLD[FM]**. This field provides for exact match searches. Truncation operators such as $ or ? are valid used in this search field,but this index has not been optimized for truncation searches and their use is not recommended. The asterisk (*) can be used for right truncation to help circumvent truncation overflow errors for searching this field. For example, the search **GOOD-AS*[FM]** could be used to search for marks beginning *GOOD AS*.



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Mar 19 04:11:06 EDT 2008*

TESS HOME | NEW USER | STRUCTURED | BROWSE DICT | SEARCH OG | BOTTOM | HELP

---

WARNING: AFTER SEARCHING THE USPTO DATABASE, EVEN IF YOU THINK THE RESULTS ARE "O.K.," DO NOT ASSUME THAT YOUR MARK CAN BE REGISTERED AT THE USPTO. AFTER YOU FILE AN APPLICATION, THE USPTO MUST DO ITS OWN SEARCH AND OTHER REVIEW, AND MIGHT REFUSE TO REGISTER YOUR MARK.

**View Search History:**

**Records Returned:** 100 **Plurals:** No Quick Tips

**Search Term:** Harry-Nieberg[FM]

Submit Query | Clear Query

Logout *Please logout when you are done to release system resources allocated for you.*

---

## US Trademark Field Codes

| Code & Name | Code & Name | Code & Name |
|---|---|---|
| [AD] Abandonment Date | [IC] International Class | [RD] Registration Date |
| [AF] Affidavits | [IR] International Registration Number | [RE] Renewals |
| [AR] Assignment Recorded | [LD] Live/Dead | [RG] Register |
| [AT] Attorney of Record | [MD] Mark Drawing Code | [RN] Registration Number |
| [BI] Basic Index | [MI] Mark Index | [SF] Section 44 Indicator |
| [CB] Current Filing Basis | [MN] Mark Non-Punctuated | [SD] Single Design Code |
| [CC] Coordinated Class | [MP] Mark Punctuated/Word Mark | [SN] Serial Number |
| [CD] Cancellation Date | [OB] Original Filing Basis | [SO] Serial - Other Formats |
| [CR] Change in Registration | [OD] Other Data | [ST] Standard Characters Claimed |
| [DC] Design Search Code | [ON] Owner Name | [SR] Supplemental Register Date |
| [DD] Design Description | [OW] Owner Name and Address | [TC] Trademark Search Facility Classification Code |
| [DE] Description of Mark | [PD] Priority Date | [TD] Total Designs |
| [DM] Decimal Mark | [PF] Physical Filing Date | [TF] Distinctiveness Limitation Statement |
| [DS] Disclaimer | [PO] Published for Opposition | [TI] Translation Index |
| [FD] Filing Date | [PM] Pseudo Mark | [TL] Translation |
| [FM] Full Mark | [PI] Pseudo Mark Index | [TM] Type of Mark |
| [GS] Goods and Services | [PR] Prior Registrations | [UD] Update/Load Date |
| | | [US] US Class |

TESS HOME | NEW USER | STRUCTURED | BROWSE DICT | SEARCH OG | TOP | HELP

---

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT "11"



5 GENERATIONS OF FAITHFUL SERVICE
TO THE JEWISH COMMUNITY

- PRE-ARRANGED FUNERALS
- GRAVESIDE SERVICES
- SHIPPING TO ISRAEL
- LARGE LIGHTED PARKING FACILITIES
- MONUMENTS
- SERVING ALL CEMETERIES
- INSCRIPTIONS IN ALL LANGUAGES
- MINIMAL COSTS

Nieberg Midwood Chapel Inc. Affil. HARRY NIEBERG & SONS

МЫ ГОВОРИМ ПО РУССКИ

1625 CONEY ISLAND AVE.
BKLYN (COR AVE M)

OUTSIDE NEW YORK CALL
800-396-9103

718 377-2700

SERVICES AVAILABLE IN ALL COMMUNITIES

Michelle Marshall 1243 E 69 .......... 718 241-3841
Mollie 2150 .......... 718 743-3979
Natatoon 472 .......... 718 436-6025
Harry Nieberg & Sons Inc
Coney Island Av .......... 718 377-2700
Harry Octavio 459 .......... 718 855-6417
Harry O's 120 .......... 718 858-9400
.......... 718 439-8033

Nieberg Harry Midwood Chapel Inc
.......... 718 377-2700
Nieberg Harry & Sons Inc
.......... 718 377-2700

  

Michelle Marshall 1348 E 99. 718 241-3841

Mollie 2450 Haring........ 718 743-3979

Nazmoon 472 40........ 718 436-6425

Harry Nieberg & Sons Inc

1625 Coney Island Av........ 718 377-2700

Harry Octavio 469 Wlby Av...... 718 855-6417

Harry O's 120 Lawrence........ 718 858-9400

... Gates Av ..... 718 455-0053

Nieberg Harry Midwood Chapel Inc

1625 Coney Is Av........ 718 377-2700

Nieberg Harry & Sons Inc

1625 Coney Is Av........ 718 377-2700

Nieberg Midwood Chapel Inc

1625 Coney Island Av........ 718 377-2700

# Nieberg Midwood Chapel, Inc.

## Serving the Jewish Community for 5 Generations - 150 Years

*Let our family be there in your time of need*

- Providing care & dignified service to all throughout the United States
- Large air-conditioned chapels
- Large parking facilities
- Mikvah on premises
- Reasonable prices
- Call us for pre-planning arrangements
- Burial in all Cemeteries
- Shipping to Israel

Nieberg Midwood Chapel, Inc.
*Owned and operated by Stanley & Peter Nieberg*
1625 Coney Island Avenue (Corner Avenue M)
Brooklyn, New York 11230
718-377-2700 • 24 Hours
Outside NYC call 1-877-327-7702



# EXHIBIT "12"



RVING THE JEWISH COMMUNITY FOR 6 GENERATIONS - 150 YEA
NIEBERG
Midwood Chapel, Inc.
1625 Coney Island Ave
(Corner Ave M)
Brooklyn, New York 11230
377-2700 - Outside NYC 877-327-7701

Home

About Us

ducts/Services

Monuments

Contact Us

# Home

VISA

- Providing Care & Dignified Service To All Throughout the United States
- Large Air-Conditioned Chapels
- Large Parking Facilities
- Monuments & Lettering in All Cemeteries
- Mikvah On Premises
- Reasonable Prices
- Call Us for Pre-Planning Arrangements
- Burial In all Cemeteries
- Shipping To Israel

MIDWOOD
CHAPELS

Hours of Operation
Sunday – Friday
**24 Hours**

We Accept Cash, Checks, VISA, MasterCard, Discover, Travelers' Checks, and Mone Orders.



