UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

HARRY NIEBERG, an individual, and : Case No. 08 CV 00392 (MGC)
HARRY NIEBERG FUNERAL HOME INC.,
a New York corporation, :

                                  Plaintiffs, :

                   v. :

NIEBERG MIDWOOD CHAPEL INC., :
a New York corporation, MIDWOOD
MEMORIAL CHAPEL INC., a New York :
corporation,

                                  Defendants. :

------------------------------------------------------------ x

NIEBERG MIDWOOD CHAPEL INC., :
and MIDWOOD MEMORIAL CHAPEL :
INC., New York corporations,
Defendants and Counterclaim Plaintiffs, :

                   v. :

HARRY NIEBERG, and HARRY NIEBERG :
FUNERAL HOME INC.,
Counterclaim Defendants, and :
SHERMAN FUNERAL HOME INC.,
Additional Counter-Claim Defendant. :

------------------------------------------------------------ x

**MEMORANDUM OF LAW OF DEFENDANTS,
NIEBERG MIDWOOD CHAPEL INC. AND
MIDWOOD MEMORIAL CHAPEL INC IN
OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS
THIRD AND FOURTH COUNTERCLAIMS**

LICHTER GLIEDMAN OFFENKRANTZ PC    ROSENBERG FELDMAN SMITH,LLP
551 Fifth Avenue                                        551 Fifth Avenue
New York, NY 10176                               New York, NY 10176
(212) 867-7750                                           (212) 682-3454

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Autz v. Fagan,
    16 Misc.3d 1,140(A), 2007 WL 2701305 (Supreme Court, Nassau County 2007) ...................... 8

Bertolli U SA, Inc. v. Filippo Bertolli Fine Foods, Ltd.,
    662 F.Supp. 203 (S.D.N.Y. 1987) ............................................................................................. 8

Brasscrafters, Inc. v. Ehrlich,
    109 A.D.2d 724, 486 N.Y.S.2d 42 (2d Dept. 1985) ................................................................. 7

David B. Findlay, Inc. v. Findlay,
    18 N.Y.2d 12, 218 N.E.2d 531 (N.Y. 1966) ............................................................................. 9

Henegan Constr. Co. v. Heneghan Contracting Corp.,
    No. 00 Civ. 9077, 2002 WL 1300252, (S.D.N.Y. 2002) .......................................................... 8

Hyde Park Products Corp. v. Maximilian Lerner Corp.,
    65 N.Y.2d 316, 480 N.E.2d 1084, 491 N.Y.S.2d 302 (N.Y. 1985) ................................... 2, 6, 7

MGM Court Reporting Service, Inc. v. Greenberg,
    74 N.Y.2d 691, (N.Y. 1989) ..................................................................................................... 8

Mohawk Maintenance Co., Inc. v. Kessler,
    52 N.Y.2d 276, 419 N.E.2d 324, 437 N.Y.S.2d 646 (N.Y. 1981) .................................... 2, 6, 7, 8

Yankelovich Skelly and White, Inc. v. White, Yankelovich, Skelly Consulting Group, Inc., et al.
    1989 WL 115848 (S.D.N.Y. 1989) ........................................................................................... 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

HARRY NIEBERG, an individual, and        :    Case No. 08 CV 00392 (MGC)
HARRY NIEBERG FUNERAL HOME INC.,
a New York corporation,                  :

                    Plaintiffs,    :

        v.                               :

NIEBERG MIDWOOD CHAPEL INC.,             :
a New York corporation, MIDWOOD
MEMORIAL CHAPEL INC., a New York         :
corporation,
                                    :
                    Defendants.

