UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

HARRY NIEBERG, an individual, and          :       Case No. 08 CV 00392 (MGC)
HARRY NIEBERG FUNERAL HOME INC.,
a New York corporation,                    :

                              Plaintiffs,   :

              v.                            :

NIEBERG MIDWOOD CHAPEL INC.,               :
a New York corporation, MIDWOOD
MEMORIAL CHAPEL INC., a New York           :
corporation,
                                           :
                              Defendants.

-------------------------------------------------------------- x

NIEBERG MIDWOOD CHAPEL INC.,               :
and MIDWOOD MEMORIAL CHAPEL                 :
INC., New York corporations,
Defendants and Counterclaim Plaintiffs,    :

              v.                            :

HARRY NIEBERG, and HARRY NIEBERG           :
FUNERAL HOME INC.,
Counterclaim Defendants, and               :
SHERMAN FUNERAL HOME INC.,
Additional Counter-Claim Defendant.        :

-------------------------------------------------------------- x

## MEMORANDUM OF LAW OF DEFENDANTS, NIEBERG MIDWOOD CHAPEL INC. AND MIDWOOD MEMORIAL CHAPEL INC IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LICHTER GLIEDMAN OFFENKRANTZ PC      ROSENBERG FELDMAN SMITH,LLP
551 Fifth Avenue                     551 Fifth Avenue
New York, NY 10176                   New York, NY 10176
(212) 867-7750                       (212) 682-3454

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

B & L Auto Group, Inc., d/b/a B & L Toyota v. Irma Zelig,
  188 Misc.2d 851, 730 N.Y.S.2d 400 (Civil Ct. N.Y. Co. 2001)................................................... 9

Bertolli U SA, Inc. v. Filippo Bertolli Fine Foods, Ltd.,
  662 F.Supp. 203 (S.D.N.Y. 1987) ........................................................................................... 13

Blaich Assocs. v. Coach/Blatch Real Estate of Manhasset,
  186 Misc.2d 594, 719 N.Y.S.2d 820 (Sup. Ct. Nassau Co.2000)............................................. 14

Brasscrafters, Inc. v. Ehrlich,
  109 A.D.2d 724, 486 N.Y.S.2d 42 (2d Dept. 1985) ................................................................ 13

Campion Funeral Home Inc. v. State of New York,
  166 A.D.2d 32, 569 N.Y.S.2d 518 (3d. Dept. 1991) ................................................................ 8

David B. Findlay, Inc. v. Findlay,
  18 N.Y.2d 12, 218 N.E.2d 531 (N.Y. 1966) ............................................................................. 12

Ellis v. Gold,
  204 A.D.2d 261, 611 N.Y.S.2d 587 (2d Dept. 1994) ................................................................ 9

Fifteenth Avenue Food Corp. v. Sibstar Bread Inc.,
  16 Misc.3d 1102(A), 841 N.Y.S.2d 826, 2007 WL 1732825 (Sup. Ct. Kings Co. 2007).......... 13

Gasoline Heaven at Commack, Inc. v. Nesconset Gas Heaven, Inc.,
  191 Misc.2d 646, 743 N.Y.S.2d 825 (Sup. Ct., Suffolk Co., 2002) ........................................... 15

Henegan Constr. Co. v. Heneghan Contracting Corp.,
  2002 WL 1300252 (S.D.N.Y. June 12, 2002) .......................................................................... 13

ITC Ltd. v. Punchgini, Inc.,
  518 F.3d 159, (2d Cir., 2008)................................................................................................... 10

ITC Ltd. v. Punchgini, Inc.
  9 N.Y.3d 467, 850 N.Y.S.2d 356 (N.Y. 2007) ......................................................................... 10

Mohawk Maintenance Co., Inc. v. Kessler,
  52 N.Y.2d 276, 437 N.Y.S.2d 646 (N.Y. 1981) ........................................................................ 13

Motown Prods. Inc. v. Motown Record Corp.,
  849 F.2d 781 (2d Cir. 1988)..................................................................................................... 20

**CASES**                                                                                                                      **PAGE(S)**

New Sensor Corp. v. SE Distribution LLC,
  367 F.Supp.2d 283 (E.D.N.Y. 2005) ........................................................................................ 19

In re Pennie & Edmonds LLP,
  323 F.3d 86 (2d. Cir. 2003).................................................................................................... 19

Richard A. Leslie Co. Inc. v. Birdie, LLC,
  2007 WL 4245847 (S.D.N.Y., Nov. 26, 2007)............................................................................ 9

Scholastic Inc. v. Stouffer,
  221 F.Supp.2d 425 (S.D.N.Y. 2002), aff'd 81 Fed. Appx. 396 (2d Cir. 2003) ........................... 20

State Farm Auto Insurance Co. v. Mallela,
  4 N.Y.3d 313, 827 N.E.2d 758 (N.Y. 2005) ............................................................................. 9

Yankelovich Skelly and White, Inc. v. White, Yankelovich, Skelly Consulting Group, Inc.,
  1989 WL 115848 (S.D.N.Y. 1989)........................................................................................ 13

**STATUTES**                                                                                                                 **PAGE(S)**

N.Y. Public Health Law §§ 3420 and 3428. ....................................................................... 8, 15

N.Y. Public Health Law §§ 3450, 3455 and 3456. ................................................................... 8

New York General Business Law §§ 133 and 160 ..........................................................12, 13, 14

28 USC § 1927........................................................................................................... 19, 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
HARRY NIEBERG, an individual, and            :        Case No. 08 CV 00392 (MGC)
HARRY NIEBERG FUNERAL HOME INC.,             :
a New York corporation,                      :
                                Plaintiffs,  :
                v.                           :
                                             :
NIEBERG MIDWOOD CHAPEL INC.,                 :
a New York corporation, MIDWOOD              :
MEMORIAL CHAPEL INC., a New York             :
corporation,                                 :
                                             :
                               Defendants.   :
------------------------------------------------------------- x
NIEBERG MIDWOOD CHAPEL INC.,                 :
and MIDWOOD MEMORIAL CHAPEL                  :
INC., New York corporations,                 :
Defendants and Counterclaim Plaintiffs,      :
                                             :
                v.                           :
                                             :
HARRY NIEBERG, and HARRY NIEBERG             :
FUNERAL HOME INC.,                           :
Counterclaim Defendants, and                 :
SHERMAN FUNERAL HOME INC.,                   :
Additional Counter-Claim Defendant.          :
------------------------------------------------------------- x

## MEMORANDUM OF LAW OF DEFENDANTS, NIEBERG MIDWOOD CHAPEL INC. AND MIDWOOD MEMORIAL CHAPEL INC IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

This Memorandum is submitted in opposition to the motion by plaintiffs HARRY

NIEBERG ("HARRY") and HARRY NIEBERG FUNERAL HOME INC. for a preliminary

injunction (a) enjoining defendants from using "HARRY NIEBERG & SONS", which

defendants and their predecessors have used since 1939 (when HARRY's grandfather, THE

HARRY NIEBERG, first used the family name at and from the Coney Island Avenue location),

21118

and (b) enjoining defendants from <u>claiming</u> that plaintiffs' recently begun use of the name

"HARRY NIEBERG" and "HARRY NIEBERG FUNERAL HOME INC." in connection with a

competing funeral business violates defendants' "HARRY NIEBERG & SONS" seventy year

old mark.

In effect, plaintiffs seek the equivalent of summary judgment on their claim that

plaintiffs' given name, "HARRY NIEBERG," said to be now owned by HARRY NIEBERG

FUNERAL HOME INC., acquired secondary meaning in the past few months without any proof

whatsoever and without meeting the standards for summary judgment.    Plaintiffs' entire

argument is predicated on the claim that defendants and their predecessors did not use "HARRY

NIEBERG & SONS" prior to July 2007, a claim which is demonstrably untrue as reflected by

the accompanying Affidavits and belied by plaintiffs' own admission in their moving

Memorandum of Law that "HARRY NIEBERG & SONS" has been a "strong" mark in

commerce since 1939 (Memorandum, p. 17).

If that were not enough, plaintiff HARRY NIEBERG FUNERAL HOME INC., as will

hereafter be shown, is not even registered to operate or hold itself out as authorized to operate a

funeral business in the State of New York.

This motion and this case, then, has become the latest version of HARRY's family feud,

and but one of a series of litigations involving claims leveled by HARRY against his mother, his

brothers, and the corporate entities whose stock interest he surrendered and transferred in

September 2006.[*]

---

[*]The first of the litigations was instituted by HARRY in the Supreme Court, Kings County, seeking the dissolution
of the corporate defendants and asserting claims against his mother, GERTRUDE, and his brothers, STANLEY and
PETER.  In re Application of HARRY NIEBERG, Petitioner, for the Judicial Dissolution of NIEBERG MIDWOOD
CHAPEL INC. and MIDWOOD MEMORIAL CHAPEL INC., Index No. 04-25241. The second litigation was
instituted in the Supreme Court, Kings County, Index No. 40169/07 by the defendant corporations against HARRY
NIEBERG, Individually, and HARRY NIEBERG FUNERAL HOME INC., as a result of HARRY'S threats to use

The present motion involves HARRY's alleged right to commercialize – not use to protect his livelihood - the "HARRY NIEBERG" name by "licensing" it to defendants' direct competition, SHERMAN FUNERAL HOME INC. – or to any one else of his choosing since the purported license is non exclusive – and seeks judicial sanction of such licensing not by way of summary judgment after discovery but by way of a preliminary injunction.

HARRY has turned the law of trademarks on its head with the so-called – but non existent - absolute right to use one's given name based on assertions belied by the papers and assertions which are inherently frivolous.

Whether one views this matter in the context of trademark law (which allows the first user the right to continued use of a mark or name in the market he is operating), the Lanham Act and/or or New York's law regarding unfair business practices, unfair competition, trade name dilution and/or the implied covenant preventing HARRY from using the name HARRY NIEBERG, the result is still the same. HARRY has not set forth a single principle of law or operative fact which would permit him or HARRY NIEBERG FUNERAL HOME INC. to secure the injunction which he seeks based upon his alleged use since July 2007 against defendants' demonstrated use since 1939. The cases cited by HARRY support the conclusion that HARRY, not defendants, should be enjoined under both the Lanham Act and New York law from pirating and attempting to pirate and dilute defendants' name and good will.

---

the name HARRY NIEBERG at SHERMAN FUNERAL HOME INC. The third of the litigations was instituted by HARRY against his brothers, STANLEY and PETER, in the Supreme Court, Kings County, Index No. 44408/2007 for acts allegedly in violation of a purported life insurance trust established by HARRY's mother – the document referenced having never been signed – claiming improprieties by PETER and STANLEY, which was followed by this action in this Court. The latest proceeding is the application of PETER, STANLEY and NIEBERG MIDWOOD CHAPEL INC. in the Supreme Court, Kings County, Index No. 794/08 to vacate judgments in the amount of $291,000 based on confessions of judgment entered by HARRY against them the day after he received his pension distribution of $275,000, which the confessions had secured.

## THE HARRY MOTION PAPERS AND THE MEMORANDUM OF POINTS IN SUPPORT OF THE PRELIMINARY INJUNCTION MOTION

First and foremost, HARRY, through counsel, told the Court on March 25th that the just filed application for preliminary injunctive relief was not directed at defendants' use of the name NIEBERG MIDWOOD CHAPEL INC., but was solely directed to protect HARRY's use of HARRY NIEBERG or HARRY NIEBERG FUNERAL HOME. At the same time counsel acknowledged that the NIEBERG name had been used by defendants for decades.

