UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRY NIEBERG, an individual, and HARRY NIEBERG FUNERAL HOME INC., a New York corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NIEBERG MIDWOOD CHAPEL INC., a New York Corporation; MIDWOOD MEMORIAL CHAPEL INC., a New York corporation, <br><br> Defendants. | Case No. : 08 CV 00392 <br><br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** <br><br><br> **(ELECTRONICALLY FILED)** |
| NIEBERG MIDWOOD CHAPEL INC., a New York Corporation; MIDWOOD MEMORIAL CHAPEL INC., a New York corporation, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> HARRY NIEBERG, an individual, and HARRY NIEBERG FUNERAL HOME INC., a New York corporation, <br><br> Counterclaim Defendants, and <br><br> SHERMAN FUNERAL HOME INC., a New York corporation, <br><br> Additional Counterclaim Defendant. | |

Plaintiffs HARRY NIEBERG ("Harry") and HARRY NIEBERG FUNERAL HOME

INC. ("Nieberg Funeral"), by and through their attorneys of the law firm of Lewis Brisbois

Bisgaard & Smith LLP, hereby submit this Reply to Defendants' Opposition to Plaintiffs Motion

for Preliminary Injunction. This Reply is supported by the attached Memorandum of Points and

Authorities and attached exhibits, the pleadings and all papers and materials filed in this matter,

and any oral argument that may be presented at the hearing on this matter and any other matter of which the Court may take notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Hardly can Defendants claim ownership of HARRY NIEBERG (the "Mark") because there is an agreement between Harry and the Defendants that clearly allows Harry to use his name in the funeral industry, Harry Nieberg Funeral Home Inc. ("Nieberg Funeral") owns the Mark, and Nieberg Funeral first used the Mark. Defendants claim to have exclusive rights to the Mark in their fraudulent United States Patent and Trademark Office ("USPTO") filing, but in fact their, at best, confused mix of marks defeat any claim to ownership of the Mark. First, one of the Defendants needs to claim ownership of the Mark; it is not clear which one does which further evidences that neither do. Second, the Defendants' service mark and trade name is at best NIEBERG MIDWOOD, and likely is just MIDWOOD. Defendants are not entitled to attempt to warehouse marks to preclude competition. Defendants cannot claim that merely because a ill-maintained sign on their building residually mentions Harry Nieberg that that remains their Mark. Indeed, it is unquestionable that the Defendants' desire that their prevailing mark be NIEBERG MIDWOOD. Third, Defendants' disclaimer of the existence of secondary meaning is fatal to Defendants' claim to exclusive ownership of NIEBERG. Fourth, Defendants' filing in state court a mere trade name action evidences how Defendants do not claim service mark ownership status with respect to Harry Nieberg.

Further, Defendants' Opposition fails to address Plaintiffs' argument regarding sufficiently serious questions going to the merits and the balancing of the hardships as well as Plaintiffs' arguments with respect to Defendants' tortious behavior. As such, on this basis alone a preliminary injunction is appropriate. Moreover, Defendants' argument that Plaintiffs failure to register Nieberg Funeral precludes injunctive relief is without merit because Plaintiffs do not

need to be registered to maintain the infringement and tort actions asserted.  Furthermore, despite Defendants' claims to the contrary, Plaintiffs are not in violation of the New York Statues because Plaintiffs are not directing funerals; it is Sherman directing the funerals.

Based on the foregoing, and the supporting argument, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

## II.  ARGUMENT

### A.    Defendants' Are Precluded From Claiming Ownership of the Mark Because of Defendants' Mixed Use of Other Trademarks and Based On Defendants' Own Argument.

Defendants' confused mix of marks used to identify Defendants' services and Defendants' own admissions/omissions defeat any claim to ownership of the Mark.  Defendants' claim to ownership of the mark is precluded because: (1) it is not clear which Defendant would own the Mark as neither has claimed ownership and only one Defendant can have ownership; (2) based on Defendants' commercial literature and advertising, the Defendants' service mark and trade name is at best NIEBERG MIDWOOD, and likely is just MIDWOOD, not the Mark; (3) Defendants' disclaimer of the existence of secondary meaning is fatal to Defendants' claim to exclusive ownership of NIEBERG or the Mark; and (4) Defendants' filing in state court a mere trade name action evidences how Defendants do not claim service mark ownership status with respect to Harry Nieberg.  Based on the these points, Defendants are not entitled to claim ownership of the Mark.

### 1.    *Defendants' Failure to Meet Basic Requirements of Effectuating Mark Ownership Vitiates Defendants' Claims of Mark Ownership.*

Defendants' practices and omissions with respect to the Mark demonstrate the impropriety of allowing either one of the Defendants to claim ownership of the Mark. Defendants fail to take a consistent legal position with respect to which Defendant owns the Mark, calling into question the validity of Defendants' application for registration of the Mark with the United States Patent and Trademark Office ("USPTO").  Defendants' confused posture with respect to ownership of the Mark demonstrates further that at least one of the Defendants

must be using the Mark pursuant to a "naked" and thus invalid license, and that Defendants have

therefore potentially abandoned the Mark.

Both Defendants appear to claim ownership[1] of the Mark, a legally invalid position.[2]

Only one individual or entity is entitled to claim ownership of a mark, and thereby obtain

entitlement to enforce the rights appurtenant to such mark ownership, *e.g.,* obtaining federal

registration for that mark. *See, e.g., Chien Ming Huang v. Tzu Wei Chen Food Co., Ltd.,* 849

F.2d 1458 (Fed. Cir. 1988), in which the Federal Circuit upheld the Trademark Trial and Appeal

Board's finding that appellant Chien Ming Huang's application to register a mark Mr. Huang did

not own at the time Mr. Huang filed the application was void *ab initio.* During the six-day

period between the time Mr. Huang mailed the registration application to the USPTO and the

time the USPTO received the application and deemed the application filed, Mr. Huang

transferred ownership of the subject mark to a newly formed corporation, Chia-Chi Enterprises,

Inc. Although the Federal Circuit recognized that the case posed "unusual circumstances," the

court recognized the fundamental proposition that "[o]ne must be the owner of a mark before it

can be registered" and upheld voiding of Mr. Huang's application. 849 F.2d at 1460 (*citing*

*Holiday Inn v. Holiday Inns, Inc.,* 534 F.2d 312, 319, n.6 (C.C.P.A. 1976)). The Federal Circuit

thus recognized that, as the non-owner of the subject mark, Mr. Huang had no rights with respect

to that mark.

