LICHTER GLIEDMAN OFFENKRANTZ PC
COUNSELLORS AT LAW
551 FIFTH AVENUE
NEW YORK, N.Y. 10176
TELEPHONE: (212) 867-7750
FACSIMILE: (212) 658-9424

rjo@lgofirm.com

April 29, 2008

**FEDERAL EXPRESS**

Honorable Miriam Goldman Cedarbaum
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street – Room 1330
New York, NY 10007

      Re:    **Harry Nieberg and Harry Nieberg Funeral Home Inc.
v. Nieberg Midwood Chapel Inc., et al., 08 CV 00392 (MGC)**

Dear Judge Cedarbaum:

      As counsel for defendants, we hereby respond to the Court's question as to whether the principle enunciated by the New York Court of Appeals in Mohawk Maintenance Co., Inc. v. Kessler, 52 N.Y.2d 276, 419 N.E.2d 324, 437 N.Y.S.2d 646 (N.Y. 1981) is applicable to a sale of less than a controlling interest in an entity. We answer in the affirmative.

      Mohawk, as argued in our brief in opposition to plaintiffs' motion, is not so much a judicially created non-competition principle as it is a doctrine to protect the good will inherent in the sale of business interests so that the seller cannot retain the proceeds of sale and unfairly solicit the business of the very entity whose interests were sold.

      The question, as posed by the Court, is whether the principle applies to a seller of a minority interest. To clarify defendants' position, we do not argue that under the Mohawk doctrine, plaintiff, Harry Nieberg, cannot "compete," only that he cannot act in a manner, in this case, by use of the Nieberg name, to dilute that which is sold. He could, for example, be an employee elsewhere and perform the services of a funeral director under his license without using the Nieberg name as a trade name and without soliciting its customers.

      That the rule applies to less than a controlling interest may be found in the Court of Appeals decision in MGM Court Reporting Service Inc. v. Greenberg, 74 N.Y.2d 691, 543 N.Y.S.2d 376 (1989), cited in our Memorandum of Law, in which the Court only refused to

LICHTER GLIEDMAN OFFENKRANTZ PC

Honorable Miriam Goldman Cedarbaum  
United States District Court  
Southern District of New York

April 29, 2008  
Page 2

apply the rule because the parties had themselves incorporated in their agreement a more limited non solicitation clause than the Mohawk decision would have implied. The parties had not incorporated a non competition agreement. The significance of the MGM decision is its quarrel with the Appellate Division, Second Department, which had held that in cases involving a dissolution decree, the sale of the minority interest is necessarily involuntary, whereas the Court of Appeals specifically held that that question remained open for its review. If the rule did not apply to the sale of a minority interest, then it would not have mattered whether the sale was voluntary or involuntary.

The Court of Appeals in Matter of Pace Photographers, 71 N.Y.2d 737, 525 N.E.2d 713 (1988) also applied the rule to a minority shareholder of a corporation whose dissolution petition had been denied, but who became obligated to sell under the buyout provisions of Business Coporation Law §1118. In that case, the Court of Appeals held that the extent of the principle of the Mohawk decision shouild be determined by the trial court.

In Autz v. Fagan, 16 Misc.3d 1140, 851 N.Y.S.2d 56 (Sup. Ct. Nassau County 2007), (copy attached), a dissolution case involving a one-third shareholder, the Court distinguished involuntary from voluntary sale in the context of dissolution and did not apply Mohawk because it found that the buyout was involuntary because of the dissolution decree and because of the Court ordered valuation of the shares.

The distinction between the above cases and the one before the Court is, as has been argued, that here the sale of the minority interest was wholly voluntary. Here there was no dissolution decree, no Court ordered valuation of the shares, and a buyout agreement which expressed that the parties were acting of their own "free will" and not under compulsion.

In two cases, one in the Court of Appeals and the second in the Appellate Division Fourth Department, the Mohawk principle was applied where equal, not majority interests were involved, distinguishing between the right to compete and the inability to impair good will by soliciting the very customers of the entity whose interest was being transferred. See Hyde Park Products Corp. v. Maximilian Lerner Corp., 65 N.Y.2d 316, 480 N.E.2d 1084, 491 N.Y.S.2d 302 (N.Y. 1985) cited in our Memorandum of Law and Spindel v. Chamberlain, 193 A.D.2d 1060, 598 N.Y.S.2d 892 (4th Dept. 1993).