ERVING THE JEWISH COMMUNITY FOR 6 GENERATIONS - 150 YEAR

Site Manag

Power

superpa

Yellow

# EXHIBIT "13"



:RVING THE JEWISH COMMUNITY FOR 6 GENERATIONS - 150 YEAI
NIEBERG Midwood Chapel, INC
1625 Coney Island Ave
(Corner Ave M)
Brooklyn, New York 11230
377-2700 - Outside NYC 877-327-7701

Let our family be there in your time of need

Home
About Us
ducts/Services
Monuments
Contact Us

# About Us

**Our Family:**
Six Generations of Faithful Service to the Jewish Community

- Family Owned & Operated
- Personal Service
- Competitive Prices
- Customer Service
- Pre-Arranged Funerals
- Graveside Services
- Shipping to Israel
- Large Lighted Parking Facilities
- Serving All of New York
- Trip to or Pick Up from Anywhere in the World

The history of the founding and development of the first Jewish undertaking (establishment) in NYC, eminently by the direct descendents of the founder under the title, Harry Nieberg & Sons.

As far back as the Civil War, the Nieberg family has been taking care of families in their time of need, established on Elizabeth St. in the lower east side (water actually flowed through Canal St. at this time). The Niebergs pioneered the use of motorized hearses in NYC. We have been assisting families and continue to do so with the utmost compassion and sensitivity needed most of this time.

While continuing to strive to be innovators, our staff still upholds and respects the sacred traditions of each family.

Owned and Operated by Stanley & Peter Nieberg

:RVING THE JEWISH COMMUNITY FOR 6 GENERATIONS - 150 YEAI

Site Manag

Powe
superpa
Yellow

# EXHIBIT “14”

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

NIEBERG MIDWOOD CHAPEL INC. and MIDWOOD MEMORIAL CHAPEL INC.,

Plaintiffs,

- against -

HARRY NIEBERG, Individually, and HARRY NIEBERG FUNERAL HOME INC.

Defendants.

**Index No.**

**VERIFIED COMPLAINT**

Plaintiffs, by their attorneys, LICHTER GLIEDMAN OFFENKRANTZ PC, as and for their Verified Complaint, allege as follows:

1. Plaintiffs, NIEBERG MIDWOOD CHAPEL INC. ("NIEBERG") and MIDWOOD MEMORIAL CHAPEL INC. ("MEMORIAL"), are corporations duly organized under the laws of the State of New York and each is duly licensed to provide professional funeral services at their principal place of business at 1625 Coney Island Avenue, Corner Avenue M, in the Borough of Brooklyn, City and State of New York 11230.

2. Defendant HARRY NIEBERG ("HARRY"), is a resident of the Borough of Brooklyn and the former owner of one-third of the stock of plaintiffs, NIEBERG and MEMORIAL.

3. Defendant, HARRY NIEBERG FUNERAL HOME INC. ("NIEBERG FUNERAL"), is a newly formed entity under the laws of the State of New York, and holds itself out as doing business under that name in the Yellow Pages and in signage and placards at the premises occupied by SHERMAN FUNERAL HOME, INC. ("SHERMAN") located at 1283

Coney Island Avenue, Brooklyn, NY 11230. A copy of a photograph showing the manner in which HARRY has advertised his funeral business at SHERMAN's is attached hereto and marked Exhibit A.

4.    Upon information and belief, SHERMAN, is a corporation organized under the laws of the State of New York and is duly licensed to provide professional funeral services at its principal place of business at 1283 Coney Island Avenue, Brooklyn, NY 11230.

5.    Plaintiffs and SHERMAN are and have been in competition in the field of performing professional funeral services and are located three blocks apart on Coney Island Avenue in the Borough of Brooklyn,

6.    Plaintiffs have operated under the trade name and title "HARRY NIEBERG & SONS" and/or NIEBERG since HARRY NIEBERG & SONS INC. was formed in 1939 and continuously thereafter, first, by HARRY NIEBERG, then by HARRY NIEBERG's children, and later by grandchildren, PETER J. NIEBERG ("PETER"), STANLEY J. NIEBERG ("STANLEY"), and defendant HARRY NIEBERG, the latter of whom ceased active involvement with plaintiffs in or about 1990 to pursue other interests.

7.    From and since 1939, HARRY NIEBERG & SONS INC. and its successor corporations, including plaintiffs herein, have prominently advertised the trade name "NIEBERG" or "HARRY NIEBERG & SONS" on its funeral facilities, have advertised the name "NIEBERG" and/or "HARRY NIEBERG & SONS" in numerous publications in the Metropolitan area of New York City and, particularly, the Borough of Brooklyn, have been featured in numerous articles and publications as a family run business dating back to the 1930's and still performing professional funeral arrangements to the point that the name NIEBERG and HARRY NIEBERG & SONS has achieved secondary meaning as a trademark and trade name

and has become well known in the City of New York to represent the professional care and attention of the NIEBERG FAMILY, the continuation of the family name, and the well deserved reputation and adherence to strict Jewish traditions in the performance of funeral services.

8.    Attached hereto and collectively marked Exhibit B are representative samples of advertising, feature articles, and photographs, all representing, portraying and commenting upon the use of the HARRY NIEBERG & SONS and/or NIEBERG trade name and history of the NIEBERG FAMILY.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF TRADE NAME AND UNFAIR COMPETITION AGAINST ALL DEFENDANTS

9.    Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs "1" through "8" as if fully set forth herein.