------------------------------------------------------------ x

NIEBERG MIDWOOD CHAPEL INC.,             :
and MIDWOOD MEMORIAL CHAPEL              :
INC., New York corporations,
Defendants and Counterclaim Plaintiffs,  :

        v.                               :

HARRY NIEBERG, and HARRY NIEBERG         :
FUNERAL HOME INC.,
Counterclaim Defendants, and             :
SHERMAN FUNERAL HOME INC.,
Additional Counter-Claim Defendant.      :

------------------------------------------------------------ x

**MEMORANDUM OF LAW OF DEFENDANTS,
NIEBERG MIDWOOD CHAPEL INC. AND
MIDWOOD MEMORIAL CHAPEL INC IN
OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS
THIRD AND FOURTH COUNTERCLAIMS**

**PRELIMINARY STATEMENT**

       This Memorandum is submitted by defendants in opposition to plaintiffs' motion to dismiss defendants' third and fourth counterclaims. The third counterclaim is based upon the

well-settled principle of New York law that the seller of an interest in a business has an implied duty to refrain from acting to impair the "good will" of the business. Hyde Park Products Corp. v. Maximilian Lerner Corp., 65 N.Y.2d 316, 480 N.E.2d 1084, 491 N.Y.S.2d 302 (N.Y. 1985); Mohawk Maintenance Co., Inc. v. Kessler, 52 N.Y.2d 276, 419 N.E.2d 324, 437 N.Y.S.2d 646 (N.Y. 1981). This "implied covenant" is in reality a duty "imposed by law in order to prevent the seller from taking back that which he has purported to sell." Mohawk Maintenance, supra, 52 N.Y.2d at 285, 437 N.Y.S.2d at 651.

Plaintiffs' motion does not address this principle at all. Indeed, it merely argues that there cannot be an "implied duty" because it is not contained in the parties' agreement. But, that is exactly the nature and purpose of the implied duty recognized by the New York Court of Appeals.

Plaintiffs' motion papers do not attach the Counterclaims or their Reply. While their motion is brought under Fed. R. Civ. P. 12(b)(6) – and is rather a motion under Rule 12(c) - it should not be necessary to remind plaintiffs that a self-serving e-mail (of April 2006) during the course of negotiations and four months before final agreement is reached has no place in the moving papers, that discussions between counsel to the extent they existed in the course of settlement discussions are not subject to disclosure, and that the very integration clause found in the agreement between the parties and upon which plaintiffs here relies provides in no uncertain terms that the final agreement "supersedes all prior written and oral agreements and any prior representation, statement, conditions, or warranty," see Stipulation at Paragraph 24, so that the integration clause precludes plaintiffs' reliance upon the earlier e-mail. The only issue here presented is whether defendants have stated cognizable counterclaims for relief. Nothing more. Whereas the Settlement Agreement may arguably be considered by the Court even though not

attached to the counterclaim, no extraneous papers and no self-serving e-mails by counsel may properly be read.

## FACTS

For the purposes of plaintiffs' post Reply to Counterclaim Motion to Dismiss the third and fourth counterclaims asserted against them, plaintiffs necessarily admit that:

1.     Defendants and their predecessors in interest have used and currently use the name NIEBERG and HARRY NIEBERG & SONS for the past seventy years since the original founders' son-in-law, HARRY NIEBERG, succeeded to the funeral business established by grandson HARRY's great, great grandparents more than one hundred years ago.

2.     For seventy years, defendants and their predecessor companies used the name HARRY NIEBERG & SONS and conducted the funeral business at the same location on Coney Island Avenue, Brooklyn, New York. The good will attendant to the NIEBERG name was not ascribable to HARRY.

3.     Grandson HARRY had been a one-third shareholder in defendants' funeral business together with brothers, PETER and STANLEY, until 2006 but had no active involvement in that business for at least ten years prior to 2006 although he continued to share, with his brothers, the perquisites of employment.

4.     In August 2006, and at a time the HARRY NIEBERG & SONS name was prominently emblazoned on the front of defendants' facility and used in its literature and mailings, and while HARRY served as Trustee of the HARRY NIEBERG & SONS INC. Pension Plan, HARRY exercising his own "free will" entered into an agreement to sell and

21098                                3

transfer to defendants his one-third interest in the corporations, for a sum in excess of $2,500,000 – with other consideration more fully identified in the Agreement attached as Exhibit 1 to plaintiffs' motion.