The present application for preliminary injunctive relief appears to step back from that admission and seeks the drastic relief of an injunction restraining defendants from claiming ownership rights to "HARRY NIEBERG" and/or "any similar variations," restraining and enjoining advertising, marketing or disposition of services under the name "HARRY NIEBERG & SONS INC." and destruction of all material, whether advertising, promotional, drawings, brochures, catalogs and the like, bearing the name HARRY NIEBERG & SONS INC. on the erroneous claim that HARRY was there first.

The relief sought would presumably require defendants to remove the HARRY NIEBERG & SONS sign prominently displayed on the building for decades, as well as the cards, hearse placards, calendars, invoices and the like which bear the name of HARRY NIEBERG & SONS, all because the late HARRY NIEBERG's grandson decided, after selling his interest in a family business in which he admits he was not active, to "license" his name first to HARRY NIEBERG FUNERAL HOME INC. and then to a down-the-street competitor, SHERMAN, by virtue of a still undisclosed agreement to hold itself out as authorized to use the same name that defendants have long used.

In support of plaintiffs' belated application –since it follows by more than five months the institution of the Kings County action brought by defendants – plaintiffs submit only the conclusory and speculative affidavit of HARRY, who purports to recite what was in SHERMAN's collective mind when it acted in this matter and fails to attach the so-called License Agreement with SHERMAN as though the hearsay or best evidence rule prohibiting paraphrasing salient documents does not exist even though part of the relief sought by him is based specifically on a supposed interference with contract rights. Plaintiffs have not produced the alleged License Agreement, dispute defendants' request for same. *See* accompanying Offenkrantz Affidavit where on April 2 plaintiffs' local counsel agreed to produce it. There is no affidavit from SHERMAN or anyone else to support the claim that HARRY's name has acquired secondary meaning, or what has been done to achieve that secondary meaning.

The long and short of the HARRY affidavit is that he acknowledges the competition between defendants and SHERMAN in the same market and separated by "only three blocks". He recognizes that he did not incorporate HARRY NIEBERG FUNERAL HOME until July 26, 2007. He states he "commenced the funeral services licensing process" in July 2007, but does not tell the Court that neither he nor it filed the required application with the New York State Department of Health or that he has done anything to further that "process". He does not truthfully tell the Court that HARRY NIEBERG FUNERAL HOME INC. is not currently registered in this State but asserts that it is entitled to use and owns the very name that was left with the defendants after HARRY was paid more than $2,500,000. The irony, of course, is that HARRY does not assert that he has used "his" name in the funeral business in interstate commerce or otherwise on hearses, on calendars or on anything else put in the mail, only that

21118

5

HARRY NIEBERG FUNERAL HOME INC. owns it and "licensed" SHERMAN to use the name.

Palpable misstatements of fact are also made in HARRY's affidavit – and repeated in his Memorandum of Law in support of this suddenly urgent need for immediate relief – that SHERMAN was so scared off by the receipt of an attorney's demand letter in October 2007 that it performed no further services at the behest of HARRY under the so-called "license" and that he suffered as a result of an "intentional interference with contract," necessitating immediate relief, when in truth and in fact SHERMAN continued to accept business referred to it by HARRY (and, presumably remit monies either to HARRY NIEBERG FUNERAL HOME INC. or to HARRY) as conclusively demonstrated by the funeral conducted by SHERMAN in January 2008, which resulted from a misdirected telephone inquiry from defendants' long time client.

The accompanying affidavit of PETER NIEBERG details the circumstances under which defendant's long time client called Verizon information to secure defendants' telephone number, was directed to HARRY's telephone by virtue of HARRY's misleading Yellow Page data and SHERMAN performed the graveside services and billed the client $6,000 causing the client great distress when she saw the SHERMAN hearse at the cemetery.

The inescapable conclusion is that HARRY's assertion that in a period of months he acquired secondary meaning in the funeral industry in his own name, when the only use of his name has been and is in connection with the trotters as set forth in the accompanying Affidavit of PETER J. NIEBERG, is advanced in bad faith.

The Court is respectfully referred to the accompanying Affidavits of PETER NIEBERG, RABBI MELVIN BURG, MICHAEL MIRABELLO, EDWARD WEINSTEIN and RICHARD ADLMAN submitted herewith.   Attached to the Affidavit of PETER J. NIEBERG is the

Certification of the New York State Department of Health under seal that HARRY NIEBERG

FUNERAL HOME INC. is not and has never been registered by the State of New York to

perform funeral services.

## POINT I

## HARRY IS NOT ENTITLED TO INJUNCTIVE OR ANY OTHER RELIEF BASED ON THE LANHAM ACT, NEW YORK LAW OR ANY OTHER THEORY

1.    The Rules Governing Preliminary Injunctive Relief.

The general principle of law in the case of request for a preliminary injunction is

that the party demanding it show irreparable harm, the likelihood of success, or a sufficiently

serious question going to the merits and a balance of hardships tipping decidedly in the moving

party's favor. In a trademark infringement case, proof of a likelihood of confusion establishes a

likelihood of success on the merits and irreparable harm. For the reasons hereinafter stated,

plaintiffs have shown none of the above if they ever could get past the fact that HARRY

NIEBERG FUNERAL HOME INC. is not registered and cannot do business at all.

Irreparable Harm, Laches and Ability to Sue

Defendants' Third Affirmative Defense alleges:

"34.    Plaintiffs' purported license of the name "HARRY NIEBERG" alone or as part of "HARRY NIEBERG FUNERAL HOME INC." is invalid and contrary to New York law and the funeral service business cannot be conducted in the name of "HARRY NIEBERG FUNERAL HOME INC." as it is not licensed in the State of New York to conduct such business."

HARRY NIEBERG FUNERAL HOME INC. is not registered to operate or even hold itself out as authorized to operate a funeral business in the State of New York. It has done nothing to obtain the required registration, the disingenuous statement of HARRY NIEBERG that he "commenced" the licensing process in July 2007 to the contrary notwithstanding.

Section 3420 of the New York Public Health Law, provides in part, that:

"1.    No person shall engage in the business or practice of funeral directing, undertaking, or embalming or transact or hold himself out as transacting or practicing or as being entitled to transact or practice funeral directing, undertaking or embalming in this state unless duly licensed according to law, and registered under the provisions of this article …".

Section 3428 of the New York Public Health Law, provides in part, that:

"2(c)   Only a registered funeral firm may operate, or engage in the business and practice of funeral directing. Said business and practice must be conducted from an approved funeral establishment. In the event a funeral firm conducts its business from more than one establishment, the firm must be registered from more than one establishment. In the event more than one firm conducts its business from the same funeral establishment, each firm must be registered from the establishment and have an individual manager representing that firm at that establishment …".

Section 3450 of the New York Public Health Law provides for suspensions and revocations of license for failure to adhere to the provisions relative to registration and/or performance of services by the registered funeral home and §§ 3455 and 3456 provide both civil and criminal penalties for violations. One of those prohibitions interdicts the payment of compensation by a registered funeral home to another for referrals of business. A copy of New York Public Health Law Section 3400, et seq. is reprinted in its entirety in the Appendix to this Memorandum. See also, Campion Funeral Home Inc. v. State of New York, 166 A.D.2d 32, 569 N.Y.S.2d 518 (3d. Dept. 1991) (commenting upon and discussing the statutory rules and regulations controlling funeral home operations and the ability of the State to impose administrative disciplinary proceedings against violators.)

21118

8

What is abundantly clear from New York State law is that plaintiff HARRY NIEBERG FUNERAL HOME INC. is prohibited from conducting a funeral business and should not even be a plaintiff in this case. It is little wonder that both HARRY and his counsel, in receipt of defendants' Answer and Affirmative Defense based on the failure to register, did no more than assert that HARRY "commenced" the process.

Having failed to comply with New York law in terms of registration, it necessarily follows that HARRY NIEBERG FUNERAL HOME INC. cannot maintain this action let alone apply for preliminary injunctive relief. See Ellis v. Gold, 204 A.D.2d 261, 611 N.Y.S.2d 587 (2d Dept. 1994); B & L Auto Group, Inc., d/b/a B & L Toyota v. Irma Zelig, 188 Misc.2d 851, 730 N.Y.S.2d 400 (Civil Ct. N.Y. Co. 2001). See, also, State Farm Auto Insurance Co. v. Mallela, 4 N.Y.3d 313, 827 N.E.2d 758 (N.Y. 2005) (referencing unlicensed contractors, professionals and/or the fraudulent establishment of medical services corporations).

On the laches issue, SHERMAN took down the HARRY NIEBERG FUNERAL HOME INC. sign in October 2007, which it should not have been put up in the first place because of failure to comply with State law, before defendants, as plaintiffs, instituted suit against HARRY in the Supreme Court, Kings County based on unfair competition and violation of New York law.

The so-called letter interfering with HARRY's undisclosed relationship with SHERMAN is over five months old yet when HARRY answered the complaint in Kings County and HARRY's present Las Vegas counsel sought admission to appear pro hac in that litigation and even one month later in January 2008, when HARRY instituted this action, no request for temporary, preliminary, or any other provisional relief was forthcoming. See Richard A. Leslie

Co. Inc. v. Birdie, LLC, 2007 WL 4245847 (S.D.N.Y., Nov. 26, 2007, Kaplan, J.) (three months delay sufficient to deny preliminary injunction in trademark case.)

The reason should be obvious. HARRY knew that he was not being irreparably harmed and certainly not by the continued use by defendants of HARRY NIEBERG & SONS, which had been the subject of defendants' promotional material use on hearses, advertising fliers and presence on their facility for the past seventy years. He knew, contrary to any statement made in these proceedings, that SHERMAN had not stopped dealing with him or accepting his referrals as is obvious from the January 2008 graveside services performed by SHERMAN at the behest of defendants' long term client, PEARL HOLLENBERG, which is more fully detailed in the Affidavit of PETER J. NIEBERG submitted herewith.

There was no urgency in October 2007, no urgency when HARRY answered the Kings County Complaint in December 2007, and no urgency now and HARRY knows that to be the case. Yet without complying with the applicable rules on motions for summary judgment in this Court and in the hope that discovery can be avoided, HARRY's strategy and that of his attorneys becomes obvious.

In the attempt to secure a substantive ruling in the guise of preliminary injunctive relief, HARRY has merged trademark law, Lanham Act law, and New York law to demand an injunction eschewed by him for the past five months to secure what is the equivalent of summary judgment without calling it that while misleading the Court as to both the law and the facts. The Court should not countenance those tactics.

2.    Likelihood of Success – Tipping of Hardships.

For purposes of a Lanham Act/New York State basis for a preliminary injunction, HARRY is in a far worse position than the plaintiff in ITC Ltd. v. Punchgini, Inc., 518 F.3d 159

(2d Cir., 2008) in which the Court of Appeals denied relief to a famous restaurant in a foreign country, Bukhara, which sought to enjoin the Bukhara name in New York City for the reason that secondary meaning in New York had not been established by the well known foreign restaurant. While the issue in ITC grew out of a summary judgment motion after discovery, as distinct from a motion for preliminary injunction, the principle enunciated both by the Second Circuit and by New York Court of Appeals decision (on certification), 9 N.Y.3d 467, 850 N.Y.S.2d 356 (N.Y. 2007) is dispositive of HARRY's claim[*], i.e., movant has to prove secondary meaning. Here, it is defendants who have used the name "HARRY NIEBERG & SONS" for seventy years. HARRY does not tell how secondary meaning was acquired in his name and has submitted nothing except his own conclusory affidavit.

HARRY has admitted in his Reply to defendants' counterclaim (Paragraph 45) that:

"Heretofore and during the period 1990 through 2006 and at a time when PETER, STANLEY and HARRY were each one-third shareholder of defendant corporations, HARRY did not participate in the day to day conduct of defendants' business and instead chose to engage in businesses unrelated to the funeral business. HARRY continued as a one-third shareholder of defendants and received salary and other benefits from defendants on the same basis as PETER and STANLEY, and served as an officer and director of plaintiffs until 2006, and until 2006 acted as Trustee of the HARRY NIEBERG & SONS INC. Defined Pension Plan." (Emphasis Supplied)

Plaintiffs' motion papers do not attach their Complaint or Reply. Both are attached to the accompanying Affidavit of RONALD J. OFFENKRANTZ.