In this case, it is utterly unclear whether Midwood Memorial or Midwood Chapel is the

owner of the Mark and thus entitled to enforce the rights appurtenant to mark ownership. Both

Midwood Memorial and Midwood Chapel assert the right as counterclaimants in this proceeding

---

[1] Midwood Chapel is the entity purporting to own the Mark in the service mark application on file in the USPTO with respect to the Mark. However, in none of Defendants' pleadings or papers before this Court have Defendants actually denominated whether Midwood Chapel or Midwood Memorial owns the Mark. Defendants consistently refer to themselves collectively, in the plural.

[2] Defendants have not claimed concurrent use of the Mark in any documents filed with the USPTO, and should accordingly be estopped from claiming such concurrent use in this proceeding.

to police use of the Mark. However, as the Second Circuit made clear in *DEP Corp. v. Interstate Cigar Co., Inc.,* 622 F.2d 621 (2d Cir. 1980), the Lanham Act "provides that an action for trademark infringement may only be brought by the 'registrant,' and further defines that term to include the legal representatives, predecessors, successors and assigns of the registrant." 622 F.2d at 622. Midwood Chapel has not demonstrated or alleged that Midwood Memorial falls into one of the four categories described in 15 U.S.C. §1127 as explained by the *DEP Corp.* court. Midwood Chapel's application before the USPTO for registration of the Mark sets forth no indication of use of the Mark by related companies, as required by 37 C.F.R. §2.38 if such use by related companies is, in fact, occurring. Midwood Memorial has not made an application to the USPTO for registration as a lawful concurrent user of the Mark pursuant to 37 C.F.R. §2.99.[3] Yet, as required by 37 C.F.R. §2.33(b)(1), as a condition of Midwood Chapel's application for registration of the Mark, Midwood Chapel represented to the USPTO:

> That the applicant has adopted and is using the mark shown in the accompanying drawing; that the applicant believes it is the owner of the mark; that the mark is in use in commerce; that to the best of the declarant's knowledge and belief, *no other person has the right to use the mark in commerce*, either in the identical form or in such near resemblance as to be likely, when applied to the goods or services of the other person, to cause confusion or mistake, or to deceive; that the specimen shows the mark as used on or in connection with the goods or services; and that the facts set forth in the application are true.

(Emphasis supplied.) Thus, Midwood Chapel's application for registration of the Mark must axiomatically set forth an untruth. Midwood Chapel's ability to register the Mark is thus suspect, and Midwood Chapel's ability to seek equitable relief from this Court should be curtailed given Midwood Chapel's apparent unclean hands with respect to the Mark registration

---

[3] Nor can Midwood Memorial make a claim at common law of concurrent use of the Mark, given that Midwood Memorial is well aware of Midwood Chapel's putative prior use of the Mark. *Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp.,* 160 F.Supp. 41, 46 (S.D.N.Y. 1957)("Both prior to and under the Lanham Act the party seeking to limit the registered owner's rights must have adopted the mark prior to the publication of the registered mark and without knowledge of the registrant's prior use.").

application. As the Court of Customs and Patent Appeals held in *Bart Schwartz Int'l Textiles, Ltd. v. Federal Trade Comm'n*, 289 F.2d 665 (C.C.P.A. 1961), upholding the cancellation of mark registration when the registrant's application had contained a misrepresentation of fact regarding the etymology of the purportedly fanciful (but, in reality, merely descriptive and thus unregisterable) mark, "The obligation which the Lanham Act imposes on an applicant is that he will not make knowingly inaccurate or knowingly misleading statements in the verified declaration forming a part of the application for registration." 289 F.2d at 669. Midwood Chapel's failure to make full disclosure of Midwood Chapel's obviously non-exclusive rights to use of the Mark demonstrates the failure of Defendants to take seriously the obligations imposed by the Lanham Act as conditions precedent to the availability of mark registration.

The casual concurrent use by both Midwood Chapel and Midwood Memorial of the Mark further vitiates the ability of either Midwood Chapel or Midwood Memorial to claim exclusive use of the Mark. The Lanham Act allows, under limited circumstances, concurrent registrations to issue to more than one person for the same or similar marks. 15 U.S.C. §1052(d). As the Court of Customs and Patent Appeals recognized in *In re Beatrice Foods Co.,* 429 F.2d 466 (C.C.P.A. 1970), the Lanham Act's provision allowing for concurrent-use registrations:

> ...reflect[] a recognition, by the framers of that statute, that occasions do and will arise where two or more persons, will independently adopt the same or a similar trademark and use it under the same or similar circumstances, and indicates their concern that a mechanism be provided for an equitable resolution of the problems which such concurrent use creates. As we see it, this is nothing more than an application of the basic policies underlying the Lanham Act as a whole.