As the sale of the minority interest here was a buyout voluntarily entered into by each party exercising "free will" and read as an integrated document, which does not deal with either

21436

LICHTER GLIEDMAN OFFENKRANTZ PC

Honorable Miriam Goldman Cedarbaum  April 29, 2008
United States District Court  Page 3
Southern District of New York

competition, or, more importantly, solicitation of customers or use of a name as a trade name identical to that of defendants' name, sufficient reason appears not to dismiss the third counterclaim. That is particularly the case where a claim is not to be dismissed when under any viable legal theorty and read in its broadest form, a claim may be stated. That should be the case here, not only because of the lack of compulsion, but because the New York Court of Appeals, even in a dissolution/compulsion case, has specifically held the issue open.

Respectfully,

Ronald J. Offenkrantz

RJO/ri
Enc.
cc: Joseph Uvino, Esq. (w/enc.)
Samuel E. Kramer, Esq. (w/enc.)
(both by Federal Express)

21436

16 Misc.3d 1140(A), 851 N.Y.S.2d 56 (Table), 2007 WL 2701305 (N.Y.Sup.), 2007 N.Y. Slip Op. 51763(U)
**Unreported Disposition**
Motions, Pleadings and Filings

(The decision of the Court is referenced in a table in the New York Supplement.)

Supreme Court, Nassau County, New York.
In the Matter or the Petition of Arthur L. AUTZ, M.D., D.P.M., Petitioner, as Holder of at Least One-Third (33 1/3%) of the Outstanding Shares of Stock of Ronald C. Fagan, M.D. and Arthur L. Autz, M.D., P.C. d/b/a Care One Medical, for an Order of Dissolution Pursuant to Section 1104-a of the Business Corporation Law
v.
Ronald C. FAGAN, M.D. and Michael Petelis, D.O., Respondents.
No. 3348-06.
Sept. 6, 2007.

Meltzer, Lippe, Goldstein & Breitstone, LLP, Mineola, Counsel for Petitioner.

Garfunkel Wild & Travis, P.C., Great Neck, Counsel for Respondent.

LEONARD B. AUSTIN, J.

*1 Respondents move for an order acknowledging the parties' consent to voluntarily dissolve Ronald C. Fagan, M.D. and Arthur L. Autz, M.D., P.C. doing business as Care One Medical ("Care One"), converting this special proceeding to a judicially supervised liquidation pursuant to Business Corporation Law ("BCL") § 1008, determining that the sale of Care One as a going concern is not feasible, and for other incidental relief.

Petitioner cross-moves for an order directing the sale of Care One, including its good will, by a court-appointed receiver at an auction, together with a determination that such a sale is voluntary and therefore establishing a restrictive covenant for all former shareholders of Care One whose bids are unsuccessful. In the alternative, Petitioner seeks withdrawal of this special proceeding.

BACKGROUND

A. *General*
Care One is the assumed name of a professional corporation in Westbury, New York, where medical services are provided. When Care One was incorporated in 1995, Petitioner, Dr. Arthur Autz ("Autz"), and Respondent, Dr. Ronald Fagan ("Fagan"), were the sole shareholders and Care One had no patients. Respondent, Dr. Michael Petelis ("Petelis"), began working for Care One in 2000 as a physician-employee. In 2005, he became a one-third shareholder.[FN1]

> FN1. By order granted on November 29, 2006, this Court determined that Petelis is a one-third shareholder of Care One.

Autz estimates that today Care One has approximately 12,000 patients. The patient base is alleged to be compromised one-third each of "walk-ins," primary care and "corporate care," that is, they are referred by local businesses for routine and emergency medical services.

Fagan owns and operates two urgent care centers, Stat Med in Little Neck, New York, and Doctor's Immediate Care Center ("DICC") in Farmingdale, New York. In May, 2003, Fagan allegedly offered to combine Stat Med and DICC with Care One under his majority ownership and management. When Autz declined this offer, the relationship between Autz and Fagan deteriorated.

Autz alleges that, on most occasions, Fagan has refused to speak to him, and that Fagan has demanded that Autz leave Care One. Autz claims that Fagan has made unexplained withdrawals from Care One bank accounts of which even the Care One office manager was unaware. Fagan also allegedly ordered the installation of a hidden surveillance system and replaced a new echocardiogram system while Autz was on vacation. Autz further alleges that Fagan performs services at Care One but collects and keeps the entire fee instead of billing the procedures and services through Care One.