10.    Heretofore and during the period 1990 through 2005 and at a time when PETER, STANLEY and HARRY were each one-third shareholders of plaintiff corporations, HARRY engaged in businesses unrelated to the funeral business, but continued to receive salary and other benefits from plaintiffs on the same basis as PETER and STANLEY, and served as an officer and director of plaintiffs and Trustee of the HARRY NIEBERG & SONS INC. Defined Pension Plan.

11.    In or about 2005, a dispute arose between PETER and STANLEY on the one hand, and HARRY on the other, regarding HARRY's continued receipt of salary and other perquisites of employment, although not performing or attending to funeral services performed by the plaintiffs.

12.    In or about 2006, subsequent to proceedings instituted in the Supreme Court, Kings County, by HARRY for dissolution of plaintiffs, PETER, STANLEY and HARRY entered into an Agreement of Purchase and Sale with HARRY wherein and whereby HARRY sold, and transferred his entire one-third interest in the plaintiffs together with the good will appertinent thereto for a sum of in excess of $2,000,000 and received from the HARRY NIEBERG & SONS INC. Defined Pension Fund of which he was a Trustee, all of his entitlements thereby severing his relationship from plaintiffs, from PETER and STANLEY, and from the HARRY NIEBERG & SONS INC. Pension Fund, the latter of which is in the course of liquidation and HARRY resigned as an officer of plaintiffs.

13.    Thereafter, and at a point of time not presently known to plaintiffs, HARRY embarked on a course of conduct together with SHERMAN unfairly to compete with plaintiffs and improperly use HARRY's given name, HARRY NIEBERG, to cause confusion in the funeral industry and confusion on the part of the consumers located in plaintiffs geographical area and in the Jewish community from which and for which plaintiffs perform their services by, among other things, advertising and promoting the name "HARRY NIEBERG" or "HARRY NIEBERG FUNERAL HOME" in the immediate proximity of plaintiffs' funeral home, to wit, three blocks away, all with the purpose and intent of interfering with and diminishing plaintiffs' good will in the community, and diluting the value of the good will for which plaintiffs paid when they bought out HARRY's interest.

14.    Prior to the institution of this action, plaintiffs duly demanded that HARRY and SHERMAN cease and desist from using or advertising the "HARRY NIEBERG" name in connection with the performance of funeral services and HARRY has rejected the request and SHERMAN has temporarily removed the HARRY sign, but has not stopped HARRY from using

its address on Coney Island Avenue for Yellow Pages purposes as HARRY's place of business. Copies of the notices sent to HARRY and SHERMAN by Federal Express are attached hereto as Exhibit C.

15. The operation of a funeral home or the offering of funeral services under the name "HARRY NIEBERG FUNERAL HOME" and/or the use of the name "HARRY NIEBERG" at the SHERMAN location, and/or the use of the name NIEBERG at the SHERMAN location or in the City of New York, constitutes unfair competition with plaintiffs, deceit upon the public and threatens to impair and cause severe damage to the high reputation, good will and profits of the plaintiffs in their business and cause irreparable damage to plaintiffs for which they have no adequate remedy at law.

16. Plaintiffs have given no consent, express or implied, to defendants or any of them for the use by the defendants of the name "HARRY NIEBERG" or "NIEBERG" in connection with the operation of a funeral home in the City of New York and plaintiffs have advised defendants that the use of the name "NIEBERG" in such connection in the City of New York, will result in the plaintiffs taking legal action.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT AGAINST COMPETITION AND/OR USE OF THE TRADE NAME "HARRY NIEBERG" OR "NIEBERG"

17. Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs "1" through "16" as if fully set forth herein.

18. Heretofore and in 2006, HARRY sold all of his shares in plaintiffs, caused the early termination of the HARRY NIEBERG & SONS INC. Pension Plan of which he was a

Trustee, and received all sums due him under said Plan as part of a bargained for resolution of the dispute with PETER and STANLEY and the dissolution proceedings instituted by HARRY.

19. By virtue of the foregoing, and the receipt by HARRY of all sums paid, HARRY impliedly covenanted not to compete with plaintiffs in the area of funeral services and impliedly covenanted not to use the names "NIEBERG" or "HARRY NIEBERG" or any other name confusingly similar to that of plaintiffs.

**THIRD CAUSE OF ACTION**

**ACTION FOR DAMAGES**

20. Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs "1" through "19" as if fully set forth herein.

21. By virtue of the foregoing, and the acts and conduct of which plaintiffs complain, defendants are liable to plaintiffs in damages in an amount to be determined by the Court at trial.

**WHEREFORE,** plaintiffs demand judgment against defendants:

1. Preliminarily and permanently enjoining them and each of them from using or employing or causing to be used or employed the names "NIEBERG" or "HARRY NIEBERG" and any other style or designation, which includes the name "NIEBERG" in or as part of the trade or business name under which the defendants or either of them conducts the funeral business in the City of New York;

2. Ordering and adjudging that defendants or either of them be preliminarily and permanently enjoined from displaying, distributing or circulating or causing the display, distribution or circulation of any advertisements or other promotional material, including without limitation, newspapers, magazines, Yellow Pages on line or in print, or any other type of

advertisements, announcements, listings, signs, or placards in which the name "NIEBERG" or "HARRY NIEBERG" are employed, in whole or in part, to identify any funeral service business which defendants or either of them may conduct in the City of New York;

3. Ordering and adjudging that defendants and either of them promptly cancel or withdraw or cause to be cancelled or withdrawn any such advertisements or other promotional material which have already been placed or ordered to be published, distributed or circulated by persons other than said defendants;

4. Awarding plaintiffs' damages in an amount to be determined by the Court at trial inclusive of costs of this litigation and attorneys' fees; and

5. Granting such other and further relief as to the Court seems just and proper in the premises.

Dated: New York, New York
October 26, 2007

LICHTER GLIEDMAN OFFENKRANTZ PC
Attorneys for Plaintiffs

By:____________________
Ronald J. Offenkrantz
551 Fifth Avenue
New York, NY 10176
(212) 867-7750

**VERIFICATION**

STATE OF NEW YORK )
)ss.:
COUNTY OF KINGS )

I, STANLEY J. NEIBERG, has read the annexed Summons and Complaint, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

STANLEY J. NIEBERG
President

Sworn to before me this

25 day of October, 2007.