5. HARRY – who has no sons – and is not the HARRY NIEBERG & SONS whose name is on defendants' facility, did not advertise or use his name and never attempted to develop secondary meaning in his name. He waited until July 26, 2007 to incorporate "HARRY NIEBERG FUNERAL HOME INC.," and thereupon asserts that it entered into a "license" with SHERMAN FUNERAL HOME INC. ("SHERMAN"), - which the motion conspicuously does not attach - under which SHERMAN posted the HARRY NIEBERG FUNERAL HOME INC. plaque together with other corporate plaques at its front entrance.

6. SHERMAN, a long time competitor of defendants in the funeral home business, and particularly in respect of Jewish funerals, to use HARRY's words, is " only three blocks" distant from defendants, also on Coney Island Avenue, Brooklyn.

7. HARRY also arranged Yellow Pages space for the newly formed entity, HARRY NIEBERG FUNERAL HOME in direct competition with NIEBERG MIDWOOD CHAPEL INC. using SHERMAN's address as its place of business in such a way as to secure a telephone listing intended to capture customer inquiries calling Verizon information services before that of defendants. He effectively secured a priority of listing using both the name HARRY NIEBERG FUNERAL HOME INC. and the name NIEBERG, HARRY so as to come before NIEBERG MIDWOOD CHAPEL INC. to the detriment of defendants, who continued and still continue to use the name NIEBERG and HARRY NIEBERG & SONS in the day to day conduct of their business; but their name appeared second to that of HARRY in the telephone listing.

8. In October 2007, defendants instituted suit against HARRY in the Supreme Court, Kings County, to enjoin the actions above described, asserted priority of, and to, the NIEBERG name and the name HARRY NIEBERG & SONS under New York law and asserted, among other things, that by virtue of HARRY's sale of stock to defendants, HARRY impliedly convenated that HARRY would not use the name HARRY NIEBERG in competition with defendants. HARRY appeared through present counsel and answered the Kings County Complaint in December 2007, made no motion addressed to the implied covenant claim and raised no counterclaim or request for an injunction.

9. Notwithstanding institution of suit in Supreme Court, Kings County, and through and including January of 2008, HARRY's conduct together with that of SHERMAN resulted in <u>actual</u> confusion directed to defendants' clients, including but not limited to, a long term client of defendants who telephoned Verizon information to secure defendants' number, but instead was given the telephone number of HARRY, who arranged for SHERMAN to conduct a graveside service knowing that the caller was seeking defendants and not HARRY.

10. HARRY NIEBERG FUNERAL HOME INC. is not registered with the New York State Department of Health and HARRY is incapable of licensing that name to SHERMAN or any one else by virtue of its lack of authorization to provide funeral services in New York.

For the purposes of this motion, HARRY also necessarily admits that by reason of his acts and conduct, defendants have been damaged and that HARRY together with SHERMAN have caused actual confusion in the minds of the consuming public. He also admits for the purposes of this motion that defendants have acquired secondary meaning in the name NIEBERG and HARRY NIEBERG & SONS.

## ARGUMENT

### POINT I

### HARRY'S IMPLIED COVENANT NOT TO IMPAIR THE "GOOD WILL" OF DEFENDANTS AND/OR USE THE NAME HARRY NIEBERG IS A FUNCTION OF NEW YORK LAW NOT DEALT WITH IN PLAINTIFFS' MOVING MEMORANDUM

As noted earlier, under New York law, the seller of a business interest has an "implied covenant" or legal duty to refrain from impairing the "good will" of the business interest he just sold, including by using the name of the company whose interest he just surrendered, to compete with it. This principle of New York law is not addressed by plaintiffs' motion or found in any of the cases cited by them.