As the PETER J. NIEBERG Affidavit points out, to the extent his given name "HARRY NIEBERG" has ever been associated with anything, it has not been with the funeral

---

[*] The New York Court of Appeals, referring to New York's law of unfair competition, states at p. 479: "Instead, we simply reaffirm that when a business, through renown in New York, possesses goodwill constituting property for a commercial advantage in this state, that goodwill is protected from misappropriation under New York unfair competition law. This is so whether the business is domestic or foreign."

11

business, but has instead been with the trotters and Monticello Raceway and other harness tracks as reflected in the December 21, 2007 on line newsletter of the U.S. Trotting Association in which HARRY, as a horse owner is featured.

Thus the claim that HARRY has secured secondary meaning in a "strong" trademark in the funeral business, to wit, his name, is nothing short of frivolous.

The argument that he is entitled to the use of his name in competition with that of the company whose stock he surrendered for $2,500,000 and a company which had used the name HARRY NIEBERG & SONS for the past seventy years is an affront to reason.

Likelihood of success under the Lanham Act necessarily involves the determination that the first, or paramount user, of a mark or name establishes secondary meaning and the right to prevent the second comer from using the same mark or one confusingly similar to it. HARRY was not the first; he is not even the second when one considers the manner and extent to which he has actually used his name.

Under the provisions of New York cases, including David B. Findlay, Inc. v. Findlay, 18 N.Y.2d 12, 218 N.E.2d 531 (N.Y. 1966), New York common law prevents a family member associated with one business to leave – even without being paid more than $2,500,000 - and compete under the same name a short distance away or, as HARRY admits in the context of SHERMAN's, "only a few blocks" in the same market involving the same clientele. See New York General Business Law §§ 133 and 160 which provide protection for the first user in a particular market against the second user's unfair trade practices and/or dilution of trademarks or trade names. See also, Yankelovich Skelly and White, Inc. v. White, Yankelovich, Skelly Consulting Group, Inc., et al. 1989 WL 115848 (S.D.N.Y. 1989), Brasscrafters, Inc. v. Ehrlich,

21118                                                                    12

109 A.D.2d 724, 486 N.Y.S.2d 42 (2d Dept. 1985), Bertolli U SA, Inc. v. Filippo Bertolli Fine Foods, Ltd., 662 F.Supp. 203 (S.D.N.Y. 1987) and Henegan Constr. Co. v. Heneghan Contracting Corp., 2002 WL 1300252, at *5 (S.D.N.Y. June 12, 2002).

In Yankelovich, supra, Judge Keenan granted injunctive relief preventing Mr. Yankelovich from using his own name and directed an evidentiary hearing as to whether any type of disclosure would be sufficient to avoid confusion. Significantly, the Court also quoted from Mohawk Maintenance Co., Inc. v. Kessler, 52 N.Y.2d 276, 437 N.Y.S.2d 646 (N.Y. 1981), and applied its rule that the Yankelovich defendants could not solicit customers who were customers of the former firm. Quoting from Cervantes, Judge Keenan observed that "a good name is better than great riches." *Don Quixote*, Pt. ii, ch. 33 (1615). Just as Mr. Yankelovich's name was well known in his industry, the NIEBERG name is well known in the funeral industry. Indeed, the proof on this motion reflects that the NIEBERG and HARRY NIEBERG & SONS names are synonymous with the NIEBERG MIDWOOD CHAPEL INC. at 1625 Coney Island Avenue, and not at any other place.

Brasscrafters, supra, is also on point. After selling his fireplace equipment business to the plaintiffs, the defendant Herbert Ehrlich was enjoined from using his own name "Ehrlich" alone or in any combination with a competing business.

New York General Business Law Section 133 prohibits a competitor from using a substantially similar name to take business from the first user as a matter of unfair business practices. In fact, recently the Supreme Court, Kings County, in Fifteenth Avenue Food Corp. v. Sibstar Bread Inc., 16 Misc.3d 1102(A), 841 N.Y.S.2d 826, 2007 WL 1732825 (Sup. Ct. Kings Co. 2007) analyzed GBL § 133 and granted an injunction as follows:

"In addressing plaintiff's motion, the court notes that a trade name is a valuable business asset which is protected under General Business Law § 133 (*see Blaich Assocs. v. Coach/Blatch Real Estate of Manhasset*, 186 Misc.2d 594, 595 [2000]). General Business Law § 133 prohibits an individual, firm, or corporation from using a name "with intent to deceive and mislead the public" (*see Edward F. Hallahan, Inc. v. Hallahan, McGuinness & Lorys, Ltd.*, 275 A.D.2d 691, 692 [2000]; *Dong Wook Park v. Michael Parke Don Group*, 12 Misc.3d 1182[A], *8 [2006]; *Wisell v. Indo-Med Commodities,* 11 Misc.3d 1089[A], *13 [2006]. It provides:

"No person, firm or corporation shall, with intent to deceive or mislead the public assume, adopt or use as, or as part of, a corporate, assumed or trade name, for **advertising** purposes or for the purposes of trade, or for any other purpose, <u>any name</u>, designation or style, or any symbol or simulation thereof, <u>or a part of any name</u>, designation or style, or any symbol or simulation thereof, <u>which may deceive or mislead the public as to the identity of such person, firm or corporation or as to the connection of such person, firm or corporation with any other person, firm or corporation</u>…" (Emphasis Supplied)

Moreover, under New York State's anti-dilution statute applicable to trade names, New York G.B.L. § 160, courts have enjoined the use of similar names in the same geographical area in much the way that a New York court would enjoin HARRY/SHERMAN's from using the HARRY NIEBERG name three blocks away from the NIEBERG MIDWOOD CHAPEL INC. where the HARRY NIEBERG & SONS sign remains prominently displayed. See <u>Blaich Associates Inc. v. Coach/Blaich Real Estate of Manhasset Inc.</u>, 186 Misc.2d 594, 719 N.Y.S.2d 820 (Sup. Ct. Nassau Co. 2000), enjoining the second Blaich from its use of a similar name observing that both businesses were located on the same road, the first Blaich used its name on that road for more than forty years, whereas, the second user, recently started advertising in the Yellow Pages and displayed the Blaich name on an awning in front of its premises. The Court granted relief in favor of the first user, not the second. See also <u>Gasoline Heaven at Commack, Inc. v. Nesconset Gas Heaven, Inc.</u>, 191 Misc.2d 646, 743 N.Y.S.2d 825 (Sup. Ct., Suffolk Co., 2002) (quoting and applying <u>Blaich</u>, <u>supra</u>.)

There, as here, the second comer used a confusingly similar name and there, as here, the obvious intention was to confuse.

While HARRY's counsel in most respects has recited the generally applicable trademark principles, he has misapplied those principles and distorted the facts. He has also ignored or misapplied New York State law, and failed to take cognizance of recent decisions of the Second Circuit such as Punchgini, supra, while extending Lanham Act principles of law beyond recognition, by making arguments and assertions, such as the following:

> 1.     "After Sherman Funeral obtained the License, Sherman Funeral displayed the Mark on a placard hung at Sherman Funeral's facilities." Memorandum, p. 13.

How placing a corporate identifying plaque of an entity not registered or authorized to hold itself out as a funeral home with the State Department of Health together with other corporate names on the front of SHERMAN's building, without more, for one, two, or three weeks is a display of a "Mark" sufficient to establish secondary meaning in the funeral industry is mystifying, separate and apart from the fact that HARRY NIEBERG FUNERAL HOME INC. is not registered by the State of New York Department of Health, and could not even hold itself out as conducting any funeral business. N.Y. Public Health Law §§ 3420 and 3428.

> 2.     "Defendants' own filings suggest that Defendants have not used the Mark as a service mark. On October 30, 2007, Defendants filed Defendants' State Complaint.    See Exhibit 14.    Perhaps realizing their error in filing Defendants' USPTO Application claiming the Mark as a service mark, Defendants only asserted claims regarding *trade name* infringement and unfair competition. Furthermore, Defendants' Counterclaim in the instant matter only asserts a trade name infringement claim.    Therefore, Defendants' claim in Defendants' USPTO Application that Defendants have used the Mark as a service mark since 1965 is unwarranted." Memorandum, p. 14. (Emphasis Supplied)

How it can be "suggested" that HARRY NIEBERG & SONS does not qualify as a service mark simply because a U.S. service mark application had not theretofore been made or because defendants' State Court Complaint proceeded under state unfair competition law is beyond the pale. Even a cursory review of service mark applications in the United States Patent and Trademark Office for funeral homes reflect service mark applications which matured into registrations even in respect of competitors of both defendants and SHERMAN such as Brooklyn based I.J. MORRIS INC., which applied for a service mark in 1982, based on a first use in commerce in 1929 more than fifty years earlier, where "I.J. MORRIS" referred to an individual then deceased. The fact that defendants, when faced with HARRY's conduct, decided that a Federal registration would be beneficial and augment all other rights is not evidence of the fact that NIEBERG MIDWOOD CHAPEL INC. or HARRY NIEBERG & SONS did not qualify as a service mark or other protectable and protected mark and had been used – as has been admitted – for seventy years. Indeed, the service mark application for HARRY NIEBERG & SONS attached to HARRY's motion refers to the mark having been used "at least as early as" 1965 whereas the pleadings and accompanying Affidavits reflect use going back to 1939.

3.    "Defendants' and Plaintiffs' competing uses of the Mark are confusingly similar. The Second Circuit considers evidence of consumer confusion in light of eight factors, the *"Polaroid factors,"* in evaluating a trademark infringement claim. *MetLife, Inc.*, 388 F.Supp.2d at 229; *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36 (1961). "These factors are: (1) strength of the plaintiff's mark, (2) similarity of plaintiff's and defendant's marks, (3) competitive proximity of the products, (4) likelihood that a plaintiff will "bridge the gap" and offer a product of the type that the defendants offer, (5) actual confusion, (6) good faith on the defendant's part, (7) quality of defendants' product, and (8) sophistication of the buyers." *Id.* "The *Polaroid* factors must be considered in the context of how each factor supports or undermines the ultimate issue of whether a consumer will be confused by the disputed marks." *MetLife, Inc.*, 388 F.Supp.2d at 229; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986). These factors demonstrate that a likelihood of confusion exists, thus also establishing the likelihood of success on the merits of Plaintiffs'

claims.    As such, Plaintiffs are entitled to preliminary injunctive relief."
Memorandum, pp. 15-16.

Since the rule advocated by HARRY's counsel is directed to acts of a second

user, i.e., more properly, HARRY, causing confusion, the argument hurts and does not help

HARRY's position. The papers before the Court reflect that it was defendants who used the

name HARRY NIEBERG & SONS at their Coney Island Avenue location and in interstate

commerce for more than seventy years and HARRY's counsel essentially admits that fact; the

actual confusion is caused by HARRY's acts, not any acts of defendants.

> 4.    "Further, the Mark is strong, as it is distinctive in the pertinent
> market by indicating to the public the origin of the services provided. "The
> strength of a mark refers to its distinctiveness, that is to say, the mark's ability to
> identify goods sold under it as coming from one particular source." *MetLife, Inc.,*
> 388 F.Supp.2d at 299 (citing *Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d
> 739, 743 (2d Cir. 1998)). "Ultimately, the strength of the mark turns on its origin-
> indicating quality, in the eyes of the purchasing public, so that in a given case
> whether the mark has acquired secondary meaning is a matter which may be
> relevant and probative and hence useful in determining the likelihood of
> confusion." *MetLife, Inc.,* 338 F.Supp.2d at 229 (*citing Lang v. Retirement Living
> Publishing Co.,* 949 F.2d 576, 581 (2d Cir. 1991)) (internal quotation marks
> omitted)." Memorandum, p. 16.