429 F.2d at 472. In order to take advantage of the Lanham Act's "mechanism... for an equitable resolution of the problems which such concurrent use creates," however, such concurrent users must scrupulously delineate the scope of each user's approved concurrent use. *See VMG Enterprises, Inc., v. F. Quesada & Franco, Inc.,* 788 F.Supp. 648 (D. P.R. 1992), in which the District of Puerto Rico recognized that a detailed agreement mutually entered into by concurrent users regarding the geographic boundaries of each user's permissible use of the mark in question

sufficiently furthered the Lanham Act's goal of reduction of the likelihood of confusion of consumers inherently posed by concurrent use. 788 F.Supp. at 655-656. Otherwise, informal and otherwise unapproved concurrent users are not entitled to claim exclusive ownership of the mark that is the subject of the concurrent use. *Compare Haviland & Co., Inc., v. Johann Haviland China Corp.,* 269 F. Supp. 928 (S.D.N.Y. 1967), in which this Court found that putative senior user Haviland & Co., Inc. ("Haviland") had delayed in asserting rights to the HAVILAND mark as against junior user Johann Haviland China Corp., had omitted critical information from applications for registration of the HAVILAND mark with the USPTO, and had overall taken a course of "awareness and inaction," 269 F. Supp. at 934, with respect to the rights to the HAVILAND mark for over 30 years before filing suit. Consequently, this Court declined to recognize Haviland's exclusive rights to the HAVILAND mark, holding that "it would be inequitable for any party to this litigation to be recognized as the possessor of any exclusive or superior rights." 269 F. Supp. at 938. Defendants in this matter have made misrepresentations to the USPTO at least as misleading as those made by Haviland, and have similarly engaged in slipshod informality with respect to protection of the Mark. This Court should accordingly decline to recognize either of the Defendants as "the possessor of any exclusive or superior rights" to the Mark.

Further, assuming *arguendo* that one of the Defendants is the owner of the Mark, the Defendants have *ipso facto* engaged in naked licensing of the Mark that vitiates either of the Defendants' ability to claim ownership of the Mark. As this Court recognized in *Susser v. Carvel Corp.,* 206 F. Supp. 636 (S.D.N.Y. 1962), "the owner of a trademark may license its use to another without abandoning his trademark. However, a naked license agreement without supervisory control over the product is invalid." 206 F. Supp. at 641, *citing E.I. du Pont de Nemours & Co. v. Celanese Corp.,* 167 F.2d 484 (C.C.P.A. 1948). Such a naked license agreement "may be the basis for an inference of abandonment" of the mark in question. *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 293 F.Supp. 892, 918 (S.D.N.Y. 1968). Defendants have provided no evidence of any license agreement between Midwood Memorial and Midwood

Chapel that provides for quality control by the licensing mark owner with respect to services provided under the mark by the licensee. Indeed, Defendants do not appear to have a firm grasp of who purportedly owns the Mark at all—Midwood Memorial, Midwood Chapel, or some other entity. If Defendants cannot even identify which entity is responsible for enforcing quality control over licensed use of the Mark, Defendants thus effectively demonstrate that such use is made pursuant to a naked, and thus invalid, license, and that Defendants have effectively abandoned the Mark.

Defendants have thus failed to demonstrate that either Midwood Memorial or Midwood Chapel actually have rights to exclusive use of the Mark. Only one of these two entities can actually own the Mark, but Defendants appear incapable of identifying which of those entities is, in fact, the Mark's putative rightful owner. Defendants' attempts to register the Mark as the putative property of Midwood Chapel must ultimately fail for lack of full disclosure to the USPTO, and Defendants provide no other potential justification for two entities, of unclear legal relation to one another, both to be entitled to use of the Mark as against Plaintiff Harry Nieberg. As such, this Court should reject either of the Defendants' claims of ownership of the Mark and exclusive rights to use thereof.

        2.      *Defendants' Mixed Use of Marks In Commercial Literature and Advertising Precludes Defendants From Claiming Ownership of the Mark.*

Defendants are precluded from claiming ownership of the Mark because the consumers could not identify the Mark as the source of Defendants' services due to Defendants' use of mixed marks in commerce. "[P]ublic recognition of a mark as identifying the source of a particular product is significant in determining whether the proprietor may prevent use of the mark on similar products." *Groucho Marx Prods. v. Day & Night Co.*, 689 F.2d 317, 322 (2d Cir. 1982); *See Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820, 7 L. Ed. 2d 25, 82 S. Ct. 36 (1961). Where a party's public use of a mark has been inconsistent, that party may be estopped from asserting trademark rights. *Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw, Inc.*, 452 F. Supp. 2d 1, 44 (D.D.C. 2006).

In Globalaw, the defendant asserted, *inter alia*, infringement counterclaims for plaintiff's use of GLOBALAW. *See generally Id. Globalaw* defendants used GLOBALAW in several different manners, including, denotation as a division of plaintiff, a letterhead descriptive denotation, and arguably as a trade name. *Id.* Aside from using the mark in different ways, defendants also used GLOBALAW on an inconsistent basis. *Id.* The court found that the plaintiff's use of the GLOBALAW was a "haphazard, sporadic afterthought that has been employed in a confusing, inconsistent, and seemingly unlawful manner" and as such cut against the defendants assertions that it has some common law trademark rights in GLOBALAW. *Id.* The instant case is similar to *Globalaw* in that Defendants' use of other marks to represent Defendants' services and Defendants' inconsistent and sporadic use of the Mark should vitiate Defendants' claimed right in the Mark.

In line with *Globalaw*, Defendants cannot exclude Plaintiffs from using the Mark because the purchasing public could not recognize the Mark as identifying Defendants' services as Defendants have used different marks to represent Defendants' goods and any use of the Mark by Defendants has been inconsistent and sporadic. Plaintiffs still contend that Defendants have not used the Mark a service mark. However, at best Defendants' commercial literature and advertising[4] indicates that Defendants have used mixed marks in identifying Defendants' services and thus precluding Defendants' claim to ownership. Defendants' service mark and trade name is at best NIEBERG MIDWOOD, and likely is just MIDWOOD. Many of the commercial literature attachments to Defendants' Opposition support this premise as NIEBERG MIDWOOD is the only mark visible, with the MIDWOOD text far overshadowing the NIEBERG text. *See* a sampling of the commercial literature attached to Defendants' Opposition at Exhibit 1. The Mark, HARRY NIEBERG, is nowhere on any of this commercial literature. MIDWOOD is the operative mark. The signage at Defendants' business also reflects that

---

[4] It remains unclear which Defendant owns this commercial literature and advertising as Defendants again fail to specify.