When both Respondents sent Autz a notice that they would vote for dissolution of Care One pursuant to majority vote on February 14, 2006, Autz commenced this special proceeding pursuant to BCL § 1104-a. The parties' Shareholders' Agreement is silent on the issue of involuntary withdrawal or dissolution although it does provide for voluntary withdrawal.

B. *The Pleadings*
In the amended petition, Autz seeks judgment dissolving Care One and appointing a receiver to sell its assets to a non-party or, in the alternative, directing Respondents to buyout Petitioner for the fair value of his interest therein. Autz argues that the aforementioned facts establish the statutory bases for a petition pursuant to BCL § 1104-a, namely oppressive conduct and diversion of corporate opportunities. He also seeks damages from Fagan for alleged misconduct and attorneys fees.

**\*2** In their amended answer, Respondents seek judgment denying the amended petition and an award of attorneys fees. Respondents allege ten objections in point of law.

*DISCUSSION*

A. *Business Corporation Law § 1104-a*
BCL § 1104-a was enacted for the purpose of enabling holders of 20% or more of the outstanding shares of a close corporation to petition for judicial dissolution where the circumstances involved "illegal, fraudulent or oppressive actions toward the complaining shareholders" or where "the property or assets of the corporation are being looted, wasted, or diverted for non-corporate purposes" by those in control. BCL § 1104-a (a)(1) and (2).

Oppressive actions "refer to conduct that substantially defeats the reasonable expectations' held by minority shareholders in committing their capital to a particular enterprise," such as the defeat of a reasonable expectation of a job, a share of corporate earnings, or a place in corporate management. *Matter of Kemp & Beatley, Inc.*, 64 N.Y.2d 63, 72 (1984).

In this case, Autz makes a *prima facie* showing of oppressive actions by Respondents in his involuntary ouster from involvement in significant matters of corporate management, including leasing of major equipment and installation of a surveillance system. See, *In re Williamson*, 259 A.D.2d 362 (1st Dept.1999). Autz further alleges a *prima facie* case of looting and diversion of Care One's opportunities in the alleged failure of Fagan to bill through Care One for services rendered there and the alleged theft of monies by Fagan from Care One bank accounts.

Respondents deny these claims, and insist that Petitioner "no longer invested the time and energy required to maintain Care One's medical practice."

As fixing blame is material under BCL § 1104-a ( *Matter of Pace Photographers, Ltd.*, 71 N.Y.2d 737, 746 [1988] ), the Court finds that triable issues of fact are presented by the conflicting allegations of fault. Therefore, an evidentiary hearing is required. *In re WTB Properties, Inc.*, 291 A.D.2d 566 (2nd Dept.2002); *Matter of Cunningham v. 344 6th Ave. Owners Corp.*, 256 A.D.2d 406 (2nd Dept.1998); *Matter of Steinberg*, 249 A.D.2d 551 (2nd Dept 1998); *Matter of Fancy Windows & Doors Mfg. Corp.*, 244 A.D.2d 484 (2nd Dept.1997). In so doing, the Court is mindful that it has broad latitude in fashioning relief and, where there has been a complete deterioration of relations between the parties, dissolution is appropriate. *Matter of Kemp & Beatley, Inc., supra* at 74.

BCL § 1104-a also requires a determination as to whether liquidation is the only feasible means whereby the Petitioner may reasonably expect to obtain a fair return on his investment, and whether liquidation is reasonably necessary for the protection of the rights and interests of the Petitioner. BCL § 1104-a(b)(1) and (2).

This is where the parties' motions come into play. Respondents appear to agree to dissolution, but seek a liquidation sale of the hard assets of Care One and a division of the receivables. They argue that because good will is not an asset that can be transferred, Care One cannot be sold as a going concern. They further object to any implied covenant restricting their ability to provide medical services. Petitioner argues the opposite.

B. *Good Will*

**\*3** Both sides essentially request partial summary judgment on the limited issues of good will/sale of Care One as a going concern.