Notary Public

JERRY S. HABER
NOTARY PUBLIC, State of New York
No. 01HA4748448
Qualified in Kings County
Commission Expires Jan. 31, 2010

# EXHIBIT "15"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

NIEBERG MIDWOOD CHAPEL INC. and MIDWOOD MEMORIAL CHAPEL INC.,

Plaintiffs,

- against -

HARRY NIEBERG, Individually, and HARRY NIEBERG FUNERAL HOME INC.

Defendants.

**Index No. 40169/07**

**STIPULATION**

**IT IS HEREBY STIPULATED AND AGREED** by and between the attorneys for the parties hereto and subject to the approval of the Court, that the within action be, and the same hereby is, marked stayed as a result of the institution of an action involving the same subject matter by defendants herein against plaintiffs herein in the United States District Court for the Southern District of New York, 08 CV 00392 (MGC) pending a ruling by that Court as to whether it has and will exercise jurisdiction of such suit.

Dated: New York, New York
February 5, 2008

Ronald J. Offenkrantz, Esq.
LICHTER GLIEDMAN OFFENKRANT PC
Attorneys for Plaintiffs
551 Fifth Avenue – 24th Floor
New York, NY 10176
Tel: (212) 867-7750
Fax: (212) 658-9424

Joseph F. Uvino, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLC - Attorneys for Defendants
199 Water Street – Suite 2500
New York, NY 10038
Tel: (212) 232-1300
Fax: (212) 232-1399

**SO ORDERED:**

Justice of the Supreme Court

20695

# EXHIBIT "16"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

HARRY NIEBERG, an individual, and HARRY NIEBERG FUNERAL HOME INC., a New York corporation,

Plaintiffs,

v.

NIEBERG MIDWOOD CHAPEL INC., a New York corporation, MIDWOOD MEMORIAL CHAPEL INC., a New York corporation,

Defendants.

---------------------------------------------------------------- x

NIEBERG MIDWOOD CHAPEL INC., and MIDWOOD MEMORIAL CHAPEL INC., New York corporations, Defendants and Counterclaim Plaintiffs,

v.

HARRY NIEBERG, and HARRY NIEBERG FUNERAL HOME INC., Counterclaim Defendants, and SHERMAN FUNERAL HOME INC., Additional Counter-Claim Defendant.

---------------------------------------------------------------- x

Case No. 08 CV 00392 (MGC)

**ANSWER AND COUNTER-CLAIM AGAINST PLAINTIFFS AND ADDITIONAL COUNTER-CLAIM DEFENDANT**

Defendants, NIEBERG MIDWOOD CHAPEL INC. and MIDWOOD MEMORIAL CHAPEL INC., by their attorneys, LICHTER GLIEDMAN OFFENKRANTZ PC and ROSENBERG FELDMAN SMITH, LLP, as and for their answer to plaintiffs' Complaint and as and for a counterclaim against plaintiffs and additional counterclaim defendant, SHERMAN FUNERAL HOME INC. ("SHERMAN"), allege:

1. Deny the allegations contained in Paragraph 1 of plaintiffs' Complaint, except that plaintiffs purport to assert claims under 28 USC §2201 and 15 USC §1051, et seq.

2. Admit the allegations contained in Paragraph 2 of plaintiffs' Complaint.

3. Deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 3 of plaintiffs' Complaint.

4. Admit the allegations contained in Paragraphs 4 and 5 of plaintiffs' Complaint.

5. Deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraphs 6 and 7 of plaintiffs' Complaint.

6. Admit the allegations contained in Paragraphs 8, 9 and 10 of plaintiffs' Complaint, except deny that any activities of any named defendant have resulted in injuries to plaintiffs.

7. Admit the allegations contained in Paragraph 11 of plaintiffs' Complaint.

8. Deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraphs 12 and 13 of plaintiffs' Complaint, except admit that defendants do business in the City of New York and in this judicial district.

9. Admit the allegations contained in Paragraphs 14, 15 and 16 of plaintiffs' Complaint.

10. Deny the allegations contained in Paragraph 17 of plaintiffs' Complaint, except admit discussions with regard to a non-compete provision prior to the execution of the agreement executed by the parties resolving their disputes in August 2006.

11. Deny the allegations contained in Paragraphs 18 and 19 of plaintiffs' Complaint, except admit that the agreement executed by the parties did not contain a non-compete clause per se, and refer the Court to the terms and conditions of the agreement between the parties.

12. Deny the allegations contained in Paragraphs 20, 21, 22, 23 and 24 of plaintiffs' Complaint, except admit that plaintiff HARRY NIEBERG purportedly made an arrangement the particulars of which are unknown, pursuant to which SHERMAN permitted HARRY NIEBERG to place a plaque on the front of SHERMAN's place of business with the name "HARRY NIEBERG FUNERAL HOME INC.", the consideration for which is unknown.

13. Admit the allegations contained in Paragraph 25, except deny that the name "HARRY NIEBERG FUNERAL HOME INC." is a "mark" within the meaning of the laws applicable to trademarks or service marks and deny that HARRY NIEBERG or SHERMAN has the right to use that designation as a mark or name and deny that HARRY NIEBERG FUNERAL HOME INC. is properly registered in the State of New York to perform funeral services.

14. Deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 26, except admit that SHERMAN aids, assists, conducted, and presently conducts, funeral services attributable to HARRY NIEBERG with the knowledge of HARRY NIEBERG's false, misleading and confusing advertising in the Yellow Pages and elsewhere in which HARRY NIEBERG falsely holds and continues to hold himself out as affiliated with defendants and/or authorized to perform funeral services on their behalf.

15. Deny the allegations contained in Paragraphs 27 and 28 of plaintiffs' Complaint, except admit that HARRY NIEBERG and SHERMAN were requested to honor plaintiffs'

trademark and trade name rights and to instruct all publications, including the Yellow Pages, that the HARRY NIEBERG FUNERAL HOME INC. was not to be advertised.

16. Admit the allegations contained in Paragraph 29 of plaintiffs' Complaint.

17. Deny the allegations contained in Paragraph 30 of plaintiffs' Complaint and refer the Court to the letter of October 16, 2007 for the true contents thereof.

18. Deny the allegations contained in Paragraph 31 of plaintiffs' Complaint, except admit that SHERMAN temporarily removed the plaque with the name "HARRY NIEBERG FUNERAL HOME INC.", and presently aids and abets plaintiffs' false and confusing advertising and use of the "NIEBERG" name to arrange for funeral services at SHERMAN.

19. Admit the allegations contained in Paragraphs 32, 33, 34, 35 and 36 of plaintiffs' Complaint, except deny so much of Paragraph 33 as alleges that defendants claimed to be using the mark HARRY NIEBERG & SONS INC. only as of October 13, 2007 whereas the trade name was used from and since 1939 by HARRY NIEBERG & SONS INC. and defendants as successor corporations.

**FIRST CLAIM FOR RELIEF**

20. Defendants repeat and reallege each and every response set forth above to the paragraphs incorporated by reference in Paragraph 37 of plaintiffs' Complaint.

21. Deny each of the allegations contained in Paragraphs 38, 39, 40, 41, 42, 43, 44, 45, 46 and 47 of plaintiffs' Complaint.

**SECOND CLAIM FOR RELIEF**

22. Defendants repeat and reallege each and every response set forth above to the paragraphs incorporated by reference in Paragraph 48 of plaintiffs' Complaint.

23. Deny each of the allegations contained in Paragraphs 49, 50, 51, 52, 53, 54, 55, 56, 57, 58 and 59 of plaintiffs' Complaint.

**THIRD CLAIM FOR RELIEF**

24. Defendants repeat and reallege each and every response set forth above to the paragraphs incorporated by reference in Paragraph 60 of plaintiffs' Complaint.

25. Deny each of the allegations contained in Paragraphs 61, 62, 63, 64, 65, 66, 67, 68, 69 and 70 of plaintiffs' Complaint.

**FOURTH CLAIM FOR RELIEF**

26. Defendants repeat and reallege each and every response set forth above to the paragraphs incorporated by reference in Paragraph 71 of plaintiff's Complaint.

27. Deny each of the allegations contained in Paragraphs 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83 and 84 of plaintiffs' Complaint.

**FIFTH CLAIM FOR RELIEF**

28. Defendants repeat and reallege each and every response set forth above to the paragraphs incorporated by reference in Paragraph 85 of plaintiffs' Complaint.

29. Deny each of the allegations contained in Paragraphs 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96 and 97 of plaintiffs' Complaint.

**SIXTH CLAIM FOR RELIEF**

30. Defendants repeat and reallege each and every response set forth above to the paragraphs incorporated by reference in Paragraph 98 of plaintiffs' Complaint.

31. Denies each of the allegations contained in Paragraphs 99, 100, 101, 102 and 103 of plaintiffs' Complaint, except admit that plaintiffs and defendants have interests adverse to each other.

**FIRST AFFIRMATIVE DEFENSE**

32. Plaintiffs are equitably estopped, or barred by the doctrine of laches and waiver, from maintaining their causes of action.

**SECOND AFFIRMATIVE DEFENSE**

33. Plaintiffs' claims are barred, in whole or in part, by the General Release executed by them as of August 2006.

**THIRD AFFIRMATIVE DEFENSE**

34. Plaintiffs' purported license of the name "HARRY NIEBERG" alone or as part of "HARRY NIEBERG FUNERAL HOME INC." is invalid and contrary to New York law and the funeral service business cannot be conducted in the name of "HARRY NIEBERG FUNERAL HOME INC." as it is not licensed in the State of New York to conduct such business.

**AS AND FOR A COUNTERCLAIM AGAINST HARRY NIEBERG, HARRY NIEBERG FUNERAL HOME INC. AND SHERMAN FUNERAL HOME INC. UNDER THE LANHAM ACT 15 USC §1051 ET SEQ.**

35. Defendants and counterclaim plaintiffs, NIEBERG MIDWOOD CHAPEL INC. and MIDWOOD MEMORIAL CHAPEL INC., are corporations duly organized under the laws of the State of New York and each has its principal place of business at 1625 Coney Island Avenue, Corner Avenue M, in the Borough of Brooklyn, City and State of New York 11230.

36. Plaintiff HARRY NIEBERG ("HARRY") is a resident of the Borough of Brooklyn and the former owner of one-third of the stock of defendants, NIEBERG MIDWOOD CHAPEL INC. and MIDWOOD MEMORIAL CHAPEL INC. HARRY is a grandson of the original "HARRY NIEBERG", who organized HARRY NIEBERG & SONS, INC., the predecessor of defendants herein.

37. Upon information and belief, plaintiff, HARRY NIEBERG FUNERAL HOME INC. is a newly formed entity incorporated under the laws of the State of New York in July 2007, and holds itself out as doing business under that name in the Yellow Pages and in signage and placards at the premises occupied by SHERMAN located at 1283 Coney Island Avenue, Brooklyn, NY 11230. A copy of a photograph showing the manner in which SHERMAN and HARRY NIEBERG have advertised HARRY NIEBERG's funeral business at SHERMAN is attached hereto and marked Exhibit A.