Integration clauses, or even specific restrictive covenants which are limited in time, do not exclude this "implied covenant". The New York Court of Appeals in Hyde Park Products Corp., supra, and Mohawk Maintenance, supra, made clear that the implied covenant to refrain from impairing the "good will" of a business just sold is separate and apart from any duty which may or may not be in the parties' contract. They held that evidence of a more restrictive or even expired non competition clauses were irrelevant and, therefore, rejected the very argument made by plaintiffs on this motion.

In Mohawk, supra, the Court of Appeals found that the inclusion of a specific covenant for a limited number of years did not supplant or otherwise negate the seller's implied covenant not to impair the "good will".

As pointed out in Williston on Contracts, "[a] sale of good will, either in express terms or implied from as sale of a business by the owner, whether an individual person or a partnership,

21098                                6

carries with it certain implied obligations on the part of the seller." "There is an implied promise by the seller "not to compete with the old business in such a way to deprive the buyer of the benefit of the good will purchased."" 6 Williston on Contracts § 13:8 (4th ed.).

The use of the same or similar name by a seller clearly has that effect. Brasscrafters, Inc. v. Ehrlich, 109 A.D.2d 724, 486 N.Y.S.2d 42 (2d Dept. 1985) (after selling his fireplace equipment business to the plaintiff, the defendant Herbert Ehrlich was enjoined from using his own name "Erlich" alone, or in any combination in a competing business).

Not one of HARRY's cases address the issue and every contract construction case cited on HARRY's behalf is inapposite since (a) no one is here claiming any ambiguity in the buyout agreement, and (b) the very nature of the imposed legal duty is that it is not one stated in the parties' agreement.

Trademark/service mark/trade name issues aside, the only question before this Court on this motion becomes whether the buyout agreement in this case, which specifically provides that it was signed with no admissions of liability and provides that the agreement was fully and voluntarily negotiated at arms' length is the type of agreement to which the Hyde Park/Mohawk principle applies.

The buyout agreement between HARRY and his brothers, which specifically acknowledge it was executed by the parties in their "free will" was not involuntarily imposed on HARRY by a Court, was not the result of an appraisal adopted by a Court and, in fact, contains provisions which a Court could not impose, including consulting fees, transfer of the New Jersey graves to HARRY, pension liquidation and the like.

To be fair to HARRY's position, the issue may be an open one in the New York Court of Appeals in matters relating to <u>decrees</u> in corporate dissolution settings, as reflected in the decision in <u>MGM Court Reporting Service, Inc.</u> v. <u>Greenberg</u>, 74 N.Y.2d 691, 693 (1989), but recent case law strongly suggests that the implied covenant not to compete and clearly not to use HARRY's name would apply under the circumstances of this case.

The distinguishing factor, as recently opined by the Supreme Court, Nassau County, in <u>Autz</u> v. <u>Fagan</u>, 16 Misc.3d 1,140(A), 2007 WL 2701305 (unreported) (Supreme Court, Nassau County 2007) is whether a dissolution <u>decree</u> actually issued as distinct from the parties voluntarily determining that it was in their best interests to reach a negotiated settlement and each go his separate way. Here, there was no appraisal proceeding, no dissolution decree, and specific recitations of "free will" and no finding or concessions as to liability. In <u>Autz</u>, it was recognized that good will can be part of the sale even if not expressly stated in the agreement. Good will was defined broadly as the "advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stocks, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers..."