> "Plaintiffs have a <u>strong service mark. As Defendants state in their
> Counterclaim, the Mark has been used in commerce as part of the trade name
> HARRY NIEBERG & SONS as early as 1939.</u> *See* Answer and Counter-claim
> Against Plaintiffs and Additional Counter-claim Defendant, attached as Exhibit
> 16, at paragraph 41. <u>Nieberg Funeral now owns</u> this mark. As set forth in Exhibit
> 1, <u>Nieberg Funeral has used the Mark as a service mark with respect to the
> offering of funeral home services since at least as early as July 2007.</u> Harry
> Affidavit at ¶20…" Memorandum, p. 17. (Emphasis Supplied)

> "Further, Plaintiffs and Defendants' competitive proximity is the same,
> both geographically and with respect to the market. Plaintiffs and Defendants
> share the same geographic proximity. Plaintiffs and Defendants both operate
> funeral home services in Brooklyn, New York. <u>In fact, Defendants' place of
> operation, located at 1625 Coney Island Avenue, Brooklyn, New York is only a
> few blocks from where Plaintiffs' funeral services are provided at 1283 Coney
> Island Avenue, Brooklyn, New York…</u>" Memorandum, Page 18. (Emphasis
> Supplied)

17

How HARRY can say he "now owns" part of a name admittedly used by defendants "as early as 1939" and that defendants' long time use created a "strong service mark" for which HARRY now gets the benefits - to defendants' exclusion - by incorporating HARRY NIEBERG FUNERAL HOME INC. in 2007, which never actually used the "Mark," goes beyond any permissible argument that can be made to this or any other Court.

     5.     "Intentional bad-faith copying of a trademark establishes a presumption that the copier succeeded in causing confusion. *MetLife, Inc.*, 388 F.Supp.2d at 234; *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 587-87 (2d. Cir. 1993). "Where such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, [the Second Circuit has] upheld findings of bad faith." *Met Life, Inc.*, 338 F.Supp.2d at 234 (citing *Paddington* at 587)." Memorandum, p. 18.

     "Plaintiffs have a substantial likelihood of success on the merits of their claims based on unfair competition under New York law. "In order to sustain a common-law cause of action to recover damages for unfair competition through the use of a trade name, the plaintiff must establish that the defendant's acts "constituted an unfair appropriation or exploitation of any special quality attached to plaintiff's name."" *Telford Home Assistance v. TPC Home Care Servs.*, 211 A.D.2d 674, 675 (N.Y. App. Div. 1995) (*citing Buffalo Packaging Corp. v. Buff-Pac, Inc.*, 155 A.D.2d 877, 878 (N.Y. App. Div. 1995)). Plaintiffs have demonstrated the foregoing in this case." Memorandum, p. 23.

Measured by applicable law, plaintiffs have no likelihood of success on the merits because defendants have done nothing to appropriate or exploit anything owned by HARRY. They use and have continued to use HARRY NIEBERG & SONS in the same fashion as it was used when the original HARRY NIEBERG was alive and while grandson HARRY was a stockholder and received the perquisites of his stock ownership. They continue to own and operate a funeral home as part of the NIEBERG tradition, which established itself for five generations and as to which HARRY basically admits non involvement – except to be paid the benefits on the same basis as his brothers before they bought out his interest. It is HARRY who went three blocks north to defendants' most direct competitor SHERMAN to work out a deal

which has never been explained and as to which there has been no discovery under which HARRY NIEBERG FUNERAL HOME would, if it could, with proper registration (which it does not have), do business, according to his Yellow Pages placement, at SHERMAN's location. With NIEBERG MIDWOOD CHAPEL INC., which still has the HARRY NIEBERG & SONS name prominently displayed, only three short blocks away, it is clear that it is plaintiffs who are trying to harm defendants and that the scales "decidedly" tip in favor of defendants.

In sum, the cases cited in HARRY's Memorandum are nothing more than boilerplate applicable to some other state of facts.

## POINT II

### THE WITHIN MOTION FOR PRELIMINARY INJUNCTION RELIEF HAS NOT BEEN MADE IN GOOD FAITH, IS BASED ON NONEXISTENT FACTS AND CIRCUMSTANCES AND WARRANTS SANCTIONS IN THE INHERENT POWER OF THE COURT

Defendants recognize, as they must, that the administration of sanctions in trademark/trade name cases, such as this, are limited by the "safe harbor" provisions of Rule 11 Fed. R. Civ. P., but that exceptions exist to deal with blatantly frivolous arguments before final resolution of the case. In re Pennie & Edmonds LLP, 323 F.3d 86 (2d. Cir. 2003).

The Court may administer sanctions sua sponte after giving due notice and opportunity to be heard; it may also act under 28 USC § 1927 and in the Court's inherent authority.

As Judge Glasser recently noted in New Sensor Corp. v. SE Distribution LLC, 367 F.Supp.2d 283 (E.D.N.Y. 2005) a trademark case, the statutory or common law bases for imposing sanctions stand alone with each rule governing sanctions, while "congruent," to be examined separately, citing and quoting from the Second Circuit decision in Motown Prods. Inc.

v. Motown Record Corp., 849 F.2d 781, 786 (2d Cir. 1988). See also Scholastic Inc. v. Stouffer, 221 F.Supp.2d 425 (S.D.N.Y. 2002), aff'd 81 Fed. Appx. 396 (2d Cir. 2003) (in which the inherent power to sanction a party for conduct which abuses the judicial process is recognized).

Plaintiffs' motion for preliminary injunctive relief brought by a funeral home not empowered to operate in this State crosses all permissible boundaries. The proposed Order which plaintiffs would have this Court sign, would enjoin defendants from using the name HARRY NIEBERG & SONS or any variant thereof notwithstanding plaintiffs' own recognition that the name has been used in local and in interstate commerce by defendants and their predecessors for more than seventy years. Plaintiffs would have defendants remove the HARRY NIEBERG & SONS name from defendants' funeral home and eliminate its use every place and everywhere, all because the grandson of the original HARRY NIEBERG allowed SHERMAN to ignore state law and hang the name HARRY NIEBERG FUNERAL HOME INC. on the front door of its premises for one, two or three weeks before it removed it.

To state the proposition is to state the frivolity of the argument.

The defense of this motion has caused economic burdens and burdens on time which should not await the termination of the case for reimbursement.

The argument that HARRY acquired secondary meaning in a strong trademark since July 2007 to the exclusion of the entities whose stock he sold in September 2006 cannot and has not been made in good faith.

Whether this Court acts sua sponte or under the authority otherwise granted to it under its inherent powers or under 28 USC § 1927, HARRY and his counsel should be required to reimburse defendants for the costs and expenses of defending this motion.

## CONCLUSION

For all of the reasons set forth above and in the accompanying affidavits, plaintiffs' motion for preliminary injunction should be denied and plaintiffs should be ordered to pay defendants' costs and attorneys' fees in opposing the motion.

Dated: New York, New York
      April 9, 2008

                    LICHTER GLIEDMAN OFFENKRANTZ PC
                    *Attorneys for Defendants and*
                    *Counterclaim Plaintiffs*
                    551 Fifth Avenue
                    New York, NY 10176
                    (212) 867-7750

By:_____
                    Ronald J. Offenkrantz (RJO 1334)

                    ROSENBERG FELDMAN SMITH, LLP
                    *Attorneys for Defendants and Counterclaim*
                    *Plaintiffs (Trial Counsel)*
                    551 Fifth Avenue
                    New York, NY 10176
                    (212) 682-3454

By:_____
                    Michael H. Smith (MHS 4835)

# APPENDIX

Mckinney's Consolidated Laws of New York Annotated Currentness
  Public Health Law (Refs & Annos)
    Chapter 45. Of the Consolidated Laws (Refs & Annos)
      → Article 34. Funeral Directing
        Title I. General Provisions
**§ 3400. Funeral directing; definitions**

As used in this article, unless otherwise stated, the following terms shall have the respective meanings hereinafter set forth or indicated:

(a) "Funeral director" means a person to whom a valid license as such has been duly issued.

(b) "Undertaker" means a person to whom a valid license as such has been duly issued.

(c) "Embalmer" means a person to whom a valid license as such has been duly issued.

(d) "Funeral directing" means the care and disposal of the body of a deceased person and/or the preserving, disinfecting and preparing by embalming or otherwise, the body of a deceased person for funeral services, transportation, burial or cremation; and/or funeral directing or embalming as presently known whether under these titles or designations or otherwise.

(e) "Undertaking" means the care, disposal, transportation, burial or cremation by any means other than embalming of the body of a deceased person.

(f) "Embalming" means preparing, disinfecting and preserving, either hypodermically, arterially or by any other recognized means the body of a deceased person for burial, cremation or other final disposition.

(g) "Funeral establishment" means a single physical location, address or premises devoted to or used for the care and preparation of a body of a deceased person for disposition and for mourning or funeral ceremonial purposes.

(h) "Burial" includes transportation and/or cremation.

(i) "Advertisement" means the publication, dissemination, circulation, or placing before the public, or causing directly or indirectly to be made, published, disseminated, or placed before the public, any announcement or statement in a newspaper, magazine, or other publication, or in the form of a book, notice, circular, pamphlet, letter, hand-bill, poster, bill, sign, placard, card, label, tag, or by radio or television or any other means.

(j) "Funeral firm" means an individual, partnership, corporation or estate representative engaged in the business and practice of funeral directing.

(k) "Registered resident" means a person who passed a funeral directing examination and who is duly registered as such with the department while in the employ of a registered funeral firm and who is engaged in the practice of funeral directing under the supervision of a licensed funeral director or undertaker and embalmer; provided, however, that a registered resident shall not have authority to sign any form or document required by law which requires the signature of a licensed funeral director or make funeral arrangements or own or manage a funeral firm.

**§ 3401. Funeral directing; powers and duties of commissioner**

1. The commissioner may, from time to time, make and adopt such rules and regulations not inconsistent with law as may be necessary (a) in the performance of his duties and in the

administration of the provisions of this article; and (b) to govern and regulate the conduct and transaction of the business and practice of funeral directing, undertaking and embalming.

2. The commissioner shall:

(a) ascertain what constitutes the best tests for determining whether life is extinct, and shall prescribe the application of such tests, as he may deem necessary;

(b) investigate all alleged violations of law and of all rules and regulations relating to funeral directing, undertaking, and embalming;

(c) appoint such personnel as he may deem necessary, who, subject to the supervision, direction, and control of the commissioner, shall exercise the powers and perform the duties of the department and advise the commissioner under this article.

## § 3402. Funeral directing advisory board

1. There shall be in the department a funeral directing advisory board consisting of ten members who shall be appointed by the commissioner of health of whom three shall be representatives of consumer interests, having no pecuniary interest, affiliation or other association, direct or indirect, other than as consumers, with any business affecting the disposal or burial of deceased human beings, as the commissioner shall determine, six shall be licensed funeral directors, undertakers or embalmers in this state, having been actually engaged in the practice of funeral directing, undertaking or embalming, as the case may be, for at least five years prior to appointment and one member shall be an officer, director or employee of a cemetery corporation. The term of each member of such advisory board shall be three years, or until a successor is appointed, and vacancies shall be filled for the unexpired term only. The commissioner of health may remove any member of the board for misconduct, incompetence or neglect of duty after such member shall have been given a written statement of the charges and an opportunity to be heard thereon.