MIDWOOD is the mark that Defendants market themselves under. In that signage, the MIDWOOD name appears in perhaps the most visible location on the 1625 Coney Island Avenue building—the corner clock—and is the only name identifying the Business to be transliterated into Russian on building and parking lot signage.[5] *See* photographs of existing building attached as Exhibit 2; *See also* Exhibit 13 as attached to Plaintiffs' Motion. Defendants cannot claim that merely because a ill-maintained sign on their building residually mentions Harry Nieberg that that remains their mark.

This Court should not condone Defendants' attempt to warehouse marks not in use to preclude competition. As demonstrated above, it is clear that Defendants' market themselves to the public principally under the trade name MIDWOOD. As such, Defendants should not be claim ownership of the Mark or preclude Plaintiffs from using the Mark.

> 3. *Defendants' Disclaimer of the Existence of Secondary Meaning Is Fatal to Defendants' Claim to Exclusive Ownership of the Mark or NIEBERG.*

Defendants' claim that Plaintiffs have failed to show secondary meaning with respect to the Mark is fatal to Defendants' claim to exclusive ownership of the Mark. Whether a ***surname*** can function as a valid mark is not dependant on who owns the mark but on whether secondary meaning can be demonstrated. *See 815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 647 (2d Cir. 1988); *Mkt. Corner Realty Assocs., LLC v. CGM-GH LLC*, 317 F. Supp. 2d 485, 486 (S.D.N.Y. 2004). As such, in this case secondary meaning must only be demonstrated with regards to NIEBERG no matter who own the Mark.[6] If secondary meaning for NIEBERG in the funeral industry cannot be established by Plaintiffs, as Defendants contend, then Defendants too are unable to establish secondary meaning with respect to NIEBERG. Therefore, under Defendants' own argument, NIEBERG cannot function at this time as a valid trademark

---

[5] МИДВУД is the Cyrillic transliteration of, literally, "Meedvood." НАЙБЭРГ, literally "Nayberg," is a rough Cyrillic transliteration of Nieberg, no depiction of or approximating which appears on any signage.

[6] Plaintiffs do not admit that secondary meaning has not been established.

and Defendants are not entitled to claim exclusive ownership of NIEBERG or the Mark. As such, per Defendants' argument, Plaintiffs could use HARRY NIEBERG and Defendants could use NIEBERG without infringement.

> 4.    *Defendants Do Not Claim Service Mark Ownership Status With Respect to HARRY NIEBERG.*

Defendants' own filings clarify that Defendants do not claim the Mark as a service mark. On October 30, 2007, Defendants filed Defendants' State Complaint. *See* Plaintiffs' Motion at Exhibit 14. In Defendants' State Complaint, Defendants only asserted claims regarding ***trade name*** infringement and unfair competition. However, Defendants cannot claim that the lack of a service mark infringement claim in the state pleading was a simple oversight because Defendants' Counterclaim in the instant matter also only asserts a trade name infringement and unfair competition claim. At the time the Defendants Counterclaim was filed, Plaintiffs had already asserted service mark infringement claims against Defendants. Thus, service mark infringement should have been at the forefront when Defendants' Counterclaim in the instant matter was asserted and if a service mark infringement claim was a viable it should have been asserted. The fact that no service mark infringement claim was asserted must therefore be indicative that Defendants have not used the Mark as a service mark. This lack of use, coupled with the argument *supra* that MIDWOOD is the mark under which Defendants market, should preclude Defendants from claiming ownership of the Mark.

**B.    Irreparable Harm to Plaintiffs Exists.**

Plaintiffs have established that Plaintiffs will be irreparably harmed if preliminary injunctive relief is not ordered in regards to Plaintiffs infringement claims and Plaintiffs tort based claims. There is a presumption of irreparable injury on a trademark infringement claim upon a showing of likelihood of success on the merits of the case. *MetLife, Inc. v. Metropolitan Nat. Bank*, 388 F.Supp.2d 223, 229 (S.D.N.Y. 2005). As is explored *infra*, Section C, Plaintiff have demonstrated a likelihood of success with respect to Plaintiffs' infringement claims as Defendants proffer no plausible reason as to why Plaintiffs should not be successful.

Further, irreparable harm to exist with respect to Plaintiffs' tort based claims because Plaintiffs will suffer imminent harm to Plaintiffs' business, reputation and goodwill, harm which cannot be fully compensated monetarily. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Defendants' only opposition to Plaintiffs' claim of irreparable harm in this respect is that there was no "urgency" in filing the Motion for Preliminary Injunction, therefore indicating that there was irreparable harm. *See* Opposition at 9-10. The case law cited by Defendants in this regard is clearly distinguishable from the instant case. Defendants cite *Richard A. Leslie Co., Inc. v. Birdie LLC*, 2007 U.S. Dist. LEXIS 88437, 2007 WL 4245847 (S.D.N.Y. 2007) for the holding that a "three months delay [was] sufficient to deny preliminary injunction in [a] trademark case." Opposition at 9-10. In that case, however, the court found that the delay in bringing the motion was unexplained and unsubstantiated. This is not true in the present case.

Plaintiffs' Motion was brought in a timely manner considering the circumstances of this suit. On October 30, 2007, Midwood Memorial and Midwood Chapel filed a complaint against Harry and Nieberg Funeral in the New York State Supreme Court, Kings County, Index No. 40169/07 (the "State Complaint"). *See* the State Complaint (without exhibits attached) as Exhibit 14 to Plaintiffs' Motion. The State Complaint raised only state-law causes of action. *Id.* Harry and Nieberg Funeral filed an answer to the State Complaint and but also filed the instant federal action as Plaintiffs believed the federal courts were better suited to here Plaintiffs claims. The complaint in this federal action was filed the parties negotiated a stay of the state action and a stipulation to stay during the pendency of the federal action was entered in the state court. *See* Stipulation Staying Proceedings attached as Exhibit 15 to Plaintiffs' Motion. Further, the complaint in this matter was filed in January of 2008, with Plaintiffs' Motion being filed in March. Any delay in filing Plaintiffs' Motion is certainly not reflective on the fact that irreparable harm did not exist, but more directly reflective of the fact that Plaintiffs' counsel was also filing *pro hac vice* applications and in the process of negotiating with opposing counsel

regarding staying the state court proceedings in this matter. As such any delay is explainable and does not negate Plaintiffs' claim of irreparable harm.