Good will has been defined as the "advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stocks, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers ..." Black's Law Dictionary (rev. 4th ed.), p. 823. See also, *Dawson v. White & Case*, 88 N.Y.2d 666, 670 (1996), where the good will of a law firm was found to include "the ability to attract clients as [a] result of [t]he firm's name, location, or the reputation of its lawyers." (Emphasis added)

Whether the good will of a professional corporation is a saleable asset depends on the elements of which the good will at issue is comprised. While the good will of a professional practice which depends solely on the name, skill, judgment or reputation of a professional is not a saleable asset, professional good will comprised of continuity of location of a professional office is. *Spaulding v. Benenati*, 57 N.Y.2d 418, 422 (1982) (sale of a dental practice); and *Lehman v. Piontkowski*, 203 A.D.2d 257 (2nd Dept.), lv. app. dism.., 84 N.Y.2d 890 (1994) (ouster from medical corporation) ].

Here, where two-thirds of the services provided at Care One are to "walk-ins" and employees of local businesses as "corporate care," it is very clear that the location of Care One has value. Indeed, the fact that the Shareholders' Agreement (¶ 7[a] ) expressly recognizes "good will" as one of the assets to be valued in connection with a voluntary withdrawal means that the parties all agreed to a valuation of good will, for at least some purposes.

To the extent that the good will of Care One is based on personal relationships, as argued by Respondents, it is not transferrable. If the bases for dissolution are established at a hearing, the hearing will then continue on the issues of feasibility/necessity. BCL § 1104-a(b)(1) and (2). See, *In re Williamson, supra;* and *Matter of HGK Asset Mgt., Inc.*, 228 A.D.2d 246 (1st Dept.1996). This will necessitate evidence and a determination on the value and composition of the good will of Care One to be transferred, if any. Respondents' objections regarding feasibility and patient abandonment can be adequately addressed in terms of the mechanics of patient notification and authorizations.

C. *Implied Covenant Not to Compete*

It is the law in this state that when the intangible asset of good will is sold along with the tangible assets of a business, the seller makes an "implied covenant to refrain from soliciting the former customers of the business "in order to prevent the seller from taking back what he has purported to sell." **Mohawk** *Maintenance Co., Inc. v. Kessler*, 52 N.Y.2d 276, 285 (1981). However, the good will which is the subject of a voluntary sale is "a different thing from the good will which the owner parts with under compulsion." Such a restriction on solicitation should be "imposed only when the transfer of the good will is a free, affirmative act." *Von Bremen v. MacMonnies*, 200 N.Y. 41, 51-52 (1910). A transfer under compulsion by manner of dissolution and liquidation does not import the same obligation to refrain from soliciting trade from customers of the old firm, because otherwise those who had been in trade as partners of undesirable associates would constantly find themselves, by the mere fact of the dissolution of the business they desired to leave, disqualified from seeking future business from those who might be their most desirable customers. *Id.*

*4 The question presented is whether a transfer of corporate shares in a dissolution proceeding herein, pursuant to BCL § 1104-a, constitutes a voluntary sale or a sale under compulsion. A sale pursuant to an arbitration award is not under compulsion and is therefore subject to the implied covenant rule of *Von Bremen* and **Mohawk** Maintenance. *Hyde Park Products Corp v. Maximilian Lerner Corp.*, 65 N.Y.2d 316 (1985) (business of sale and resale of peat moss). In contrast, the sale of a stenographic reporting business pursuant to BCL § 1118, following the commencement of a dissolution proceeding pursuant to BCL § 1104-a was "akin to a sale under compulsion' " and, therefore, the buyer had no cause of action for breach of an implied covenant not to solicit. *MGM Court Reporting Service, Inc. v. Greenberg,* 143 A.D.2d 404 (2nd Dept.1988). However, the Second Department's determination in *MGM Court Reporting* was affirmed for "different" reasons by the Court of Appeals, which expressly stated that it did "not reach the issue of whether a sale of corporate shares pursuant to Business Corporation Law § 1104-a and 1118 constitutes a sale under compulsion.' " 74 N.Y.2d 691, 693 (1989).

This Court relies on *Von Bremen* as authority for concluding that a transfer of shares resulting from an involuntary dissolution proceeding pursuant to BCL 1104-a, without regard to the buyout provisions of BCL 1118, is "under compulsion," which does not implicate or include a nonsolicitation covenant.