38. Upon information and belief, additional counterclaim defendant, SHERMAN, is a corporation organized under the laws of the State of New York and is duly licensed to provide professional funeral services at its principal place of business at 1283 Coney Island Avenue,

Brooklyn, NY 11230.  This Court has jurisdiction of the counterclaim against plaintiffs and against SHERMAN as additional counterclaim defendant under 28 USC §2201, 15 USC §1051 and the doctrine of supplemental jurisdiction.

39.     SHERMAN is and has long been in competition with defendants in the field of performing professional funeral services and is located three blocks away from defendants' Coney Island Avenue place of business.

40.     Defendants and their affiliates have continuously operated under the trade name and title "HARRY NIEBERG & SONS" and/or NIEBERG since HARRY NIEBERG & SONS INC. was formed in 1939 by plaintiffs' grandfather, the original HARRY NIEBERG, and continuously thereafter, by HARRY NIEBERG's children, and subsequently by grandchildren, PETER J. NIEBERG ("PETER"), STANLEY J. NIEBERG ("STANLEY"), and HARRY.  In or about 1990, HARRY ceased active involvement with defendants and defendants' funeral home to pursue other interests.

41.     From and since 1939, HARRY NIEBERG & SONS INC. and its successor corporations, including defendants herein, have and continue to prominently advertise the trade name "NIEBERG" or "HARRY NIEBERG & SONS" on its funeral facilities, have advertised the name "NIEBERG" and/or "HARRY NIEBERG & SONS" in interstate commerce and in numerous publications in the metropolitan area of New York City and, particularly, the Boroughs of Manhattan and Brooklyn, have been featured in numerous articles and publications as a family run business going back five generations and using the NIEBERG name dating back to the 1930's and still performing professional funeral arrangements under that name to the point that the name NIEBERG and HARRY NIEBERG & SONS has achieved secondary meaning as a

trademark and trade name and has become well known to represent the professional care and attention of the NIEBERG FAMILY, the continuation of the family name, and the well deserved reputation and adherence to strict Jewish traditions in the performance of funeral services.

42. For and during a period of more than seventy years, the original HARRY NIEBERG and thereafter his children, and later his grandchildren, and successor corporations incorporating the name NIEBERG have continuously enhanced the reputation and good will of their original founder. The good will attendant to the name HARRY NIEBERG was directly attributable to defendants' grandfather and later the entities operated by defendants and not by plaintiff herein.

43. Attached hereto and collectively marked Exhibit B are representative samples of advertising, feature articles, and photographs, all representing, portraying and commenting upon the original HARRY NIEBERG, the use of the name HARRY NIEBERG & SONS and/or NIEBERG trade name and history of the NIEBERG FAMILY.

**FIRST CAUSE OF ACTION OF COUNTERCLAIM**

**INFRINGEMENT OF TRADE NAME AND UNFAIR COMPETITION AGAINST ALL COUNTERCLAIM DEFENDANTS UNDER THE LANHAM ACT**

44. Defendants repeat and reallege each and every allegation set forth above in paragraphs 35 through 43 as if fully set forth herein.

45. Heretofore and during the period 1990 through 2005 and at a time when PETER, STANLEY and HARRY were each one-third shareholder of defendant corporations, HARRY did not participate in the day to day conduct of defendants' business and instead chose to engage

in businesses unrelated to the funeral business. HARRY continued as a one-third shareholder of defendants and received salary and other benefits from defendants on the same basis as PETER and STANLEY, and served as an officer and director of plaintiffs until 2006, and until 2006 acted as Trustee of the HARRY NIEBERG & SONS INC. Defined Pension Plan.

46.     In or about 2005, a dispute arose between PETER and STANLEY on the one hand, and HARRY on the other, regarding HARRY's continued receipt of salary and other perquisites of employment, including a car, charge cards, medical coverage, E-Z Pass and other cash equivalents, although not generating, performing or attending to the business of providing funeral services performed by the defendants. In or about 2006, HARRY instituted proceedings in the Supreme Court, Kings County, for the dissolution of defendants.

47.     After the institution of said proceedings, PETER, STANLEY and HARRY entered into an Agreement of Purchase and Sale with HARRY, pursuant to which HARRY sold and transferred his entire one-third interest in defendant corporations together with their good will and assets for a sum substantially in excess of $2,000,000 and agreed to terminate and liquidate the HARRY NIEBERG & SONS INC. Defined Pension Fund of which he was a Trustee. The HARRY NIEBERG & SONS INC. Pension Fund was liquidated and HARRY received $271,000 from said Pension Fund in January 2008.

48.     At a point in time not presently known to defendants, but believed to be in or about July 2007, HARRY embarked on a course of conduct together with SHERMAN unfairly to compete with defendants and secure from the telephone company a confusingly similar telephone listing, and improperly to use HARRY's given name, HARRY NIEBERG to cause confusion in the funeral industry and confusion on the part of the consumers located in the New

York metropolitan area and in the Jewish community from which and for which defendants perform their services by, among other things, advertising and promoting the name "HARRY NIEBERG" or "HARRY NIEBERG FUNERAL HOME" in the immediate proximity of defendants' funeral home, to wit, three blocks away, all with the purpose and intent of interfering with and diminishing defendants' good will in the community, and diluting the value of the good will generated by the original HARRY NIEBERG and enhanced by defendants for which defendants paid when they bought out HARRY's interest.

49. Prior to the institution of this action, and in 2007, defendants, as plaintiffs, instituted an action against HARRY and HARRY NIEBERG FUNERAL HOME INC. in the Supreme Court, Kings County, Index No. 40169/07, seeking to restrain HARRY and HARRY NIEBERG FUNERAL HOME INC. from using or offering to perform funeral services under the name NIEBERG or HARRY NIEBERG, individually or in conjunction with SHERMAN, which action is still pending. Prior thereto, defendants duly demanded that HARRY and SHERMAN cease and desist from using or advertising the "HARRY NIEBERG" name in connection with the performance of funeral services. HARRY rejected the request and SHERMAN temporarily removed the HARRY NIEBERG sign but did not stop HARRY from using its address on Coney Island Avenue for Yellow Pages and other purposes as HARRY's place of business. Copies of the notices sent to HARRY and SHERMAN by Federal Express are attached hereto as Exhibit C.