The above principle and similar rules which preclude a person from demanding the unfettered right to use his own name have been recognized by this Court in <u>Yankelovich Skelly and White, Inc.</u> v. <u>White, Yankelovich, Skelly Consulting Group, Inc., et al</u>. 1989 WL 115848 (S.D.N.Y. 1989, Keenan, J. which cited and applied <u>Mohawk</u>, <u>supra</u>, and enjoined solicitation of customers); see, also, <u>Bertolli U SA, Inc.</u> v. <u>Filippo Bertolli Fine Foods, Ltd.</u>, 662 F.Supp. 203 (S.D.N.Y. 1987); <u>Henegan Constr. Co.</u> v. <u>Heneghan Contracting Corp.</u>, No. 00 Civ. 9077, 2002 WL 1300252, at *5 (S.D.N.Y. June 12, 2002) (citing <u>Yankelovich</u>, <u>supra</u>, enjoining use by

21098                                    8

defendant of a true family name as a trademark or service mark). See also <u>David B. Findlay, Inc. v. Findlay</u>, 18 N.Y.2d 12, 218 N.E.2d 531 (1966), cases which deal with principals of an entity leaving to form their own business arguing the right to use one's given name, in which the New York Court of Appeals and this Court have rejected the attempt to interfere with the business which they had just left.

That being the case, there are a number of grounds sufficient to deny plaintiffs' motion and the Court should not grant dismissal of the third counterclaim as a matter of law.

## POINT II

### THE ASSERTION THAT DEFENDANTS DAMAGE COUNTERCLAIM (FOURTH COUNTERCLAIM) SHOULD BE DISMISSED AS "DUPLICATIVE" IS WITHOUT MERIT

HARRY's answers/reply to defendants' fourth counterclaim for damages specifically reflects that that counterclaim incorporates by reference all paragraphs which preceded it and which were predicated on the Lanham Act and New York law.

Each prior counterclaim asserted that defendants had no adequate remedy at law, but that does not prevent either pleading in the alternative under the Federal Rules or demanding damages as defendants have done.

This is not a contract case which a party seeks to convert into a fraud case, as HARRY suggests, and it is not a case of duplicative pleading because the same allegations which permit an injunction in defendants' favor also permit an award of damages.

The fact that defendants have also asserted claims in the nature of malicious prosecution and abuse of process as part of their unfair competition allegations does not make the damage

21098                                             9

claim, which incorporates and realleges all paragraphs from Paragraph 35 onward of the counterclaim any less viable.

Clearly, defendants will not be able to collect twice for the wrongs complained of, but the concept that the fourth counterclaim should be dismissed at this point under these circumstances is without merit.

## CONCLUSION

For all of the reasons set forth above, plaintiffs' motion to dismiss should be denied.

Dated: New York, New York
April 10, 2008

| | |
|---|---|
| LICHTER GLIEDMAN OFFENKRANTZ PC<br>551 Fifth Avenue<br>New York, NY 10176<br>(212) 867-7750<br>Attorneys for Defendants and<br>Counterclaim Plaintiffs<br><br>By: _____<br>Ronald J. Offenkrantz (RJO 1334) | ROSENBERG FELDMAN SMITH, LLP<br>551 Fifth Avenue<br>New York, NY 10176<br>(212) 682-3454<br>Attorneys for Defendants and<br>Counterclaim Plaintiffs (Trial Counsel)<br><br>By: _____<br>Michael H. Smith (MHS 4835) |

21098                                  10

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                                            )ss.:
COUNTY OF NEW YORK  )

**RONA INGEGNERI**, being duly sworn, deposes and says:

I am not a party to the action, am over 18 years of age and reside at 333 East 55th Street, New York, New York 10022.

On April 10, 2008, I served a true copy of an Memorandum of Law of Defendants In Opposition to Plaintiffs' Motion to Dismiss Third and Fourth Counterclaims upon Joseph Uvino, Esq., Lewis Brisbois Bisgaard & Smith LLP, the attorneys for plaintiffs, at 199 Water Street, 25th Floor, New York, New York 10038, by depositing a true copy thereof enclosed in a wrapper properly addressed in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

_____
RONA INGEGNERI

Sworn to before me this
10th day of April, 2008.

_____
Notary Public

LEONARD LICHTER
NOTARY PUBLIC-STATE OF NEW YORK
No. 02LI7544150
Qualified in Westchester County
My Commission Expires August 31, 2010

21200