2. The board shall elect annually from its members a chairman and vice-chairman and for the purpose of transacting its business shall meet at least once every three months. Special meetings also may be held as frequently as its business may require at the call of the chairman upon the request of a majority of the members of the board or as requested by the commissioner of health. Written notice of the time, place and purpose of meetings shall be mailed by the secretary to all members at least ten days before the date of the meeting. A quorum of the board shall consist of not less than six members.

3. Members of the advisory board shall receive no compensation, but each shall be entitled to receive his reasonable expenses actually and necessarily incurred in the performance of his duties.

4. The commissioner shall designate an officer or employee of the department to act as secretary of the board, who shall not be a member of the board and who shall not receive any additional compensation therefor.

5. The commissioner shall request the advisory board to, and upon such request the advisory board shall, or upon its initiative the advisory board may

(a) consider any matters relating to the practice of funeral directing, undertaking or embalming, including any matter pertaining to the administration and enforcement of this article and advise the commissioner thereon;

(b) recommend to the commissioner the establishment of such laws as may be deemed necessary in respect to the practice of funeral directing;

(c) recommend to the commissioner the promulgation of rules and regulations not inconsistent with law, as may be deemed necessary, and the amendment or repeal thereof;

(d) recommend to the commissioner the commencement of any investigation into improper practices of licensees;

(e) report, within forty-five days after receipt, on any proposed regulations, amendments thereto, or repeal thereof, prior to action thereon by the commissioner;

(f) review the applications for registration of candidates for either practical or academic training and make recommendations to the commissioner for the acceptance or rejection thereof.

(g) delegate one member of the board to attend any formal disciplinary hearing and subsequent proceedings involving an alleged violation of this article. The board shall not delegate a member who practices funeral directing, embalming or undertaking in the same judicial district as an accused licensee.

6. The advisory board shall have no executive, administrative or appointive powers or duties.

## § 3403. Funeral directing; fees; fines; penalties; dispositions

1. All fees, fines, penalties and other moneys derived from the operation of this article or rules promulgated pursuant thereto shall be paid to the department and on the fifth day of each month shall be paid by the department to the state treasury.

2. Moneys received pursuant to this article may be refunded to the applicant on proof satisfactory to the commissioner that:

(a) such moneys were in excess of the amounts required by law;

(b) examination for which application has been made and for which fee has been paid was denied;

(c) the individual, corporation, or association which applied for registration or license has ceased business prior to commencement of the period of such registration or license because of death, dissolution, or removal from the state.

3. (a) All licensing and registration fees collected pursuant to this article shall be deposited into the miscellaneous special revenue fund--339, the funeral directing program account, which is hereby established.

(b) Monies available in the funeral directing program account shall be used to support the department's activities relating to ensuring compliance with the provisions of this chapter as they relate to the practice of funeral directing.

## § 3404. Construction; inconsistent provisions of other laws

The provisions of this article shall supersede any inconsistent provisions of any general, special, or local law.

## Title II. Licensing and Registration

## § 3420. Funeral directing; license to practice required; exceptions

1. No person shall engage in the business or practice of funeral directing, undertaking, or embalming or transact or hold himself out as transacting or practicing or as being entitled to transact or practice funeral directing, undertaking or embalming in this state unless duly licensed according to law, and

registered under the provisions of this article, except that nothing in this article contained shall prohibit embalming:

(a) by commissioned medical officers in the armed forces of the United States or in the United States public health service while on active duty in the respective service; or,

(b) by any one actually serving as a member of the resident medical staff of any legally incorporated hospital; or,

(c) by any person duly licensed to practice as a physician or surgeon in this state.

2. A person who holds a license as a funeral director, undertaker or embalmer, as defined herein, and is registered as required herein, shall be entitled to practice as defined and limited by the provisions of the law at the time the license was issued, except as otherwise provided by this article.

3. Notwithstanding the foregoing provisions of this section, the commissioner may in his discretion enter into an agreement with another state of the United States or a province of the Dominion of Canada, pursuant to which agreement any person, duly licensed and registered as a funeral director, undertaker or the equivalent thereof by and in such other state or province, may enter into this state for the sole purposes of removing to such other state or province dead human bodies, supervising the delivery to or removal from a common carrier of such bodies, or burying, cremating, or supervising funeral services over dead human bodies brought from such other state or province as though such person were duly licensed and registered by and in this state except that such person shall not maintain an establishment, advertise or hold himself out directly or through any agent or agency or otherwise as a funeral director, undertaker or the equivalent thereof other than in the state or province in which he is registered and licensed.

## § 3421. Funeral directing; requirements for license to practice

1. In order to be licensed, an applicant for licensure shall pass a funeral directing examination prepared or approved by the department to determine his knowledge and fitness therefor, as required by this article. No person shall be permitted to enter funeral director school, apply for a funeral directing examination or apply for a funeral directing license without submitting to the department satisfactory evidence of good moral character.

2. Except as provided in subdivision three, the department shall admit to examination any applicant who pays a fee of forty dollars and submits evidence subscribed and affirmed as true under the penalties of perjury and satisfactory to the department that the applicant:

(a) is a citizen of the United States or an alien lawfully admitted for permanent residence in the United States;

(b) has satisfactorily completed a course of collegiate level study in funeral service, the curriculum of which has been approved by the department, consisting of not less than ninety quarter credits or sixty semester credits in an institution or institutions approved by the department or an accrediting agency recognized by the department;

(c) has upon entering an approved institution as herein provided for the purpose of beginning his funeral service study, registered as a student with the department upon a form to be provided by the department, and has paid to the department a registration fee of fifty dollars.

3. Delay in registering as a student as herein required may be excused, in the discretion of the commissioner.

4. The department shall issue a license to practice funeral directing to an applicant for such license on the basis of the following procedures:

(a) who shall have successfully passed the examination as herein provided in subdivision one of this section, and

(b) who pays a fee of one hundred twenty-five dollars, and

(c) who, after having passed such examination, serves a one year period as a registered resident in a manner satisfactory to the department, and

(d) who, has passed a second examination after or during the serving of a one year period as a registered resident. The said examination shall be on the New York state laws, rules and regulations relating to funeral directing and shall be prepared or approved by the department of health.

### § 3422. Funeral directing; licensing examinations; content; procedure

1. The commissioner shall determine the subjects of examination of applicants for license to practice funeral directing, undertaking or embalming, and the scope, content and character, of such examinations which in any examination shall be the same for all candidates.

2. Examinations shall be held twice in each year.

3. A candidate who fails to attain a passing grade on his licensing examination is entitled to a maximum of three re-examinations; provided, however, that if such candidate fails to attain a passing grade within three years after completion of his training, he must requalify in accordance with the provisions of the public health law and rules and regulations promulgated thereunder existing and in force as of the date of subsequent application for licensing examination, except that a satisfactory completed required course of study need not be recompleted. A candidate inducted into the armed forces of the United States during or after completion of training may after honorable discharge and upon proper application as required by the department be eligible for an exemption with respect to time served in such service.

4. Following the close of every written examination prepared and administered by the department the questions submitted and the answers made thereto by the applicant together with a record stating in detail the result of the examination for each candidate shall be kept by the department for a period of one year. These may be destroyed at the end of such period.

### § 3423. Funeral directing; undertakers and embalmers; requirements for license to practice; examinations

1. The department shall continue to hold re-examinations as may be necessary, as provided by former article fourteen of the public health law, as amended, [FN1] and the rules and regulations promulgated thereunder for applicants who have prior to July first, nineteen hundred fifty-one, taken and failed to pass an examination for undertaker or embalmer license until December thirty-first, nineteen hundred sixty-three.

2. The department shall admit to such re-examinations any applicant who pays a fee of five dollars, is registered as a trainee with the department and is otherwise qualified in accordance with former article fourteen of the public health law as amended. [FN1]

3. The department shall issue an undertaker or embalmer license to those who, upon payment of a fee of ten dollars, qualify in accordance with the provisions of this section, and who pass such re-examination.

4. An undertaker or embalmer license shall entitle the holders thereof to practice undertaking or embalming, respectively.

5. Any person who was a duly registered trainee on April first, nineteen hundred forty-five, and, was

in the armed forces of the United States on April first, nineteen hundred forty-five, and whose training and experience shall have been interrupted by his service in the armed forces of the United States, shall be permitted to resume his training and experience at any time within one year after the date of his discharge from active service. The department shall continue to hold examinations for such candidates for undertaking and embalmer licenses and to issue such licenses as herein provided.

[FN1] Former article 14 of the Public Health Law of 1909 was repealed by section 5002 of this chapter.

## § 3424. Funeral directing; reports by trainees, employees and schools

1. [FN1] Each trainee and the employer and funeral director school shall:

(a) maintain and file such periodic records and reports as the department shall require; and

(b) notify the department promptly of any change in school registration or change of employment.

[FN1] So in original. No subd. 2 has been enacted.

## § 3425. Funeral directing; schools; approval

1. Any school for funeral directors may apply to the commissioner for the issuance of a certificate of approval as maintaining a satisfactory standard, so that students desiring to engage in the business or practice of funeral directing in the state of New York may receive credit for attendance at such school.

2. Such application shall be made upon a form prescribed and furnished by the commissioner which shall contain such information as the commissioner may require.

3. (a) The commissioner shall cause to be made such investigation and inspection of such school as he may deem necessary, and thereafter the department shall issue a certificate of approval to each school for funeral directors approved by the department as maintaining a satisfactory standard.

(b) A certificate of approval issued under this section shall be valid for one year.

4. (a) A school for funeral directors located outside the state of New York shall pay the traveling and other expenses incurred by representatives of the department in making such investigation and inspection as the commissioner may prescribe.

(b) Each certificate of approval may be renewed for additional periods of one year.

5. The commissioner may, in lieu of the foregoing approval procedures, accept the certification of accreditation issued by an accrediting organization recognized by the department of health.

## § 3426. Funeral directing; licensing reciprocity with other states

The commissioner, in his or her discretion, and otherwise subject to the provisions of this article and the rules of the department promulgated thereunder prescribing the qualifications for funeral director license, may endorse, without examination, a funeral director license issued by the proper authorities of any other state or political subdivision of the United States, upon payment of a fee of three hundred dollars, and upon submission of evidence satisfactory to the commissioner:

(a) that such other state or political subdivision of the United States maintains a system and standard of qualification and examination for funeral director license, which is substantially

equivalent to those required in this state; and,

(b) that such other state or political subdivision of the United States gives similar recognition and endorsement to licenses of this state; and,

(c) that the applicant for such endorsement, since receiving his license from such other state or political subdivision of the United States, has been engaged in the practice of funeral directing for three years or more in one or more of the states or political subdivisions of the United States; and,

(d) that such applicant for endorsement is actually engaged in the practice of funeral directing at the time of application for endorsement and is in good and regular standing as a funeral director in each state or political subdivision of the United States from which he has ever received a funeral director license.

## § 3427. Funeral directing; issuance of duplicate licenses

Upon receipt of satisfactory evidence that a license or certificate has been lost, mutilated or destroyed, the department may issue a duplicate license or certificate upon such terms and conditions as the commissioner shall prescribe, and upon payment of a fee of twenty dollars.

## § 3428. Funeral directing; registration of licenses; fees

1. (a) Every person who, within the state, practices as a funeral director, undertaker or embalmer and every person, partnership or corporation who or which owns or operates within the state a funeral firm as herein defined shall biennially apply to the department for an appropriate certificate of registration and report, in a statement subscribed and affirmed as true under the penalties of perjury, any facts requested by the department.

(b) Such report by a corporation also shall set forth the name, residence address and title of each of its officers and directors and the name and residence address of each stockholder and other person, firm and corporation having a ten per centum or greater proprietary, beneficial, equitable or credit interest therein.