**C.    Plaintiffs' Argument Regarding Substantial Questions Going to the Merits and Balancing of Hardships Is Meritorious as Defendants Fail to Oppose Such Argument.**

Plaintiffs' argument regarding substantial questions going to the merits and balancing of hardships tipping in Plaintiffs' favor should be deemed meritorious because Defendants have failed to oppose such argument. Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York provides: "[e]xcept as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law . . . . Willful failure to comply with this rule may be deemed cause for the denial of a motion of for the granting of a motion by default." Therefore, Defendants' failure to submit any opposition papers or respond in any way provides sufficient grounds to grant Plaintiffs' Motion. *See Vargas v. Boston Chicken, Inc.*, 269 F. Supp. 2d 92, 98 (E.D.N.Y. 2003) (noting Local Rule 7.1 and granting motion to dismiss cross-claim upon defendant's failure to submit opposition papers); *Castro v. Metro. Transp. Auth.*, 2006 U.S. Dist. LEXIS 64575 (S.D.N.Y. 2006); *Hercules Cement Co. v. Marotta*, 1997 U.S. Dist. LEXIS 15530 (S.D.N.Y. 1997) (granting motion to dismiss cross-claim based upon third party plaintiff's "neglect to file any opposition whatever"). Despite filing papers in response to Plaintiffs' Motion, Defendants fail to oppose Plaintiffs' regarding substantial questions going to the merits and balancing of hardships tipping in Plaintiffs' favor. As such, in line with the rational of the cases cited above, Plaintiff argument that there are substantial questions going toward the merits of Plaintiffs' claims coupled with the fact that the balancing of the hardships tipping in favor of Plaintiff should be deemed meritorious.

As a preliminary injunction relief is appropriate where it is shown that a party demonstrates (a) it will suffer irreparable harm in the absence of an injunction and (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor (*Tom Doherty Assoc., Inc. v. Saban*

*Entm't,* 60 F.3d 27, 33 (2d Cir.1995)), preliminary injunctive relief in this case is warranted. As demonstrated *supra,* Section B, Plaintiffs have demonstrated irreparable harm. This irreparable harm coupled with a showing of substantial questions and a balancing of the hardships in Plaintiffs' favor is enough to warrant injunctive relief. As such, Plaintiff Motion must be granted.

> **D.    Defendants' Opposition Regarding Plaintiffs' Likelihood of Success on the Merits Misses the Point.**

This Court must recognize that Plaintiffs are likely to succeed on the merits of Plaintiffs' claims because Defendants' opposition to same wholly fails. Defendants' argument that Plaintiffs are not likely to be successful on the merits must fail because (1) Nieberg Funeral does not need to be a registered with the State to maintain Plaintiffs' causes of action and any alleged violation of the New York statutes in this regard is without merit; and (2) there is an agreement between the parties that allows Harry to use his name in the funeral industry, thus negating any common law argument by Defendants to the contrary. As such, Plaintiffs are likely to be successful on the merits of Plaintiffs' claims and, therefore, preliminary injunctive relief is appropriate.

> *1.    Plaintiffs Are Not In Violation of New York Statute Such As to Preclude Plaintiffs' Claims.*

Plaintiffs are not in violation of New York Statue and thus Defendants' assertion that Plaintiffs cannot be successful on the merit as a result of such alleged violations must fail. Defendant attempts to cloud the issues before this court by claiming that Plaintiffs are not entitled to the relief requests because Nieberg Funeral is not registered with the State of New York to operate as a funeral business. *See* Opposition at 8-9. Section 3420 of the New York Public Health Law, which provides in part that:

> 1.    No person shall engage in the business or practice of ***funeral directing, undertaking, or embalming*** or transact or hold himself our as transacting or practicing or as being entitled to transact or practice funeral directing, undertaking or embalming in this state unless duly licensed according to the law and registered… (emphasis supplied).

Furthermore, Section 3428(2)(c) of the New York Public Health Law, provides in part that: "[o]nly a registered funeral firm may *operate or engage in the business and practice of funeral directing*..." (emphasis supplied). Nieberg Funeral is not in violation of either of these statutes. Neither Harry nor Nieberg Funeral are not directing funerals, performing undertaking or embalming. Furthermore, neither Harry nor Nieberg Funeral is transacting or holding itself out as being able to transact or practice funeral directing. Nieberg Funeral has simply licensed the Mark to Sherman Funeral Home Inc. ("Sherman") to use; which Sherman did by displaying the Mark at Sherman's facility. It is Sherman that is performing these functions. As such, Nieberg Funeral is not in violation of these statutes.

Furthermore, Defendants have provided no support, nor can any be found, for the premise that Nieberg Funeral must be registered with the state before having a viable service mark infringement claim. As such, Defendants' assertions are not meritorious and this Court should not be swayed by Defendants' tactics to cloud the issues.

> 2.  *Defendants' Reliance on New York General Business Law Statues Is Misguided Because Defendants Have Failed to Demonstrate First Use of Mark and Cannot Claim that Plaintiffs' Use of the Mark Is Unfair.*

Defendants' reliance on the New York General Business Statutes is misguided because: (1) Defendants cannot establish first use of the Mark; and (2) Plaintiffs' use of the Mark cannot be considered unfair or dilutive because a express contract exists that allows Plaintiffs to use the Mark. As stated by Defendants, New York General Business Law §§ 133 and 160 provides "protection for the first user in a particular market against the second user's unfair trade practices and or dilution..." *See* Opposition at 12. These principles however, do not apply in this case.

> a.  <u>Defendants Are Not the First Users of the Mark</u>

Defendants may not exclude Plaintiffs from use of the Mark because Defendants are not a legitimate user. "It is a fundamental principal of trademark law that the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace. The user who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploring the mark

commercially." *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 217 (S.D.N.Y. 2007).