This conclusion is also compelled by the nature of the medical records at issue. Generally, medical records relevant to examination and treatment belong to the treating physician. *Gerson v. New York Women's Medical, P.C.,* 249 A.D.2d 265 (2nd Dept.1998); *Damsker v. Haque,* 93 A.D.2d 729 (1st Dept.1983); *Pullman v. Gormley,* 13 Misc.3d 1234(A) (Sup.Ct. Kings Co.2006); *Emerging Vision, Inc. v. Main Place Optical, Inc.,* 10 Misc.3d 1071(A)(Sup Ct. Nassau Co.2006); *Prohealth Care Associates, LLP v. April,* 4 Misc.3d 1017(A) (Sup Ct. Nassau Co.2004); and *Lewis v. Clement,* 1 Misc.3d 464 (Sup.Ct. Monroe Co.2003). While ownership of medical records is less clear where no single physician at a medical practice had his or her own individual patients [see, *Long Island Women's Health Care Associates, MD, PC v. Haselkorn-Lomansky,* 10 Misc.3d 1068(A)(Sup. Ct. Nassau Co.2005) ], the better practice in such a case would appear to be to allow all physicians to contact any of patients whom they treated. Again, the mechanics of such a notification process shall be worked out in the event that Petitioner establishes a basis for dissolution pursuant to BCL § 1004-a at the hearing directed herein. Based on the foregoing, the request for a nonsolicitation covenant must be denied.

D. *Petitioner's Alternative Relief in the Amended Petition*
The amended petition contains an alternative request by Petitioner for judgment directing Respondents to buyout his shares of Care One for the fair value. In general, the court has no authority to direct one shareholder to buyout another. [*Matter of Sternberg v. Osman,* 181 A.D.2d 899 (2nd Dept.), *lv. app. den. sub nom. Matter of Sternberg,* 80 N.Y.2d 891 (1992). Nevertheless, every order of dissolution gives shareholders the opportunity to elect to purchase the complaining shareholder's stock at fair value. *Matter of Kemp & Beatley, Inc. supra* at 74, citing BCL § 1118.

E. *Withdrawal*
*5 Finally, Petitioner seeks withdrawal of the petition without prejudice to any claims the parties may have derivatively or individually as against each other, in the event that his cross-motion is denied in any way. Such a request is simply untenable. Conditional withdrawal is not an option which this Court can or will consider.

Although ordinarily a party cannot be compelled to litigate and, absent special circumstances, discontinuance should be granted [See, *Tucker v. Tucker,* 55 N.Y.2d 378, 383-384 (1982); and *Great Western Bank v. Terio,* 200 A.D.2d 608 (2nd Dept.), *lv. app. den.,* 83 N.Y.2d 901 (1994) ], withdrawal should not be allowed to circumvent an adverse court order. *Kaplan v. Village of Ossining,* 35 AD3d 816 (2nd Dept.2006); and *Casey v. Custom Crushing & Materials, Inc.,* 309 A.D.2d 726 (2nd Dept.2003) ]. Under all of the circumstances herein, withdrawal of the petition at this time must be denied.

Accordingly, it is,

**ORDERED,** that the allegations of the amended petition and amended answer shall be set down for a hearing on the statutory bases for dissolution of Care One pursuant to BCL 1104-a (a)(1) and (2); and it is further,

**ORDERED,** that the motion and cross-motion for partial summary judgment are determined to the following extent: if a basis for dissolution is established, the hearing will continue on the issues of feasibility/necessity pursuant to BCL § 1104-a(b)(1) and (2), including but not limited to the issue of the value and composition of the good will of Care One to be transferred, if any; and it is further,

**ORDERED,** that to the extent the motion and cross-motion seek a determination as to an implied covenant of nonsolicitation, the applications are **denied;** and it is further,

**ORDERED,** that Petitioner's request in his cross-motion for the conditional withdrawal of his petition is denied, and the alternative request in the amended petition for judgment directing Respondents to buyout his shares of Care One is denied; and it is further,

**ORDERED,** that counsel shall appear at a status conference on September 25, 2007 at 9:30 a.m. to schedule the hearing as herein directed.

This constitutes the decision and Order of the Court.

N.Y.Sup.,2007.
Autz v. Fagan
16 Misc.3d 1140(A), 851 N.Y.S.2d 56 (Table), 2007 WL 2701305 (N.Y.Sup.), 2007 N.Y. Slip Op. 51763(U)
Unreported Disposition

Motions, Pleadings and Filings (Back to top)

• 0003348/2006 (Docket) (Feb. 27, 2006)
END OF DOCUMENT

Adobe Reader is required to view PDF images.


(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.