50. Notwithstanding the institution of said action, and notwithstanding the demand that SHERMAN cease and desist from unlawfully competing with defendants and confusing the consuming public into believing that HARRY NIEBERG FUNERAL HOME INC. and NIEBERG MIDWOOD CHAPEL INC. were one and the same, or that SHERMAN was authorized to use the NIEBERG name, SHERMAN and HARRY, continued as late as January

13, 2008, to deceive, mislead and confuse the consuming public as to the source and origin of the funeral services being provided. For example, plaintiffs deceived and misled defendants' long time client, who had called Verizon information to secure defendants' – not HARRY's - telephone number, to make arrangements for funeral services for the sister of defendants' client into believing that HARRY and SHERMAN were one and the same as defendant NIEBERG MIDWOOD CHAPEL INC. by offering to, and conducting funeral services at the behest of defendants' client for which SHERMAN billed in excess of $6,000 and remitted to HARRY a sum, the amount of which is presently unknown, thereby pirating or capturing the funeral business which otherwise would have been conducted by NIEBERG MIDWOOD CHAPEL INC. and thereby deceiving, misleading and confusing defendants' client.

51.    The conduct of counterclaim defendants as above alleged and the operation of a funeral home or the offering of funeral services under the name "HARRY NIEBERG FUNERAL HOME" and/or the use of the name "NIEBERG" at the SHERMAN location, or in the funeral service business, is likely to confuse and has actually caused confusion as to the source and origin of the funeral services being provided in violation of 15 U.S.C. §1125(a), is a deceit upon the public and threatens to impair and cause severe damage to the high reputation, good will and profits of the defendants in their business and cause irreparable damage to defendants for which they have no adequate remedy at law.

## SECOND CAUSE OF ACTION

## VIOLATION OF NEW YORK LAW AND UNFAIR COMPETITION AGAINST PLAINTIFFS AND ADDITIONAL COUNTERCLAIM DEFENDANT SHERMAN

52. Defendants repeat and reallege each and every allegation set forth above in paragraphs 35 through 51 hereof as if fully set forth at length herein.

53. By virtue of same, counterclaim defendants have engaged and presently engage in unfair trade practices in violation of New York General Business Law Section 133 and in violation of New York common law governing the use of trademarks and trade names, false advertising and fraudulent conduct, for which defendants have no adequate remedy at law.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT AGAINST COMPETITION AND/OR USE OF THE NAME "HARRY NIEBERG" OR "NIEBERG"

54. Defendants repeat and reallege each and every allegation set forth above in paragraphs 35 through 51 as if fully set forth herein.

55. Heretofore and in September 2006, HARRY NIEBERG sold all of his shares in defendants, caused the early termination of the HARRY NIEBERG & SONS INC. Pension Plan of which he was a Trustee, and received all sums due him under said Plan as part of a bargained for resolution of the dispute with PETER and STANLEY and the dissolution proceedings instituted by HARRY NIEBERG.

56. By virtue of same, and the receipt by HARRY of all sums paid, HARRY impliedly covenanted not to compete with defendants in the area of funeral services and

impliedly covenanted not to use the names "NIEBERG" or "HARRY NIEBERG" or any other name confusingly similar to that of defendants and defendants have no adequate remedy at law.

**FOURTH CAUSE OF ACTION**

**ACTION FOR DAMAGES**

57. Defendants repeat and reallege each and every allegation set forth above in paragraphs 35 through 56 as if fully set forth herein.

58. By virtue of the foregoing, and the acts and conduct of which defendants complain, counterclaim defendants are liable to defendants in damages in an amount to be determined by the Court at trial.

**FIFTH CAUSE OF ACTION**

**ACTION FOR UNFAIR COMPETITION**

59. Defendants repeat and reallege each and every allegation set forth above in paragraphs 35 through 58 hereof as if fully set forth herein.

60. Plaintiffs well knew prior to the time they filed the within Complaint, that defendants and defendants' predecessor entities used the NIEBERG name and the trade name HARRY NIEBERG & SONS INC. for many decades and that the public had long associated Jewish funerals with the NIEBERG family and never associated with the conduct of funerals by HARRY.

61. Plaintiffs well knew prior to the filing of the within Complaint, that each was a defendant in the Supreme Court, Kings County, State of New York action brought by defendants

in which each answered the Complaint and put in issue defendants' challenge to plaintiffs' right to the use of the NIEBERG name or trade name in competition with defendants.

62. Plaintiffs well knew before the filing of the within Complaint, that the name HARRY NIEBERG FUNERAL HOME INC. had not been created or used by plaintiffs before July 2007, had not acquired secondary meaning as alleged by plaintiffs, had not been used by HARRY in the funeral business or in any business related thereto until no earlier than July 2007 when HARRY wrongfully commenced his attempt to capture the good will and dilute the value of the HARRY shares which had just been purchased by defendants in 2006, and that the use of said name was made solely with the intention of interfering with defendants' funeral business, to create confusion and unlawfully to compete with defendants.

63. By virtue of the foregoing, plaintiffs have maliciously and without cause, and with the sole intention to interfere with and harm defendants' business, embarked on a plan or scheme to make false allegations which are demonstrably untrue and have invoked the Court's jurisdiction under the Lanham Act and commenced this action without a good faith basis in law or fact.

64. By virtue of the foregoing, plaintiffs have engaged in unfair competition against defendants, for which they are liable in damages.

**WHEREFORE,** judgment is demanded by defendants as follows:

1. Dismissing plaintiffs' claims in their entirety and awarding defendants legal fees and assessing sanctions against plaintiffs in an amount to be determined by the Court.