(c) Every such report also shall contain a statement as to whether the applicant and, if a partnership, any partner and, if a corporation, any of the officers, directors, stockholders or other persons, firms or corporations required to be listed therein had been convicted of a crime in the two year period immediately preceding the date of such application. Such statement shall identify such crime and the jurisdiction involved and the disposition of the charge.

(d) Every such report shall contain a statement as to whether the applicant and, if a partnership, any partner and, if a corporation, any of the officers, directors, stockholders or other persons, firms or corporations required to be listed therein, or any funeral firm with which such applicant, partner, officer, director, stockholder, person, firm or corporation has been affiliated, has been found in violation of the provisions of this article or any statute, rule or regulation relating to funeral directing. Such statement shall identify such statute, rule or regulation and the disposition of any proceeding thereon.

(e) In addition to such report, every person, partnership or corporation herein required to apply for a certificate shall without delay inform the department by written statement of his conviction, or of the conviction of any member of the partnership, or, if a corporation, of the conviction of any of its officers, directors, stockholders or other persons, firms or corporations required to be reported as provided by paragraph (b) of this subdivision.

(f) In addition to any report required pursuant to this section, every person, partnership or corporation herein required to apply for a certificate of registration pursuant to this article shall

provide notice to the department of the proposed: (i) sale or transfer of all or substantially all of the assets of a funeral firm, (ii) the sale or transfer of a controlling interest of such funeral firm, or (iii) the termination of the business of such funeral firm where there is no transferee of assets or stock. For purposes of this section, the term "controlling interest" shall mean a fifty-one percent interest in a partnership or fifty-one percent of the issued and outstanding shares of stock of a corporation. In the case of subparagraphs (i) and (ii) of this paragraph, such notice to the department shall identify the transferee or transferees of the assets or controlling interest and contain a listing of the names and addresses of the persons who deposited moneys with the funeral firm pursuant to section four hundred fifty-three of the general business law, and the amount to be transferred to the transferee or transferees. In the case of the termination, cessation of operation or discontinuation of the firm where there is no transferee, such notice shall contain a listing of the names and addresses of the persons who deposited funds with the funeral firm, the amount held in trust by such funeral firm and the proposed disposition of the moneys so held by such funeral firm. All such notices shall be provided to the department not less than ten days after the sale or transfer of such funeral firm or not less than thirty days prior to the termination, cessation of operation or discontinuation of the business of such funeral firm.

2. (a) An undertaker or embalmer shall pay to the department a biennial registration fee of sixty-two dollars and fifty cents.

(b) A funeral director shall pay a biennial registration fee of one hundred twenty-five dollars; however, initial registration shall not require such fee.

(c) Only a registered funeral firm may operate, or engage in the business and practice of funeral directing. Said business and practice must be conducted from an approved funeral establishment. In the event a funeral firm conducts its business from more than one funeral establishment, the firm must be registered from each such establishment. In the event more than one firm conducts its business from the same funeral establishment, each firm must be registered from the establishment and have an individual manager representing that firm at that establishment. The initial registration fee for each required registration is four hundred dollars for the period ending with the then current biennial registration period, and the biennial registration fee thereafter is three hundred dollars.

(d) The owner of a funeral firm shall pay a registration fee of one hundred dollars for the amendment of a certificate of registration to indicate a change of location, change of manager or change in firm name thereof.

(e) For failure to register, an additional fee of ten dollars for each delay of thirty days or part thereof beyond the first day of the biennial registration period shall be added to the regular fee. The commissioner may, for good cause shown, waive or compromise all or any part of this additional fee.

3. (a) Upon verification of the statements thus reported and the receipt of the requisite fee, the commissioner shall issue a certificate of registration; except that, in those instances where a conviction shall have been reported as herein required, or upon other proof thereof, and in the case of a funeral firm where an applicant or, if a partnership, any partner or, if a corporation, any of its officers, directors, stockholders or other persons, firms or corporation required to be reported as provided by paragraph (b) of subdivision one of this section, or any funeral firm with which such applicant, partner, officer, director, stockholder, person, firm or corporation has been affiliated, has committed repeated violations of the provisions of this article or any statute, rule or regulation relating to funeral directing, or has committed a significant violation, as defined by the commissioner pursuant to rule and regulation, of the provisions of this article or any statute, rule or regulation relating to funeral directing, the commissioner may deny an application for a certificate.

(b) The commissioner shall afford the applicant an opportunity to be heard at a hearing, on due notice, conducted in accordance with the provisions of this chapter, prior to the issuance of any order or determination denying such application.

4. The commissioner shall establish by rule and regulation the beginning date of the biennial registration period. In the event that a change in the established beginning date of the biennial

registration period requires an adjustment in the duration of a registration period, there shall be a proportionate adjustment in the prescribed fee.

5. Each licensee who applies for registration as a funeral director, undertaker or embalmer during the second year of a biennial registration period shall pay a fee of twenty-five dollars for funeral director registration or twelve dollars and fifty cents for undertaker registration, and twelve dollars and fifty cents for embalmer registration. However, initial registration for funeral directors shall not require such fee.

6. If any funeral director, undertaker or embalmer continues to practice, or any owner continues to operate a funeral firm, without registration, as herein provided, his license or business registration may be suspended or revoked by the department in accordance with the provisions of this article.

7. A funeral director, undertaker or embalmer who has been heretofore duly licensed and registered to practice in this state whose license shall not have been revoked or suspended, and who either before or after registration as required by this section shall have temporarily abandoned the practice of funeral directing, undertaking or embalming, or shall have removed from the state, may register within the state upon complying with the provisions of this section for registration, and also, filing with the department a statement of such facts subscribed and affirmed by him as true under the penalties of perjury.

8. Every funeral director, undertaker or embalmer shall communicate with the department in the event that the application blank for registration fails to reach them.

9. A funeral director, undertaker or embalmer who has been heretofore duly licensed and registered to practice in this state whose license shall not have been revoked or suspended and who no longer practices funeral directing, may apply for an inactive certificate of registration. The fee for an inactive certificate of registration shall be the same amount as the regular certificate of registration. Upon complying with the provisions of this section and <u>section three thousand four hundred twenty-nine</u> of this title for registration, a regular certificate of registration shall be reinstated. An inactive registrant shall be considered duly licensed and registered solely for the purposes of <u>section three thousand four hundred forty-three</u> of this article, provided, however, that any such registrant using his or her name in any advertising or promotional materials shall disclose their inactive status in such materials.

## § 3429. Continuing education for funeral directors

1. Definitions. As used in this section:

(a) "Biennium" means any two-year period for registration of individuals licensed to practice funeral directing or embalming in this state pursuant to <u>section three thousand four hundred twenty-eight</u> of this title;

(b) "Continuing education" means a course of instruction in a field of funeral directing, within the subjects listed in subdivision five of this section, taught by a provider registered with the department under subdivision four of this section;

(c) "Contact hour" means a period of between fifty and sixty minutes, continuously measured;

(d) "Provider" means a national, state or local trade association of funeral directors, a school for funeral directors approved under <u>section three thousand four hundred twenty-five</u> of this title or, with prior or provisional approval of course content by the department under subdivision four of this section, any other person or organization desiring to offer continuing education;

(e) "Trade association" means an organization, whether incorporated or not, whose primary class of members consists of ten or more firms under separate ownerships or twenty individuals in different employment, all registered under <u>section three thousand four hundred twenty-eight</u> of this title in an aspect of funeral service, which has been organized and maintained for at least two years prior to

offering continuing education under this section for the collective benefit of its members.

2. Requirement. (a) Every person who renews a certificate of registration under section three thousand four hundred twenty-eight of this title shall file with the department, along with his or her biennial application for renewal, a certification attesting to the course or programs of instruction taken and successfully completed by such person and which clearly demonstrates that the person has completed the minimum number of hours of continuing education within the current biennium as set forth in subdivision three of this section.

(b) The department shall provide a certification form which shall require the following information:

(i) Applicant's full name and registration number;

(ii) Applicant's statement that he or she attended a specified number of hours of continuing education within the current biennium, consisting of courses identified by sponsor, date, location, and length of time in hours; and

(iii) Applicant's signature and date.

(c) This subdivision shall not apply to a funeral director, undertaker or embalmer who is an inactive registrant pursuant to subdivision nine of section three thousand four hundred twenty-eight of this title.

3. Minimum hours. The minimum hours of continuing education which an individual renewing registration must complete are:

(a) to renew for the first biennium commencing on June thirtieth, two thousand two, six hours within the current biennium concluding on such date.

(b) to renew for all subsequent biennia, twelve hours within each biennium, including at least two hours relating to applicable New York state laws and regulations affecting funeral directing, embalming and preneed services, which may be provided by the department or a provider registered pursuant to the provisions of subdivision four of this section.

4. Provider registration; course content approval. (a) Any person who is a provider and who desires to offer continuing education shall first register with the department and pay a registration fee of one hundred fifty dollars for the first biennium. A provider once registered may renew the registration for subsequent biennia for a fee of seventy-five dollars per biennium. The provider shall submit with its registration fee an affidavit which includes the following information and statements:

(i) Provider's name, address, telephone number, and, when known, names of individual instructors;

(ii) Provider's agreement to accept periodic monitoring of its courses by the department;

(iii) Provider's certification that the contents of each course are within the scope of subdivision five of this section;

(iv) Provider's commitment to verify attendance at each course and to maintain attendance records for department inspection for five years;

(v) Provider's commitment to establish a mechanism whereby licensees may evaluate the quality and content of each course taken as well as the provider's overall program when requested to do so by the department, and to maintain records of such evaluations for department inspection for five years;

(vi) Provider's agreement to submit to the department such evidence as is necessary to establish compliance with this section;

(vii) Provider's acknowledgment that disapproval by the department of a particular course or

revocation of the provider's registration may result in nonrecognition of hours of continuing education from that provider; and

(viii) Provider's signature and date and verification by a notary public.

(b) A registered provider which is required to obtain prior approval of courses shall submit to the department a written description of each course for which approval is requested, at least sixty days prior to the first date the course is to be offered. If the department does not disapprove the proposed course within ninety days of its receipt of the written description and request for approval, the course shall be considered approved provisionally for six months. Following the six months of provisional approval, the department may make a final determination disapproving the course. Notwithstanding such determination, however, any individuals licensed pursuant to section three thousand four hundred twenty-eight of this title shall receive full continuing education credit for any course taken during the period of provisional approval to fulfill the requirements of this section.

(c) Any provider registered to offer continuing education under this section shall require each person taking instruction to display or provide, prior to admission or before the initiation of any such instruction, personal photo identification in the form of an automobile driver's license, passport or any other similar form of photo identification issued by a governmental entity, or a trade association as defined in this section. The provider may allow the use of a photocopy of such identification for computer-based or distance learning instruction.

(d) The department may impose a fine of no less than the biennial registration fee upon a provider who violates the provisions of this section. For a second violation, the department may impose an additional fine of up to five hundred dollars and suspend the registration for the balance of the biennium. Nothing herein shall prevent the attorney general from bringing a civil action against any provider offering continuing education courses without the prior or provisional approval of the department.

(e) Registered provider status may be revoked by the department if the reporting requirements contained in this section are not met or, if upon review of the provider's performance, the department determines that the content of the course materials, the quality of the continuing education activities or the provider's performance does not meet the requirements set forth herein. In such event, the department shall send the provider by ordinary mail a notice of revocation. The revocation shall take effect no less than sixty days from the date such mailed revocation is postmarked. The provider may request a review of such revocation, and the department shall determine the request within thirty days. The decision of the department shall be final after such review.

(f) Section twelve of this chapter shall not apply to this section; provided, however, that any action by the department in suspending or revoking a provider registration in accordance with this subdivision shall be reviewable by the supreme court of the state of New York pursuant to the provisions of article seventy-eight of the civil practice law and rules.

5. Subjects of continuing education. The subjects of continuing education may be one or more of the following: aftercare, business administration, religion, natural sciences, management services, data processing, organ procurement, preneed services, jurisprudence (federal, state, and local), restorative arts and embalming, funeral service counseling, funeral customs, sanitation and infection control, and hospice and similar outreach programs.

6. Credit for preparation. A licensed funeral director may earn up to two hours of continuing education credit for preparing an hour of continuing education that he or she then teaches, and may earn the hour solely for teaching that material the first time. No one may earn more than six hours per biennium for preparation and teaching.

7. Classroom time; minimum percentage. A funeral director shall take at least fifty percent of his continuing education requirement each biennium in the form of receiving live classroom instruction. The remainder may be in other forms such as videotape, audiotape, teleconference, satellite seminars, internet coursework, credits for preparation, or correspondence coursework.

8. Licensees in other states. A funeral director licensed as such by the state of New York who is maintaining his or her registration in this state while residing in another state is subject to the requirements of this section. The department may grant a non-resident licensee credit for continuing education as required by the state in which such licensee resides, provided the department deems them equivalent to New York continuing education requirements as set forth herein.

9. Late filing; fines; grace period. (a) The department shall impose a fine equal to the biennial registration fee upon a registrant who fails to file the certification of continuing education within the time prescribed under subdivision two of this section, for the first such late filing. The department shall also allow such a registrant a grace period of one hundred twenty days into the biennium to comply with this section and to file the certification. After one hundred twenty days, the department shall suspend the registration for the balance of the biennium.

(b) A registrant who violates the filing requirements and deadlines of this section a second time shall, upon that and any subsequent violations, be subject to an additional fine of no more than five hundred dollars and suspension as the department may impose.

(c) A person who holds an inactive certificate of registration who wishes to reinstate an active registration shall complete twelve hours of continuing education prior to obtaining such active registration.

(d) A person whose registration has been suspended by the department for violating the filing requirements contained in this subdivision and who wishes to gain reinstatement of such registration shall complete twelve hours of continuing education and pay a reinstatement fee of two hundred fifty dollars to the department prior to obtaining reinstatement of such registration.

(e) With respect to paragraphs (a) and (b) of this subdivision, the department shall send the registrant by ordinary mail a notice of suspension. The suspension shall take effect no less than sixty days from the date such mailed suspension is postmarked.

10. Funeral directors shall be exempt from the mandatory continuing education requirements prescribed herein for the biennium during which they are first licensed.

11. Enforcement. (a) The department may not renew the registration of a licensed funeral director who has not complied with this section.

(b) The department may audit at random the certifications of licensees and the affidavits of providers, and may suspend or revoke the registration and/or license of a person who has knowingly made a false statement under oath.

## Title III. Practice of Funeral Directing; Funeral Establishments

## § 3440. Funeral directors; duty to use prescribed tests of death

Before removing the body of a deceased person from the place of death or preparing it for burial by injection of fluid or otherwise, every funeral director, undertaker or embalmer shall apply such tests as are prescribed by the commissioner for determining whether life is extinct. If the body is not to be embalmed the same tests shall be made before it is prepared for burial.

## § 3440-a. Statement to be furnished by certain licensed persons, funeral directors and funeral firms when funeral arrangements are made

Every person licensed pursuant to this article, including funeral directors and funeral firms, shall furnish at the time funeral arrangements are made for the care and disposition of the body of a

deceased person, a written statement showing thereon the price of the funeral, which shall include an itemized list of the services and merchandise to be furnished for such price and a statement of the cash advances and expenditures to be advanced.

## § 3441. Funeral firms; operation by licensed persons

1. No funeral firm shall be operated within the state unless:

(a) if the owner is an individual, he shall be a duly licensed funeral director or undertaker; if the owner is a partnership organized at any time after the seventh day of April in the year nineteen hundred forty-four and first registered with the department after that date all partners shall be duly licensed funeral directors or undertakers; if the owner is a corporation, or is a partnership organized and registered with the department before the seventh day of April in the year nineteen hundred forty-four and having any unlicensed partners, or is the legal representative of a deceased funeral director or undertaker, the manager registered with the department shall be a duly licensed funeral director or undertaker;

(b) the owner shall biennially register with the department in accordance with the provisions of this article;

(c) the certificate of registration issued by the department to a funeral firm shall be conspicuously displayed at the funeral establishment for which the registration was issued;

(d) the license of the registered manager of a registered firm, shall be conspicuously displayed at the establishment for which the firm registration was issued;

(e) it shall be under the immediate and personal supervision, direction, management, and control of a licensed funeral director or undertaker, registered with the department, who shall not serve as the manager at more than one funeral establishment for more than one firm;

(f) all funeral directing, undertaking, and embalming shall be under the immediate and personal supervision, direction, management, and control of a duly licensed funeral director, undertaker and embalmer, respectively; and,

(g) the operation thereof and the maintenance of the establishment shall conform to the rules and regulations of the department.

2. A license or registration certificate granted or issued by the department shall not be assignable or transferable.

3. No funeral firm shall be operated or located on real property owned, leased or under the control of a cemetery corporation, a family cemetery corporation or a private cemetery corporation; or on real property dedicated for cemetery purposes or land adjacent thereto, which is owned, leased or under the control of a religious corporation, county, town, village or municipal corporation.

4. No funeral firm shall engage in the sale or cross-marketing of goods or services with any cemetery corporation. Such prohibition shall apply to any financial relationship or co-management between a funeral firm and cemetery corporation. For the purposes of this subdivision, "cross-marketing" shall include, but not be limited to, solicitation, provider discounts (except as authorized by the regulations of the commissioner), or carrying on business or affairs between a funeral firm and cemetery corporation.

## § 3441-a. Funeral arrangements; use of flag

Upon the request of the person responsible for the payment for funeral arrangements made for the care and disposition of the body of a deceased veteran, eligible under federal law or regulations or

section two hundred fifty-a of the military law for the use of a United States flag for burial purposes, every person licensed pursuant to this article, including funeral directors and funeral firms, shall furnish a United States flag for the covering of the casket at the time of the funeral free of charge. Notice of the availability of such flag shall be given at the time the itemized list of services is furnished.

## § 3442. Funeral directing; reports relating to moneys paid in connection with agreements for funeral merchandise or services in advance of need

1. Every person licensed pursuant to this article, including funeral directors and funeral firms, receiving moneys in connection with agreements to furnish merchandise or services in connection with a funeral or burial, wherein the merchandise is not to be delivered or the personal services rendered until the occurrence of the death of the person for whose funeral or burial such merchandise or services are to be furnished, shall comply with the provisions of section four hundred fifty-three of the general business law, furnish a preneed statement to the person making such payment describing such services and merchandise offered on a form prescribed by the commissioner and shall maintain current records of the persons making such payments or receiving such merchandise or services or having been repaid moneys and shall maintain true copies of such agreements. Such records and true copies of agreements shall be made available for inspection and shall be made available during ordinary business hours for copying upon written request by the commissioner or his or her representative in connection with any investigation pursuant to this article. Copies shall only be requested where the department has received a complaint, either oral or written, or where the department inspector has grounds to believe that serious or repeat violations of this section have occurred.

2. Only a funeral firm having a valid registration issued pursuant to paragraph (c) of subdivision two of section thirty-four hundred twenty-eight of this article or their duly authorized agent, may receive and hold moneys in trust which have been paid in connection with an agreement as described in subdivision one of this section.

3. (a) Upon the sale or other transfer of any funeral firm, or the transfer of control over such moneys, both the new owner and former owner or the estate of the former owner, or both the persons currently and formerly having control over such moneys, shall within thirty days of such sale or transfer, notify, in writing, each such person who has paid moneys of the sale or transfer, including the name and address of the new and former owner. Compliance with the requirements of this subdivision shall constitute compliance with the same notification requirements found in subdivision five of section four hundred fifty-three of the general business law. Copies of such notifications shall be available for inspection and shall be made available during ordinary business hours for copying upon written request by the commissioner or his or her representative in connection with any investigation pursuant to this article.

(b) Upon the sale or other transfer of any funeral firm having received moneys in connection with any agreement described in subdivision one of this section or upon any transfer of control over such moneys, the transferee shall be liable for compliance with all provisions of this section and section four hundred fifty-three of the general business law, including the repayment of any moneys and provision of funeral merchandise and services, if the transferor or a transferor's predecessor in interest was liable for compliance with the requirements of this section and section four hundred fifty-three of the general business law. Such liability shall attach whether or not the successor in interest has, upon conveyance of such funeral firm, received such moneys or has knowledge of the existence of any agreements described herein. Such liability shall attach where there is proof of a valid agreement for providing funeral merchandise and services, and the funeral firm, funeral director or undertaker has not refunded the moneys received from the customer.

(c) Upon the sale or other transfer of any funeral firm having received such moneys, or upon a transfer of control of such moneys, the transferor shall disclose a complete accounting of all moneys transferred pursuant to such agreement to the transferee, including the names and addresses of all persons who deposited moneys with such funeral firm, the amount and location of such moneys, the

names and addresses of persons who have received refunds and the amount of such refund.

(d) Upon the termination, cessation of operation or discontinuation of any funeral firm, or a successor in interest which has received moneys in connection with any agreement described in subdivision one of this section or is otherwise liable for compliance with the requirements of this section or <u>section four hundred fifty-three of the general business law</u>, such funeral firm or successor shall, within thirty days of such termination, cessation of operation or discontinuation, repay all such moneys and accrued interest as if a demand had been made therefor.

4. Records required by this section to be maintained and true copies of agreements shall be retained for four years following the provisions of funeral merchandise and services. In the event the funds are returned to the person who deposited the money or their representative, such records, including the record of return of funds shall be retained for a period of four years after the sale, transfer, termination, cessation of operation or discontinuance of the funeral firm.

## § 3443. Funeral directing; use of names; unlicensed persons prohibited

1. The name of any living person who has not been duly licensed and is not duly registered as specified in this article shall not be

(a) shown or displayed upon or in any funeral establishment; or,

(b) used alone, in, as part of, or in connection, association, combination, or together with the name or title of any person, firm, corporation or other form of enterprise engaged in funeral directing, undertaking, or embalming or maintaining a mortuary, funeral home or other similar establishment or using in connection with such name and practice, the words funeral director, mortician, undertaker, embalmer, or any other title or words of similar meaning or import on any card, sign, stationery, or other printed, engraved or written instrument or device or in any public or private announcement or advertisement; or,

(c) used in any manner as to give or tend to give the impression that such person is licensed or practicing or entitled to practice as a funeral director, undertaker, or embalmer.

2. A person who holds a license as a funeral director or undertaker and is registered as required herein may hold himself out and advertise as a funeral director, undertaker, or mortician.

## Title IV. Enforcement and Discipline; Violations and Penalties

## § 3450. Suspension and revocation of licenses

1. The commissioner may revoke or suspend any license of a funeral director, undertaker or embalmer and, if such licensee shall be the owner of, or a member of a partnership owning, a funeral firm or the licensed and registered manager of a funeral firm owned by a corporation, any certificate of registration of such firm, or may reprimand or otherwise discipline such licensee or funeral firm in accordance with the provisions of this article upon proof that such licensee or, in the case of such corporation, that the corporation or one or more of its officers or directors or one or more of its stockholders or other persons, firms or corporations having a ten per centum or greater proprietary, beneficial, equitable or credit interest therein:

(a) has violated any of the provisions of this article, the sanitary code, the rules and regulations of the commissioner or of any statute, code, rule or regulation relating to the practice of funeral directing, embalming, or vital statistics;

(b) has been convicted of a crime;

(c) has practiced fraud, deceit or misrepresentation in securing or procuring a license or admission to practice funeral directing, undertaking, or embalming;

(d) is incompetent to engage in the business or practice of funeral directing, undertaking, or embalming except that this provision shall not apply to an officer, director or stockholder of, or other person interested in, a corporation owning a funeral firm unless he shall be the licensed and registered manager thereof;

(e) has practiced fraud, deceit, or misrepresentation in his business or practice or in the business of such funeral firm;

(f) has committed acts of misconduct in the conduct of the business or practice of funeral directing, undertaking, or embalming or in the business of such funeral firm;

(g) is an habitual drunkard;

(h) is addicted to the use of morphine, opium, cocaine or other drugs having a similar effect;

(i) has practiced or conducted the business of such funeral firm without biennial registration of his license or of such firm;

(j) has employed, hired, procured or induced or otherwise aided or abetted any person not licensed or registered to practice or hold himself out as licensed, practicing, or entitled to practice as an undertaker, or embalmer, or funeral director;

(k) has wrongfully transferred or surrendered possession, either temporarily or permanently, of his license or certificate of registration thereof or of the certificate of registration of such funeral firm to any other person, partnership or corporation;

(l) [Eff. until June 1, 2012, pursuant to L.2001, c. 557, § 6. See, also, par. (l) below.] has paid, given, has caused to be paid or given or offered to pay or to give to any person a commission or other valuable consideration for the solicitation or procurement, either directly or indirectly, of funeral patronage, or has accepted any consideration (including without limitation a commission, rebate, or discount or direct or indirect price reduction on merchandise from the current value thereof) from any financial institution or trust company, or agent thereof, with whom the funeral director deposits funds paid for funeral services in advance of need pursuant to subdivision one of section four hundred fifty-three of the general business law, or has accepted any consideration (including without limitation a commission or gift) from any insurer or agent thereof, to sell, offer or promote the sale of any policy of insurance payable, expressly or as marketed, at the death of the insured for funeral or burial expenses;

(l) [Eff. June 1, 2012. See, also, par. (l) above.] has paid, given, has caused to be paid or given or offered to pay or to give to any person a commission or other valuable consideration for the solicitation or procurement, either directly or indirectly, of funeral patronage, or has accepted any consideration (including without limitation a commission, rebate, or discount or direct or indirect price reduction on merchandise from the current value thereof) from any financial institution or trust company, or agent thereof, with whom the funeral director deposits funds paid for funeral services in advance of need pursuant to subdivision one of section four hundred fifty-three of the general business law;

(m) has been guilty of fraudulent, misleading or deceptive advertising;

(n) has practiced funeral directing, undertaking or embalming, or has conducted business as a funeral firm, under a false name;

(o) has impersonated another licensee or another funeral firm of a like or different name; or

(p) has failed to comply with requirements set forth in section four hundred fifty-three of the general

business law, relating to moneys paid in connection with agreements for funeral merchandise in advance of need to be kept on deposit pending use or repayment except, that revocation and suspension shall apply only in the case where a funeral director or funeral firm has committed repeated violations of these provisions or has committed a violation of the provisions of section four hundred fifty-three of the general business law relating to failure to deposit or hold moneys on deposit; failure to return such moneys and interest thereon upon demand or upon the termination, cessation of operation or discontinuance of any funeral firm, or a successor in interest; or failure to comply with the requirements of paragraph (b) of subdivision five of section four hundred fifty-three of the general business law regarding compliance by transferors who receive such moneys.

2. The commissioner shall also have power, and after due notice and an opportunity to be heard, to revoke or suspend the endorsement of a funeral director, undertaker or embalmer license issued to any person pursuant to the provisions of this article or any previous law upon evidence that the duly constituted authorities of any state or political subdivision of the United States have lawfully revoked or suspended the funeral director, undertaker or embalmer license issued to such person by such state or political subdivision.

3. The action of the commissioner in revoking or suspending such license or certificate of registration of such funeral firm shall be reviewable by the supreme court of the state of New York pursuant to the provisions of article seventy-eight of the civil practice law and rules.

4. (a) A person convicted of a felony shall forfeit his license to practice as a funeral director, undertaker, or embalmer, and upon presentation to the department of a certified copy of a court record showing that he has been convicted of a felony, that fact shall be noted on the record of license, and the license shall be revoked, and the registration shall be cancelled.

(b) If such conviction be subsequently reversed on appeal and the accused acquitted or discharged, his license shall become again operative from the date of such acquittal or discharge.

(c) The conviction of a felony aforementioned shall include the conviction of a felony by any court in this state or by any court of the United States or by any court of any other state of the United States; provided, however, that if a crime of which the licensee is convicted by any court of the United States or by any court of any other state is a felony in the jurisdiction in which the conviction is had but is not a felony in the state of New York, then the conviction shall not be deemed a conviction of a felony for the purposes of this article. In the event that a crime of which the licensee is convicted by any court of the United States or by any court of any other state is not a felony in the jurisdiction in which the conviction is had but is a felony in the state of New York, then the conviction shall be deemed a conviction of a felony for the purposes of this article.

## § 3451. Suspension and revocation of licenses; complaints and charges

1. (a) Any person, public officer, or association, or the department may for due cause, prefer charges pursuant to the provisions of this chapter against any licensee.

(b) Such charges shall be in writing and verified under oath and shall be submitted to the department.

2. (a) The commissioner or any person or persons appointed by him for the purpose, may hold a preliminary hearing to determine whether a trial on the formal charges is necessary.

(b) The commissioner may dismiss the charges and take no action thereon, by formal hearing or otherwise, in his discretion, in the event that he or the person or persons thus appointed by him do not deem a formal hearing necessary, in which event the charges and the order dismissing the charges shall be filed with the department.

3. (a) If the commissioner or the person or persons thus appointed by him decide that the charges shall be heard, the commissioner shall designate a hearing officer to determine the charges and set a

time and place for a hearing.

(b) A copy of the charges, together with notice of the time and place of the hearing, shall be served on the accused in accordance with section twelve-a of this chapter.

4. (a) Upon the conclusion of the hearing, the commissioner may revoke the license of the accused, or suspend such license for a fixed period, or reprimand, or take such other disciplinary action in accordance with this article, or dismiss the charges.

(b) An order or suspension made by the commissioner may contain such provisions as to reinstatement of the license as the commissioner shall direct.

(c) The commissioner, in his discretion, may direct a rehearing or take additional evidence, and may rescind or affirm the prior determination after such rehearing, but nothing in this subdivision shall preclude appropriate relief under article seventy-eight of the civil practice act. [FN1]

[FN1] Now CPLR 7801 et seq.

## [§ 3452. Repealed. L.1958, c. 602, § 4, eff. Apr. 11, 1958]

## § 3453. Restoration of licenses after suspension and revocation

1. The commissioner may, in his discretion, reissue a license to any person whose license has been revoked.

2. Application for the reissuance of a license shall not be made prior to one year after revocation and shall be made in such manner as the commissioner may direct.

## § 3454. Restoration of licenses after conviction of a felony

If a person convicted of a felony or crime deemed to be a felony is subsequently pardoned by the governor of the state where such conviction was had or by the president of the United States, or shall receive a certificate of good conduct granted by the board of parole pursuant to the provisions of the executive law to remove the disability under this section because of such conviction, the commissioner may, in his discretion, on application of such person, and on the submission to him of satisfactory evidence, restore to such person the right to practice in this state.

## § 3455. Violations; prosecutions

1. Any person who shall:

(a) obtain or attempt to obtain or aid in obtaining any license or certificate under this article by any false or fraudulent statement or representation; or,

(b) practice as a funeral director, undertaker or embalmer without having been issued a license or without having registered as required by this article; or,

(c) being a funeral director, undertaker, or embalmer, aid and abet an unlicensed person to practice funeral directing, undertaking, and embalming; or,

(d) hold himself out as licensed or able to practice or as practicing or entitled to practice without conformity to the requirements of this article; or,

(e) otherwise violate or neglect to comply with any of the provisions of this article; or,

(f) practice as a funeral director, undertaker or embalmer, while his license is revoked or suspended, shall be guilty of a misdemeanor, and shall, on conviction, for each and every offense be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment for a term of not less than thirty days and not more than one year, or by both such fine and imprisonment, and for a second offense shall be punishable by both such fine and imprisonment.

2. All courts of special sessions within their respective territorial jurisdictions are hereby empowered to hear, try and determine such crimes without indictment and to impose in full the punishments of fines and imprisonments herein prescribed.

3. The attorney general of the state shall have the power to prosecute in any county of the state any violation of this article; such prosecution may be instituted by him in his discretion or after complaint made to him by any person, provided, however, that nothing in this section shall be interpreted to prevent or impede the prosecution of such proceedings by the district attorney of any county in which the offense is committed when such proceedings have been instituted by him.

4. (a) In any prosecution or hearing hereunder it shall be necessary to prove only a single act prohibited by law or a single holding out or attempt, without having to prove a general course of conduct, in order to constitute a violation.

(b) The display, publication or dissemination by any person of an advertisement, card, sign or any other representation bearing a name, designation or description as a practitioner of funeral directing, undertaking, or embalming, in any manner or by implication, shall be presumptive evidence of a holding out of such practice by such person.

5. All violations of this article when reported to the department and duly substantiated by affidavits, or other satisfactory evidence, shall be investigated and, if the report is found to be substantiated, the department shall report such violations to the attorney general and request prompt prosecution.

## § 3456. Violations; penalties

1. Any person who shall engage in the business or practice of funeral directing, undertaking or embalming in violation of any provisions of this article, shall be liable to a maximum civil penalty of one thousand dollars, suspension or revocation of license, or other disciplinary action, as specified by law for each such violation and may also be found guilty of a misdemeanor.

2. Each day during which or any part of which any such prohibited business or practice is continued shall be deemed a separate violation.

3. One or more penalties for one or more violations by the same person within any period of time may be sued for and recovered by the attorney general in the name of the people of the state.

## § 3457. Violations; injunctions

1. (a) The attorney general may maintain an action upon his own information or upon the complaint of any person against any person, partnership, corporation or association, and any employee, agent, director or officer thereof, who shall violate any of the provisions of this article.

(b) In such action the final judgment in favor of the plaintiff must perpetually restrain the defendant or defendants from the commission or continuance of the acts complained of.

(c) A temporary injunction to restrain the commission or continuance of the acts complained about may be granted upon proof, by affidavit, that the defendant has or defendants have violated any of the provisions of this article. The provisions of statute or rule relating generally to injunctions as

provisional remedies in actions shall apply to such temporary injunction and the proceedings thereupon.

2. The plaintiff in such action shall be entitled to an examination before trial of the defendant or defendants and of witnesses as to testimony that is material and necessary in such action.

3. The action aforesaid shall be in addition to any penal proceedings.

Current through L.2008, chapters 1 to 35 and 52.

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                        )ss.:
COUNTY OF NEW YORK  )

**RONA INGEGNERI**, being duly sworn, deposes and says:

I am not a party to the action, am over 18 years of age and reside at 333 East 55th Street, New York, New York 10022.

On April 10, 2008, I served a true copy of an Memorandum of Law of Defendants In Opposition to Plaintiffs' Motion For A Preliminary Injunction upon Joseph Uvino, Esq., Lewis Brisbois Bisgaard & Smith LLP, the attorneys for plaintiff, at 199 Water Street, 25th Floor, New York, New York 10038, by depositing a true copy thereof enclosed in a wrapper properly addressed in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

RONA INGEGNERI

Sworn to before me this
10th day of April, 2008.

Notary Public

LEONARD LICHTER
NOTARY PUBLIC-STATE OF NEW YORK
No. 02LI7544150
Qualified in Westchester County
My Commission Expires August 31, 2010

20979