As described in detail *supra*, Section A, Defendants cannot claim ownership of the Mark. Thus, the New York General Business Laws are not applicable in this case because Defendants are not a bona fide first user entitled to exclude Plaintiffs' from using the Mark.

> b.    The Stipulation As Bargained For Makes Clear that Harry Is
>       Entitled to Use His Name In the Funeral Industry.

The New York Statutes are further inapplicable because Defendants cannot claim Plaintiffs' use of the Mark is unfair or dilutive as there is an agreement between Harry and Defendants that allows Harry to use the Mark. The Stipulation of Settlement and Order (Stipulation)(*See* Exhibit 2 attached to Plaintiffs' Motion), resolving the dissolution proceedings between Harry and Defendants, as bargained for and entered into by the parties provides that Harry is entitled to use his name in the funeral business. Harry and Defendants negotiated and entered into the Stipulation which resolved a dissolution dispute between Harry and Defendants without requiring the dissolution of Midwood Chapel and Midwood Memorial. *See* Defendants' Counterclaim at Paragraph 55 referencing the "bargained for resolution." The Stipulation does not contain any restrictive covenant against competition. *See* Stipulation. Also, the Stipulation does not contain any provision which in any manner prohibits Harry from soliciting, engaging, contacting, and/or communicating in any manner with clients or customers of Defendants whether those clients or customers pre-existed the Stipulation or not. *See* Stipulation. As such the Stipulation entered into by Harry and the Defendants does not preclude Harry from using his name in the funeral business in any manner.

That Harry is not precluded from using his name in the funeral industry is further solidified by the bargaining of the parties before the Stipulation was executed. Correspondence date April 6, 2006 states emphatically that "[a]bsent the duration of an agreed upon and compensated restrictive covenant, ***Harry has no intention of giving up the right to use his name in the funeral home business***, or otherwise." *See* e-mail correspondence from Scott Mandelup to Ronald J. Offenkrantz dated April 6, 2006 (the "Bargaining Correspondence") attached as

Exhibit 2 (emphasis supplied). Defendants did not provide compensation for such restrictive covenant and, as such, the Stipulation does not contain such a restrictive covenant. Therefore, the bargaining between Harry and the Defendants that lead to the execution of the Stipulation also makes clear the Harry was entitled to use his name in the funeral industry.

Furthermore, as Plaintiffs' Motion makes clear, the Stipulation contains an integration clause at Paragraph 24 that states:

> This Stipulation and the Exhibits hereto contain the entire agreement between the parties hereto with respect to the matters contained in this Stipulation. This Stipulation supercedes [sic] all prior written and oral agreements and any prior representation, statement, condition or warranty. No variation, modification or change herein or any waiver of any provision hereof shall be binding unless set forth in a document duly executed by or on behalf of each of the parties hereto.

This integration clause makes it clear that the Stipulation, contains no restrictive covenant against competition, constituted the full agreement between the parties. Defendants cannot now argue that an implied contract existed that is contrary to the bargained-for express contract. *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 71 (S.D.N.Y. 1988). As such, the Stipulation, as bargained for, makes clear that Harry is entitled to compete with Defendants using his own name and, therefore, Defendants' breach of implied covenant against competition must be dismissed.

      c.    <u>The Case Authority Cited by Defendants Regarding Application of New York Law is Distinguishable.</u>

All of the case law cited by Defendants is distinguishable from the instant case and therefore not controlling because: (1) the cases dealt with express restrictive covenants[7]; or (2) the party awarded the injunctive relief was a bona fide first user of the mark entitled to exclude use by another party.[8] This is not the case here. As described in supra in subsection ( b) of this

---

[7] *Yankelovich, Skelley and White, Inc. et al. v. White, Yankelovich, Skelley Consulting Group, Inc., et al.*, 14 U.S.P.Q.2d (BNA) 1384; 1989 U.S. Dist. LEXIS 11468 (S.D.N.Y. 1989); *Basscrafter, Inc. v. Ehrlich*, 109 A.D.2d 724, 486 N.Y.S.2d 42 (2d Dept. 1985).

[8] *See Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203 (S.D.N.Y. 1987)(Plaintiff alleged trademark infringement and false designation, unfair competition, injury (footnote continued)

section, there was no express restrictive covenant precluding Plaintiffs' use of the mark in this

case. In fact, the Stipulation and Bargaining Correspondence makes clear that Harry was entitled

to use his name (the Mark) in the funeral industry. Furthermore, as described supra in Section A,

Defendants cannot claim to be a bona fide first user of the mark and as such, Defendants are not

entitled to exclude use of the Mark. Therefore, none of the case law cited by Defendants support

defendants argument and, as such, this court should grant preliminary injunctive relief to

Plaintiffs pursuant to Plaintiffs' Motion.

### E.    Defendants Are Not Entitled to Sanctions Under Fed.R.Civ.P. 11

Defendants in no way even attempted to comply with the procedural requirements of

Fed.R.Civ.P. 11 in bringing Defendants' request for sanctions pursuant to Fed.R.Civ.P. 11, and

thus sanctions should be denied.    Fed.R.Civ.P. 11(c)(2) clearly provides that:

> A motion for sanctions must be made separately from any other
> motion and must describe the specific conduct that allegedly
> violates Rule 11(b). The motion must be served under Rule 5, but
> it must not be filed or presented to the court if the challenged
> paper, claim, defense, contention, or denial is withdrawn or
> appropriately corrected within 21 days after service or within
> another time the court sets.

Defendants' request for Fed.R.Civ.P. 11 sanctions is incorporated in another motion and thus

clearly fails to meet the requirement that a Fed.R.Civ.P. 11 motion "must be made separately

from any other motion." Further, as Defendants note, Defendants clearly failed to abide by the

unequivocal safe-harbor provision requiring Defendants to have provided Plaintiffs with 21

days' notice and an opportunity to withdraw or "appropriately correct[]" contentions

---

to business reputation and dilution); *Henegan Constr. Co. v. Heneghan Contr. Corp.*, 63
U.S.P.Q.2D (BNA) 1984, 2002 U.S. Dist. LEXIS 10545 (S.D.N.Y. 2002)(Plaintiff brought
federal claims for trademark infringement state law infringement claims and state law unfair
competition claim, but no contract based claim); *David B. Findlay, Inc., et al., v. Walstein C.
Findlay, Jr., et al.*, 18 N.Y.2d 12, 218, N.E.2d 531 (N.Y. 1966)(Plaintiff sought injunction
enjoining use of name pursuant to trademark principles of confusion); *Fifteenth Avenue Food
Corp. v. Sibstar Bread Inc.*, 16 Misc.3d 1102(a), 841 N.Y.S.2d 826 (Sup. Ct. Kings Co. 2007);
*Blaich Associates Inc. v. Coach/Blaich Real Estate of Manhasset, Inc.*, 186 Misc.2d 594, 719
N.Y.S.2d 820 (Sup. Ct. Nassau Co. 2000); *Gasoline Heaven at Commack, Inc. v. Nesconset Gas
Heaven, Inc.*, 191 Misc.2d 646, 743 N.Y.S.2d 825 (Sup. Ct. Suffolk Co. 2002).

objectionable under Fed.R.Civ.P. 11. Defendants' assertion that "this approach was impracticable, and futile, under the circumstances" (#27 at 13:14-15) is simply absurd. If Defendants' logic was valid, virtually no situation could exist in which Fed.R.Civ.P. 11's safe-harbor provisions would not be "impracticable," an absurd result that this Court should reject.

Defendants' failure to abide by Fed.R.Civ.P. 11's mandates vitiates Defendants' claim for sanctions and is grounds for the denial of Defendants' motion. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327-1329 (2d Cir. 1995); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 68 (S.D.N.Y. 1999); *Kara Holding Corp. v. Getty Petroleum Mktg.*, 2004 U.S. Dist. LEXIS 15864, 65-66 (S.D.N.Y. 2004); *see also Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997) ("Rule 11 cases emerging in the wake of the 1993 amendments have found the 'safe harbor' provision to be an absolute requirement."). Thus, Defendants' request for sanctions under Fed.R.Civ.P. 11 should be denied by this Court.

Defendants acknowledges the safe-harbor requirement, but request that the Court impose Rule 11 sanctions *sua sponte* or under 28 U.S.C. § 1927. 28 U.S.C. § 1927 provides that an attorney who brings "any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This is similar to the standard elucidated in Fed.R.Civ.P. 11(c)(3) which provides that sanctions may be awarded on the Court's own initiative after the Court has order the party against whom sanction are sought to show cause why conduct has not violated the Fed. R.Civ.P. 11(b). Conduct violative of Fed.R.Civ.P. 11(b) includes bringing claims: (1) for an improper purpose; (2) that are frivolous; or (3) where the factual contentions lack evidentiary support. (Unwarranted denials are also violative of Fed.R.Civ.P. 11(b), but not on point here.) As the case law cited by Defendants makes clear, however, the Second Circuit has also held that court-initiated sanction proceedings pursuant to Fed.R.Civ.P. 11 will ordinarily be used only in situations that are "akin to a contempt of court" and that in such circumstances bad faith must be shown. *In re Pennie & Edmonds LLP.*, 323 F.3d 86, 90 (2d Cir. 2003). Contrary to Defendants'

assertions, Plaintiffs have brought this case in good faith and the claims asserted are not frivolous or unsupported. Therefore, no award of sanctions or costs, expenses and fees is warranted.

The facts of this case do not warrant sanctions pursuant to Fed.R.Civ. P. 11 or 28 U.S.C. § 1927. This is hardly a situation where Plaintiffs are the equivalent of being in contempt of court as all claims asserted by Plaintiffs are colorable. Furthermore, the claims as asserted by Defendant can hardly be said to be brought in bad faith as the requisites of Rule 11(b) are met. The predicate facts upon which Plaintiffs' claims are based are simple. Defendants have never used the Mark as a source indicator of Defendants' services. Therefore, Plaintiffs' use of the Mark as a service mark made Plaintiffs the first user. Defendants, at best, can only claim a residual, mixed use of the Mark, which use did not amount to use such that Defendants could claim ownership of and preclude others from using the Mark. Furthermore, the Stipulation and the negotiation that led the execution of the Stipulation make it clear that Harry was entitled to use his name in competition with Defendants. However, when Plaintiffs rightfully attempted to use the Mark in commerce, Defendants interfered with Plaintiffs' business contracts and prospective economic advantage by undertaking a letter campaign and filing suit against Plaintiffs in state court. Based on these facts, Plaintiffs' claims are not brought in bad faith or for an improper purpose, are grounded in appropriate fact and, therefore, not frivolous. As such, Defendants' request for sanctions must be denied.

## III. **CONCLUSION**

As demonstrated above and in Plaintiffs' Motion, Plaintiffs are entitled to a preliminary injunction. As such, Plaintiffs request that this Court grant Plaintiffs' Motion For Preliminary Injunction. Plaintiffs further request that Defendants' motion for sanctions be denied because Plaintiffs' claims are asserted in compliance with Fed.R.Civ.Proc. 11.

Dated: April 17, 2008
City, State: New York, New York

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP


By    /s/ Joseph F. Uvino
      Joseph F. Uvino, Esq. (JU-9152)
      199 Water Street, 25th Floor
      New York, New York 10038
      (212) 232-13001
      *Attorneys for Plaintiffs Harry Nieberg and
      Harry Nieberg Funeral Home Inc.*


TO:

Ronald J. Offenkrantz, Esq.
LICHTER GLIEDMAN OFFENKRANTZ PC
551 Fifth Avenue
New York, NY 10176
(212) 867-7750
Attorneys for Defendants and Counterclaim Plaintiffs

Michael H. Smith, Esq.
ROSENBERG FELDMAN SMITH, LLP
551 Fifth Avenue
New York, NY 10176
(212) 682-3454
Attorneys for Defendants and Counterclaim Plaintiffs (Trial Counsel)

Samuel E. Kramer, Esq.
225 Broadway, Suite 3300
New York, New York 10007
(212) 285-2290
Attorney for Additional Counterclaim Defendant Sherman Funeral Home, Inc

## CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P. 5(b), I certify that I am an employee of LEWIS BRISBOIS

BISGAARD & SMITH LLP and that on this 17th day of April, 2008, I did cause a true copy of

the **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR**

**PRELIMINARY INJUNCTION** to be served via CM/ECF on:

> Ronald J. Offenkrantz, Esq.
> LICHTER GLIEDMAN OFFENKRANTZ PC
> 551 Fifth Avenue
> New York, NY 10176
> (212) 867-7750
> Attorneys for Defendants and Counterclaim Plaintiffs

> Michael H. Smith, Esq.
> ROSENBERG FELDMAN SMITH, LLP
> 551 Fifth Avenue
> New York, NY 10176
> (212) 682-3454
> Attorneys for Defendants and Counterclaim Plaintiffs (Trial Counsel)

> Samuel E. Kramer, Esq.
> 225 Broadway, Suite 3300
> New York, New York 10007
> (212) 285-2290
> Attorney for Additional Counterclaim Defendant Sherman Funeral Home, Inc.

By   /s/ Robert A. Schaffer
     An Employee of
     LEWIS BRISBOIS BISGAARD & SMITH LLP

# EXHIBIT "1"



Case 1:08-cv-00392-MGC    Document 19-2    Filed 04/17/2008    Page 2 of 9

# NIEBERG Midwood Chapel, INC.

## SERVING THE JEWISH COMMUNITY FOR 5 GENERATIONS - 150 YEARS

*Let our family be there in your time of need*



- PROVIDING CARE & DIGNIFIED SERVICE TO ALL THROUGHOUT THE UNITED STATES
- LARGE AIR-CONDITIONED CHAPELS
- LARGE PARKING FACILITIES
- MIKVAH ON PREMISES
- REASONABLE PRICES
- CALL US FOR PRE-PLANNING ARRANGEMENTS
- BURIAL IN ALL CEMETERIES
- SHIPPING TO ISRAEL



### NIEBERG MIDWOOD CHAPEL, INC.

*Owned and operated by Stanley & Peter Nieberg*

1625 Coney Island Avenue (Corner Avenue M)
Brooklyn, New York 11230
718-377-2700 • 24 Hours
Outside NYC call 1-877-327-7702



# NIEBERG MIDWOOD CHAPEL INC.

**1625 CONEY ISLAND AVENUE
BROOKLYN, NEW YORK 11230**

**718-377-2700**
Outside NY: 877-327-7702

# КАДИШ
# ИЗКОР

**USED FOR MORE THAN 15 YEARS LOCALLY
AND BY MAIL IN INTERSTATE COMMERCE**



**HEARSE USED BY DEFENDANTS LOCALLY
AND IN INTERSTATE COMMERCE**

In Florida, Local Call
(305) 858-3041
(24 HOURS)
(561) 790-7998

# NIEBERG'S
# MIDWOOD CHAPELS, INC.

### BROTHERS HARRY, STANLEY AND PETER NIEBERG

— SERVICES AVAILABLE IN ALL COMMUNITIES —

__1625__ CONEY ISLAND AVENUE (Corner Avenue M) BROOKLYN, N.Y. 11230

---

# Companion - Brigham Park
# Federal Credit Union

Serving the member families of Excelsior Lodge No. 109, Knights of Pythias

## Low cost loans for new/used cars, personal/family expenses

FREE new and used American and foreign car dealer cost/value information

Call ERIC STEINHARDT, Treasurer, at 718-252-6409 or e-mail CBPFCU@VERIZON.NET

Office hours *by appointment*: Monday through Thursday evenings and weekends

Your savings federally insured to $100,000 by NCUA (National Credit Union Administration)
a U.S. Government agency

---



# MICHAEL C. NELSON
## NYC COUNCIL MEMBER



## 48th Council District  Office

### 3810A Nostrand Avenue
### Brooklyn, NY 11235-2013
### 718-368-9176
### Fax: 718-368-9160

*The Nieberg Family*

**Five Generations of**
**Faithful Service to**
**the Jewish Community**

No Obligation
Pre-Arrangemet Counseling

*Nieberg Midwood*
*Chapel, Inc.*

1625 CONEY ISLAND AVENUE
(Corner Avenue M)
BROOKLYN, NEW YORK 11230

(718) 377-2700
(212) 674-3600
(516) 248-1766

OUTSIDE OF NEW YORK

(877) 327-7702

*Services Available in all Communities*
*Burials in Israel*



# Memorial
# Prayers

*Nieberg Chapel*
*Midwood Chapel, Inc.*
YO YEARS/MAZED

**USED FOR MORE THAN 40 YEARS**

**Temple Sholom**
2075 East 68th Street
Brooklyn, New York 11234

Non-Profit Org.
U.S. Postage Paid
Brooklyn, N.Y.
Permit No. 9397

Peter Nieberg
260 Whitman Drive
Brooklyn, NY 11234







# NIEBERG'S

## MIDWOOD Memorial Chapel INC.

## (718) 377-2700
## 1625 Coney Island Avenue

*You may call us for*

- **Graveside Services**
- **Shipping to Israel**
- **Pre - Arrangements**
- **Monuments**

718-377-3047

**NIEBERG** *Midwood Chapel, Inc.*

**1625 CONEY ISLAND AVENUE**
(Corner Avenue M)
**BROOKLYN, NEW YORK 11230**
**718 377-2700**

**Outside of New York**
**800-396-9103**

**2007 - 2008**

**Pocket Appointment Planner**

**NIEBERG** *Midwood Chapel, Inc.*

**USED FOR MORE THAN 40 YEARS**

# EXHIBIT "2"