2.    Judgment preliminarily and permanently enjoining plaintiffs and counterclaim defendants and each of them from using or employing or causing to be used or employed the names "NIEBERG" or "HARRY NIEBERG" or any confusingly similar name and any other style or designation, which includes the name "NIEBERG" in or as part of the trade or business name under which the plaintiffs and counterclaim defendants conduct a funeral business.

3.    Ordering and adjudging that plaintiffs and counterclaim defendants be preliminarily and permanently enjoined from displaying, distributing or circulating or causing the display, distribution or circulation of any advertisements or other promotional material, including without limitation, newspapers, magazines, Yellow Pages on line or in print, or any other type of advertisements, announcements, listings, signs, or placards in which the name "NIEBERG" or "HARRY NIEBERG" or any confusingly similar names are employed, in whole or in part, to identify any funeral service business which they or any of them may conduct.

4.    Ordering and adjudging that plaintiffs and counterclaim defendants promptly cancel or withdraw or cause to be cancelled or withdrawn any such advertisements or other promotional material which have already been placed or ordered to be published, distributed or circulated by persons other than said defendants.

5.    Awarding damages against counterclaim defendants pursuant to the Lanham Act and the laws of the State of New York in the amount of (a) all funeral service business lost by defendants, (b) the amount of counterclaim defendants' profits from all funeral services business diverted by defendants, and (c) the amount by which the value of defendants' business has been diminished, all trebled in accordance with law together with counsel fees as may be awarded by applicable law.

6. Such other and further relief as to the Court seems just and proper.

Dated: New York, New York
February 11, 2008

LICHTER GLIEDMAN OFFENKRANTZ PC
551 Fifth Avenue
New York, NY 10176
(212) 867-7750
Attorneys for Defendants and Counterclaim Plaintiffs

By: ______________________
Ronald J. Offenkrantz (RJO 1334)

ROSENBERG FELDMAN SMITH, LLP
551 Fifth Avenue
New York, NY 10176
(212) 682-3454
Attorneys for Defendants and Counterclaim Plaintiffs (Trial Counsel)

By: ______________________
Michael H. Smith (MHS 4835)

TO:    LEWIS BRISBOIS BISGAARED &
      SMITH, LLP
    Attention:    Joseph Uvino, Esq.
    Attorneys for Plaintiffs
    199 Water Street, 25th Floor
    New York, NY 10038
    (212) 232-1300

# EXHIBIT "17"

MAPQUEST®

A: 2370 E 66th St, Brooklyn, NY 11234-6326

| | | |
|---|---|---|
| START | 1: Start out going NORTHWEST on E 66TH ST toward WHITMAN DR. | 0.6 mi |
| | 2: Turn LEFT onto VETERANS AVE. | 0.1 mi |
| | 3: VETERANS AVE becomes AVENUE N. | 0.9 mi |
| | 4: Turn RIGHT onto FLATBUSH AVE. | 0.8 mi |
| | 5: Turn LEFT onto AVENUE J. | 1.2 mi |
| | 6: Turn RIGHT onto CONEY ISLAND AVE. | 0.1 mi |
| END | 7: End at 1283 Coney Island Ave Brooklyn, NY 11230-3520 | |

Estimated Time: 13 minutes Estimated Distance: 3.8 miles

B: 1283 Coney Island Ave, Brooklyn, NY 11230-3520

**Total Time: 13 minutes Total Distance: 3.8 miles**



All rights reserved. Use subject to License/Copyright | Map Legend
Directions and maps are informational only. We make no warranties on the accuracy of their content, road conditions or route usability or
expeditiousness. You assume all risk of use. MapQuest and its suppliers shall not be liable to you for any loss or delay resulting from your use of
MapQuest. Your use of MapQuest means you agree to our Terms of Use

# EXHIBIT "18"

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRY NIEBERG, an individual, and HARRY NIEBERG FUNERAL HOME INC., a New York corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NIEBERG MIDWOOD CHAPEL INC., a New York Corporation; MIDWOOD MEMORIAL CHAPEL INC., a New York corporation,<br><br>Defendants. | Case No. : 08 CV 00392<br><br>**ORDER (PROPOSED)** |

The Court, having considered Plaintiffs, HARRY NIEBERG, ("Harry"), and HARRY NIEBERG FUNERAL HOME INC., ("Nieberg Funeral")'s Motion for Preliminary Injunction and all exhibits and pleadings pertaining thereto and having conducted a hearing on same on ______________________, 2008, hereby ORDERS, pending trial of this action:

1. That Defendants NIEBERG MIDWOOD CHAPEL INC., a New York Corporation, and MIDWOOD MEMORIAL CHAPEL INC., a New York corporation, and their officers, agents, servants, employees, attorneys, parents, subsidiaries, related companies, partners, and all persons acting for, with, by, through or under it (the "Defendants") are hereby:

(a) Restrained and enjoined from claiming any ownership rights to the HARRY NIEBERG mark and/or any similar variation thereof (the "Mark");

(b) Restrained and enjoined from seeking registration of the Mark;

(b) Restrained and enjoined from advertising and/or otherwise marketing or disposing of Defendants' services under the name Harry Nieberg and/or any similar variation thereof, including without limitation, Harry Nieberg & Sons Inc.;

(c) Ordered to destroy and dispose of all of Defendants' materials bearing in any manner the Mark, including without limitation, advertising materials, promotional materials, drawings, brochures, catalogs, stationery, business forms, business cards, labels, signs and stickers;

(d) Ordered to file with this Court and serve upon Plaintiffs, within 30 days of being served with this Court's injunction issued in this action, a written report signed by Defendants under oath, setting forth in detail the manner in which Defendants complied with the Court's injunction;

(e) Restrained and enjoined from any use of the Mark whatsoever and any further conduct that infringes the Mark or Plaintiffs' use of the Mark;

(f) Restrained and enjoined from further interference with Plaintiffs' existing business relationships; and

(g) Restrained and enjoined from further interference with Plaintiffs' prospective business relationships.

2. The above Order is effective on Plaintiffs' filing of security in the sum of $_______________.___.

**IT IS SO ORDERED.**

______________________________
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Dated: